FILED IN
1st COURT OF APPEALS
HOUSTON, TX
12/07/2015
CHRISTOPHER A. PRINE,
CLERK

NO. _____

# IN THE FOURTEENTH COURT OF APPEALS
## FOR THE STATE OF TEXAS
### at HOUSTON, TEXAS

_____

## In re ROBINSON HELICOPTER COMPANY, INC., Relator

_____

**Original Proceeding From The
11th Judicial District Court of
Harris County, Texas
Cause No. 2014-34635**

_____

**RELATOR'S RECORD (Part 1 of 4)
R0001-R0319**

_____

**COATS & EVANS, P.C.**
George Andrew Coats
State Bar No. 00783846
E-mail: coats@texasaviationlaw.com
Gary Linn Evans
State Bar No. 00795338
E-mail: evans@texasaviationlaw.com
Carrie M. McKerley
State Bar No. 24056625
Email: mckerley@texasaviationlaw.com
P.O. Box 130246
The Woodlands, Texas 77393-0246
Telephone: (281) 367-7732
Facsimile: (281) 367-8003

**EMERGENCY RELIEF REQUESTED
ORAL ARGUMENT REQUESTED**

# RECORD

| NO. | DATE | DESCRIPTION | RECORD PAGE NO. |
|---|---|---|---|
| 1. | 12/04/2015 | Affidavit of Carrie M. McKerley certifying true and correct copies of record documents | N/A |
| 2. | 06/16/2014 | Plaintiffs' Original Petition. | R0001-R0019 |
| 3. | 06/16/2014 | Plaintiffs' First Discovery Requests to Robinson Helicopter Company, Inc. | R0020-R0036 |
| 4. | 08/11/2014 | Helicopter Services, Inc.'s Original Answer and Request for Disclosure. | R0037-R0039 |
| 5. | 08/11/2014 | Original Answer of the Estate of Christopher Yeager, Deceased, and Request for Disclosure. | R0040-R0042 |
| 6. | 08/18/2014 | Robinson Helicopter Company, Inc.'s Original Answer to Plaintiffs' Original Petition. | R0043-R0049 |
| 7. | 09/30/2014 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' First Discovery Requests. | R0050-R0085 |
| 8. | 12/11/2014 | Docket Control Order. | R0086-R0088 |
| 9. | 03/19/2015 | Plaintiffs' Unopposed Motion for Continuance and for Entry of Docket Control Order. | R0089-R0095 |
| 10. | 03/20/2015 | Plaintiffs' Motion to Compel Robinson Helicopter Company's Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections. | R0096-R0137 |
| 11. | 03/20/2015 | Plaintiffs' Designation of Expert Witnesses and Expert Reports. | R0138-R0271 |

| | | | |
|---|---|---|---|
| 12. | 03/23/2015 | Order Granting Continuance. | R0272 |
| 13. | 04/28/2015 | Agreed Amended Docket Control Order. | R0273-R0274 |
| 14. | 05/07/2015 | Robinson Helicopter Company, Inc.'s Opposition to Plaintiff's Motion to Compel Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections. | R0275-R0290 |
| 15. | 05/20/2015 | Plaintiff's First Amended Petition. | R0291-R0319 |
| 16. | 06/01/2015 | Amended Agreed Protective Order. | R0320-R0328 |
| 17. | 06/15/2015 | Plaintiffs' Second Requests for Production to Robinson Helicopter Company, Inc. | R0329-R0340 |
| 18. | 07/10/2015 | Plaintiffs' Motion to Compel and for Sanctions. | R0341-R0349 |
| 19. | 07/15/2015 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' Second Discovery Requests. | R0350-R0375 |
| 20. | 07/22/2015 | Plaintiffs' Motion to Compel Robinson Helicopter Company, Inc.'s Responses to Plaintiffs' Second Requests for Production and Request for Ruling on Defendant's Objections. | R0376-R0422 |
| 21. | 07/24/2015 | Robinson Helicopter Company, Inc.'s First Amended Responses and Objections to Plaintiffs' First Discovery Requests. | R0423-R0456 |
| 22. | 08/07/2015 | Plaintiffs' Amended Designation of Expert Witnesses and Expert Reports. | R0457-R0555 |
| 23. | 08/11/2015 | Plaintiffs' Third Requests for Production to Robinson Helicopter Company, Inc. | R0556-R0561 |

| 24. | 08/12/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel Robinson Helicopter Company, Inc.'s Responses to Plaintiffs' Second Requests for Production and Request for Ruling on Defendant's Objections. | R0562-R0664 |
|---|---|---|---|
| 25. | 08/12/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel and for Sanctions. | R0665-R0682 |
| 26. | 08/21/2015 | Motion to Quash Subpoena and Notice of Deposition by Written Questions. | R0683-R0696 |
| 27. | 08/24/2015 | Deposition Subpoena to Testify or Produce Documents. | R0697-R0702 |
| 28. | 08/27/2015 | Plaintiffs' Motion to Compel Deposition Transcript. | R0703-R0719 |
| 29. | 08/28/2015 | Supreme Court of Texas Grant of Motion for Limited Emergency Stay. | R0720-R0721 |
| 30. | 09/04/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel Deposition Transcripts. | R0722-R0740 |
| 31. | 09/08/2015 | Plaintiffs' Reply to the Response of Robinson Helicopter Company, Inc.to Plaintiffs' Motion to Compel Deposition Transcripts. | R0741-R0752 |
| 32. | 09/10/2015 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' Third Discovery Requests. | R0753-R0765 |
| 33. | 09/14/2015 | Robinson Helicopter Company, Inc.'s Designation of Expert Witnesses and Expert Reports. | R0766-R0821 |

| | | | |
|---|---|---|---|
| 34. | 09/14/2015 | Robinson Helicopter Company, Inc.'s First Amended Responses and Objections to Plaintiffs' Second Discovery Requests. | R0822-R0845 |
| 35. | 09/22/2015 | Order Denying Motion to Quash Subpoena. | R0846 |
| 36. | 09/23/2015 | Robinson Helicopter Company, Inc.'s Motion to Reconsider or in the Alternate, Motion to Clarify. | R0847-R0854 |
| 37. | 09/30/2015 | Reporter's Record of September 30, 2015 hearing. | R0855-R1016 |
| 38. | 11/05/2015 | Robinson Helicopter Company, Inc.'s Motion for Leave to Designate Responsible Third Parties. | R1017-R1022 |
| 39. | 11/10/2015 | Plaintiffs' Response to Robinson Helicopter Company, Inc.'s Motion for Leave to Designate Responsible Third Parties. | R1023-R1026 |
| 40. | 11/17/2015 | Robinson Helicopter Company, Inc.'s Motion for Continuance. | R1027-R1045 |
| 41. | 11/17/2015 | Trial Preparation Order. | R1046-R1048 |
| 42. | 11/18/2015 | Plaintiffs' Objection to the Motion for Continuance of Robinson Helicopter Company, Inc. | R1049-R1053 |
| 43. | 11/19/2015 | Order Granting Motion to Take Judicial Notice, Granting Objection to Production Requests in Part; Granting Discovery in Part. | R1054-R1060 |
| 44. | 11/20/2015 | Defendant Robinson Helicopter Company Inc's Motion to Quash Notice of Deposition of Dr. Joseph Burton. | R1061-R1065 |

| | | | |
|---|---|---|---|
| 45. | 11/20/2015 | Defendant Robinson Helicopter Company, Inc's Motion to Quash Notice of Deposition of William D. Carden M.S. P. E. | R1066-R1070 |
| 46. | 11/20/2015 | Defendant Robinson Helicopter Company Inc's Motion to Quash Notice of Deposition of William S. Lawrence. | R1071-R1075 |
| 47. | 11/20/2015 | Defendant Robinson Helicopter Company Inc's Motion to Quash Notice of Deposition of Colin A Sommer, P.E. | R1076-R1080 |
| 48. | 11/25/2015 | Defendant Robinson Helicopter Company, Inc.'s Motion for Reconsideration of Order Granting Plaintiff's Motion to Compel and Contingent Motion to Stay Pending Mandamus. | R1081-R1274 |
| 49. | 11/27/2015 | Defendant Robinson Helicopter Company Inc.'s Motion to Bifurcate Trial on Exemplary Damages. | R1275-R1282 |
| 50. | 11/27/2015 | Notice of Deposition of Dr. Stephen K. Wilson. | R1283-R1284 |
| 51. | 11/30/2015 | Order Denying Trial Continuance. | R1285-R1287 |
| 52. | 11/30/2015 | Order Denying Leave To Designate Responsible 3rd Party. | R1288 |
| 53. | 11/30/2015 | Plaintiffs' Motion to Quash Notice of Oral and Videotaped Deposition of Dr. Stephen K. Wilson. | R1289-R1296 |
| 54. | 12/2/2015 | Exhibit List from Court Reporter (pursuant to September 30, 2015 hearing). | R1297 |
| 55. | | Reporter's Record of August 17, 2015 hearing. | R1298-R1314 |
| 56. | | Reporter's Record from November 30, 2015 hearing. | R1315-R1326 |

NO. _____

| IN RE ROBINSON | § | IN THE FOURTEENTH |
| HELICOPTER COMPANY, INC. | § | |
| | § | |
| Original Proceeding From the | § | COURT OF APPEALS |
| 11th Judicial Court of | § | |
| Harris County, Texas | § | |
| Cause No. 2014-34635 | § | HOUSTON, TEXAS |

## AFFIDAVIT OF CARRIE M. MCKERLEY

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF WALLER | § |

"My name is Carrie M. McKerley. I am over eighteen years of age, have never been convicted of a felony, and am fully competent to make this affidavit. I have personal knowledge of the statements contained herein, which are all true and correct.

I am an attorney with the law firm of Coats & Evans, P.C. and represent Robinson Helicopter Company, Inc. ("Robinson") in this action.

The attached materials, numbered R0001 – R1326, are true and correct copies of the following materials from the record:

| NO. | DATE | DESCRIPTION | RECORD PAGE NO. |
|---|---|---|---|
| 1. | 12/04/2015 | Affidavit of Carrie M. McKerley certifying true and correct copies of record documents | N/A |
| 2. | 06/16/2014 | Plaintiffs' Original Petition. | R0001-R0019 |
| 3. | 06/16/2014 | Plaintiffs' First Discovery Requests to Robinson Helicopter Company, Inc. | R0020-R0036 |

| 4. | 08/11/2014 | Helicopter Services, Inc.'s Original Answer and Request for Disclosure. | R0037-R0039 |
|---|---|---|---|
| 5. | 08/11/2014 | Original Answer of the Estate of Christopher Yeager, Deceased, and Request for Disclosure. | R0040-R0042 |
| 6. | 08/18/2014 | Robinson Helicopter Company, Inc.'s Original Answer to Plaintiffs' Original Petition. | R0043-R0049 |
| 7. | 09/30/2014 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' First Discovery Requests. | R0050-R0085 |
| 8. | 12/11/2014 | Docket Control Order. | R0086-R0088 |
| 9. | 03/19/2015 | Plaintiffs' Unopposed Motion for Continuance and for Entry of Docket Control Order. | R0089-R0095 |
| 10. | 03/20/2015 | Plaintiffs' Motion to Compel Robinson Helicopter Company's Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections. | R0096-R0137 |
| 11. | 03/20/2015 | Plaintiffs' Designation of Expert Witnesses and Expert Reports. | R0138-R0271 |
| 12. | 03/23/2015 | Order Granting Continuance. | R0272 |
| 13. | 04/28/2015 | Agreed Amended Docket Control Order. | R0273-R0274 |
| 14. | 05/07/2015 | Robinson Helicopter Company, Inc.'s Opposition to Plaintiff's Motion to Compel Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections. | R0275-R0290 |
| 15. | 05/20/2015 | Plaintiff's First Amended Petition. | R0291-R0319 |

| 16. | 06/01/2015 | Amended Agreed Protective Order. | R0320-R0328 |
|---|---|---|---|
| 17. | 06/15/2015 | Plaintiffs' Second Requests for Production to Robinson Helicopter Company, Inc. | R0329-R0340 |
| 18. | 07/10/2015 | Plaintiffs' Motion to Compel and for Sanctions. | R0341-R0349 |
| 19. | 07/15/2015 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' Second Discovery Requests. | R0350-R0375 |
| 20. | 07/22/2015 | Plaintiffs' Motion to Compel Robinson Helicopter Company, Inc.'s Responses to Plaintiffs' Second Requests for Production and Request for Ruling on Defendant's Objections. | R0376-R0422 |
| 21. | 07/24/2015 | Robinson Helicopter Company, Inc.'s First Amended Responses and Objections to Plaintiffs' First Discovery Requests. | R0423-R0456 |
| 22. | 08/07/2015 | Plaintiffs' Amended Designation of Expert Witnesses and Expert Reports. | R0457-R0555 |
| 23. | 08/11/2015 | Plaintiffs' Third Requests for Production to Robinson Helicopter Company, Inc. | R0556-R0561 |
| 24. | 08/12/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel Robinson Helicopter Company, Inc.'s Responses to Plaintiffs' Second Requests for Production and Request for Ruling on Defendant's Objections. | R0562-R0664 |
| 25. | 08/12/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel and for Sanctions. | R0665-R0682 |

| 26. | 08/21/2015 | Motion to Quash Subpoena and Notice of Deposition by Written Questions. | R0683-R0696 |
|-----|-----------|----------------------------------------------------------------------------|-------------|
| 27. | 08/24/2015 | Deposition Subpoena to Testify or Produce Documents. | R0697-R0702 |
| 28. | 08/27/2015 | Plaintiffs' Motion to Compel Deposition Transcript. | R0703-R0719 |
| 29. | 08/28/2015 | Supreme Court of Texas Grant of Motion for Limited Emergency Stay. | R0720-R0721 |
| 30. | 09/04/2015 | Robinson Helicopter Company, Inc.'s Response to Plaintiffs' Motion to Compel Deposition Transcripts. | R0722-R0740 |
| 31. | 09/08/2015 | Plaintiffs' Reply to the Response of Robinson Helicopter Company, Inc.to Plaintiffs' Motion to Compel Deposition Transcripts. | R0741-R0752 |
| 32. | 09/10/2015 | Robinson Helicopter Company, Inc.'s Responses and Objections to Plaintiffs' Third Discovery Requests. | R0753-R0765 |
| 33. | 09/14/2015 | Robinson Helicopter Company, Inc.'s Designation of Expert Witnesses and Expert Reports. | R0766-R0821 |
| 34. | 09/14/2015 | Robinson Helicopter Company, Inc.'s First Amended Responses and Objections to Plaintiffs' Second Discovery Requests. | R0822-R0845 |
| 35. | 09/22/2015 | Order Denying Motion to Quash Subpoena. | R0846 |
| 36. | 09/23/2015 | Robinson Helicopter Company, Inc.'s Motion to Reconsider or in the Alternate, Motion to Clarify. | R0847-R0854 |

| 37. | 09/30/2015 | Reporter's Record of September 30, 2015 hearing. | R0855-R1016 |
|---|---|---|---|
| 38. | 11/05/2015 | Robinson Helicopter Company, Inc.'s Motion for Leave to Designate Responsible Third Parties. | R1017-R1022 |
| 39. | 11/10/2015 | Plaintiffs' Response to Robinson Helicopter Company, Inc.'s Motion for Leave to Designate Responsible Third Parties. | R1023-R1026 |
| 40. | 11/17/2015 | Robinson Helicopter Company, Inc.'s Motion for Continuance. | R1027-R1045 |
| 41. | 11/17/2015 | Trial Preparation Order. | R1046-R1048 |
| 42. | 11/18/2015 | Plaintiffs' Objection to the Motion for Continuance of Robinson Helicopter Company, Inc. | R1049-R1053 |
| 43. | 11/19/2015 | Order Granting Motion to Take Judicial Notice, Granting Objection to Production Requests in Part; Granting Discovery in Part. | R1054-R1060 |
| 44. | 11/20/2015 | Defendant Robinson Helicopter Company Inc.'s Motion to Quash Notice of Deposition of Dr. Joseph Burton. | R1061-R1065 |
| 45. | 11/20/2015 | Defendant Robinson Helicopter Company, Inc.'s Motion to Quash Notice of Deposition of William D. Carden M.S. P. E. | R1066-R1070 |
| 46. | 11/20/2015 | Defendant Robinson Helicopter Company Inc.'s Motion to Quash Notice of Deposition of William S. Lawrence. | R1071-R1075 |

| | | | |
|---|---|---|---|
| 47. | 11/20/2015 | Defendant Robinson Helicopter Company Inc.'s Motion to Quash Notice of Deposition of Colin A Sommer, P.E. | R1076-R1080 |
| 48. | 11/25/2015 | Defendant Robinson Helicopter Company, Inc.'s Motion for Reconsideration of Order Granting Plaintiff's Motion to Compel and Contingent Motion to Stay Pending Mandamus. | R1081-R1274 |
| 49. | 11/27/2015 | Defendant Robinson Helicopter Company Inc.'s Motion to Bifurcate Trial on Exemplary Damages. | R1275-R1282 |
| 50. | 11/27/2015 | Notice of Deposition of Dr. Stephen K. Wilson. | R1283-R1284 |
| 51. | 11/30/2015 | Order Denying Trial Continuance. | R1285-R1287 |
| 52. | 11/30/2015 | Order Denying Leave To Designate Responsible 3rd Party. | R1288 |
| 53. | 11/30/2015 | Plaintiffs' Motion to Quash Notice of Oral and Videotaped Deposition of Dr. Stephen K. Wilson. | R1289-R1296 |
| 54. | 12/2/2015 | Exhibit List from Court Reporter (pursuant to September 30, 2015 hearing). | R1297 |
| 55. | | Reporter's Record of August 17, 2015 hearing. | |
| 56. | | Reporter's Record from November 30, 2015 hearing. | |

Further Affiant sayeth not.



_____
Carrie M. McKerley

SUBSCRIBED AND SWORN TO BEFORE ME on this 4th day of December, 2015, to certify which witness my hand and official seal of office.

ALICE C MARTINEZ
Notary Public, State of Texas
My Commission Expires
September 28, 2019

_____
Notary Public in and for the State of Texas

6

CAUSE NO. _____

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates | § § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| ROBINSON HELICOPTER COMPANY, INC. , HELICOPTER SERVICES, INC. and the Estate of CHRISTOPHER YEAGER | § § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND REQUESTS FOR DISCOVERY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased, Sonia Ates and Nathan M. Ates, hereinafter referred to as Plaintiffs complaining of ROBINSON HELICOPTER COMPANY, INC., HELICOPTER SERVICES, INC., and Paula Yeager, Representative of the ESTATE OF CHRISTOPHER YEAGER, showing the Court as follows, to-wit:

I.

### DISCOVERY CONTROL PLAN

Pursuant to Texas Rule of Civil Procedure 190.4, Plaintiffs intend for discovery to be conducted under a level three (3) discovery control plan. Plaintiffs request that this Honorable Court prepare a docket control order pursuant to Plaintiffs request for a level three (3) discovery control plan.

-1-

R0001

## II.

## PARTIES

Plaintiff, Nathan S. Ates, is a resident of Louisiana.

Plaintiff, Sonia Ates, is a resident of Harris County, Texas.

Plaintiff, Nathan M Ates, is a resident of Oklahoma.

Defendant, Robinson Helicopter Company, Inc. (Hereinafter referred to as "Robinson"), is a California corporation. Robinson engages in business in the State of Texas, but does not maintain a regular place of business nor a designated agent upon whom service may be had upon causes of action arising out of such business being performed in this State. This suit arises out of business done on a regular basis by Robinson in this state.

No service is requested at this time.

Defendant, Helicopter Services, Inc., is a Texas corporation doing business in the State of Texas with its principal place of business in Harris County, Texas.

No service is requested at this time.

Defendant, Paula Yeager, Representative of the Estate of Christopher Yeager, Deceased, is a resident of Texas and is represented by legal counsel, Robert E. Ammons and Bennett A. Midlo, Ammons & Associates, 3700 Montrose Boulevard, Houston, Harris County, Texas 77006.

No service is requested at this time.

## III.

Venue is proper and maintainable in Harris County, Texas since all or a substantial part of the events or omissions giving rise to the claim herein occurred in said county, where

-2-

R0002

defendant, Helicopter Services, Inc., has its principal place of business. Moreover, because venue is proper in Harris County, Texas as to Defendants, Helicopter Services, Inc. and Paula Yeager, Representative of the Estate of Christopher Yeager, Deceased, venue is also proper to defendant, Robinson Helicopter Company, Inc., pursuant to Section 15.005 of the Texas Civil Practice & Remedies Code, which provides that when venue is proper as to one defendant, it is proper as to all defendants and all claims.

This court has jurisdiction by reason of the above and as Plaintiffs' damages exceed the minimum jurisdictional requirements of this court.

IV.

It has become necessary to file this civil suit to collect a legal debt and damages due and owing Plaintiffs as a result of the death of their wife and mother, Joyce A. Ates, on or about September 10, 2012, at which time Joyce A. Ates was a passenger in a Robinson R22 Beta helicopter being piloted by Christopher Yeager. Mr. Yeager, a pilot working in the course and scope of his employment for Helicopter Services, Inc., was providing Joyce A. Ates with services in the form of helicopter transportation for aerial observation over sites in Harris County, Texas.

Decedent Yeager was piloting a 2007 Robinson R22 Beta II helicopter bearing serial number 4250 and registration no. N281RG (the subject helicopter) during a flight originating from the Baytown Airport, Baytown, Texas at approximately 3:00 p.m., according to air safety investigators, on September 10, 2012. Joyce A. Ates was a passenger in the helicopter.

-3-

R0003

According to information developed by the National Transportation Safety Board, witnesses observed the helicopter spinning slowly around the main rotor shaft and descending straight down. Witnesses stated that the main rotor blades were turning slowly and were not deflected upward and the tail rotor did not appear to be turning. The helicopter then impacted the ground at approximately 3:30 p.m., causing a large dust cloud. According to the investigation, within a minute, the helicopter ignited in a fireball, preventing rescue attempts by witnesses on the scene and consuming both Yeager and Ates.

The subject helicopter came to rest upright on a heading of 195 degrees magnetic on a dirt road located in a steel pipe storage yard in Harris County, Texas. The entirety of the aircraft was reportedly accounted for at the site, with the fuselage consumed by the fire. The skids were spread and level with the belly of the fuselage. The body of the subject helicopter was listed to the right.

Joyce Ates suffered injuries which resulted in her death.

At all times material hereto, Christopher Yeager, Deceased, was the pilot of the helicopter involved herein, and an employee of Helicopter Services, Inc.

At all times material hereto, Defendant, HELICOPTER SERVICES, INC., owned, maintained and managed the subject helicopter and was the employer of Christopher Yeager.

HELICOPTER SERVICES, INC. is a factory authorized ROBINSON service center employing technicians trained and certified by Robinson, directly, to perform all scheduled maintenance, inspections, repair and overhaul of all versions of the R-22, R-44, and R-66 helicopter models.

R0004

HELICOPTER SERVICES, INC. is an agent and contractor for ROBINSON and as such, its acts, conduct and omissions were under the actual, implied or apparent authority of Defendant, ROBINSON.

ROBINSON HELICOPTER COMPANY, INC. designed manufactured and sold the Robinson R-22 Beta Helicopter involved in this suit.

ROBINSON HELICOPTER COMPANY, INC. is a "prime partner" of HELICOPTER SERVICES, INC.

V.

Plaintiffs are proper parties under Texas law to bring this suit arising out of the injuries and subsequent death of Joyce A. Ates, pursuant to the Texas Wrongful Death Act and the Texas Survival Statute.

Plaintiffs seek and are entitled to recover actual and exemplary damages from Defendants under Texas law.

Plaintiffs seek and are entitled to recover all legally allowable damages from Defendants.

VI.

Plaintiffs would show that the crash was caused by the negligence and/or gross negligence and/or malice of the Defendant, ROBINSON HELICOPTER COMPANY, INC., and such negligence includes, but is not limited to the following:

Defendant, Robinson Helicopter Company, Inc. , was negligent in its design, manufacture, assembly and inspection of the R22 Beta helicopter.

Defendant, Robinson Helicopter Company, Inc., failed to adequately test the subject helicopter.

-5-

R0005

Defendant, Robinson Helicopter Company, Inc., negligently and without performing proper tests and inspections, introduced the subject helicopter into the stream of commerce in a defective condition that rendered it inferior, unsuitable and unsafe when used for its intended purposes.

Defendant, Robinson Helicopter Company, Inc., was negligent through acts and omissions by and through its agents, servants and/or employees, acting in the course and scope of their respective employments, individually and/or collectively.

As a direct and proximate result of Robinson Helicopter Company's negligence/gross negligence/malice Joyce Ates suffered injuries resulting in her death on September 10, 2012.

VII.

Plaintiffs would show that the crash was caused by the negligence and/or gross negligence and/or malice of the Defendant, HELICOPTER SERVICES, INC., and such negligence includes, but is not limited to the following:

Defendant, Helicopter Services, Inc., failed to adequately train its pilot, Christopher Yeager, for proficiency in operating the subject helicopter.

Defendant, Helicopter Services, Inc., negligently and without performing proper upkeep, maintenance, service, retrofitting, tests and inspections, allowed persons such as Joyce Ates to utilize the subject helicopter in a defective condition that rendered it inferior, unsuitable and unsafe;

Defendant, Helicopter Services, Inc., was negligent through acts and omissions by and through its agents, servants and/or employees, acting in the course and scope of their respective employments, individually and/or collectively.

-6-

R0006

As a direct and proximate result of Helicopter Services, Inc.'s negligence/gross negligence/malice, Joyce Ates suffered injuries resulting in her death on September 10, 2012.

VIII.

Plaintiffs would show that the crash was caused by the negligence and/or gross negligence and/or malice of the pilot, Christopher Yeager, and such negligence includes, but is not limited to the following:

Christopher Yeager failed to follow mandated testing and protocols regarding operation of the Robinson R22 Beta helicopter he was piloting at the time of the incident subject of this suit.

Plaintiffs would further show that Yeager failed to employ appropriate helicopter piloting techniques to avoid a high velocity crash landing, failed to control the helicopter and as such, his operation of the helicopter in which Joyce Ates was a passenger, negligently caused and/or contributed to the incident subject of this suit.

Christopher Yeager failed to maintain controlled flight under power and as a result, the helicopter crashed and burned. Yeager failed to appropriately employ emergency maneuvers so as to control the craft, and avoid injuries and death to Mrs. Ates. Further, Yeager failed to safely bring the craft to rest after an apparent loss of power and avoid a high velocity impact which caused the craft to explode and burn.

As a direct and proximate result of Christopher Yeager's negligence/gross negligence/malice, Joyce Ates suffered injuries resulting in her death on September 10, 2012.

-7-

R0007

IX.

The subject helicopter, which was designed, manufactured, assembled and sold by Robinson Helicopter Company, Inc., was at all times material hereto, defective and unsafe for its intended purpose.

At the time of the incident in question, the subject helicopter proved not to be airworthy because of both design and mechanical defects and problems that lead to a loss of tail rotor control, drive or effectiveness, and which made control of the aircraft difficult to regain, once lost.  Additionally, the subject helicopter's rotors lost inertia and the helicopter's aluminum fuel tanks' failed to resist post accident fuel leaks and the resulting fire.  Robinson, from prior crash analyses, was fully aware that unlined fuel tanks posed an unreasonable risk of harm to occupants in the aircraft, and had issued a safety bulletin for a portion of its fleet for this very circumstance.  The helicopter in question had not been retrofitted with an alternative fuel bladder to avoid post impact fires.

At the time of the crash, the helicopter was in the same or substantially similar condition it was in when leaving the possession of Robinson Helicopter Company, Inc.,  and it was being used for its intended purpose.  Plaintiff contends that the defective helicopter was a producing cause of Plaintiffs' injuries and damages.

As a direct and proximate result of the defective conditions of the subject helicopter, Joyce Ates suffered injuries resulting in her death on September 10, 2012.

X.

Defendant, Robinson Helicopter Company, Inc., intentionally ignored the necessity for incorporation of alternative designs, mechanical components and/or safety/redundancy features

-8-

R0008

that would prevent or mitigate rotor failures and /or ineffectiveness.

Defendant, Robinson Helicopter Company, Inc., intentionally ignored the necessity for incorporation of alternative designs, mechanical components and/or safety/redundancy features that would prevent or mitigate fuel tank failures causing post crash ignition and fires, such as the one subject of this suit.

Defendant, Robinson Helicopter Company, Inc., intentionally ignored the necessity for proper testing and inspection of the subject helicopter, including advice and warning to potential users;

Defendant, Robinson Helicopter Company, Inc., intentionally ignored limitation of the purposes for use of the subject helicopter while knowing of its shortcomings and poor safety record.

As a direct and proximate result of the above-stated willful, wanton and malicious activities of Robinson Helicopter Company, Inc., Plaintiffs are entitled to an award of punitive damages over and above the actual damages prayed for in this action.

XI.

Defendant, Robinson Helicopter Company, Inc. was grossly negligent in the following respects, and such conduct was a proximate cause of the incident, Joyce Ates' injuries and death and Plaintiffs' resulting damages:

a. Failing to perform proper safety analyses regarding the subject helicopter model, including failing to incorporate alternative designs, components and/or features preventing rotor failures and ineffectiveness;

b. Failing to perform proper safety analyses regarding the subject helicopter model,

-9-

R0009

including failing to incorporate alternative designs, components and/or features preventing fuel tank failures and ineffectiveness; and

    c.    Failing to properly test and inspect the subject helicopter and advise, correct and warn of the specific hazards involved in operation of the subject helicopter model.

Defendant, Robinson Helicopter Company, Inc., was grossly negligent and acted with malice in failing to properly analyze safety data, perform safety analyses, incorporate alternative designs, components and features preventing rotor and fuel tank failures and ineffectiveness and/or to properly test and inspect the helicopter including correction and warnings of specific hazards involved with its operation.

XII.

Defendant, Helicopter Services, Inc., was aware of the particular hazards and risks involved in operation of the Robinson R22 Beta helicopter and of its safety reputation, but nevertheless proceeded with conscious indifference to the rights, welfare and safety of others, including Joyce Ates, in offering the helicopter and its pilot for hire.

Defendant, Helicopter Services, Inc.'s conduct constitutes gross negligence and malice as those terms are defined and understood in Texas law because it reflects such an entire want of care as to establish that the acts and/or omissions complained of resulted from actual conscious indifference to the rights, welfare and/or safety of the persons affected by said conduct. The conduct of Helicopter Services, Inc., created an extreme risk of harm to Joyce Ates about which Defendant had an actual subjective awareness.

Such grossly negligent conduct was a proximate cause of the death of Joyce Ates and the damages and losses suffered by Plaintiffs.

-10-

R0010

Accordingly, Plaintiffs seek punitive damages from Defendant, Helicopter Services, Inc.

XIII.

Defendant, Helicopter Services, Inc., was negligent and grossly negligent in the following respects, and such conduct was a proximate cause of the incident, Joyce Ates' injuries and death and Plaintiffs' resulting damages:

a.      Failing to perform proper safety analyses regarding the subject helicopter model;

b.      Failing to insure that proper safety programs and training were in place;

c.      Failing to properly advise, correct and warn of the specific hazards involved in operation of the subject helicopter model; and,

d.      Failing to properly inspect and/or maintain the subject helicopter.

Defendant, Helicopter Services, Inc., was grossly negligent and acted with malice in failing to properly analyze safety data, train operators, inspect and maintain the subject helicopter in order to provide a safe, hazard-free aircraft.

XIV.

Defendant, Christopher Yeager, Deceased, was grossly negligent and acted with malice in failing to properly provide an appropriate and safe aircraft for use by Joyce Ates, as well as failing to undergo specialized and specific ongoing training necessary for the helicopter's safe operation.

Defendant, Christopher Yeager, Deceased, was aware of the particular hazards and risks involved in operation of the Robinson R22 Beta helicopter and of its poor safety reputation, but nevertheless proceeded with conscious indifference to the rights, welfare and safety of others, including Joyce Ates, in offering and piloting the helicopter for hire.

-11-

R0011

Defendant, Christopher Yeager, Deceased's conduct constitutes gross negligence and malice as those terms are defined and understood in Texas law because it reflects such an entire want of care as to establish that the acts and/or omissions complained of resulted from actual conscious indifference to the rights, welfare and/or safety of the persons affected by said conduct. The conduct of Christopher Yeager created an extreme risk of harm to Joyce Ates about which Defendant had an actual subjective awareness.

Such grossly negligent conduct was a proximate cause of the death of Joyce Ates and the damages and losses suffered by Plaintiffs.

Accordingly, Plaintiffs seek punitive damages from the Estate of Christopher Yeager, Deceased.

XV.

Defendant, Christopher Yeager, Deceased, was grossly negligent in the following respects, and such conduct was a proximate cause of the incident, Joyce Ates' injuries and death and Plaintiffs' resulting damages:

a. Failing to properly provide and maintain an appropriate and safe aircraft for use by Joyce Ates;

b. Failing to undergo specialized and specific ongoing training necessary for the helicopter's safe operation.

Defendant, Christopher Yeager, Deceased, was aware of the particular hazards and risks involved in operation of the Robinson R22 Beta helicopter and of its poor safety reputation, but nevertheless proceeded with conscious indifference to the rights, welfare and safety of others, including Joyce Ates, in offering and piloting the helicopter for hire.

-12-

R0012

XVI.

Plaintiffs would show that by engaging in the aforementioned conduct, and where applicable under Texas Law, all Defendants' are jointly and severally liable to all Plaintiffs for their damages and injuries.

XVII.

Plaintiffs allege the theory of respondeat superior and vicarious liability against HELICOPTER SERVICES, INC., as those terms apply pursuant to Texas Law, as YEAGER was operating the helicopter subject hereof during the course and scope of his employment.

XVIII.

As it relates to each and every cause of action set forth herein, Plaintiffs assert the legal theories of agency, vicarious liability, and respondeat superior as those terms apply and are defined by Texas Law. Defendants' employees, agents, or sub-contractors were responsible for some, or all of the conduct of Defendants.

One or more of the Defendants' negligent and grossly negligent acts and/or omissions were caused by owners, vice principals, supervisors or managers of the Defendants. Defendants' employees, agents, or sub-contractors that were servicing, maintaining and operating the helicopter subject of this lawsuit, were doing so during the course and scope of their employment for Defendants. Defendants' employees, agents, or sub-contractor conduct, acts, negligence, or omissions occurred during the course and scope of their employment for Defendants. Any and all acts or omissions of Defendants' employees, agents, or sub-contractors that caused harm to Plaintiffs are the acts of Defendants pursuant to the theory of agency, vicarious liability and respondeat superior, as those terms are defined pursuant to Texas Law.

-13-

R0013

ROBINSON was the manufacturer of the helicopter involved in this incident.

HELICOPTER SERVICES is a factory authorized ROBINSON service center employing technicians trained and certified by Robinson, directly, to perform all scheduled maintenance, inspections, repair and overhaul of all versions of the R-22, R-44, and R-66 helicopter models.

HELICOPTER SERVICES is an agent and/or contractor for ROBINSON and as such, its acts, conduct and omissions were done with the actual, implied or apparent authority of Defendant, ROBINSON.

ROBINSON is a "prime partner" of HELICOPTER SERVICES.

Additionally, and pleading in the alternative, HELICOPTER SERVICES hired Pilot Yeager to operate their helicopter and to ferry passengers on its behalf, in a Robinson R-22 Beta helicopter.  Thus, Yeager was acting on behalf of Defendant, HELICOPTER SERVICES, and through the course and scope of his employment when this helicopter crash occurred.

YEAGER's operation of the helicopter as an employee, agent and /or servant of Defendant HELICOPTER, the agent and/or contractor for ROBINSON, its "prime partner" deems Robinson further responsible for the acts, omissions and negligence of HELICOPTER due to the master servant relationship which existed between ROBINSON and HELICOPTER, and pursuant to the doctrine of Respondeat Superior and Vicarious Liability.

Therefore, Plaintiffs' seek to recover against all Defendants under the theories of agency, vicarious liability, and/or respondeat superior for any cause of action alleged herein or for any intentional, knowing, reckless or negligent acts or omissions caused by Defendants' agents, contractors, servants, or employees.

XIX.

-14-

R0014

In addition to Defendants' ordinary negligence as alleged hereinabove, Defendants' conduct was also characterized by "malice" and/or gross negligence as that term is understood under the laws of the State of Texas. This conduct was also a proximate cause of Intervenors' damages and entitles them to recover exemplary damages from Defendants.

XX.

This action is brought pursuant to § 71.001 - 71.011 of the Texas Civil Practice and Remedy Code. Plaintiffs NATHAN S. ATES, Individually and as Representative of the Estate of JOYCE ATES, Deceased, as surviving spouse, and Nathan M. Ates AND SONIA ATES, as surviving children, are statutory beneficiaries and may bring action for the wrongful death of JOYCE ATES.

Plaintiffs, NATHAN S. ATES, Individually and As Representative of the Estate of JOYCE ATES, Deceased, and as surviving spouse of JOYCE ATES under the Texas Wrongful Death Act is entitled to recover damages for:

a.      Pecuniary loss resulting from the Death of JOYCE ATES, including, but not limited to the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that the spouse would, in reasonable probability have received from the other spouse had she lived;

b.      Termination of the Husband-Wife Relationship: The love, affection, solace, comfort, companionship, society, assistance and sexual relationship that Plaintiff, NATHAN S. ATES, surviving spouse, has suffered since the death of his spouse and which the surviving spouse would in reasonable probability have received from the other spouse had she lived. This element includes loss of consortium;

c.      Mental anguish suffered by the Plaintiff, NATHAN S. ATES, surviving spouse as a result of the death of JOYCE ATES, including but not limited to the emotional pain, torment, and suffering that Plaintiff, NATHAN S. ATES, would in reasonable probability, experience from the death of his wife;

-15-

R0015

d.   Loss of Inheritance:  The earnings, if any, of JOYCE ATES, deceased, in excess of the amount she would have used for the support of herself and her family, and in which reasonable probability would have been added to her estate and left to Plaintiff NATHAN S.  ATES, at her natural death had she lived.

Plaintiff, SONIA ATES, as surviving child of JOYCE ATES, Deceased, under the Texas Wrongful Death Act is entitled to recover damages for:

a.   Pecuniary Loss resulting from the Death of JOYCE ATES, including, but not limited to the care, maintenance, support, services, education advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that the surviving child would have received from JOYCE ATES had she lived;

b.   Termination of the Parent-Child Relationship:  The positive benefits flowing from the love, support, companionship, and society that this Plaintiff would in reasonable probability, have received from JOYCE ATES,  had she lived;

c.   Mental Anguish suffered by the surviving child as a result of the death of JOYCE ATES, including but not limited to the emotional pain, torment, and suffering that the Plaintiff SONIA ATES, would in reasonable probability, experience from the death of JOYCE ATES;

d.   Loss of Inheritance:  The earnings, if any, of the decedent in excess of the amount she would have used for the support of herself and her family, and in which reasonable probability would have been added to her estate and left to the Plaintiff at her natural death had she lived.

Plaintiff, Nathan M. Ates, as surviving child of JOYCE ATES, Deceased, under the Texas Wrongful Death Act is entitled to recover damages for:

a.   Pecuniary Loss resulting from the Death of JOYCE ATES, including, but not limited to the care, maintenance, support, services, education advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that the surviving child would have received from JOYCE ATES had she lived;

b.   Termination of the Parent-Child Relationship:  The positive benefits flowing from the love, support, companionship, and society that this Plaintiff would in reasonable probability, have received from JOYCE ATES,  had she lived;

-16-

R0016

c.  Mental Anguish suffered by the surviving child as a result of the death of JOYCE ATES, including but not limited to the emotional pain, torment, and suffering that the Plaintiff SONIA ATES, would in reasonable probability, experience from the death of JOYCE ATES; and

d.  Loss of Inheritance: The earnings, if any, of the decedent in excess of the amount she would have used for the support of herself and her family, and in which reasonable probability would have been added to her estate and left to the Plaintiff at her natural death had she lived.

XXI.

Additionally, Plaintiff NATHAN S. ATES, Individually and as Representative of the Estate of JOYCE ATES, Deceased, brings action pursuant to § 71.021 of the Texas Civil Practice and Remedies Code. Plaintiff, NATHAN S. ATES, Individually and Representative of the Estate of JOYCE ATES, may bring action on behalf of JOYCE ATES's estate to recover for damages sustained by JOYCE ATES prior to her death.

The Estate of JOYCE ATES is entitled to recover for:

a.  Physical pain and suffering of JOYCE ATES, deceased;

b.  Mental anguish of JOYCE ATES, deceased;

C.  Loss of future wages of JOYCE ATES, deceased; and

D.  Funeral and burial expenses of JOYCE ATES, deceased.

XXII.

By reason of the foregoing, Plaintiffs would show that they have been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which amount they come now and sue. Plaintiffs seek recovery of each and every element of damages permitted by Texas law. Plaintiffs are entitled to have their claims considered by the trier of fact, and a verdict rendered accordingly. Plaintiffs seek monetary damages for actual compensatory losses in an amount over

-17-

R0017

$1,000,000.00, excluding punitive damages.

## XXIII.

The allegations made herein against Defendants are made acknowledging that this suit is in its infancy and investigation and discovery are continuing.

## XXIV.

Plaintiffs would show that as further investigation and discovery are developed, additional facts may be uncovered that will necessitate further, additional and/or different allegations including the potential for adding and/or dismissing parties to the case and the right to do so, under Texas law, is expressly reserved.

## XXV.

Pursuant to Rule 194, Defendants are requested to disclose within the time period set forth in Rule 194.3, the information or material described in Rule 194.2(a)-(l).

Pursuant to Texas Rules of Civil Procedure, Plaintiffs' Interrogatories and Requests for Production are attached hereto and served upon defendants with this Petition.

## XXVI.

Plaintiffs are entitled by law to recover pre-judgment and post-judgment interest at the prevailing rate for which they here and now sue for recovery, as allowed by the laws of the State of Texas.

## XXVII.

Plaintiffs demand trial by jury in this matter.

R0018

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein and that upon final trial hereof, Plaintiffs have judgment against Defendants, jointly and severally, that they recover their damages in accordance with the evidence, including punitive damages in an amount to be set by the trier of fact, that they recover costs of Court herein expended, interest, both pre and post judgment, to which they are entitled under the law, and for such other and further relief, both general and special, legal and equitable, to which they may be justly entitled.

Respectfully submitted,

**STEVENSON & MURRAY**

*/s/ Mark T.  Murray /s/*

_____

**MARK T. MURRAY**
State Bar No. 14724810
24 Greenway Plaza, Suite 750
Houston, Texas  77046
(713) 622-3223
(713) 622-3224 (FAX)
Email: mmurray@johnstevensonlaw.com

COUNSEL FOR PLAINTIFFS

R0019

CAUSE NO. _____

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates | § § § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| ROBINSON HELICOPTER COMPANY, INC. , HELICOPTER SERVICES, INC. and the Estate of CHRISTOPHER YEAGER | § § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST DISCOVERY REQUESTS TO ROBINSON HELICOPTER COMPANY, INC.

TO:    Defendant, ROBINSON HELICOPTER COMPANY, INC.
       C/O Kurt L. Robinson
       2901 Airport Drive
       Torrance, California 90505

Pursuant to the Texas Rules of Civil Procedure, Plaintiffs serve this First Request for Production, Interrogatories and Admissions upon Defendant, Robinson Helicopter Company, Inc.

Plaintiffs request that Defendant produce for inspection, copying, and reproduction the documents and tangible things hereinafter designated. Plaintiffs request that the documents be produced in the offices of Stevenson & Murray, 24 Greenway Plaza, Suite 750, Houston, Texas, 77046, in accordance with the time periods and in the manner dictated by Rule 196.

You are further requested to supplement your response to this Request for Production as required by the Texas Rules of Civil Procedure. If Defendant contends any documents are privileged, or not subject to discovery, a privilege log is requested.

Plaintiffs request that Defendant respond to the interrogatories propounded herein, pursuant to the provisions of Rule 197. Defendant is required to serve responses to same in writing within 50 days

R0020

of service of this document upon defendant. These interrogatories are deemed continuing and defendant is required to supplement its responses as new information becomes available or is discovered.

Plaintiffs request that the Requests for Admissions of Fact be responded to by defendant pursuant to Rule 198 and that the responses be provided, in writing, within 50 days after service of this document upon Defendant.

Respectfully submitted,

**STEVENSON & MURRAY**

*/s/ Mark T. Murray /s/*

By:_____

**MARK T. MURRAY**
State Bar No. 14724810
24 Greenway Plaza, Suite 750
Houston, Texas 77046
(713) 622-3223
(713) 622-3224 (FAX)

**ATTORNEYS FOR PLAINTIFFS**

2

R0021

TABLE OF DEFINITIONS/ABBREVIATIONS

Plaintiffs set forth the following definitions or abbreviations of various words and phrases which are contained in the following requests for production. Plaintiffs provide the following definitions and abbreviations for the purpose of clarifying the meaning of various words and phrases contained herein in order to expedite discovery, i.e., to help the Defendant fully and accurately understand the objectives of the Plaintiffs' discovery efforts to locate and furnish the relevant information and documents.

A.      "You" or "your" or "yours" refers to this Defendant, and its attorney;

B.      "DEFENDANT" shall be deemed to refer to Defendant, ROBINSON HELICOPTER COMPANY, INC. and any department, division, office, agency or corporate affiliate, including those in the United States of America and in any other country. The term also includes any director, officer, agent, employee, person, firm, or corporation acting on behalf of "DEFENDANT" now or at any time relating to "your" response to attached requests for production;

C.      "Defendant" means this defendant and also all representatives acting or purporting to act on behalf of Defendant with respect to any matter inquired about in these requests for production, including, but not limited to, all such employees, attorneys, consultants, sureties, indemnifier, insurers, or agents.

**REQUESTS FOR PRODUCTION**

1.      Original and subsequent design drawings and/or blueprints relating to the engine and rotor systems of the helicopter model at issue.

RESPONSE:

2.      Documents from 2005 to the present referring to or reflecting any operational malfunction, testing malfunction or operational failure or defect of any type with the helicopter model at issue.

RESPONSE:

3.      Documents referring to or reflecting any changes, alterations, or modifications in the design instructions or service bulletins for the helicopter model at issue.

RESPONSE:

3

R0022

4.     Advertising brochures, safety alerts, safety notices, service bulletins, service letters, service/technical advisories, promotional literature and the like relating to the helicopter model at issue.

RESPONSE:

5.     Articles, evaluations, reports, case studies, and the like appearing in aviation or general mechanical engineering periodicals, industry or aviation trade journals, or governmental or aviation groups relative to or concerning any alleged operational or testing malfunction or failure in connection with the helicopter model at issue.

RESPONSE:

6.     Contracts and/or policies of insurance which might afford coverage to Defendant in the event of a verdict for Plaintiff in the above-styled cause, whether primary, secondary or excess coverage.

RESPONSE:

7.     Correspondence between Defendant and Helicopter Services, Inc. regarding the use, experience, anticipated use, flight use, operational concerns, or otherwise specifically pertaining to or governing the maintenance, inspection or operation of the helicopter model at issue and/or the subject helicopter and any components of such aircraft manufactured or assembled by Defendant.

RESPONSE:

8.     For the time period form 2005 to the present, petitions for damages or complaints filed in any court or comparable administrative tribunal in connection with any lawsuits against Defendant in which it is alleged or acclaimed that the helicopter model at issue crashed as a result of design or mechanical failures.

RESPONSE:

R0023

9.      Maintenance manuals, parts catalogs, price lists and estimated operating costs publications prepared by Defendant and sent to distributors, dealers or repair facilities with respect to appropriate maintenance, inspection and testing of, and parts for, the helicopter model at issue.

RESPONSE:

10.     Service difficulty reports generated by Defendant and submitted to any filed operatives, dealers, maintenance facilities and distributors with respect to the helicopter model at issue and/or any of its components.

RESPONSE:

11.     Notices of malfunction or defect reports reported to the FAA or NTSB which in any way relate to tail rotor effectiveness in the helicopter model at issue.

RESPONSE:

12.     Internal memoranda including, but not limited to, letters, bulletins, reports, test results, investigative evaluations and the like generated within and by employees of Defendant or at the behest of Defendant relating to any alleged or perceived malfunction, materials problem, operational or maintenance failure or alleged failure with any component of the helicopter model at issue.

RESPONSE:

13.     Accident investigation reports or memoranda prepared by or at the behest of Defendant, including reports of all in-house investigations, diagrams, photographs, witness statements, engineering or test reports and memoranda, litigation testing and the like, regarding any crash of the helicopter model at issue (including the subject helicopter in the crash made the basis of this lawsuit).

RESPONSE:

14.     Documents, materials, reports or memoranda contained within FAA or NTSB files concerning operation or testing deficiencies or failures, either actual or alleged, relating to the helicopter model at

5

R0024

issue.

RESPONSE:

15.     Evaluations, whether conducted internally or externally, at the behest of Defendant, upon the subject helicopter, both before and after the crash.

RESPONSE:

16.     Documents referring to or reflecting any testing, whether operation or filed testing or component, experimental or laboratory testing, concerning evaluation of the helicopter model at issue's engine and rotor systems.

RESPONSE:

17.     Correspondence between Defendant and Helicopter Services, Inc. referring or relating to the proper inspection, maintenance and operation of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

18.     Correspondence referring to or reflecting proper maintenance, operation, and flight use of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

19.     Each and every exhibit that Defendant will offer at trial for any purpose, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence which Defendant will attempt to show to the jury or otherwise use at the trial of this case.

RESPONSE:

20.     Any videotapes, photographs, or other similar evidence in your possession depicting and/or relating in any way to Plaintiff.

RESPONSE:

6

R0025

21.     Each and every exhibit, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence that have been reviewed by or created by your testifying experts or that in any way support or illustrate your testifying experts' opinions that are relevant to this case.

RESPONSE:

22.     Your current balance sheet, financial statement or other document(s) sufficient to show your current net worth.  For purposes of this request, "net worth" means the difference between total assets and liabilities determined in accordance with generally accepted accounting principles ("GAAP").

RESPONSE:

23.     Photographs, videos or maps of the scene of the crash.

RESPONSE:

24.     All documents supporting your claim that another person or entity is a Responsible Third Party that has bet been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

25.     Plot operating manuals, helicopter operational manuals, or the like, prepared by Defendant for the helicopter model at issue and/or the subject helicopter.

RESPONSE:

R0026

## INTERROGATORIES

1.    State the full name, current complete address, telephone number, and position, capacity or job title of each person who assisted in answering these interrogatories on behalf of Defendant.

ANSWER:

2.    With respect to the subject helicopter, did you provide any component parts including, but not limited to, the engine and/or engine assembly and/or rotor systems of the helicopter?  If your answer is "yes," provide the following information:

      a.    A complete description including part numbers, model numbers, assembly unit, and trade name of any and all components that were incorporated into and part of the subject helicopter on the date of its crash; and

      b.    Identify all suppliers of component parts from whom you have purchased, in whole or in part, parts to be incorporated into units or any parts thereof which you supplied.

ANSWER:

3.    In connection with any business you have conducted with Helicopter Services, Inc., state:

      a.    The first and last date of any business transactions between you and Helicopter Service, Inc.;

      b.    The nature of the business relationship (e.g., vendor/purchaser, lessor/lessee, etc.);

      c.    The identity of those individuals in your company with knowledge of the business

8

R0027

relationship between you and Helicopter Services, Inc.; and

        d.      The models and model years of all helicopters sold by you to Helicopter Services, Inc.

ANSWER:

4.      With respect to the subject helicopter, provide the original dates of design and manufacture.

ANSWER:

5.      Identify the current custodian and whereabouts of all studies or tests with respect to the helicopter model at issue's engine and rotor systems, including but not limited to safety analysis and consideration of various alternative designs.

ANSWER:

6.      For the period 2005 to the present, provide a description, including identification of equipment, date, crash site, and fatality/injury information, of all malfunctions, incidents, accidents, or complaints (regardless of whether injury or death ensued) associated with use of the helicopter model at issue.

ANSWER:

7.      State all of the ways in which you attempt to ascertain the existence of any malfunctions or complaints associated with your helicopters other than the receipt of legal action, and describe any and all documents reflecting the above, indicating their present location.

ANSWER:

8.      Identify any and all documents in your possession, custody or control describing any changes to or the reasons for such changes in the design or materials used in the helicopter model at issue, including any component parts therein, subsequent to its original manufacture and design.

ANSWER:

9.      For the period 2005 to the present, identify any and all documents in your possession, custody or control relating to any notices directed to you, claims made against you, or lawsuits filed against you

9

R0028

wherein it was claimed or alleged that a helicopter model at issue failed because of any malfunction, maintenance problem, manufacturing defect, engine or rotor failure, metallurgical problem, blade detachment, coning, lack of tail rotor effectiveness, recoverability issues or autorotation issues, and:

    a.    Identify the custodian of any and all such documents in your possession referring to of reflecting any such notices, claims, or lawsuits; and

    b.    Set forth and identify any and all such notices, claims, and lawsuits by date, aircraft description, engine part number, location of malfunction, and aircraft owner.

ANSWER:

10.    Describe any and all bulletins, manuals, written instructions, warnings, procedures, letters, alerts, or the like that were:

    a.    Provided with the promotion or sale of the helicopter model at issue;

    b.    Subsequently supplied to any owner, operator, or lessor of any of the helicopter model at issue.

ANSWER:

11.    For the period 2005 to the present, identify every lawsuit that has been filed against you (regardless of whether injury or death ensued) wherein it was claimed or alleged that any helicopter or helicopter component supplied by you malfunctioned, failed, lost power, or contributed to a reportable aviation mishap, specifically identifying:

    a.    The name, court, docket number of each lawsuit as well as identifying in which lawsuits Defendant gave interrogatories, oral depositions; and

    b.    The identity including name, address and telephone number of the attorneys representing the plaintiffs in each such matter, as well as whether the case was or has been resolved or settled.

R0029

ANSWER:

12. For any liability insurance coverage which Defendant held and which will cover the occurrence out of which this loss arises, state:

    a. The name and address of each such carrier;

    b. The policy numbers of each such policy;

    c. Whether any reservation of the insurer's rights has been declared with respect to a potential dispute in coverage for this loss; and

    d. Whether Defendant must approve of any settlement entered into by its insurance carrier.

ANSWER:

13. Identify any and all engineering change orders made with respect to the rotor systems utilized by the helicopter model at issue and substantially similar rotor systems. In connection therewith, set forth the effective date and serial number of any such engineering change order.

ANSWER:

14. Set forth the certification history of the helicopter model at issue, including but not limited to the dates and test results of all developmental grounds tests, developmental flight tests, and in connection therewith:

    a. Identify the current location of all applications for type certification, ground and flight tests, and all documents related thereto; and

    b. Identify the custodian of all such files.

ANSWER:

15. Identify all flight and ground test documentation including, but not limited to, test protocol, field test results, and any videotaped or photographs with respect to the helicopter model at issue.

ANSWER:

11

R0030

16.     Identify all correspondence, communications, or safety notices or bulletins generated by you and forwarded to the National Transportation Safety Board and any such responses, directives, notices, or requests imparted by NTSB to you involving the helicopter model at issue and/or the subject helicopter.

ANSWER:

17.     Has Defendant caused to be issued any mechanical reliability reports to the FAA with respect to the helicopter model at issue?  If the answer is "yes," state the following:

      a.     The current condition and whereabouts of any such reports; and

      b.     The dates and subject matter of any such reports.

ANSWER:

18.     Has the FAA or NTSB ever directed you to issue an airworthiness directive with respect to any aspect of the design, manufacture, operation, maintenance, or use of the helicopter model at issue?  If your answer is "yes," set forth the following:

      a.     The current custodian and whereabouts of any such airworthiness directives; and

      b.     The dates of any such directives and the general subject matter of each.

ANSWER:

19.     Has the FAA or NTSB ever conducted an inquiry into the manufacture, design, operation, maintenance, or use of the helicopter model at issue?  If your answer is "yes," set forth the following:

      a.     The current custodian and whereabouts of any such inquiries; and

      b.     The dates of any such inquiries including the general subject matter of each.

ANSWER:

20.     Identify the following persons with responsibility for the design, testing, and certification of the helicopter model at issue and the subject helicopter:

      a.     Head of engineering;

12

R0031

b.      Project engineer;

c.      Chief of flight operations and testing;

d.      Governmental liaison between defendant and FAA/NTSB; and

e.      Investigation officer for malfunction notices.

ANSWER:

21.     Identify all of the individuals who have or have had any responsibilities - whether administrative, investigative, or engineering - arising out of the crash giving rise to the action. In connection therewith, state the name of each and every such individual and set forth their current positions with the company, date hired, and current employment.

ANSWER:

22.     If you were present during any inspection or "tear down" of components from the subject helicopter:

a.      Identify all of your employees who were present, along with their job titles, positions, and reason for their presence; and

b.      Identify all non-employees who were present, along with their employer or governmental affiliation and reason for their presence.

ANSWER:

23.     Describe any redundancy built into the design of the helicopter model at issue that would provide a measure of safety in the event of an in-flight failure of the engine or rotor system.

ANSWER:

24.     State (a) your current net worth and (b) a description of the facts and methodology used to calculate what you allege to be your current net worth. For purposes of answering this interrogatory, "net worth," means the difference between total assets and liabilities determined in accordance with

13

R0032

generally accepted accounting principles ("GAAP").

ANSWER:

25.     Identify each person or entity you contend is a potential Responsible Third Party in this lawsuit, state with as much specificity as possible the factual basis for such contention, and identify the persons that may possess relevant knowledge regarding the contention.

ANSWER:

14

R0033

**REQUESTS FOR ADMISSIONS**

1.      Admit you designed, in whole or in part, the subject helicopter.


RESPONSE:


2.      Admit that you manufactured, in whole or in part, the subject helicopter.


RESPONSE:


3.      Admit that you assembled, in whole or in part, the subject helicopter.


RESPONSE:


4.      Admit that the subject helicopter was not airworthy on the date of the crash.


RESPONSE:


5.      Admit that the subject helicopter was airworthy on the date of the crash.


RESPONSE:


6.      Admit that the subject helicopter was not properly inspected as of the date of the crash.


15

R0034

RESPONSE:

7.      Admit that the subject helicopter was properly inspected as of the date of the crash.

RESPONSE:

8.      Admit that the helicopter model at issue is more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

9.      Admit that the helicopter model at issue is not more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

10.     Admit that the helicopter model at issue's rotors are low inertia.

RESPONSE:

11.     Admit that the helicopter model at issue's rotors are not low inertia.

RESPONSE:

16

R0035

12.     Admit that the fuel tanks used in the helicopter model at issue were subject of a safety bulletin.

RESPONSE:

13.     Admit that the fuel tanks used in the helicopter model at issue were not the subject of a safety bulletin.

RESPONSE:

14.     Admit that Decedents were fatally injured in the crash.

RESPONSE:

15.     Admit that you contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

16.     Admit that you do not contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

17

R0036

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually | § | IN THE DISTRICT COURT |
| and as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| and the Estate of CHRISTOPHER | § | |
| YEAGER | § | 11TH JUDICIAL DISTRICT |

## HELICOPTER SERVICES, INC.'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Helicopter Services, Inc. (hereinafter "HSI") files this Original Answer and Request for Disclosure and respectfully shows the Court as follows:

### I. General Denial

1. Pursuant to Rule 92, Texas Rules of Civil Procedure, HSI generally denies each and every allegation contained in Plaintiffs' Original Petition and demands strict proof thereof as required by Texas law.

### II. Affirmative Defenses

2. Subject to and without waiving the foregoing General Denial, HSI asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiffs' Original Petition.

3. HSI affirmatively pleads that Plaintiffs' claims for exemplary damages are controlled and limited by the provisions of Texas Civil Practice & Remedies Code §41.008. HSI additionally affirmatively pleads that Plaintiffs' claims for exemplary damages are controlled

HSI'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURE                                                      Page 1

R0037

and limited by the provisions of the due process clause of the Texas and United States Constitutions, which prevent the award of grossly excessive punitive damages. HSI further pleads that any award of exemplary damages against HSI should be mitigated by evidence offered by HSI.

4. HSI affirmatively pleads that pre-judgment interest, if any, as requested in Plaintiffs' Original Petition, is limited in accordance with §304.104, *et seq.,* of the Texas Finance Code.

### III. Request for Disclosure

5. Pursuant to Texas Rule of Civil Procedure 194, HSI serves this Request for Disclosure upon Plaintiffs. Plaintiffs are requested to disclose, within thirty (30) days of service, the information and materials identified in Rule 194.2.

### IV. Request for Relief

WHEREFORE, PREMISES CONSIDERED, HSI requests that the Court, upon final trial, render judgment that Plaintiffs take nothing by this suit, that HSI recover all costs, and that HSI be awarded such other and further relief, both at law and in equity, general or special, to which it may be justly entitled.

Respectfully submitted,

*/s/ Don Swaim*
DON SWAIM
State Bar No. 19545200
ROSE • WALKER, L.L.P.
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Phone: 214.752.8600
Facsimile: 214.752.8700
dswaim@rosewalker.com

ATTORNEYS FOR DEFENDANT
HELICOPTER SERVICES, INC.

R0038

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this 11th day of August, 2014.

*/s/ Don Swaim*

Don Swaim

R0039

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually | § | IN THE DISTRICT COURT |
| and as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| and the Estate of CHRISTOPHER | § | |
| YEAGER | § | 11TH JUDICIAL DISTRICT |

**ORIGINAL ANSWER OF THE ESTATE OF CHRISTOPHER YEAGER, DECEASED, AND REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

Paula Yeager, Representative of the Estate of Christopher Yeager, Deceased, (hereinafter "Defendant") files this Original Answer and Request for Disclosure and respectfully shows the Court as follows:

**I.      General Denial**

1.      Pursuant to Rule 92, Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiffs' Original Petition and demands strict proof thereof as required by Texas law.

**II.      Affirmative Defenses**

2.      Subject to and without waiving the foregoing General Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiffs' Original Petition.

R0040

3. Defendant affirmatively pleads that Plaintiffs' claims for exemplary damages are controlled and limited by the provisions of Texas Civil Practice & Remedies Code §41.008. Defendant additionally affirmatively pleads that Plaintiffs' claims for exemplary damages are controlled and limited by the provisions of the due process clause of the Texas and United States Constitutions, which prevent the award of grossly excessive punitive damages. Defendant further pleads that any award of exemplary damages against Defendant should be mitigated by evidence offered by Defendant.

4. Defendant affirmatively pleads that pre-judgment interest, if any, as requested in Plaintiffs' Original Petition, is limited in accordance with §304.104, *et seq.,* of the Texas Finance Code.

## III. Request for Disclosure

5. Pursuant to Texas Rule of Civil Procedure 194, Defendant serves this Request for Disclosure upon Plaintiffs. Plaintiffs are requested to disclose, within thirty (30) days of service, the information and materials identified in Rule 194.2.

## IV. Request for Relief

WHEREFORE, PREMISES CONSIDERED, Defendant requests that the Court, upon final trial, render judgment that Plaintiffs take nothing by this suit, that Defendant recover all costs, and that Defendant be awarded such other and further relief, both at law and in equity, general or special, to which it may be justly entitled.

R0041

Respectfully submitted,

*/s/ Don Swaim*
DON SWAIM
State Bar No. 19545200
ROSE • WALKER, L.L.P.
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Phone: 214.752.8600
Facsimile: 214.752.8700
dswaim@rosewalker.com

ATTORNEYS FOR DEFENDANT
HELICOPTER SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this 11th day of August, 2014.

*/s/ Don Swaim*
Don Swaim

R0042

NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates, | § § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | 11TH JUDICIAL DISTRICT |
| | § § | |
| ROBINSON HELICOPTER COMPANY, INC., HELICOPTER SERVICES, INC., and the Estate of CHRISTOPHER YEAGER | § § § § | |
| Defendants. | § § | HARRIS COUNTY, TEXAS |

**DEFENDANT ROBINSON HELICOPTER COMPANY, INC.'S ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robinson Helicopter Company, Inc. (hereinafter "Robinson"), one of the defendants in the above-titled and numbered cause, and on behalf of itself and itself alone, files this its Original Answer to Plaintiff's Original Petition and Jury Demand, and in support thereof, would respectfully show this Court the following:

**I.**

**GENERAL DENIAL**

Robinson appears and generally denies each and every, all and singularly, the material allegations contained in Plaintiff's Original Petition, and any amendments or supplements thereto, in accordance with Rule 92 of the Texas Rules of Civil Procedure, demands strict proof thereof and says that this is a matter for jury trial.

R0043

## II.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

(No Causation)

1. Robinson is informed and believes, and based thereon alleges that any injury, damage, loss, or detriment suffered by Plaintiff was directly and proximately caused by persons separate and apart from Robinson whether named or unnamed in this action.

### SECOND AFFIRMATIVE DEFENSE

(Negligence of Others)

2. Robinson is informed and believes, and based thereon alleges that any injury, damage, loss, or detriment suffered by Plaintiffs was directly and proximately caused, in whole or in part, by the negligence of persons separate and apart from Robinson whether named or unnamed in this action.

### THIRD AFFIRMATIVE DEFENSE

(Comparative Responsibility)

3. Robinson is informed and believes, and based thereon alleges that in the event that a finding is made that Robinson was negligent and that said negligence proximately contributed to Plaintiffs' damages, which is expressly and specifically denied, and/or that Robinson is otherwise legally responsible for Plaintiffs' damages, Plaintiffs' amount of recovery from Robinson should be reduced on the basis of the negligence of third parties which contributed to the damages for which Plaintiffs are

R0044

seeking recovery in accordance with the doctrine of comparative responsibility and the Texas Civil Practice & Remedies Code.

## FOURTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

4.     Robinson is informed and believes, and based thereon alleges that at and before the time and place of the accident herein alleged, Plaintiffs' decedent fully knew of and appreciated any risk of danger of injury, loss, damage or detriment regarding the events and matters alleged in the Complaint, and having full knowledge and appreciation of such risk and dangers, voluntarily exposed himself to and assumed all risk and dangers of injury, loss, damage or detriment from the events and matters alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

### (Superseding and Intervening Cause)

5.     Robinson is informed and believes, and based thereon alleges that the full responsibility for control of the situation, threatened harm, injuries, loss and damages alleged passed to the pilot-in-command of the aircraft involved in the accident and/or a third person or persons whose acts or omissions constitute a superseding and intervening cause of the Plaintiffs' alleged injuries and damages.

## SIXTH AFFIRMATIVE DEFENSE

### (Regular Inspection)

6.     Robinson is informed and believes, and based thereon alleges that Plaintiffs cannot state a claim against Robinson as a matter of law in that the alleged

R0045

subject helicopter was not to be used unless regularly inspected by the owner and operator of the product.

## SEVENTH AFFIRMATIVE DEFENSE

### (Preemption)

7.     Robinson is informed and believes, and based thereon alleges that Plaintiffs' claims are preempted by federal law contained within the Federal Aviation Act and the Federal Aviation Regulations.

## EIGHTH AFFIRMATIVE DEFENSE

### (Compliance with Law)

8.     All services and products supplied by Robinson fully complied with all applicable Governmental laws and regulations at the time when the alleged subject helicopter and component parts left the hands of Robinson.

## NINTH AFFIRMATIVE DEFENSE

### (No Design Defects)

9.     All services and products supplied by Robinson fully complied with the state-of-the-art and state-of-the-industry at the time when the alleged subject helicopter and component parts left the hands of Robinson.

## TENTH AFFIRMATIVE DEFENSE

### (No Manufacturing Defects)

10.     At the time of the alleged subject helicopter left Robinson's control, it did not deviate from the design specifications, formula, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications and had no manufacturing defects.

R0046

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Comply with Warnings)

11.     Plaintiffs' claims may be barred to the extent Plaintiffs' damages resulted in whole or in part from the disregard of, and failure to comply with, any and all warnings, alerts, bulletins, instructions, rules and regulations provided.

## TWELFTH AFFIRMATIVE DEFENSE

### (Merchantability, Safe and Fit for Intended Use)

12.     At the time the alleged subject Robinson R22 helicopter, Serial No. 4250, Registration No. N281RG, left Robinson's control it was not defective or dangerous, but rather the helicopter was of merchantable quality and fit and safe for its intended use when properly maintained and operated.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Limited Warranty)

13.     At the time of the alleged sale of the aircraft, all of Robinson's products carried with them a certain written limited express warranty which constituted the sole, entire and exclusive warranty of the products, superseding all implied warranties and placing limitations on damages permissible thereunder.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Failure to Set Forth Facts for Punitive Damages)

14.     Plaintiff's Complaint fails to set forth facts sufficient to support an award of punitive or exemplary damages and thus, any claim for punitive damages should be dismissed.

R0047

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Unconstitutionality of Punitive Damages)

15. Robinson asserts that any award of punitive damages as sought by Plaintiff would violate the due process and excessive fine clauses of the Fifth, Eight and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of Texas.

## OTHER AFFIRMATIVE DEFENSES

### (Right to Amend)

16. Robinson intends to rely upon such other defenses as may become legally available hereafter or become apparent during discovery proceedings in this case and hereby reserves its right to amend its answer to assert any such defenses.

## III.

## JURY DEMAND

Robinson specifically asks for a jury trial as allowed by law.

## IV.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Robinson respectfully prays:

1. That Plaintiff take nothing by way of this cause of action and that this cause of action be dismissed;

2. That Robinson be awarded all costs and expenses incurred herein; and

3. That Robinson be granted such other and further relief, both at law and in equity, to which Robinson may show itself justly entitled.

R0048

Respectfully submitted,

COATS & EVANS, P.C.

### */S/ George Andrew Coats*

George Andrew Coats
Texas Bar No. 00783846
Gary Linn Evans
Texas Bar No. 00795338
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**Attorneys for Defendant
Robinson Helicopter Company, Inc.**

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the foregoing document has been served on all parties of record on this the 20th day of August 2014.

MARK T. MURRAY
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, Texas 77046
713-622-3223
713-622-3224 Fax
mmurray@johnstevensonlaw.com

DON SWAIM
ROSE WALKER LLP
3500 Maple Ave., Suite 900
Dallas, Texas 75219
214-752-8600
214-752-8700 Fax
dswaim@rosewalker.com

### */S/ George Andrew Coats*
George Andrew Coats

R0049

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES, | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiff, | §<br>§ | 129TH JUDICIAL DISTRICT |
| vs. | §<br>§ | |
| ROBINSON HELICOPTER COMPANY, INC.; HELICOPTER SERVICES, INC.; and the Estate of CHRISTOPHER YEAGER, | §<br>§<br>§<br>§ | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

**DEFENDANT ROBINSON HELICOPTER COMPANY, INC.'S RESPONSE TO PLAINTIFFS' FIRST DISCOVERY REQUESTS**

Pursuant to the Texas Rules of Civil Procedure, Defendant ROBINSON HELICOPTER COMPANY, INC. ("Robinson") hereby responds to Plaintiffs NATHAN S. ATES', Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES ("Plaintiffs'") First Discovery Requests for the purpose of this action only without admitting in any way or to any extent the relevance to this cause of action or the admissibility as evidence of any statement or document provided herein, and without prejudice to subsequently discovered facts or information relevant to these requests. Robinson's discovery is not completed at this time, and, as such defendant reserves the right to supplement any and all responses herein by reason of subsequently discovered information.

## GENERAL OBJECTIONS

Robinson submits the following general objections to Plaintiffs' Instructions, Definitions and Discovery Requests which apply to each and every request contained in Plaintiffs' Discovery Requests to Robinson. For convenience, these general objections

R0050

are set forth below and are not necessarily repeated after each request. The assertion of the same, similar or additional objections to a specific request does not waive any of Robinson's general objections as set forth below:

1. Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they seek to expand the scope of, or impose upon Robinson obligations greater than those required by the applicable rules of the Rules of Civil Procedure and/or applicable orders of this Court.

2. Robinson reserves the right to challenge the competency, relevancy and admissibility, at trial or any subsequent proceeding, in this or any other action, of any information produced in response to Plaintiffs' Discovery Requests.

3. Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they are directed to or made on behalf of entities or persons who are not parties to this case or over whom Robinson has no control.

4. Robinson respectfully objects to Plaintiffs' Discovery Requests on the grounds that they are ambiguous, vague, overly broad, oppressive and unduly burdensome, and seek information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

5. Robinson bases its responses on information currently available to it, after reasonable inquiry, and Robinson reserves the right to amend and/or supplement its objections and responses to conform to information and documents which may be obtained through ongoing discovery and investigation, in accordance with the Rules of Civil Procedure governing discovery.

R0051

6.	Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they attempt to elicit protected documents or information subject to the attorney client privilege; the work product doctrine; a joint or common defense privilege; the confidentiality of documents containing the impressions, conclusions, opinions, legal research or theories of Robinson or its attorneys; or seeks materials prepared in anticipation of litigation or information that is proprietary in nature. Robinson asserts each and every one of the foregoing privileges and protections applicable to the information sought to the fullest extent provided by law, applicable rules, current and future case management orders.

7.	Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they seek documents or information not within Robinson's possession, custody or control.

8.	Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they seek information or documents constituting trade secrets, or other confidential, research, development, commercial, financial and/or proprietary information.

9.	Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they seek information which is within Plaintiffs' knowledge, possession, custody or control, or otherwise accessible to Plaintiffs from other sources with substantially the same or greater facility than Robinson.

10.	Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they are unlimited in time, or otherwise not limited to a time frame relevant to this litigation, and to Robinson's products at issue in this case, on the grounds that such

R0052

requests seek documents neither relevant to the subject matter of the litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

11. Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they include contention interrogatories that solicit premature responses before the close of discovery.

### OBJECTIONS TO DEFINITIONS

Robinson makes the following specific objections to Plaintiffs' definitions, which objections are incorporated into all of Robinson's responses to Plaintiffs' Discovery Requests where applicable. Any omission to refer specifically to such objections to Plaintiffs' definitions and instructions shall not be deemed a waiver of such objections.

Robinson respectfully objects to Plaintiffs' definition of "you," "your" and "Defendant" on the grounds that it is overly broad, unduly burdensome and to the extent that Robinson may not be able to ascertain all entities and/or individuals falling within these definitions. Further, Robinson respectfully objects to Plaintiffs' definition of "you," "your" and "Defendant" to the extent that they seek to expand the scope of, or impose obligations greater than, those imposed by the Rules of Civil Procedure.

R0053

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

Original and subsequent design drawings and/or blueprints relating to the engine and rotor systems of the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this request inasmuch as it is overly broad, vague, ambiguous, oppressive and unduly burdensome and expensive to answer as presented. Robinson further objects inasmuch as this request seeks information which is proprietary and contains trade secrets. With waiving these objections, Robinson responds that it did not manufacture the engine installed in the subject helicopter. Robinson further responds that if Plaintiff can narrow this request, Robinson will attempt to provide a response.

REQUEST FOR PRODUCTION NO. 2:

Documents from 2005 to the present referring to or reflecting any operational malfunction, testing malfunction or operational failure or defect of any type with the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this request inasmuch as it is overly broad, vague, ambiguous, oppressive, and contains terms and phrases which are ambiguous and undefined and unduly burdensome and expensive to answer as presented. Robinson further objects inasmuch as this request seeks information which is proprietary and contains trade secrets. Without waiving these objections, if Plaintiff can narrow this request, Robinson will attempt to provide a response.

R0054

REQUEST FOR PRODUCTION NO. 3:

Documents referring to or reflecting any changes, alterations, or modifications in the design instructions or service bulletins for the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope.  Robinson further responds that it is not familiar with the term "design instructions" and as such cannot reasonably provide a response.  Without waiving these objections, Robinson refers to the R22 Maintenance Manual, R22 Service Bulletins and R22 Service Letters.  These documents are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 4:

Advertising brochures, safety alerts, safety notices, service bulletins, service letters, service/technical advisories, promotional literature and the like relating to the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope.  Without waiving these objections, Robinson refers to the R22 brochure, R22 Maintenance Manual, R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices.  The current R22 brochure, R22 Maintenance Manual, R22 Service Bulletins, R22 Service Letters, Robinson Safety Notices and Robinson Safety Alerts are

R0055

publicly available for purchase or free download from Robinson's website at

[www.robinsonheli.com](www.robinsonheli.com).

REQUEST FOR PRODUCTION NO. 5:

Articles, evaluations, reports, case studies, and the like appearing in aviation or general mechanical engineering periodicals, industry or aviation trade journals, or governmental  or aviation groups relative to or concerning any alleged operational or testing malfunction or failure in connection with the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, unlimited with respect to timeframe and scope.  Robinson further objects to this Request inasmuch as it seeks documents which are equally available to the propounding party and it would be as cost-effective for plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Without waiving these objections, Robinson responds that it does not maintain any file or database of these documents.

REQUEST FOR PRODUCTION NO. 6:

Contracts and/or policies of insurance which might afford coverage to Defendant in the event of a verdict for Plaintiff in the above-styled cause, whether primary, secondary or excess coverage.

RESPONSE:

Robinson responds that there is no insurance policy that insures Robinson for claims contained in the subject lawsuit.  Robinson has no knowledge of any insurance policies covering third parties for claims contained in the subject lawsuit.

R0056

REQUEST FOR PRODUCTION NO. 7:

Correspondence between Defendant and Helicopter Services, Inc. regarding the use, experience, anticipated use, flight use, operational concerns, or otherwise specifically pertaining to or governing the maintenance, inspection or operation of the helicopter model at issue and/or the subject helicopter and any components of such aircraft manufactured or assembled by Defendant.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson refers Plaintiff to the R22 Pilot's Operating Handbook, R22 Illustrated Parts Catalog, and R22 Maintenance Manual. These documents are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 8:

For the time period from 2005 to the present, petitions for damages or complaints filed in any court or comparable administrative tribunal in connection with any lawsuits against Defendant in which it is alleged or acclaimed that the helicopter model at issue crashed as a result of design or mechanical failures.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this request in that it seeks information pertaining to any helicopter other than the one involved in this litigation without reasonable limitation such as substantial similarity with

R0057

the facts of this case, and as such this information is outside the scope of proper discovery and is not reasonably calculated to lead to discovery of admissible evidence. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson responds that it does not maintain any database or compilation of responsive documents.

REQUEST FOR PRODUCTION NO. 9:

Maintenance manuals, parts catalogs, price lists and estimated operating costs publications prepared by Defendant and sent to distributors, dealers or repair facilities with respect to appropriate maintenance, inspection and testing of, and parts for, the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson refers to the R22 Pilot's Operating Handbook, R22 Illustrated Parts Catalog and R22 Maintenance Manual. These documents are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 10:

Service difficulty reports generated by Defendant and submitted to any field operatives, dealers, maintenance facilities and distributors with respect to the helicopter model at issue and/or any of its components.

\\\

R0058

RESPONSE:

Robinson responds that Service Difficulty Reports are not generated by Robinson, and such documents are received and maintained by the FAA and are not within Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 11:

Notices of malfunction or defect reports reported to the FAA or NTSB which in any way relate to tail rotor effectiveness in the helicopter model at issue.

RESPONSE:

Robinson responds that this Request seeks documents maintained by the FAA, and not in Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 12:

Internal memoranda including, but not limited to, letters, bulletins, reports, test results, investigative evaluations and the like generated within and by employees of Defendant or at the behest of Defendant relating to any alleged or perceived malfunction, materials problem, operational or maintenance failure or alleged failure with any component of the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson responds it does not believe it is in possession of responsive documents at this time.

\\\

\\\

R0059

REQUEST FOR PRODUCTION NO. 13:

Accident investigation reports or memoranda prepared by or at the behest of Defendant, including reports of all in-house investigations, diagrams, photographs, witness statements, engineering or test reports and memoranda, litigation testing and the like, regarding any crash of the helicopter model at issue (including the subject helicopter in the crash made the basis of this lawsuit).

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Robinson further objects to this Request as it seeks documents relating to other helicopters not related to the accident in question without any showing of substantial similarity of design or occurrence. Robinson also objects to this Request inasmuch as it seeks information protected by the attorney work product and attorney/client privilege. Without waiving this objection, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

REQUEST FOR PRODUCTION NO. 14:

Documents, materials, reports or memoranda contained within FAA or NTSB files concerning operation or testing deficiencies or failures, either actual or alleged, relating to the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope, and seeks documents which are proprietary and trade secret in nature. Without waiving this

R0060

objection, Robinson responds that this Request seeks documents maintained by the FAA and/or the NTSB, and not in Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 15:

Evaluations, whether conducted internally or externally, at the behest of Defendant, upon the subject helicopter, both before and after the crash.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, and burdensome as framed. Without waiving this objection, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

REQUEST FOR PRODUCTION NO. 16:

Documents referring to or reflecting any testing, whether operation or field testing or component, experimental or laboratory testing, concerning evaluation of the helicopter model at issue's engine and rotor systems.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, and unlimited with respect to timeframe and scope. Robinson further objects inasmuch as this request seeks documents which are proprietary and contain trade secrets. Without waiving these objections, if Plaintiff can narrow this request, Robinson will attempt to provide a response.

\\\

\\\

R0061

REQUEST FOR PRODUCTION NO. 17:

Correspondence between Defendant and Helicopter Services, Inc. referring or relating to the proper inspection, maintenance and operation of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson respectfully objects to this Request in that it is duplicative in nature. Robinson refers to its response to Request for Production No. 7, which is incorporated herein by reference.

REQUEST FOR PRODUCTION NO. 18:

Correspondence referring to or reflecting proper maintenance, operation, and flight use of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. This Request seeks 'correspondence' without indicating between what parties it is referring to. If Plaintiff can clarify this Request, Robinson can attempt to provide a reasonable response.

REQUEST FOR PRODUCTION NO. 19:

Each and every exhibit that Defendant will offer at trial for any purpose, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence which Defendant will attempt to show to the jury or otherwise use at the trial of this case.

\\\

R0062

<u>RESPONSE</u>:

Robinson respectfully objects to this Request on the grounds that it is premature at this stage of discovery, and disclosure of such documents and things will be conducted at the appropriate time under the relevant rules of Court.

<u>REQUEST FOR PRODUCTION NO. 20</u>:

Any videotapes, photographs, or other similar evidence in your possession depicting and/or relating in any way to Plaintiff.

<u>RESPONSE</u>:

Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

<u>REQUEST FOR PRODUCTION NO. 21</u>:

Each and every exhibit, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence that have been reviewed by or created by your testifying experts or that in any way support or illustrate your testifying experts' opinions that are relevant to this case.

<u>RESPONSE</u>:

Robinson respectfully objects to this Request on the grounds that it is premature at this stage of discovery, and disclosure of such documents and things will be conducted at the appropriate time under the relevant rules of Court.

<u>REQUEST FOR PRODUCTION NO. 22</u>:

Your current balance sheet, financial statement or other document(s) sufficient to show your current net worth. For purposes of this request, "net worth" means the

R0063

difference between total assets and liabilities determined in accordance with generally accepted accounting principles ("GAAP").

RESPONSE:

Robinson respectfully objects to the Request as it seeks privileged financial records which are highly sensitive, and their confidentiality is necessary to Robinson's competitive advantage and continued viability. Robinson also objects to this Request as the information requested is not relevant to any of the current issues of liability and causation. Further, there is no public policy reason for this information to be released as it only concerns the financial status of one defendant, and implicates no public safety or other relevant issue.

REQUEST FOR PRODUCTION NO. 23:

Photographs, videos or maps of the scene of the crash.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Without waiving these objections, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

\\\

\\\

\\\

R0064

REQUEST FOR PRODUCTION NO. 24:

All documents supporting your claim that another person or entity is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson respectfully objects to this Request on the grounds that it is premature, discovery is in progress and the investigation and preparation have not been completed.

REQUEST FOR PRODUCTION NO. 25:

Pilot operating manuals, helicopter operational manuals, or the like, prepared by Defendant for the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson refers to the R22 Maintenance Manual, R22 Pilot's Operating Handbook, R22 Flight Training Guide, R22 Service Bulletins, R22 Service Letters, and Robinson Safety Notices. Robinson will produce a full set of R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices. The R22 Maintenance Manual, R22 Pilot's Operating Handbook and R22 Flight Training Guide are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

\\\

R0065

# INTERROGATORIES

INTERROGATORY N0.1:

State the full name, current complete address, telephone number, and position, capacity or job title of each person who assisted in answering these interrogatories on behalf of Defendant.

ANSWER:

Pete Riedl
Vice-President, Engineering
Robinson Helicopter Company
2901 Airport Drive
Torrance, CA 90505
310-539-0508

and counsel of record.

INTERROGATORY NO. 2:

With respect to the subject helicopter, did you provide any component parts including, but not limited to, the engine and/or engine assembly and/or rotor systems of that helicopter? If your answer is "yes," provide the following information:

a.      A complete description including part numbers, model numbers, assembly unit, and trade name of any and all components that were incorporated into and part of the subject helicopter on the date of its crash; and

b.      Identify all suppliers of component parts from whom you have purchased, in whole or in part, parts to be incorporated into units or any parts thereof which you supplied.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome as framed.  Without waiving this

<span style="color:red">R0066</span>

objection and utilizing its own definition, Robinson responds that it was the original manufacturer of the subject helicopter, but was not the original manufacturer of the subject helicopter's engine.

INTERROGATORY NO. 3:

In connection with any business you have conducted with Helicopter Services, Inc., state:

     a.     The first and last date of any business transactions between you and Helicopter Service, Inc.;

     b.     The nature of the business relationship (e.g., vendor/purchaser, lessor/lessee, etc.);

     c.     The identity of those individuals in your company with knowledge of the business relationship between you and Helicopter Services, Inc.; and

     d.     The models and model years of all helicopters sold by you to Helicopter Services, Inc.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and seeks information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Without waiving this objection and utilizing its own definition, Robinson responds that Helicopter Services, Inc. has been a Robinson Dealership and Service Center since 1989.

\\\

\\\

R0067

INTERROGATORY NO. 4:

With respect to the subject helicopter, provide the original dates of design and manufacture.

ANSWER:

Robinson responds that the R22 helicopter was certified in March 1979 and R22 serial number 4250 was issued a standard airworthiness certificate on December 10, 2007.

INTERROGATORY NO. 5:

Identify the current custodian and whereabouts of all studies or tests with respect to the helicopter model at issue's engine and rotor systems, including but not limited to safety analysis and consideration of various alternative designs.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and seeks information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Without waiving this objection and utilizing its own definition, Robinson responds that documents related to the design and certification of the R22 model helicopter are located at Robinson's facility, 2901 Airport Drive, Torrance, California 90505. Robinson further responds that it did not manufacture the engine installed in the subject helicopter.

INTERROGATORY NO. 6:

For the period 2005 to the present, provide a description, including identification of equipment, date, crash site, and fatality/injury information, of all malfunctions,

R0068

incidents, accidents, or complaints (regardless of whether injury or death ensued) associated with use of the helicopter model at issue.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Robinson further objects to this request in that it seeks information pertaining to any helicopter other than the one involved in this litigation without reasonable limitation such as substantial similarity with the facts of this case, and as such this information is outside the scope of proper discovery and is not reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, Robinson responds that it does not maintain a database or formal compilation of this information. For purposes of any research or analysis, Robinson responds that the records maintained by the National Transportation Safety Board ("NTSB") are reviewed as the NTSB's records contain significantly more incidents and accidents, contain probable cause determinations, and are accessible as they are maintained in a database.

INTERROGATORY NO. 7:

State all of the ways in which you attempt to ascertain the existence of any malfunctions or complaints associated with your helicopters other than the receipt of legal action, and describe any and all documents reflecting the above, indicating their present location.

\\\

R0069

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome to answer as framed. Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

INTERROGATORY NO. 8:

Identify any and all documents in your possession, custody or control describing any changes to or the reasons for such changes in the design or materials used in the helicopter model at issue, including any component parts therein, subsequent to its original manufacture and design.

ANSWER:

Robinson respectfully objects to this Interrogatory as it is overly broad, vague, ambiguous, oppressive, burdensome and unlimited with respect to timeframe and scope as frame. Robinson further objects to this demand on the grounds that it seeks to invade proprietary, trade secret, and confidential information. Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

INTERROGATORY NO. 9:

For the period 2005 to the present, identify any and all documents in your possession, custody or control relating to any notices directed to you, claims made against you, or lawsuits filed against you wherein it was claimed or alleged that a helicopter model at issue failed because of any malfunction, maintenance problem,

R0070

manufacturing defect, engine or rotor failure, metallurgical problem, blade detachment, coning, lack of tail rotor effectiveness, recoverability issues or autorotation issues, and:

    a.    Identify the custodian of any and all such documents in your possession referring to or reflecting any such notices, claims, or lawsuits; and

    b.    Set forth and identify any and all such notices, claims, and lawsuits by date, aircraft description, engine part number, location of malfunction, and aircraft owner.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson does not maintain a list or database for this information, or for information relating to historical litigation or lawsuits filed.

INTERROGATORY NO. 10:

Describe any and all bulletins, manuals, written instructions, warnings, procedures, letters, alerts, or the like that were:

    a.    Provided with the promotion or sale of the helicopter model at issue;

    b.    Subsequently supplied to any owner, operator, or lessor of any of the helicopter model at issue.

\\\

\\\\

\\\

R0071

<u>ANSWER</u>:

Robinson refers to the R22 Maintenance Manual, R22 Illustrated Parts Catalog, R22 Pilot's Operating Handbook, R22 Flight Training Guide, R22 Service Bulletins, R22 Service Letters, and Robinson Safety Notices.

<u>INTERROGATORY NO. 11</u>:

For the period 2005 to the present, identify every lawsuit that has been filed against you (regardless of whether injury or death ensued) wherein it was claimed or alleged that any helicopter or helicopter component supplied by you malfunctioned, failed, lost power, or contributed to a reportable aviation mishap, specifically identifying:

a.      The name, court, docket number of each lawsuit as well as identifying in which lawsuits Defendant gave interrogatories, oral depositions; and

b.      The identity including name, address and telephone number of the attorneys representing the plaintiffs in each such matter, as well as whether the case was or has been resolved or settled.

<u>ANSWER</u>:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson does not maintain a list or database for this information, or for information relating to historical litigation or lawsuits filed.

\\\

\\\

R0072

INTERROGATORY NO. 12:

For any liability insurance coverage which Defendant held and which will cover the occurrence out of which this loss arises, state:

a.   The name and address of each such carrier;

b.   The policy numbers of each such policy;

c.   Whether any reservation of the insurer's rights has been declared with respect to a potential dispute in coverage for this loss; and

d.   Whether Defendant must approve of any settlement entered into by its insurance carrier.

ANSWER:

Robinson responds that there is no insurance policy that insures Robinson for claims contained in the subject lawsuit.

INTERROGATORY NO. 13:

Identify any and all engineering change orders made with respect to the rotor systems utilized by the helicopter model at issue and substantially similar rotor systems. In connection therewith, set forth the effective date and serial number of any such engineering change order.

ANSWER:

Robinson responds that it does not have any documents referred to as "engineering change orders."

\\\

\\\

\\\

R0073

INTERROGATORY NO. 14:

Set forth the certification history of the helicopter model at issue, including but not limited to the dates and test results of all developmental ground tests, developmental flight tests, and in connection therewith:

      a.     Identify the current location of all applications for type certification, ground and flight tests, and all documents related thereto; and

      b.     Identify the custodian of all such files.

ANSWER:

Robinson responds that the R22 helicopter was certified by the FAA in 1979. Robinson is located at 2901 Airport Drive, Torrance, California 90505 and maintains its records at that location.

INTERROGATORY NO. 15:

Identify all flight and ground test documentation including, but not limited to, test protocol, field test results, and any videotapes or photographs with respect to the helicopter model at issue.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, unlimited in time and scope as framed, and seeks proprietary and trade secret information.

INTERROGATORY NO. 16:

Identify all correspondence, communications, or safety notices or bulletins generated  by you and forwarded to the National Transportation Safety Board and any

R0074

such responses, directives, notices, or requests imparted by NTSB to you involving the helicopter model at issue and/or the subject helicopter.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, unlimited with respect to timeframe and scope, and seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Without waiving these objections, Robinson responds that all information relating to R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices are included in the R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices themselves.

INTERROGATORY NO. 17:

Has Defendant caused to be issued any mechanical reliability reports to the FAA with respect to the helicopter model at issue? If the answer is "yes," state the following:

    a.    The current condition and whereabouts of any such reports; and

    b.    The dates and subject matter of any such reports.

ANSWER:

Robinson is unfamiliar with the term "mechanical reliability reports," and as such, is unable to respond to this Interrogatory as framed.

INTERROGATORY NO. 18:

Has the FAA or NTSB ever directed you to issue an airworthiness directive with respect to any aspect of the design, manufacture, operation, maintenance, or use of the helicopter model at issue? If your answer is "yes," set forth the following:

R0075

a.     The current custodian and whereabouts of any such airworthiness directives; and

b.     The dates of any such directives and the general subject matter of each.

ANSWER:

No, airworthiness directives are issued and maintained by the Federal Aviation Administration.

INTERROGATORY NO. 19:

Has the FAA or NTSB ever conducted an inquiry into the manufacture, design, operation, maintenance, or use of the helicopter model at issue? If your answer is "yes," set forth the following:

a.     The current custodian and whereabouts of any such inquiries; and

b.     The dates of any such inquiries including the general subject matter of each.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome inasmuch as the term "inquiry" is not defined, and is unlimited in time and scope, and seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so.

INTERROGATORY NO. 20:

Identify the following persons with responsibility for the design, testing, and certification of the helicopter model at issue and the subject helicopter:

a.     Head of engineering;

R0076

b. Project engineer;

c. Chief of flight operations and testing;

d. Governmental liaison between defendant and FAA/NTSB; and

e. Investigating officer for malfunction notices

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Without waiving this objection, Robinson responds that the person most knowledgeable at Robinson with respect to the subject matters listed is Pete Riedl, Vice-President of Engineering.

INTERROGATORY NO. 21:

Identify all of the individuals who have or have had any responsibilities – whether administrative, investigative, or engineering – arising out of the crash giving rise to this action. In connection therewith, state the name of each and every such individual and set forth their current positions with the company, date hired, and current employment.

ANSWER:

Robinson respectfully objects to this Interrogatory as it is overly broad, vague, ambiguous, and burdensome. Without waiving this objection, Robinson responds that Thom Webster was the Robinson technical investigator who documented the circumstances of the accident, and authored the Robinson Accident Report on R22 S/N 4250.

INTERROGATORY NO. 22:

If you were present during any inspection or "tear down" of components from the subject helicopter:

R0077

a.     Identify all of your employees who were present, along with their job titles, positions, and reason for their presence; and

b.     Identify all non-employees who were present, along with their employer or governmental affiliation and reason for their presence.

ANSWER:

a.     Thom Webster was present as the Robinson Technical Investigator assigned to the investigation of this accident.

b.     No other persons were present on behalf of Robinson

INTERROGATORY NO. 23:

Describe any redundancy built into the design of the helicopter model at issue that would provide a measure of safety in the event of an in-flight failure of the engine or rotor system.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope. Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

INTERROGATORY NO. 24:

State (a) your current net worth and (b) a description of the facts and methodology used to calculate what you allege to be your current net worth. For purposes of answering this Interrogatory, "net worth," means the difference between total assets and liabilities determined in accordance with generally accepted accounting principles ("GAAP").

R0078

ANSWER:

Robinson respectfully objects to the Interrogatory as it seeks privileged financial records which are highly sensitive, and their confidentiality is necessary to Robinson's competitive advantage and continued viability. Robinson also objects to this Interrogatory as the information requested is not relevant to any of the current issues of liability and causation. Further, there is no public policy reason for this information to be released as it only concerns the financial status of one defendant, and implicates no public safety or other relevant issue.

Plaintiffs' petition includes factually unsupported claims of intentional and grossly negligent conduct by Robinson. Without more, the discovery of Robinson's sensitive and confidential financial information should not be permitted. The existing case law setting the standards for discovery of a defendant's net worth is antiquated and does not reflect the recently-enacted limitations on exemplary damage claims as passed by the Texas Legislature. Thus, Robinson should not be required to disclose its net worth based absent factually support for Plaintiff's allegations.

In order to remain consistent with the intent and purpose of Chapter 41 of the Texas Civil Practices and Remedies Code, Robinson should not be required to produce its net worth unless or until a jury, based on clear and convincing evidence, returns a unanimous verdict that Robinson is liable to Plaintiffs for exemplary damages based on the facts and evidence presented in this case.

INTERROGATORYNO. 25:

Identity each person or entity you contend is a potential Responsible Third Party in this lawsuit, state with as much specificity as possible the factual basis for such

R0079

contention, and identify the persons that may possess relevant knowledge regarding the contention.

ANSWER:

Robinson respectfully objects to this Interrogatory as it is premature at this state in the investigation and discovery process. Robinson reserves the right to supplement this response at a later date.

R0080

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1:

Admit you designed, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 2:

Admit that you manufactured, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 3:

Admit that you assembled, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 4:

Admit that the subject helicopter was not airworthy on the date of the crash.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO.5:

Admit that the subject helicopter was airworthy on the date of the crash.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

R0081

REQUEST FOR ADMISSION NO. 6:

Admit that the subject helicopter was not properly inspected as of the date of the crash. RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 7:

Admit that the subject helicopter was properly inspected as of the date of the crash. RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 8:

Admit that the helicopter model at issue is more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

Denied.

REQUEST FOR ADMISSION NO. 9:

Admit that the helicopter model at issue is not more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 10:

Admit that the helicopter model at issue's rotors are low inertia.

R0082

RESPONSE:

As the phrase "low inertia" is not adequately defined, Robinson lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 11:

Admit that the helicopter model at issue's rotors are not low inertia.

RESPONSE:

As the phrase "low inertia" is not adequately defined, Robinson lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 12:

Admit that the fuel tanks used in the helicopter model at issue were subject of a safety bulletin.

RESPONSE:

Robinson cannot admit or deny this Request as it is not familiar with the term "Safety Bulletin."

REQUEST FOR ADMISSION NO. 13:

Admit that the fuel tanks used in the helicopter model at issue were not the subject of a safety bulletin.

RESPONSE:

Robinson cannot admit or deny this Request as it is not familiar with the term "Safety Bulletin."

REQUEST FOR ADMISSION NO. 14:

Admit that Decedents were fatally injured in the crash.

\\\

R0083

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 15:

Admit that you contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 16:

Admit that you do not contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

Respectfully submitted,

COATS & EVANS, P.C.

**/S/ George Andrew Coats**
George Andrew Coats
Texas Bar No. 00783846
Gary Linn Evans
Texas Bar No. 00795338
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**Attorneys for Defendant**
**Robinson Helicopter Company, Inc.**

R0084

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the foregoing document has been served on all parties of record on this the 30th day of September 2014.

MARK T. MURRAY
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, Texas 77046
Email: MMurray@johnstevensonlaw.com

Mr. Don Swaim
Rose Walker, LLP
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Telephone: 214-752-8600
Facsimile: 214-752-8700
Email: dswaim@rosewalker.com

*/S/ George Andrew Coats*
George Andrew Coats

R0085

Case No. 201434635

ATES, NATHAN S (INDIVIDUALLY A                    *        IN THE DISTRICT COURT OF
                                                   *
vs.                                                *        HARRIS COUNTY, TEXAS
                                                   *
ROBINSON HELICOPTER COMPANY IN                     *        11th      JUDICIAL DISTRICT
                                                   *

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.              **JOINDER**. All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.              **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
(a)             Experts for parties seeking affirmative relief.
(b)             All other experts.

3.              **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.    TIME:
                Failure to appear will be grounds for dismissal for want of prosecution.

4.              **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)             Total hours per side for oral depositions.
(b)             Number of interrogatories that may be served by each party on any other party.

5.              **ALTERNATIVE DISPUTE RESOLUTION.**
(a) 05/19/15    By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.
(b) 07/06/15    ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.              **DISCOVERY PERIOD ENDS.** All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.              **DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
(a)             If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
(b)             Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
(c)             Rule 166a(i) motions may not be heard before this date.

8.              **CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.              **PLEADINGS.** All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.             
                Parties shall be prepared to discuss all aspects of trial with the court on this date.
                TIME:                    Failure to appear will be grounds for dismissal for want of prosecution.

11. 07/20/15    **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

DEC 1 1 2014

GEORGE ANDREW COATS
P O BOX 130246
WOODLANDS, TX 773930246

783846

MICHAEL D. MILLER
Judge, 11TH DISTRICT COURT
Date Generated   12/10/2014

FILED
Time:
DEC 1 1 2014
Chris Daniel
District Clerk
Harris County, Texas
By
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

JCVO02
rev.11202006

R0086

Case No. 201434635

ATES, NATHAN S (INDIVIDUALLY A

vs.

ROBINSON HELICOPTER COMPANY IN

**DCORX**
IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

11th    JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.
**JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.
**EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
(a) Experts for parties seeking affirmative relief.
(b) All other experts.

3.
**STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.    TIME:
Failure to appear will be grounds for dismissal for want of prosecution.

4.
**DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a) Total hours per side for oral depositions.
(b) Number of interrogatories that may be served by each party on any other party.

5.
**ALTERNATIVE DISPUTE RESOLUTION.**
(a) 05/19/15   By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.

(b) 07/06/15   ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.
**DISCOVERY PERIOD ENDS.** All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.
(a)
(b)
(c)
**DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
Rule 166a(i) motions may not be heard before this date.

8.
**CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.
**PLEADINGS.** All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:       Failure to appear will be grounds for dismissal for want of prosecution.

11. 07/20/15   **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

MARK T. MURRAY
24 GRNWAY PLAZA750
HOUSTON, TX 770460000

14724810

MICHAEL D. MILLER
Judge, 11TH DISTRICT COURT
Date Generated   12/10/2014

JCVO02
rev.11202006

R0087

Case No. 201434635

ATES, NATHAN S (INDIVIDUALLY A

vs.

ROBINSON HELICOPTER COMPANY IN

| | |
|---|---|
| * | IN THE DISTRICT COURT OF |
| * | |
| * | HARRIS COUNTY, TEXAS |
| * | |
| * | 11th    JUDICIAL DISTRICT |

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.　　**JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.　　**EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates.   The designation must include the information listed in Rule 194.2(f).   Failure to timely respond will be governed by Rule 193.6.
(a)　　Experts for parties seeking affirmative relief.
(b)　　All other experts.

3.　　**STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.   TIME:
Failure to appear will be grounds for dismissal for want of prosecution.

4.　　**DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)　　Total hours per side for oral depositions.
(b)　　Number of interrogatories that may be served by each party on any other party.

5.　　**ALTERNATIVE DISPUTE RESOLUTION.**
(a) 05/19/15　　By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.
(b) 07/06/15　　ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.　　**DISCOVERY PERIOD ENDS.**　All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.　　**DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
(a)　　If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
(b)　　Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
(c)　　Rule 166a(i) motions may not be heard before this date.

8.　　**CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9.　　**PLEADINGS.** All amendments and supplements must be filed by this date.   This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:　　　　　Failure to appear will be grounds for dismissal for want of prosecution.

11. 07/20/15　　**TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

G. DON SWAIM
3500 MAPLE AVENUE, SUITE 900
DALLAS, TX 75219　　　　　　　　19545200

MICHAEL D. MILLER
Judge, 11TH DISTRICT COURT
Date Generated  12/10/2014

JCVO02
rev.11202006

R0088

CAUSE NO.2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and | § | IN THE DISTRICT COURT OF |
| as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| And the Estate of CHRISTOPHER YEAGER | § | 11ᵀᴴ JUDICIAL DISTRICT |

**PLAINTIFFS' UNOPPOSED MOTION FOR CONTINUANCE AND FOR ENTRY OF DOCKET CONTROL ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the Plaintiffs, NATHAN S. ATES, Individually and As Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates, by and through undersigned counsel and file Plaintiffs' Unopposed Motion for Continuance and for Entry of Docket Control Order, in support of same respectfully showing the following:

I.

It has become necessary to file this civil suit as a result of the death of Joyce A. Ates, on or about September 10, 2012. At that time, Joyce A. Ates was a passenger in a Robinson R22 Beta helicopter being piloted by Defendant Yeager. Yeager, a pilot working in the course and scope of his employment for Helicopter Services, Inc., was providing Joyce A. Ates with services in the form of helicopter transportation for aerial observation over sites in Harris County, Texas.

Defendant Yeager was piloting a 2007 Robinson R22 Beta II helicopter bearing serial number 4250 and registration no. N281RG (the subject helicopter) during a flight originating from the Baytown Airport, Baytown, Texas at approximately 3:00 p.m., according to air safety investigators, on September 10, 2012.

Unofficial Copy Office of Chris Daniel District Clerk

R0089

According to information developed by the National Transportation Safety Board, witnesses observed the helicopter spinning slowly around the main rotor shaft and descending straight down. Witnesses stated that the main rotor blades were turning slowly and were not deflected upward and the tail rotor did not appear to be turning. The helicopter impacted the ground at approximately 3:30 p.m., causing a large dust cloud. According to the investigation, approximately a minute later, the helicopter ignited in a fireball, preventing rescue attempts by witnesses on the scene and consuming both Yeager and Ates.

Joyce Ates suffered injuries which resulted in her death.

II.

The parties scheduled an inspection of the components remaining after the helicopter's crash and burn for December 1, 2014. This inspection was cancelled unexpectedly due to Defendant Robinson's inability to maintain its commitment for this scheduling. The inspection was reconvened to occur on March 17, 2014, with consent of all parties.

III.

Certain components of the helicopter were inspected on March 17, 2015, in Pensacola, Florida. As the Court has not set a discovery deadline in its current docket control order, the parties must therefore adhere to the Texas Rules of Civil Procedure. It has become apparent that there is inadequate time for Plaintiff's engineering, liability and accident reconstruction experts to review the extensive information, receive feedback from the inspecting experts holding the March 17, 2015 inspection, and prepare an opinion report prior to the deadlines for exchange of Plaintiffs' expert reports in this matter.

IV.

Trial is currently scheduled for July 20, 2015.

Unofficial Copy Office of Chris Daniel District Clerk

R0090

Plaintiffs pray the Court order the parties to confer on a new docket control order in light of the delay in development of discovery between the Parties, including investigation and inspection of the crash components, expert report and deposition, as well as amended and supplemental pleadings practice which may become necessary after receipt of the expert reports and prior to the trial setting. The parties' efforts to perfect the necessary, extensive discovery in this matter as well as amendments to the pleadings on file herein, are curtailed by the trial setting in place at this time.

IV.

Plaintiff prays the Court set aside current discovery and expert deadlines so that the parties may confer to enter a new docket control order which shall include the rescheduling this matter for trial in January 2015 and additional deadlines for Alternative Dispute Resolution, discovery deadlines, and expert witness designations by both Plaintiffs and Defendants, to be developed by the parties hereto and submitted to the Court for entry.

V.

## CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that he has contacted counsel representing Defendants on March 18 and 19, 2015, to advise of his intention to file Plaintiff's Motion for Continuance and for Entry of new Docket Control Order. Counsel for Helicopter Services, Inc. and Christopher Yeager, Deceased has responded that he is unopposed to this motion. Counsel for Robinson Helicopter Company, Inc. has responded that he is unopposed to this motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request the Court grant Plaintiffs' Motion for Continuance and Entry of new Docket Control Order for the reasons therein stated, and for such other and further relief to which Plaintiffs may be justly entitled.

R0091

Respectfully submitted,

**STEVENSON & MURRAY**

By: _/S/Mark T. Murray /S/_

    **MARK T. MURRAY**
    State Bar No. 14724810
    24 Greenway Plaza, Suite 750
    Houston, Texas 77046
    (713) 622-3223
    (713) 622-3224 (FAX)

**ATTORNEYS FOR PLAINTIFFS**

Unofficial Copy Office of Chris Daniel District Clerk

R0092

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been delivered to all counsel on this the 19th day of March 2015, pursuant to the Texas Rules of Civil Procedure, via email, facsimile, U.S. Mail and/or e-filing, to-wit:

Mr. Don Swaim
Cunningham Swaim, LLP
7557 Rambler Road, Ste. 440
Dallas, Texas 75231
Counsel for Helicopter Services, Inc.
And Christopher Yeager, Deceased

George Andrew Coats
Gary Linn Evans
COATS & EVANS, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Counsel for Robinson Helicopter Services, Inc.

/S/ MARK T. MURRAY/S/
_____
MARK T. MURRAY

Unofficial Copy Office of Chris Daniel District Clerk

R0093

3/19/2015 6:02:21 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4572547
By: DE LA ROSA, GABRIELA
Filed: 3/19/2015 6:02:21 PM

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates | § § § § § § | IN THE DISTRICT COURT OF |
| vs. | § § | HARRIS COUNTY, TEXAS |
| ROBINSON HELICOPTER COMPANY, INC., HELICOPTER SERVICES, INC. and the Estate of CHRISTOPHER YEAGER | § § § § § | 11th JUDICIAL DISTRICT |

## AFFIDAVIT

THE STATE OF TEXAS §

COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared MARK T. MURRAY, known and/or proved to me through a description on an identity card containing a photograph or signature, to be the person whose name is subscribed to the foregoing Motion for Continuance, and acknowledged to me that he has personal knowledge of the information contained therein and it is true, correct and not sought for delay, but justice.

_____
AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this the 19th day of March, 2015.

_____
Notary Public in and for the
State of Texas

KAREN D STANFIELD
My Commission Expires
October 11, 2018

Commission Expires:
10-11-18

R0094

3/19/2015 6:02:21 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4572547
By: DE LA ROSA, GABRIELA
Filed: 3/19/2015 6:02:21 PM

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and | § | IN THE DISTRICT COURT OF |
| as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| And the Estate of CHRISTOPHER YEAGER | § | 11TH JUDICIAL DISTRICT |

## ORDER ON PLAINTIFFS'
### UNOPPOSED MOTION FOR CONTINUANCE AND FOR ENTRY OF
### DOCKET CONTROL ORDER

BE IT REMEMBERED that upon the day and date shown hereinbelow came on for consideration, the Unopposed Motion for Continuance and for Entry of Docket Control Order filed by Plaintiffs herein; the Court, having considered the pleading finds same to be with merit; it is therefore

ORDERED that the trial currently scheduled for July 20, 2015 be and it is hereby continued from this setting; it is further

ORDERED that the parties confer and submit a new docket control order rescheduling this matter for trial in January 2015 and containing additional deadlines for Alternative Dispute Resolution, discovery deadlines, and expert witness designations by both Plaintiffs and Defendants.

SIGNED on this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

R0095

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually | § | IN THE DISTRICT COURT OF |
| and as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| and the Estate of CHRISTOPHER | § | |
| YEAGER | § | 11th JUDICIAL DISTRICT |

**PLAINTIFFS' MOTION TO COMPEL ROBINSON HELICOPTER COMPANY'S RESPONSES TO FIRST DISCOVERY REQUESTS, AND REQUEST FOR RULING ON DEFENDANT'S OBJECTIONS**

TO THE HONORABLE JUDGE MIKE D. MILLER:

Plaintiffs file this Motion to Compel requesting the Court to enter an order compelling ROBINSON HELICOPTER COMPANY to fully respond to Plaintiffs' First Discovery Requests. Specifically, Plaintiff requests the Court to compel ROBINSON HELICOPTER COMPANY's responses to the Requests for Production.

## I. FACTS & BACKGROUND

Joyce Ates suffered serious injuries on September 10, 2012. These injuries eventually resulted in her death. Joyce Ates was a passenger in a 2007 Robinson manufactured R22 Beta II helicopter (serial number 4250 and registration number N281RG). Defendant Yeager—a pilot working in the course and scope of his employment for Helicopter Services, Inc.—was piloting the subject helicopter. The helicopter took off from Baytown Airport in Baytown, Texas at approximately 3:00 p.m. While flying in Harris County, Texas, the helicopter experienced a power loss and crashed. Within a minute of impacting the ground, the helicopter ignited into a fireball.

R0096

## II. Requests For Discovery To Defendant Robinson Helicopter Company

On June 16, 2014, Plaintiffs served their First Requests for Discovery to Defendant Robinson Helicopter Company. Robinson Helicopter Company has had enough time to produce and respond to the discovery requests propounded by Plaintiffs. However, Robinson Helicopter Company has not produced any responsive documents whatsoever. Therefore, this Motion to Compel is necessary due to Robinson Helicopter Company's unwillingness to adequately respond to discovery; specifically, to the requests for production. *See* Exhibit A.

Robinson Helicopter Company has either provided nonresponsive answers to the discovery requests, or has objected to them. *See id*. Defendant has not demonstrated any cooperation. Robinson Helicopter Company claimed that at the time it "responded" to Plaintiffs' First Discovery Requests it had not yet completed its own discovery and thus would "supplement any and all responses . . . by reason of subsequently discovered information." Robinson Helicopter Company has not supplemented any information and Plaintiffs seriously doubt Defendant has not discovered information worthy of being supplemented.

Robinson Helicopter Company generally objects to Plaintiffs requests for discovery without any merit. Robinson Helicopter Company generally argues Plaintiffs requests were ambiguous, vague, overbroad, unlimited in time, and sought privileged information. However, the requests made by Plaintiffs are clear, timely, and to the point. Additionally, Defendant refuses to properly answer to Plaintiffs requests because certain definitions are "broad" and "seek to expand the scope of, or impose obligations greater than, those imposed by the Rules of Civil Procedure." If certain definitions did indeed lack clarity, Plaintiffs argue and assert the requests made were not seeking to expand or impose greater obligations than those imposed by the Rules of Civil Procedure. Plaintiffs requested discovery in such a way as to only target

R0097

Defendant Robinson Helicopter Company about anything relevant to the crash subject to this law suit.

At this moment, Plaintiffs have not received any documents or information from Robinson Helicopter Company. It is necessary for Plaintiffs to obtain the discovery requested to better analyze and understand the circumstances of the crash subject to this law suit. At the very least, Robinson Helicopter Company should rend over the documents and information that it has produced in the *Yeager* case[1], as such documents and information must be relevant, and easily and readily available for production. Plaintiffs, therefore, request for this Court to compel the discovery requested and overrule the Robinson Helicopter Company's objections.

### III. CONCLUSION AND PRAYER

Plaintiffs respectfully request the Court to enter an Order compelling the discovery requested by Plaintiffs, overrule Robinson Helicopter Company's objections to Plaintiffs' First Discovery Requests, compel Robinson Helicopter Company to fully respond to the same, and award Plaintiffs' attorney's fees and costs involved in the filing of this Motion. Plaintiffs also pray for such other and further relief, both at law and in equity, to which they may show themselves justly entitled.

---

[1] The *Yeager* case is the companion case to this one. The *Yeager* case arises, literally, from the same facts and circumstances of this case. Please recall that Mr. Yeager was the pilot of the subject helicopter the day of the accident. Plaintiffs, in this case, have reasonable grounds to believe Robinson Helicopter Company has produced information and documents to *Yeager*; Plaintiffs deserve the same.

R0098

Respectfully submitted,

**STEVENSON & MURRAY**

*/s/ Mark T. Murray /s/*

By: _____

**MARK T. MURRAY**
Texas Bar No. 14724810
Weslayan Tower, Suite 750
24 Greenway Plaza
Houston, Texas  77046-2416
(713) 622-3223
(713) 622-3224 (fax)
Email: mmurray@johnstevensonlaw.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel has attempted to confer with defense counsel for Robinson Helicopter concerning this motion via email.  Counsel for Defendant has not responded to these overtures and therefore the undersigned must presume defense counsel is opposed to Plaintiff's motion.

*/s/ Mark T. Murray /s/*

_____
**MARK T. MURRAY**

R0099

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Motion to Compel Robinson Helicopter Company's Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections was forwarded to all known counsel of record by electronic case filing on this 20th day of March, 2015.

DON SWAIM
Cunningham Swaim, LLP
7557 Rambler Road, Suite 440
Dallas, Texas 75231

George Andrew Coats
Gary Linn Evans
COATS & EVANS, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246

/s/ *Mark T. Murray/s/*
_____
**MARK T. MURRAY**

R0100

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | 129TH JUDICIAL DISTRICT |
| ROBINSON HELICOPTER COMPANY, INC.; HELICOPTER SERVICES, INC.; and the Estate of CHRISTOPHER YEAGER, | § § § § § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

**DEFENDANT ROBINSON HELICOPTER COMPANY, INC.'S RESPONSE TO PLAINTIFFS' FIRST DISCOVERY REQUESTS**

Pursuant to the Texas Rules of Civil Procedure, Defendant ROBINSON HELICOPTER COMPANY, INC. ("Robinson") hereby responds to Plaintiffs NATHAN S. ATES', Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES ("Plaintiffs'") First Discovery Requests for the purpose of this action only without admitting in any way or to any extent the relevance to this cause of action or the admissibility as evidence of any statement or document provided herein, and without prejudice to subsequently discovered facts or information relevant to these requests. Robinson's discovery is not completed at this time, and, as such defendant reserves the right to supplement any and all responses herein by reason of subsequently discovered information.

## GENERAL OBJECTIONS

Robinson submits the following general objections to Plaintiffs' Instructions, Definitions and Discovery Requests which apply to each and every request contained in Plaintiffs' Discovery Requests to Robinson. For convenience, these general objections

R0101

are set forth below and are not necessarily repeated after each request. The assertion of the same, similar or additional objections to a specific request does not waive any of Robinson's general objections as set forth below:

1.      Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they seek to expand the scope of, or impose upon Robinson obligations greater than those required by the applicable rules of the Rules of Civil Procedure and/or applicable orders of this Court.

2.      Robinson reserves the right to challenge the competency, relevancy and admissibility, at trial or any subsequent proceeding, in this or any other action, of any information produced in response to Plaintiffs' Discovery Requests.

3.      Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they are directed to or made on behalf of entities or persons who are not parties to this case or over whom Robinson has no control.

4.      Robinson respectfully objects to Plaintiffs' Discovery Requests on the grounds that they are ambiguous, vague, overly broad, oppressive and unduly burdensome, and seek information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

5.      Robinson bases its responses on information currently available to it, after reasonable inquiry, and Robinson reserves the right to amend and/or supplement its objections and responses to conform to information and documents which may be obtained through ongoing discovery and investigation, in accordance with the Rules of Civil Procedure governing discovery.

R0102

6.      Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they attempt to elicit protected documents or information subject to the attorney client privilege; the work product doctrine; a joint or common defense privilege; the confidentiality of documents containing the impressions, conclusions, opinions, legal research or theories of Robinson or its attorneys; or seeks materials prepared in anticipation of litigation or information that is proprietary in nature.  Robinson asserts each and every one of the foregoing privileges and protections applicable to the information sought to the fullest extent provided by law, applicable rules, current and future case management orders.

7.      Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they seek documents or information not within Robinson's possession, custody or control.

8.      Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they seek information or documents constituting trade secrets, or other confidential, research, development, commercial, financial and/or proprietary information.

9.      Robinson respectfully objects to Plaintiffs' Discovery Requests insofar as they seek information which is within Plaintiffs' knowledge, possession, custody or control, or otherwise accessible to Plaintiffs from other sources with substantially the same or greater facility than Robinson.

10.     Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they are unlimited in time, or otherwise not limited to a time frame relevant to this litigation, and to Robinson's products at issue in this case, on the grounds that such

R0103

requests seek documents neither relevant to the subject matter of the litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

11. Robinson respectfully objects to Plaintiffs' Discovery Requests to the extent that they include contention interrogatories that solicit premature responses before the close of discovery.

## OBJECTIONS TO DEFINITIONS

Robinson makes the following specific objections to Plaintiffs' definitions, which objections are incorporated into all of Robinson's responses to Plaintiffs' Discovery Requests where applicable. Any omission to refer specifically to such objections to Plaintiffs' definitions and instructions shall not be deemed a waiver of such objections.

Robinson respectfully objects to Plaintiffs' definition of "you," "your" and "Defendant" on the grounds that it is overly broad, unduly burdensome and to the extent that Robinson may not be able to ascertain all entities and/or individuals falling within these definitions. Further, Robinson respectfully objects to Plaintiffs' definition of "you," "your" and "Defendant" to the extent that they seek to expand the scope of, or impose obligations greater than, those imposed by the Rules of Civil Procedure.

R0104

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

Original and subsequent design drawings and/or blueprints relating to the engine and rotor systems of the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this request inasmuch as it is overly broad, vague, ambiguous, oppressive and unduly burdensome and expensive to answer as presented. Robinson further objects inasmuch as this request seeks information which is proprietary and contains trade secrets. With waiving these objections, Robinson responds that it did not manufacture the engine installed in the subject helicopter. Robinson further responds that if Plaintiff can narrow this request, Robinson will attempt to provide a response.

REQUEST FOR PRODUCTION NO. 2:

Documents from 2005 to the present referring to or reflecting any operational malfunction, testing malfunction or operational failure or defect of any type with the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this request inasmuch as it is overly broad, vague, ambiguous, oppressive, and contains terms and phrases which are ambiguous and undefined and unduly burdensome and expensive to answer as presented. Robinson further objects inasmuch as this request seeks information which is proprietary and contains trade secrets. Without waiving these objections, if Plaintiff can narrow this request, Robinson will attempt to provide a response.

R0105

REQUEST FOR PRODUCTION NO. 3:

Documents referring to or reflecting any changes, alterations, or modifications in the design instructions or service bulletins for the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope. Robinson further responds that it is not familiar with the term "design instructions" and as such cannot reasonably provide a response. Without waiving these objections, Robinson refers to the R22 Maintenance Manual, R22 Service Bulletins and R22 Service Letters. These documents are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 4:

Advertising brochures, safety alerts, safety notices, service bulletins, service letters, service/technical advisories, promotional literature and the like relating to the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope. Without waiving these objections, Robinson refers to the R22 brochure, R22 Maintenance Manual, R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices. The current R22 brochure, R22 Maintenance Manual, R22 Service Bulletins, R22 Service Letters, Robinson Safety Notices and Robinson Safety Alerts are

R0106

publicly available for purchase or free download from Robinson's website at
www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 5:

Articles, evaluations, reports, case studies, and the like appearing in aviation or general mechanical engineering periodicals, industry or aviation trade journals, or governmental  or aviation groups relative to or concerning any alleged operational or testing malfunction or failure in connection with the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, unlimited with respect to timeframe and scope.  Robinson further objects to this Request inasmuch as it seeks documents which are equally available to the propounding party and it would be as cost-effective for plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Without waiving these objections, Robinson responds that it does not maintain any file or database of these documents.

REQUEST FOR PRODUCTION NO. 6:

Contracts and/or policies of insurance which might afford coverage to Defendant in the event of a verdict for Plaintiff in the above-styled cause, whether primary, secondary or excess coverage.

RESPONSE:

Robinson responds that there is no insurance policy that insures Robinson for claims contained in the subject lawsuit.  Robinson has no knowledge of any insurance policies covering third parties for claims contained in the subject lawsuit.

R0107

<u>REQUEST FOR PRODUCTION NO. 7</u>:

Correspondence between Defendant and Helicopter Services, Inc. regarding the use, experience, anticipated use, flight use, operational concerns, or otherwise specifically pertaining to or governing the maintenance, inspection or operation of the helicopter model at issue and/or the subject helicopter and any components of such aircraft manufactured or assembled by Defendant.

<u>RESPONSE</u>:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson refers Plaintiff to the R22 Pilot's Operating Handbook, R22 Illustrated Parts Catalog, and R22 Maintenance Manual. These documents are publicly available for purchase or free download from Robinson's website at [www.robinsonheli.com](www.robinsonheli.com).

<u>REQUEST FOR PRODUCTION NO. 8</u>:

For the time period from 2005 to the present, petitions for damages or complaints filed in any court or comparable administrative tribunal in connection with any lawsuits against Defendant in which it is alleged or acclaimed that the helicopter model at issue crashed as a result of design or mechanical failures.

<u>RESPONSE</u>:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this request in that it seeks information pertaining to any helicopter other than the one involved in this litigation without reasonable limitation such as substantial similarity with

<u>R0108</u>

the facts of this case, and as such this information is outside the scope of proper discovery and is not reasonably calculated to lead to discovery of admissible evidence. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson responds that it does not maintain any database or compilation of responsive documents.

REQUEST FOR PRODUCTION NO. 9:

Maintenance manuals, parts catalogs, price lists and estimated operating costs publications prepared by Defendant and sent to distributors, dealers or repair facilities with respect to appropriate maintenance, inspection and testing of, and parts for, the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson refers to the R22 Pilot's Operating Handbook, R22 Illustrated Parts Catalog and R22 Maintenance Manual. These documents are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

REQUEST FOR PRODUCTION NO. 10:

Service difficulty reports generated by Defendant and submitted to any field operatives, dealers, maintenance facilities and distributors with respect to the helicopter model at issue and/or any of its components.

\\\

R0109

RESPONSE:

Robinson responds that Service Difficulty Reports are not generated by Robinson, and such documents are received and maintained by the FAA and are not within Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 11:

Notices of malfunction or defect reports reported to the FAA or NTSB which in any way relate to tail rotor effectiveness in the helicopter model at issue.

RESPONSE:

Robinson responds that this Request seeks documents maintained by the FAA, and not in Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 12:

Internal memoranda including, but not limited to, letters, bulletins, reports, test results, investigative evaluations and the like generated within and by employees of Defendant or at the behest of Defendant relating to any alleged or perceived malfunction, materials problem, operational or maintenance failure or alleged failure with any component of the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope. Without waiving this objection, Robinson responds it does not believe it is in possession of responsive documents at this time.

\\\

\\\

REQUEST FOR PRODUCTION NO. 13:

Accident investigation reports or memoranda prepared by or at the behest of Defendant, including reports of all in-house investigations, diagrams, photographs, witness statements, engineering or test reports and memoranda, litigation testing and the like, regarding any crash of the helicopter model at issue (including the subject helicopter in the crash made the basis of this lawsuit).

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. Robinson further objects to this Request as it seeks documents relating to other helicopters not related to the accident in question without any showing of substantial similarity of design or occurrence. Robinson also objects to this Request inasmuch as it seeks information protected by the attorney work product and attorney/client privilege. Without waiving this objection, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

REQUEST FOR PRODUCTION NO. 14:

Documents, materials, reports or memoranda contained within FAA or NTSB files concerning operation or testing deficiencies or failures, either actual or alleged, relating to the helicopter model at issue.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope, and seeks documents which are proprietary and trade secret in nature. Without waiving this

R0111

objection, Robinson responds that this Request seeks documents maintained by the FAA and/or the NTSB, and not in Robinson's custody or control.

REQUEST FOR PRODUCTION NO. 15:

Evaluations, whether conducted internally or externally, at the behest of Defendant, upon the subject helicopter, both before and after the crash.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, and burdensome as framed. Without waiving this objection, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

REQUEST FOR PRODUCTION NO. 16:

Documents referring to or reflecting any testing, whether operation or field testing or component, experimental or laboratory testing, concerning evaluation of the helicopter model at issue's engine and rotor systems.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, and unlimited with respect to timeframe and scope. Robinson further objects inasmuch as this request seeks documents which are proprietary and contain trade secrets. Without waiving these objections, if Plaintiff can narrow this request, Robinson will attempt to provide a response.

\\\

\\\

R0112

REQUEST FOR PRODUCTION NO. 17:

Correspondence between Defendant and Helicopter Services, Inc. referring or relating to the proper inspection, maintenance and operation of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson respectfully objects to this Request in that it is duplicative in nature. Robinson refers to its response to Request for Production No. 7, which is incorporated herein by reference.

REQUEST FOR PRODUCTION NO. 18:

Correspondence referring to or reflecting proper maintenance, operation, and flight use of the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson respectfully objects to this Request as it is overly broad, vague, ambiguous, burdensome, and unlimited with respect to timeframe and scope. This Request seeks 'correspondence' without indicating between what parties it is referring to. If Plaintiff can clarify this Request, Robinson can attempt to provide a reasonable response.

REQUEST FOR PRODUCTION NO. 19:

Each and every exhibit that Defendant will offer at trial for any purpose, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence which Defendant will attempt to show to the jury or otherwise use at the trial of this case.

\\\

R0113

RESPONSE:

Robinson respectfully objects to this Request on the grounds that it is premature at this stage of discovery, and disclosure of such documents and things will be conducted at the appropriate time under the relevant rules of Court.

REQUEST FOR PRODUCTION NO. 20:

Any videotapes, photographs, or other similar evidence in your possession depicting and/or relating in any way to Plaintiff.

RESPONSE:

Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

REQUEST FOR PRODUCTION NO. 21:

Each and every exhibit, including all demonstrative exhibits, all substantive exhibits and all tangible, photographic or documentary evidence  that have been reviewed  by or created  by your testifying experts or that in any way support or illustrate your testifying experts' opinions that are relevant to this case.

RESPONSE:

Robinson respectfully objects to this Request on the grounds that it is premature at this stage of discovery, and disclosure of such documents and things will be conducted at the appropriate time under the relevant rules of Court.

REQUEST FOR PRODUCTION NO. 22:

Your current balance sheet, financial statement or other document(s) sufficient to show your current net worth.  For purposes of this request, "net worth" means the

difference between total assets and liabilities determined in accordance with generally accepted accounting principles ("GAAP").

RESPONSE:

Robinson respectfully objects to the Request as it seeks privileged financial records which are highly sensitive, and their confidentiality is necessary to Robinson's competitive advantage and continued viability.  Robinson also objects to this Request as the information requested is not relevant to any of the current issues of liability and causation.  Further, there is no public policy reason for this information to be released as it only concerns the financial status of one defendant, and implicates no public safety or other relevant issue.

REQUEST FOR PRODUCTION NO. 23:

Photographs, videos or maps of the scene of the crash.

RESPONSE:

Robinson respectfully objects to this Request to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so.  Without waiving these objections, Robinson will produce the Robinson Accident Report prepared by Thom Webster on R22 Serial Number 4250, Registration Number N281RG.

\\\

\\\

\\\

R0115

REQUEST FOR PRODUCTION NO. 24:

All documents supporting your claim that another person or entity is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson respectfully objects to this Request on the grounds that it is premature, discovery is in progress and the investigation and preparation have not been completed.

REQUEST FOR PRODUCTION NO. 25:

Pilot operating manuals, helicopter operational manuals, or the like, prepared by Defendant for the helicopter model at issue and/or the subject helicopter.

RESPONSE:

Robinson refers to the R22 Maintenance Manual, R22 Pilot's Operating Handbook, R22 Flight Training Guide, R22 Service Bulletins, R22 Service Letters, and Robinson Safety Notices. Robinson will produce a full set of R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices. The R22 Maintenance Manual, R22 Pilot's Operating Handbook and R22 Flight Training Guide are publicly available for purchase or free download from Robinson's website at www.robinsonheli.com.

\\\

R0116

## INTERROGATORIES

INTERROGATORY N0.1:

State the full name, current complete address, telephone number, and position, capacity or job title of each person who assisted in answering these interrogatories on behalf of Defendant.

ANSWER:

Pete Riedl
Vice-President, Engineering
Robinson Helicopter Company
2901 Airport Drive
Torrance, CA 90505
310-539-0508

and counsel of record.

INTERROGATORY NO. 2:

With respect to the subject helicopter, did you provide any component parts including, but not limited to, the engine and/or engine assembly and/or rotor systems of that helicopter? If your answer is "yes," provide the following information:

a.      A complete description including part numbers, model numbers, assembly unit, and trade name of any and all components that were incorporated into and part of the subject helicopter on the date of its crash; and

b.      Identify all suppliers of component parts from whom you have purchased, in whole or in part, parts to be incorporated into units or any parts thereof which you supplied.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome as framed.  Without waiving this

R0117

objection and utilizing its own definition, Robinson responds that it was the original manufacturer of the subject helicopter, but was not the original manufacturer of the subject helicopter's engine.

<u>INTERROGATORY NO. 3</u>:

In connection with any business you have conducted with Helicopter Services, Inc., state:

    a.    The first and last date of any business transactions between you and Helicopter Service, Inc.;

    b.    The nature of the business relationship (e.g., vendor/purchaser, lessor/lessee, etc.);

    c.    The identity of those individuals in your company with knowledge of the business relationship between you and Helicopter Services, Inc.; and

    d.    The models and model years of all helicopters sold by you to Helicopter Services, Inc.

<u>ANSWER</u>:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and seeks information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Without waiving this objection and utilizing its own definition, Robinson responds that Helicopter Services, Inc. has been a Robinson Dealership and Service Center since 1989.

\\\

\\\

R0118

INTERROGATORY NO. 4:

With respect to the subject helicopter, provide the original dates of design and manufacture.

ANSWER:

Robinson responds that the R22 helicopter was certified in March 1979 and R22 serial number 4250 was issued a standard airworthiness certificate on December 10, 2007.

INTERROGATORY NO. 5:

Identify the current custodian and whereabouts of all studies or tests with respect to the helicopter model at issue's engine and rotor systems, including but not limited to safety analysis and consideration of various alternative designs.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and seeks information which is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Without waiving this objection and utilizing its own definition, Robinson responds that documents related to the design and certification of the R22 model helicopter are located at Robinson's facility, 2901 Airport Drive, Torrance, California 90505. Robinson further responds that it did not manufacture the engine installed in the subject helicopter.

INTERROGATORY NO. 6:

For the period 2005 to the present, provide a description, including identification of equipment, date, crash site, and fatality/injury information, of all malfunctions,

R0119

incidents, accidents, or complaints (regardless of whether injury or death ensued) associated with use of the helicopter model at issue.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome, seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Robinson further objects to this request in that it seeks information pertaining to any helicopter other than the one involved in this litigation without reasonable limitation such as substantial similarity with the facts of this case, and as such this information is outside the scope of proper discovery and is not reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, Robinson responds that it does not maintain a database or formal compilation of this information. For purposes of any research or analysis, Robinson responds that the records maintained by the National Transportation Safety Board ("NTSB") are reviewed as the NTSB's records contain significantly more incidents and accidents, contain probable cause determinations, and are accessible as they are maintained in a database.

INTERROGATORY NO. 7:

State all of the ways in which you attempt to ascertain the existence of any malfunctions or complaints associated with your helicopters other than the receipt of legal action, and describe any and all documents reflecting the above, indicating their present location.

\\\

R0120

<u>ANSWER</u>:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome to answer as framed. Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

<u>INTERROGATORY NO. 8</u>:

Identify any and all documents in your possession, custody or control describing any changes to or the reasons for such changes in the design or materials used in the helicopter model at issue, including any component parts therein, subsequent to its original manufacture and design.

<u>ANSWER</u>:

Robinson respectfully objects to this Interrogatory as it is overly broad, vague, ambiguous, oppressive, burdensome and unlimited with respect to timeframe and scope as frame. Robinson further objects to this demand on the grounds that it seeks to invade proprietary, trade secret, and confidential information. Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

<u>INTERROGATORY NO. 9</u>:

For the period 2005 to the present, identify any and all documents in your possession, custody or control relating to any notices directed to you, claims made against you, or lawsuits filed against you wherein it was claimed or alleged that a helicopter model at issue failed because of any malfunction, maintenance problem,

<span style="color:red">R0121</span>

manufacturing defect, engine or rotor failure, metallurgical problem, blade detachment, coning, lack of tail rotor effectiveness, recoverability issues or autorotation issues, and:

    a.       Identify the custodian of any and all such documents in your possession referring to or reflecting any such notices, claims, or lawsuits; and

    b.       Set forth and identify any and all such notices, claims, and lawsuits by date, aircraft description, engine part number, location of malfunction, and aircraft owner.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson does not maintain a list or database for this information, or for information relating to historical litigation or lawsuits filed.

INTERROGATORY NO. 10:

Describe any and all bulletins, manuals, written instructions, warnings, procedures, letters, alerts, or the like that were:

    a.       Provided with the promotion or sale of the helicopter model at issue;

    b.       Subsequently supplied to any owner, operator, or lessor of any of the helicopter model at issue.

\\\

\\\\

\\\

R0122

ANSWER:

Robinson refers to the R22 Maintenance Manual, R22 Illustrated Parts Catalog, R22 Pilot's Operating Handbook, R22 Flight Training Guide, R22 Service Bulletins, R22 Service Letters, and Robinson Safety Notices.

INTERROGATORY NO. 11:

For the period 2005 to the present, identify every lawsuit that has been filed against you (regardless of whether injury or death ensued) wherein it was claimed or alleged that any helicopter or helicopter component supplied by you malfunctioned, failed, lost power, or contributed to a reportable aviation mishap, specifically identifying:

a. The name, court, docket number of each lawsuit as well as identifying in which lawsuits Defendant gave interrogatories, oral depositions; and

b. The identity including name, address and telephone number of the attorneys representing the plaintiffs in each such matter, as well as whether the case was or has been resolved or settled.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Robinson further objects to this Request to the extent that it seeks information which is protected by the attorney work product and/or attorney-client privilege. Without waiving these objections, Robinson does not maintain a list or database for this information, or for information relating to historical litigation or lawsuits filed.

\\\

\\\

R0123

INTERROGATORY NO. 12:

For any liability insurance coverage which Defendant held and which will cover the occurrence out of which this loss arises, state:

   a.     The name and address of each such carrier;

   b.     The policy numbers of each such policy;

   c.     Whether any reservation of the insurer's rights has been declared with respect to a potential dispute in coverage for this loss; and

   d.     Whether Defendant must approve of any settlement entered into by its insurance carrier.

ANSWER:

Robinson responds that there is no insurance policy that insures Robinson for claims contained in the subject lawsuit.

INTERROGATORY NO. 13:

Identify any and all engineering change orders made with respect to the rotor systems utilized by the helicopter model at issue and substantially similar rotor systems. In connection therewith, set forth the effective date and serial number of any such engineering change order.

ANSWER:

Robinson responds that it does not have any documents referred to as "engineering change orders."

\\\

\\\

\\\

R0124

INTERROGATORY NO. 14:

Set forth the certification history of the helicopter model at issue, including but not limited to the dates and test results of all developmental ground tests, developmental flight tests, and in connection therewith:

    a.    Identify the current location of all applications for type certification, ground and flight tests, and all documents related thereto; and

    b.    Identify the custodian of all such files.

ANSWER:

Robinson responds that the R22 helicopter was certified by the FAA in 1979. Robinson is located at 2901 Airport Drive, Torrance, California 90505 and maintains its records at that location.

INTERROGATORY NO. 15:

Identify all flight and ground test documentation including, but not limited to, test protocol, field test results, and any videotapes or photographs with respect to the helicopter model at issue.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, unlimited in time and scope as framed, and seeks proprietary and trade secret information.

INTERROGATORY NO. 16:

Identify all correspondence, communications, or safety notices or bulletins generated by you and forwarded to the National Transportation Safety Board and any

R0125

such responses, directives, notices, or requests imparted by NTSB to you involving the helicopter model at issue and/or the subject helicopter.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, unlimited with respect to timeframe and scope, and seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so. Without waiving these objections, Robinson responds that all information relating to R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices are included in the R22 Service Bulletins, R22 Service Letters and Robinson Safety Notices themselves.

INTERROGATORY NO. 17:

Has Defendant caused to be issued any mechanical reliability reports to the FAA with respect to the helicopter model at issue? If the answer is "yes," state the following:

a.    The current condition and whereabouts of any such reports; and

b.    The dates and subject matter of any such reports.

ANSWER:

Robinson is unfamiliar with the term "mechanical reliability reports," and as such, is unable to respond to this Interrogatory as framed.

INTERROGATORY NO. 18:

Has the FAA or NTSB ever directed you to issue an airworthiness directive with respect to any aspect of the design, manufacture, operation, maintenance, or use of the helicopter model at issue? If your answer is "yes," set forth the following:

R0126

a. The current custodian and whereabouts of any such airworthiness directives; and

b. The dates of any such directives and the general subject matter of each.

ANSWER:

No, airworthiness directives are issued and maintained by the Federal Aviation Administration.

INTERROGATORY NO. 19:

Has the FAA or NTSB ever conducted an inquiry into the manufacture, design, operation, maintenance, or use of the helicopter model at issue? If your answer is "yes," set forth the following:

a. The current custodian and whereabouts of any such inquiries; and

b. The dates of any such inquiries including the general subject matter of each.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome inasmuch as the term "inquiry" is not defined, and is unlimited in time and scope, and seeks information which is equally available to the propounding party and it would be as cost-effective for Plaintiffs to acquire information in the hands of third parties as for Robinson to do so.

INTERROGATORY NO. 20:

Identify the following persons with responsibility for the design, testing, and certification of the helicopter model at issue and the subject helicopter:

a. Head of engineering;

R0127

b. Project engineer;

c. Chief of flight operations and testing;

d. Governmental liaison between defendant and FAA/NTSB; and

e. Investigating officer for malfunction notices

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive and burdensome. Without waiving this objection, Robinson responds that the person most knowledgeable at Robinson with respect to the subject matters listed is Pete Riedl, Vice-President of Engineering.

INTERROGATORY NO. 21:

Identify all of the individuals who have or have had any responsibilities – whether administrative, investigative, or engineering – arising out of the crash giving rise to this action. In connection therewith, state the name of each and every such individual and set forth their current positions with the company, date hired, and current employment.

ANSWER:

Robinson respectfully objects to this Interrogatory as it is overly broad, vague, ambiguous, and burdensome. Without waiving this objection, Robinson responds that Thom Webster was the Robinson technical investigator who documented the circumstances of the accident, and authored the Robinson Accident Report on R22 S/N 4250.

INTERROGATORY NO. 22:

If you were present during any inspection or "tear down" of components from the subject helicopter:

R0128

a.  Identify all of your employees who were present, along with their job titles, positions, and reason for their presence; and

b.  Identify all non-employees who were present, along with their employer or governmental affiliation and reason for their presence.

ANSWER:

a.  Thom Webster was present as the Robinson Technical Investigator assigned to the investigation of this accident.

b.  No other persons were present on behalf of Robinson

INTERROGATORY NO. 23:

Describe any redundancy built into the design of the helicopter model at issue that would provide a measure of safety in the event of an in-flight failure of the engine or rotor system.

ANSWER:

Robinson respectfully objects to this Interrogatory to the extent that it is overly broad, vague, ambiguous, oppressive, burdensome, and unlimited with respect to timeframe and scope.  Without waiving these objections, Robinson responds that if Plaintiff can narrow this Interrogatory, Robinson will attempt to provide a response.

INTERROGATORY NO. 24:

State (a) your current net worth and (b) a description of the facts and methodology used to calculate what you allege to be your current net worth.  For purposes of answering this Interrogatory, "net worth," means the difference between total assets and liabilities determined in accordance with generally accepted accounting principles ("GAAP").

R0129

ANSWER:

Robinson respectfully objects to the Interrogatory as it seeks privileged financial records which are highly sensitive, and their confidentiality is necessary to Robinson's competitive advantage and continued viability. Robinson also objects to this Interrogatory as the information requested is not relevant to any of the current issues of liability and causation. Further, there is no public policy reason for this information to be released as it only concerns the financial status of one defendant, and implicates no public safety or other relevant issue.

Plaintiffs' petition includes factually unsupported claims of intentional and grossly negligent conduct by Robinson. Without more, the discovery of Robinson's sensitive and confidential financial information should not be permitted. The existing case law setting the standards for discovery of a defendant's net worth is antiquated and does not reflect the recently-enacted limitations on exemplary damage claims as passed by the Texas Legislature. Thus, Robinson should not be required to disclose its net worth based absent factually support for Plaintiff's allegations.

In order to remain consistent with the intent and purpose of Chapter 41 of the Texas Civil Practices and Remedies Code, Robinson should not be required to produce its net worth unless or until a jury, based on clear and convincing evidence, returns a unanimous verdict that Robinson is liable to Plaintiffs for exemplary damages based on the facts and evidence presented in this case.

INTERROGATORYNO. 25:

Identity each person or entity you contend is a potential Responsible Third Party in this lawsuit, state with as much specificity as possible the factual basis for such

R0130

contention, and identify the persons that may possess relevant knowledge regarding the contention.

ANSWER:

Robinson respectfully objects to this Interrogatory as it is premature at this state in the investigation and discovery process. Robinson reserves the right to supplement this response at a later date.

R0131

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1:

Admit you designed, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 2:

Admit that you manufactured, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 3:

Admit that you assembled, in whole or in part, the subject helicopter.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 4:

Admit that the subject helicopter was not airworthy on the date of the crash.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO.5:

Admit that the subject helicopter was airworthy on the date of the crash.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

R0132

REQUEST FOR ADMISSION NO. 6:

Admit that the subject helicopter was not properly inspected as of the date of the crash. RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 7:

Admit that the subject helicopter was properly inspected as of the date of the crash. RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 8:

Admit that the helicopter model at issue is more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

Denied.

REQUEST FOR ADMISSION NO. 9:

Admit that the helicopter model at issue is not more prone to loss of tail rotor effectiveness than some other helicopters.

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 10:

Admit that the helicopter model at issue's rotors are low inertia.

R0133

RESPONSE:

As the phrase "low inertia" is not adequately defined, Robinson lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 11:

Admit that the helicopter model at issue's rotors are not low inertia.

RESPONSE:

As the phrase "low inertia" is not adequately defined, Robinson lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 12:

Admit that the fuel tanks used in the helicopter model at issue were subject of a safety bulletin.

RESPONSE:

Robinson cannot admit or deny this Request as it is not familiar with the term "Safety Bulletin."

REQUEST FOR ADMISSION NO. 13:

Admit that the fuel tanks used in the helicopter model at issue were not the subject of a safety bulletin.

RESPONSE:

Robinson cannot admit or deny this Request as it is not familiar with the term "Safety Bulletin."

REQUEST FOR ADMISSION NO. 14:

Admit that Decedents were fatally injured in the crash.

\\\

R0134

RESPONSE:

Admitted.

REQUEST FOR ADMISSION NO. 15:

Admit that you contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

REQUEST FOR ADMISSION NO. 16:

Admit that you do not contend there is a Responsible Third Party that has not been named by Plaintiff as a defendant in this lawsuit.

RESPONSE:

Robinson responds that discovery is ongoing, and it lacks sufficient information or knowledge to admit or deny this request at this time.

Respectfully submitted,

COATS & EVANS, P.C.

***/S/ George Andrew Coats***
George Andrew Coats
Texas Bar No. 00783846
Gary Linn Evans
Texas Bar No. 00795338
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**Attorneys for Defendant
Robinson Helicopter Company, Inc.**

R0135

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the foregoing document has been served on all parties of record on this the 30th day of September 2014.

MARK T. MURRAY
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, Texas 77046
Email: MMurray@johnstevensonlaw.com

Mr. Don Swaim
Rose Walker, LLP
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Telephone: 214-752-8600
Facsimile: 214-752-8700
Email: dswaim@rosewalker.com

*/S/ George Andrew Coats*
George Andrew Coats

R0136

3/20/2015 4:51:22 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4588027
By: DE LA ROSA, GABRIELA
Filed: 3/20/2015 4:51:22 PM

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually | § | IN THE DISTRICT COURT OF |
| and as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| and the Estate of CHRISTOPHER | § | |
| YEAGER | § | 11th JUDICIAL DISTRICT |

## ORDER ON PLAINTIFFS' MOTION TO COMPEL ROBINSON HELICOPTER COMPANY, INC.'S RESPONSES TO FIRST DISCOVERY REQUESTS, AND REQUEST FOR RULING ON DEFENDANT'S OBJECTIONS

BE IT REMEMBERED that upon the day and date shown hereinbelow came on for consideration the Plaintiffs' Motion to Compel Defendants, ROBINSON HELICOPTER COMPANY, INC. to fully respond to Plaintiffs' First Discovery Requests and rule upon Defendant's objections; the Court, having considered the pleadings, exhibits and arguments of counsel, if any, finds Plaintiffs' motion to be with merit; it is, therefore,

ORDERED that Plaintiffs' Motion be and it is hereby GRANTED. It is further

ORDERED Defendant shall provide responses to the discovery requests subject of Plaintiff's motion within _____ days of signature upon this Order; it is further

ORDERED that Plaintiffs' counsel be awarded attorney fees and expenses due to Defendant's steadfast refusal to cooperate on discovery issues and the unnecessary delay of proceedings, in the amount of $_____.

SIGNED on this the _____ day of _____, 2015.

_____
JUDGE PRESIDING

R0137

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| **NATHAN S. ATES, Individually and** | § | **IN THE DISTRICT COURT OF** |
| **as Personal Representative of the Estate** | § | |
| **of Joyce A. Ates, Deceased; Sonia Ates** | § | |
| **and Nathan M. Ates** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ROBINSON HELICOPTER COMPANY,** | § | |
| **INC., HELICOPTER SERVICES, INC.** | § | |
| **And the Estate of CHRISTOPHER YEAGER** | § | **11ᵀᴴ JUDICIAL DISTRICT** |

### PLAINTIFFS' DESIGNATION OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates**, Plaintiffs herein and files this Designation of Expert Witnesses as shown on the attached Exhibit A, subject to the following:

### I.

Plaintiffs reserve the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Civil Evidence.

### II.

Plaintiffs reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit. Plaintiffs express their intention to possibly call, as witnesses associated with adverse parties, any of Defendants' experts.

1

R0138

**III.**

Plaintiffs reserve the right to call un-designated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence against Plaintiffs.

**IV.**

Plaintiffs reserve the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

**V.**

Plaintiffs reserve the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Texas Rules of Civil Procedure.

**VI.**

Plaintiffs hereby designate, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial. In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiffs reserve the right to designate and/or call any such party or any such experts previously designated by any party.

2

R0139

**VII.**

Plaintiffs reserve whatever additional rights they might have with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.

Respectfully submitted,

**STEVENSON & MURRAY**

*/s/ Mark T. Murray*

By: _____

    MARK T. MURRAY
State Bar No. 14724810
24 Greenway Plaza, Suite 750
Houston, Texas 77046
(713) 622-3223
(713) 622-3224 (FAX)

3

R0140

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered to all counsel by U.S. Mail, facsimile and/or other means, pursuant to the Texas Rules of Civil Procedure on this the 20th day of March 2015:


George Andrew Coats
Gary Linn Evans
COATS & EVANS, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Counsel for Robinson Helicopter Co., Inc.

Don Swaim
Cunningham Swaim, LLP
7557 Rambler Road, Suite 440
Dallas, Texas 75231
Counsel for Helicopter Services, Inc.
And Christopher Yeager, Deceased

*/s/ Mark T. Murray /s/*
_____

Mark T.  Murray

4

R0141

Dr. Thomas Mayor
5555 Del Monte, #1306
Houston, Texas 77056
713.552.1522
*Plaintiffs' Economic Expert*

Dr. Mayor will testify regarding the economic loss and damages sustained as a result of the death of Joyce Ates. Dr. Mayor has also been asked to calculate and consider the net worth of Defendants in relation to Plaintiffs' gross negligence claim. Dr. Mayor will testify concerning past and future loss of earnings and Defendants' net worth. Dr. Mayor will also testify as to all areas of past and future loss of earnings including but not limited to real rate of interest, future real compensation growth, earnings, benefits, work expenses, work life expectancy, and loss of household services.

Dr. Mayor will rely upon the Life Table from the National Vital Statistics Reports and Work Life Expectancy table. Written notice of Plaintiffs' intent to use this government document is provided herein.

Dr. Mayor's curriculum vitae and list of cases in which he has served as an expert have been attached as "Exhibit B." All records reviewed by Dr. Mayor will be exchanged between the parties through discovery.

Dr. Mayor's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Dr. Mayor may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

R0142

William Carden, M.S., P.E.
McSwain Engineering, Inc.
3320 McLemore Drive
Pensacola, Florida 32514
(850) 484-0506

Mr. Carden has been retained for the purposes of failure analysis and engineering based investigation into the cause of the incident subject of this suit. They are expected to testify concerning the components of the subject helicopter which failed and/or contributed to the crash subject of this suit. This includes helicopter defects, design and performance of the R-22, its engine, fuel system, gas tank, rotor system, reserve power and the performance envelope of the helicopter; what Robinson knew and/or should have known prior to this crash; alternative designs and feasibility of alternative designs, negligence, liability, causation and damages.

Mr. Carden has been provided with the all records ordered and exchanged with counsel in this matter, NTSB Docket Items, NTSB Preliminary and Final Reports, the FAA Accident Data, FAA Airworthiness and Registration Records, and certified weather records, as well as the depositions taken to date and Plaintiffs' petition.

Mr. Carden's curriculum vitae and list of cases in which they have served as an experts have been attached as "Exhibit B." All records reviewed by Mr. Carden will be exchanged between the parties through discovery.

Mr. Carden's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Mr. Carden may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

R0143

Sri Kumar, Ph.D.
Safety Research Institute
110 Industrial Boulevard
Hoschton, Georgia 30548
Phone: (706) 654.4830

Dr. Kumar has been retained for analyses of the forces and vectors experienced by the occupants of the helicopter as well as kinematics, deformation of the cabin and frame, and reconstruction of the accident, as well as negligence, liability, causation and damages. He will also testify regarding his background, experience and qualifications.

Dr. Kumar has been provided with the depositions of fact witnesses, all records ordered and exchanged with counsel in this matter, Plaintiffs' Petition, NTSB Docket Items, NTSB Preliminary and Final Reports, the FAA Accident Data, FAA Airworthiness and Registration Records, and certified weather records.

Dr. Kumar's curriculum vitae and list of cases in which he has served as an expert have been attached as "Exhibit B." All records reviewed by Dr. Kumar will be exchanged between the parties through discovery.

Dr. Kumar's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Dr. Kumar may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

Joseph L. Burton, M.D.

-3-

R0144

13784 Highway 9
Alpharetta, Georgia 30004
(770) 777-0437
(770) 402-5861

Dr. Burton is Plaintiffs' retained expert in the field of forensic pathology. He may testify concerning the survivability of the crash, the nature and extent of injuries suffered by Joyce Ates, pain and suffering, physiology of injury, cause of death, interval between initial trauma and death, kinematics, and life expectancy. Dr. Burton may also as well as negligence, causation and damages issues. He will also testify regarding his background, experience and qualifications.

Dr. Burton has been provided with the depositions of fact witnesses and the autopsy records in this matter, as well as all records ordered and exchanged with counsel and Plaintiffs' Petition.

Dr. Burton's curriculum vitae and list of cases in which he has served as an expert have been attached as "Exhibit B." All records reviewed by Dr. Burton will be exchanged between the parties through discovery.

Dr. Burton's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Dr. Burton may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

William S Lawrence, Colonel USMC (Ret'd)
ConsulAir Incorporated
6825 Nob Hill Drive
North Richland Hills, TX 76182
817 560 1840 Home/Fax
817 291 9684 Cellular

Colonel Lawrence is Plaintiffs' retained expert. He may testify concerning the piloting of the helicopter subject of this suit, including the effects and error of pilot's handling of the R-22. This

-4-

R0145

includes but is not limited to flight maneuvers, characteristics of the subject helicopter, stresses upon the pilot, passengers and aircraft in comparison to other helicopters; pilot education, handling and aircraft performance; liability, negligence, causation and damages. He will also testify regarding his background, experience and qualifications.

Colonel Lawrence has been provided with the depositions of fact witnesses, Plaintiffs' Petition, all records ordered and exchanged with counsel in this matter, NTSB Docket Items, NTSB Preliminary and Final Reports, the FAA Accident Data, FAA Airworthiness and Registration Records, and certified weather records.

Col. Lawrence's curriculum vitae and list of cases in which he has served as an expert have been attached as "Exhibit B." All records reviewed by Col. Lawrence will be exchanged between the parties through discovery.

Col. Lawrence's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Col. Lawrence may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

Colin Sommer
Aeroscope, Inc.
11901 Allison Street
Broomfield, Colorado

Mr. Sommer is Plaintiffs' retained expert who may testify concerning the components of the subject helicopter which failed and/or contributed to the crash subject of this suit. This includes helicopter defects, design and performance of the R-22, its engine, fuel system, gas tank, rotor system, reserve power and the performance envelope of the helicopter; what Robinson knew and/or should have known prior to this crash; alternative designs and feasibility of alternative designs,

R0146

negligence, liability, causation and damages.

Mr. Sommer has been provided with the depositions of fact witnesses, Plaintiffs' Petition, all records ordered and exchanged with counsel in this matter, NTSB Docket Items, NTSB Preliminary and Final Reports, the FAA Accident Data, FAA Airworthiness and Registration Records, and certified weather records.

Mr. Sommer's curriculum vitae and list of cases in which he has served as an expert have been attached as "Exhibit B." All records reviewed by Mr. Sommer will be exchanged between the parties through discovery.

Dr. Sommer's opinions will be based on his education, training, experience, research and review of documents produced in this litigation through discovery.

Mr. Sommer may supplement his opinions after review of Defendants' experts' conclusions, and should any other additional information become available relevant to his purposes.

Supplementation of these experts' final conclusions may be made upon receipt of additional information, and after review of Defendants' experts conclusions. These supplements, if any, will be provided in a timely fashion and pursuant to the Texas Rules of Civil Procedure and docket control order entered in this matter.

Because discovery is ongoing, Plaintiffs reserve the right to supplement this designation as the facts dictate.

Plaintiffs hereby cross designate and state that they may call any expert witness identified or designated by an adverse party or any employee or representative of an adverse party, subject to any objections Plaintiffs may make concerning the designation of those expert witnesses, including but not limited to those experts who have prepared reports regarding this incident as well as the

R0147

following:

Christopher Yeager, Deceased
by and through counsel of record
Don Swaim
Cunningham Swaim, LLP
7557 Rambler Road, Suite 440
Dallas, Texas 75231
(214) 646-1495

Representatives and Employees of
Robinson Helicopter Company, Inc., Defendant
by and through its counsel of record
including but not limited to
Kurt L. Robinson
Thomas Webster, Technical Investigator
Chong Yip
Kelvyn Oum
Gilbert Acevedo, Jr.
Peter Riedl, VP, Engineering
Tim A. Goetz
Attorney at Law
2901 Airport Drive
Torrance, California 90505
(310) 539-0508
and
George Andrew Coats
Gary Linn Evans
COATS & EVANS, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
(281) 367-7732

Representatives and Employees of
Helicopter Services, Inc.
Including but not limited to
Carl Thomas
Michael Crossland, General Manager
Robert Spradlin, Director of Flight Operations
Trevor Tapp, QC Manager
Benito Perez, Helicopter Mechanic
Jerome Thompson, Helicopter Mechanic
Chris Starinski, Helicopter Mechanic
Robin Crossland, Office Manager
By and through its counsel of record

–7–

R0148

Don Swaim
Cunningham Swaim, LLP
7557 Rambler Road, Suite 440
Dallas, Texas 75231
(214) 646-1495

Plaintiffs further reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit. Plaintiffs may also call, as a witness associated with other parties, any expert witness of any party who may be added to this lawsuit.

Plaintiffs further reserve the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness to trial and to redesignate same as a consulting expert, who cannot be called by opposing counsel.

Plaintiffs further reserve the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, which would not be violative of any existing Court order or the Texas Rules of Civil Procedure.

Plaintiffs further designate, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial. In the event that present or future parties designate an expert, but is subsequently dismissed for any reason from the suit or fails to call any designated expert, Plaintiffs designate witnesses listed by any such party. Plaintiffs reserve whatever additional rights they may have with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Evidence, the case law construing same and the rulings of the Trial Court.

Plaintiffs reserve the right to supplement this designation with additional designations of

-8-

R0149

experts within any time limits imposed by the Court or any alterations of same by subsequent Court order or agreement of the parties or pursuant to the Texas Rules of Civil Procedure and/or the Texas Rules of Evidence.

### Medical Providers and Other Persons with Knowledge of Relevant Facts That May Qualify as Experts and/or Lay Experts but Have Not Been Specially Retained (Fact Experts – Tex. R. Civ. P. 194.2(f))

The following persons, or the custodians of their records, have not been retained by and are not employed by, or are otherwise subject to the control of Plaintiff (hereinafter referred to as "non-retained" experts), but are hereby designated as testifying experts by Plaintiff and the following information is provided in accordance with Rule 194.2, Tex. R. Civ. P.

Although these witnesses have not been specifically retained as expert witnesses by Plaintiffs, and while Plaintiffs cannot vouch for the expertise or credibility of such witnesses at this time, it is believed that they may have knowledge, training or expertise which may qualify them as experts in their respective fields. Accordingly, Plaintiffs designate these witnesses as persons who may be called upon to give testimony that would be considered expert testimony.

The following entities, medical providers, and/or the custodians of their records, may testify regarding the investigation into the accident subject of this suit, causation, injuries sustained by the Plaintiffs and Decedent in the incident made the subject of this suit, medical diagnoses, and the reasonable and necessary cost of hospital, doctor and medical bills for treatment of injuries in the past. Please refer to the providers' records for their mental impressions, opinions, conclusions, and the factual basis for each opinion.

These medical providers/non-retained experts are expected to testify regarding their

R0150

education, experience, and credentials as a physician or medical provider and/or in their respective fields of expertise. These health care providers/non-retained experts have reviewed the events, records, including medical records and bills, employment records, performed and/or reviewed autopsy examination of the deceased, and review of relevant written documentation and records of events related hereto. These treating medical providers/non-retained experts will testify concerning their findings regarding the events subject hereof. These non-retained experts will testify regarding the incident and related cause, nature and severity of the deceased's injuries as well as the investigation into the events subject of this suit, as well as governmental records related hereto.

These treating medical providers/non-retained experts are familiar with the reasonable and customary charges for medical treatment of the type associated in this incident. These medical providers/non-retained experts will be asked to testify about whether the Plaintiff's injuries and damages were proximately caused by the incident made the basis of this lawsuit. These medical providers/non-retained experts will be asked to testify about whether any associated medical bills and expenses incurred] were reasonable and necessary because of the injuries and death of the deceased.

The facts known by these medical providers/non-retained experts that relate to or form the basis of this medical provider/non-retained expert's mental impressions and opinions are contained in the relevant records which have been produced or will be produced to the Defendants, including any records or reports from these providers. Such records, as well as any deposition testimony, are incorporated herein.

If Defendants desire further information, a more detailed form of this information may be

R0151

obtained from the non-retained experts through an oral deposition, a deposition on written questions, or a subpoena.  T.R.C.P. 176, 205; T.R.C.P. 195, at 2.

These non-retained experts  may be called to testify as to the physical pain and suffering, mental anguish, and any related medical, funeral and/or burial expenses related to the deceased.

The records custodians of the below-listed providers may testify as to the business records kept in connection the injuries and damages suffered by the parties herein, and the reasonableness of charges and necessity of services, if any.

Records Custodians and Employees of
the Federal Aviation Administration including
but not limited to
Records Custodians
David M.  Metz, Aviation Safety Inspector POI, Unit B (281) 929-7080
Glen Longnion, Aviation Safety Inspector PMI, Unit A (281) 929-7009
Larry Eckert, Investigator (281) 370-4354
Houston Flight Standards District Office
12650 N.  Featherwood Drive, Suite 230
Houston, Texas 77034
Individuals believed to have knowledge of relevant facts

Russell Lewis, Ph.D.
Records Custodians
TC, FAA, Forensic Toxicology Research
FAA Toxicology Accident Research Laboratory
FAA Civil Aerospace Medical Institute, Room 351
6500 South MacArthur Boulevard
Oklahoma City, OK 73169
FAA employee who performed toxicology testing on the remains of pilot and passenger

National Transportation Safety Board
c/o South Central Regional Office
624 Six Flags Drive, Ste.  150
Arlington, Texas
817-652-7800
including but not limited to:
Records Custodians
Leah D.  Yeager
Sr.  Air Safety Investigator

-11-

R0152

Tom Latson, Investigator
Bill Tuccio, Specialist/Electronic Device Report
Performed investigation of the incident subject of this suit

FAA/NTSB
FOIA Request Department
Response for request of air traffic communication records on 9/10/12

Federal Aviation Administration
Records Custodian
Houston Flight Standards District Office
12650 North Featherwood Drive, Ste. 230
Houston, Texas 77034
Provided Federal FAA Accident Incident Data System Report
(281) 929-7000

FAA
Records Custodian
P.O. Box 25082
Oklahoma City, Oklahoma 73125
Provided records regarding sale, repair and airworthiness of the helicopter involved in the incident
subject of this suit
(405) 954-3116

Federal Aviation Administration
Records Custodian
Southwest Region
2601 Meacham Boulevard
Fort Worth, Texas 76137
(817) 222-5006
Provided DOT Accident Incident Data System Report

Records Custodian
NOAA National Data Centers
U.S. Department of Commerce
National Climatic Data Center
Federal Building
151 Patton Avenue
Asheville, North Carolina 28801
(828) 271-4800

Mr. Jeffrey Greenawalt
Starr Insurance
Senior Claims Representative

R0153

3353 Peachtree Road N.E., Suite 1000
Atlanta, Georgia 30326
cell: 214-223-0202

Air Salvage of Dallas
Records Custodians
1361 Ferris Road
 Lancaster, Texas 75146
972-227-1111
Facility storing the helicopter wreckage


Investigating Officers
including but not limited to:
Trooper Michael Martin
Trooper John Sampa
Trooper James E. Wilkins
Trooper Alberto Feliciano
Bobby R. Risch
Jeremy W. Mireles
Records Custodians ( no records deposition)
c/o Texas Department of Public Safety
7710 Will Clayton Parkway
Humble, Texas 77338
(281) 517-1200

Officer Gustavo Lopez
Capt. James Bolton
Lt. Chad Shaw
Demond Anderson, Investigator
Randy Corliss, Investigator
Records Custodians
Harris County Fire Marshal
2318 Atascocita Road
Humble, Texas 77396
(281) 436-8000
Persons called to crash site for purposes of investigation and photography of scene

Charles Danley
Records Custodians
Manager(s) of Fueling and/or Maintenance
Baytown Airport (KPHY)
5600 Barkaloo Road
Baytown, TX 77521

R0154

(281) 421-1671
Individuals believed to have knowledge of relevant facts, including fueling of helicopter prior to crash

Roger Schmidt, Manager
David Wayne Hooks Airport (KDWH)
20803 Stuebner Airline Rd, Spring, TX 77379
(281) 376-5436
Individual believed to have knowledge of relevant facts

Bobby Lopez
Records Custodians
Xtreme Piper
7814 Miller Road 3
Houston, Texas 77049
(281) 452-9015
Individual believed to have knowledge of relevant facts

Records Custodians
Dr. Kristin Escobar Alvarenga, Forensic Pathology Fellow
Dr. Stephen K. Wilson, Asst. Medical Examiner
Harris County Institute of Forensic Sciences
1885 Old Spanish Trail
Houston, Texas 77054
Individuals who performed autopsy services on the victims of the crash

John B. Butler
Investigator
Lycoming Engines
3004 Green Valley Lane
Arlington, Texas 76014
(817) 456-0933
Individual who may have knowledge of relevant facts

Erling Sales & Service
Records Custodians (no records deposition)
10321 Veterans Memorial Drive
Houston, Texas 77038
(281) 260-7878
Believed to have performed maintenance on helicopter at issue

David Boudreaux
Boudreaux Aviation
Records Custodians

R0155

Orange County Airport
2540 S. Highway 87
Orange, Texas    77630
Performed weight/balance report on helicopter at issue

Robert L.  Garza
Records Custodians
Garza Avionics
7644 Eagle Lane
Spring, Texas 77339
(832) 717-0818
Believed to have performed transponder certification on helicopter at issue

Western Skyways, Inc.
Records Custodians
21 Creative Place
Montrose, Colorado
(970) 249-0232
Performed overhaul of subject helicopter engine

Mr.  Ruben Vazquez
Records Custodians
Blackwell Woodforest Funeral Home, Inc.
750 Uvalde Road
Houston, Texas 77015
(713) 453-1900
Provided assistance with services and funeral of Joyce Ates, Deceased

Flowers of Conroe
Records Custodian
806 N.  Loop 336 W
Conroe, Texas 77301
(936) 760-3499
Provided assistance with funeral services of Joyce Ates, Deceased

Kelly Monument Company
(f/k/a Muskogee Monument Co.)
Records Custodians
1525 N York Street
Muskogee, Oklahoma  74403
(918) 682-2641
Provided monument at burial site of Joyce Ates, Deceased

R0156

Sheldon Community Fire & Rescue
William Crawford, Records Custodian
8407 C.E. King Parkway
Houston, Texas 77044
(281) 458-1431
Provided emergency responders and equipment to crash site

Harris County HazMat
Harris County Fire Marshal's Office
Records Custodians
2318 Atascocita Road
Humble, Texas 77396
Provider emergency responders and equipment to crash site
(281) 436-8000

Harris County Sheriff's Department
Records Custodians
1200 Baker
Houston, Texas 77002
(713) 755-6044
No Records Deposition

Channelview Fire Department
Records Custodians
16010 Ridlon
Channelview, Texas 77530
(281) 452-5782
Provided emergency responders and equipment to crash site

Cloverleaf Fire Department
Records Custodians
911 Hollywood Street
Houston, Texas 77015
(713) 453-1811
Provided emergency responders and equipment to crash site

KFOR-TV
Records Custodian
444 E. Britton Rd.
Oklahoma City, Oklahoma 73114
405) 424-4444
Provided local news report of Joyce Ates' death

R0157

Texas Bureau of Vital Statistics
Department of State Health Services
P.O. Box 12040
Austin, TX 78711-2040
1(800) 963-7111

Internal Revenue Service
3651 S. Interregional Hwy., PhotoCopy Unit, STOP 6716 AUSC
Austin TX  73301

Social Security Administration - Earnings
300 North Greene Street, Dero Section-3T
Baltimore MD  21290-0300

THE LISTED MEDICAL PROFESSIONALS MAY BE CALLED TO TESTIFY AS TO THOSE MEDICAL DAMAGES SUSTAINED BY PLAINTIFF.

THE RECORD CUSTODIANS LISTED MAY TESTIFY AS TO THE AUTHENTICITY OF BUSINESS RECORDS KEPT IN CONNECTION WITH THE BUSINESS RECORDS AND/OR THE REASONABLENESS OF CHARGES AND NECESSITY OF SERVICES IN CONNECTION WITH BUSINESS RECORDS.

**Subject Matters of Non-Retained Experts:**

The subject matters on which said non-retained non-controlled experts will testify are as follows:

a. The existence, nature and/or extent of the injuries sustained by the Deceased Plaintiff;

b. The examination and treatment of the injuries sustained by the Deceased Plaintiff;

c. Pre-existing injuries to and/or pre-existing medical conditions of the Deceased Plaintiff;

d. The type, purpose, extent, results, evaluations and/or interpretations of examinations, treatments, x-rays and/or tests regarding the Deceased Plaintiff;

e.  Diagnosis with regard to the injuries of Deceased Plaintiff;

f. The existence and nature the Deceased Plaintiff's injuries, in the past;

g. The cause and/or causes of Deceased Plaintiff's conditions, injuries, disabilities and/or incapacities;

-17-

R0158

h. Medical care and treatment and medications that were required by Deceased Plaintiff in the past for the treatment of the injuries sustained by him in the subject accident;

j. The reasonableness and the necessity of the medical services and medical care and medications rendered to Deceased Plaintiff in the past;

k. All those subject matters contained, discussed or disclosed in:

(1)The business records and medical records concerning the Deceased Plaintiff which have been and which may hereafter be produced in this cause;

(2)Any and all business and medical records affidavits and/or billing affidavits which have been filed and which may hereafter be filed in this cause, and all exhibits thereto;

(3)The depositions on written questions of all business records custodians, including Deceased Plaintiff's health care providers, which have been taken and which may hereafter be taken in this cause, and all exhibits thereto; and

4)All written reports of contained in the business records listed herein and records of medical providers produced during the course of discovery in this cause.

All of which documents are incorporated herein by reference as though set out at length for all purposes.

**3.Impressions and Opinions of Non-Retained Experts.**

The general substance of said non-retained / non-controlled experts' mental impressions and opinions are expected to be, and a brief summary of the basis for these are, as follows:

a. The nature, extent and severity of Deceased Plaintiff's alleged injuries, incapacities, and disabilities;

b. Deceased Plaintiff's injuries and death are the result in whole or in part of the injuries received

R0159

by Deceased Plaintiff and made the subject of this suit;

c. The medical care and treatment rendered to Deceased Plaintiff were reasonable and/or necessary;

d. The subject accident did, based on reasonable medical probability, cause all of the complaints, disabilities, injuries, and/or death of Deceased Plaintiff;

e. That any intervention for treatment of Deceased Plaintiff's symptoms was necessitated and proximately caused by the accident made the subject of this lawsuit;

f. That the medical expenses of the Deceased Plaintiff were necessitated by the subject incident made the subject of this lawsuit; and

g. All other impressions and opinions that are contained, discussed or disclosed in:

(1) The business records and medical records of Deceased Plaintiff which have been and which may hereafter be produced in this cause;

(2) The business records and medical records affidavits and billing affidavits which have been filed and which may hereafter be filed in this cause, and all exhibits thereto;

(3) The depositions on written questions of business records custodians and Deceased Plaintiff's health care providers which have been taken and which may hereafter be taken in this cause, and all exhibits thereto; and

4) All written reports of contained in the business records and records of medical providers produced during the course of discovery in this cause.

All of which documents are incorporated herein by reference as though set out at length for all purposes.

4. **Brief Summary of Basis For Impressions And Opinions.** The basis for the foregoing impressions and opinions of the above named and/or designated expert witnesses are all of the facts shown by and/or contained in:

a. All of the business records, depositions upon written questions, medical records, and billing

-19-

R0160

records relevant to the Plaintiff and the deceased Plaintiff and produced in this cause;

b. All depositions taken and hereafter taken in this cause, either by written questions or orally, and all exhibits thereto;

c. The expert reports hereinabove expressly referred to;

d. All witness statements which may be produced in this cause;

e. All of the photographs and videotape recordings produced in this cause;

f. The Responses to Requests For Disclosure, Responses to Requests For Production, Answers to Interrogatories, and the Amendments and Supplements thereto which have been filed by each of the parties to this cause;

g. The Pleadings on file in this cause;

h. All documents and tangible things produced in this cause;

All of which records, reports, documents, depositions, photographs and videotape recordings are incorporated herein by reference and made a part hereof for all purposes as if set out at length herein.

R0161

**EXHIBIT B** - EXPERT CV'S AND
LISTS OF TESTIMONY

R0162

# McSWAIN ENGINEERING, INC.

3320 McLEMORE DRIVE
P.O. BOX 10888
PENSACOLA, FLORIDA 32524-0888

---

(850) 484-0506
FAX (850) 484-0508

## WILLIAM D. CARDEN, M.S., P.E.

Curriculum Vitae

## EDUCATION:

1994: University of Alabama-Birmingham - Bachelor of Science in Materials Engineering

1997: The Ohio State University - Master of Science in Materials Engineering

## ENGINEERING REGISTRATION:

Registered Professional Metallurgical Engineer in the State of Alabama - 2003. P.E. #26030

Registered Professional Metallurgical Engineer in the State of Georgia - 2005. P.E. #30778

Registered Professional Metallurgical Engineer in the State of Florida - 2006. P.E. #65271

## EXPERIENCE:

2006 to Present
Consulting Materials Engineer/Director of Materials Engineering
McSwain Engineering, Inc.
Pensacola, Florida

Failure analysis and engineering investigation. Evaluation of properties, processing and manufacturing of aerospace, automotive and consumer products and materials. Oversight of laboratory operations, metallurgical and materials testing, and technical staff.

2001 to 2006
Senior Engineer
Vista Engineering
Birmingham, Alabama

Failure analysis, including metallurgical evaluations, numerical/engineering analysis, fractography. Analysis of materials and manufacturing processes. Microstructural modeling of grain refinement in the processing of super alloys. Software code development, validation and numerical analysis.

R0163

Deformation modeling using finite element analysis (DEFORM).

| | |
|---|---|
| 1997 to 2001 | Materials Engineer<br>Private Contractor/Self-Employed |

Microstructure modeling using Monte Carlo Simulation Techniques to simulate solidification in nickel alloy systems. Development of solidification modeling computer code and comparison to actual microstructures. FORTRAN coding and software development.

| | |
|---|---|
| 1995 to 1997 | Graduate Research Assistant<br>The Ohio State University<br>Columbus, Ohio |

Research and testing related to the processing and utilization of new weight saving materials in the automotive industry. Specializing in sheet metal forming and mechanical metallurgy.

| | |
|---|---|
| 1993 to 1995 | Research Assistant/Laboratory Technician<br>University of Alabama-Birmingham<br>Birmingham, Alabama |

Conducted research on various projects. Taught undergraduate labs. Performed testing related to various engineering consulting and failure analysis projects. Performed metallography and other testing related to crystal growth and semiconductor compatibility research.

## MEMBERSHIP IN PROFESSIONAL SOCIETIES:

American Society of Mechanical Engineering (ASME)

American Society for Materials (ASM International)

Society of Manufacturing Engineers (SME)

Association for Forming & Fabricating Technologies of SME (AFFT/SME)

Society of Automotive Engineers (SAE)

Alabama Society of Professional Engineers (ASPE)

National Society of Professional Engineers (NSPE)

## FUNDED RESEARCH:

DoD-AF, SBIR Phase I, Efficient Superalloy Ingot Breakdown

CTeC, Microstructure Modeling of Ingot Grain Refinement for Turbine Disks

R0164

## PRESENTATIONS AND CONFERENCE PARTICIPATION:

"Microstructure Simulation and Verification of Alloy 718 Hot Compression Tests," G. Janowski, R. Thompson, M. Papo, W. Carden: Presentation at ASM 13th Advanced Aerospace Materials & Processes Conference & Exposition (AeroMat), Presented by David Lambert, Scientific Forming Technologies Corporation, Orlando, Florida, June 2002.

"Microstructure Analysis and Modeling of Ingot to Billet Conversion in Alloy 718," R. Thompson, G. Janowski, W. Carden, J. Papo, H. Ning: THERMEC 2003, Madrid, Spain, 2003.

"Spot Weld Failure in Galvanized Steel Sheets: A Case Study," R. Thompson, W. Carden, Failure Analysis and Prevention, ASM Materials Solutions Conference, Pittsburgh, 2003.

"Fatigue Failure in a Threaded Eyebolt: A Case Study," W. Carden and R. Thompson, Failure Analysis and Prevention, ASM Materials Solutions Conference, Pittsburgh, 2003.

"Modeling Microstructure Evolution in 718 Ingot to Billet Conversion," W. Carden, R. Thompson, G. Janowski, J. Papo, H. Ning, The New Face of Forging II, ASM Materials Solutions Conference, Pittsburgh, 2003.

"Modeling Microstructure Evolution in 718 Ingot to Billet Conversion," W. Carden, R. Thompson, D. Barker, R. Goetz, F. Meisenkothen, F. Scheltens, G. Janowski, 6th International Symposium on Superalloys 718, 625, 706 and Derivatives, TMS Conference, Pittsburgh, 2005.

"Causation and Consequences of Spring Failure in RCF 67 Buckles," American Academy of Forensic Sciences, Annual Meeting, San Antonio, Texas, February 2007.

"Preparation of Three-Dimensional Exhibits and Replicas for Courtroom Presentation," E. Van Iderstine, W. Carden, 41st Annual Air Law Symposium, Dallas, Texas, February 2007.

"Application of Reverse Engineering Created Models to Failure Analysis Investigations (Invited)," R. H. McSwain, M. B. Hood, E. L. Van Iderstine, W. D. Carden, C. C. Coburn, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Detroit, MI, September 2007.

"Contact and Non-Contact Dimensional Analysis in Forensic Investigations (Invited)," E. L. Van Iderstine, R. H. McSwain, W. D. Carden, C. C. Coburn, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Detroit, MI, September 2007.

"Causation and Consequences of Spring Failure in RCF 67 Buckles," R. H. McSwain, M. B. Hood, W. D. Carden, E. L. Van Iderstine, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Detroit, MI, September 2007.

"Ford Probe Seat Collapse," R. H. McSwain, M. B. Hood, W. D. Carden, E. L. Van Iderstine, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Columbus, OH, October 2011.

"Trailer Hitch Receiver Failure on a Class A Motorhome," W. D. Carden, E. L. Van Iderstine, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Columbus, OH, October 2011.

R0165

Session Chair: Failure Analysis and Prevention: Consumer Products, Materials Science & Technology Conference and Exhibition, Pittsburgh, PA, October 2014.

Session Chair: Failure Analysis and Prevention: Environmentally Assisted Failures, Materials Science & Technology Conference and Exhibition, Montreal, Quebec, Canada, October 2013.

"Failure of a Pickup Truck Track Bar," William Carden, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Pittsburgh, PA, October 2014.

"Knife Blade Delamination Failure," William Carden, Eric Van Iderstine, McSwain Engineering, Inc., Materials Science & Technology Conference and Exhibition, Pittsburgh, PA, October 2014.


## PUBLICATIONS:

Wang, J.F., Wagoner, R.H., Carden, W.D., Matlock, D.K., Barlat, F., "Creep and Anelasticity in the Springback of Aluminum," International Journal of Plasticity, V20, N12, December 2004, p 2209-2232.

R. Thompson, G. Janowski, W. Carden, J. Papo, H. Ning, "Microstructure Analysis and Modeling of Ingot to Billet Conversion in Alloy 718," Materials Science Forum, V426-432, N1, 2003, p 809-814.

Carden, W.D., Geng, L.M., Matlock, D.K., Wagoner, R.H., "Measurement of Springback," International Journal of Mechanical Sciences, V44, N1, January 2002, p 79-101.

R. H. Wagoner, W. D. Carden, W. P. Carden, D. K. Matlock, "Springback after Drawing and Bending of Metal Sheets," Proc. IPMM '97 - Intelligent Processing and Manufacturing of Materials, eds. T. Chandra, S.R. Leclair, J.A. Meech, B. Verma, M. Smith and B. Balachandran, University of Wollongong, 1997, V1 (Intelligent Systems Applications), p 1-10 [KEYNOTE].


## SERVICE AND HONORS:

MTAIS Failure Analysis Committee – Voting Member – American Society for Materials (ASM International)

ASME Birmingham, Chairman 2005-2006, Chapter Treasurer 2003-05

Society of Manufacturing Engineers Birmingham, Chairman 2005-06, Chapter Treasurer 2003-05

Birmingham Business Journal's Top 40 Under 40, 2004

Engineering Council of Birmingham's Young Engineer of the Year, 2003

The Ohio State University Alumni Association, 2002

University of Alabama - Birmingham Alumni Association, 2001

- 4 -

R0166

ASM/TMS Joint Student Chapter President-UAB, 1994

AFS Student Chapter Vice-President-UAB, 1994

Alpha Sigma Mu, Materials Engineering Honor Society, 1994

Tau Beta Pi, Engineering Honor Society, 1994


## CONTINUING ENGINEERING EDUCATION:

| Course Title | Source | Date |
| --- | --- | --- |
| Motor Vehicle Accident Reconstruction | SAE International | 2004 |
| Air Brake Systems Training | Bendix | 2004 |
| Practical Fracture Analysis | ASM International | 2007 |
| The Tire as a Vehicle Component | SAE International | 2007 |
| Tire and Wheel Safety Issues | SAE International | 2007 |
| PC-DMIS Training for ROMER CimCore Portable CMM | ROMER CimCore | 2007 |
| CAMIO Basic | Metris | 2008 |
| The Basics of Internal Combustion Engines | SAE International, Course I.D.# PD130404 | 2008 |
| Impulse Operators Course | Instron | 2009 |
| Advanced Factory Training Course | Teledyne Continental Motors | 2009 |
| An Introduction to Welded Joints | ICE Technology, Dr. Jess Comer | 2010 |
| Threaded Fasteners and the Bolted Joint | ICE Technology, Dr. Jess Comer | 2010 |
| Medical Device Design Validation and Failure Analysis | ASM International | 2012 |
| Radiation Safety and Operation of Portable XRF Analyzers | Thermo Scientific Portable Analytical Instruments Inc. | 2013 |
| NTSB Helicopter Accident Investigation | National Transportation Safety Board | 2014 |

R0167

# WILLIAM DAVID CARDEN, M.S., P.E.

## *TESTIMONY CHRONOLOGY*

| Case Style | Type | Date |
| --- | --- | --- |
| PAMELA MARGARET LEWIS, et al.<br>Plaintiffs,<br>v.<br>LYCOMING, et al.<br>Defendants<br>IN THE UNITED STATES DISTRICT COURT<br>FOR THE EASTERN DISTRICT OF<br>PENNSYLVANIA<br>Civil Action No. 11-6475-HB | D | 2014 |
| JEFF LYON and LISA LYON,<br>Plaintiffs,<br>vs.<br>HONEYWELL INTERNATIONAL, INC., GENIE<br>INDUSTRIES, INC., METROLIFT, INC., and<br>METROLIFT SALES AND SERVICE, LLC,<br>Defendants.<br>IN THE CIRCUIT COURT OF COOK COUNTY,<br>ILLINOIS COUNTY DEPARTMENT, LAW DIVISION<br>No. 09 L10983 | D | 2014 |
| LARRY DALE CROUCH; RHONDA MAE<br>CROUCH; TEDDY LEE HUDSON; AND<br>CAROLYN SUE HUDSON,<br>Plaintiffs,<br>vs.<br>TELEDYNE CONTINENTAL MOTORS, INC.,<br>Defendant.<br>IN THE UNITED STATES DISTRICT COURT FOR THE<br>SOUTHERN DISTRICT OF ALABAMA SOUTHERN<br>DIVISION<br>NO. 1:10-cv-00072-KD-N | D | 2013 |

D – Deposition    H – Hearing    T – Trial    A – Arbitration

R0168

PARIS PICKETT,
Plaintiff,
vs.
MCDONALD'S RESTAURANTS OF NEVADA,
INC.; LOWE'S HOME IMPROVEMENT
WAREHOUSE, INC.; JOHN DOES 1 through
100; and DOE CORPORATIONS 1 through 100,
Defendants.
DISTRICT COURT CLARK COUNTY, NEVADA
No. A-11-653208-C
Dept.XIII

D          2013


BLANCA M. GONZALEZ, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF ROBERTO GONZALEZ,
DECEASED, ET AL.
Plaintiffs,

VERSUS

LONE STAR TEMP SERVICES, INC., ET AL.
Defendants.
IN THE UNITED STATES DISTRICT COURT OF
HARRIS COUNTY, TEXAS
164TH JUDICIAL DISTRICT
CASE NO: 2010-62821

D          2013

D – Deposition          H – Hearing          T – Trial          A – Arbitration

R0169

KRISTI MITTS, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE ESTATE
DESEASED AND ON BEHALF OF ALL
WRONGFUL DEATH BENEFICIARIES,
Plaintiffs,

VERSUS

SIKORSKY AIRCRAFT CORPORATION;
SIKORSKY SUPPORT SERVICES, INC. d/b/a
SIKORSKY AEROSPACE MAINTENANCE;
UNITED TECHNOLOGIES CORPORATION;
PARKER-HANNIFIN CORPORATION;
PARKER-BERTEA AEROSPACE GROUP
f/k/a BERTEA CORPORATION;
CURTISS-WRIGHT CORPORATION; and,
CURTISS-WRIGHT CONTROLS, INC.,
Defendants.
IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS HOUSTON
DIVISION
CIVIL ACTION NO: 4:10-cv-05164
CONSOLIDATED WITH
CIVIL ACTION NO: 4:11-cv-00551

D     2013

CHAD EVERETT, et al.,
Plaintiffs,
And
KENTUCKY FARM BUREAU MUTUAL
INSURANCE CO.
Intervening Plaintiff
vs.
CHRYSLER GROUP LLC,
Defendant
COMMONWEALTH OF KENTUCKY 1ST
JUDICIAL CIRCUIT FULTON CIRCUIT
COURT
CASE No.: 10-CI 00151

T     2012

– 3 –

D – Deposition    H – Hearing    T – Trial    A – Arbitration

R0170

CHAD EVERETT, et al.,
Plaintiffs,
And
KENTUCKY FARM BUREAU MUTUAL
INSURANCE CO.
Intervening Plaintiff
vs.
CHRYSLER GROUP LLC,
Defendant
COMMONWEALTH OF KENTUCKY 1ST
JUDICIAL CIRCUIT FULTON CIRCUIT
COURT
CASE No.: 10-CI 00151

D          2012


LURA HESS BECHTEL, individually and as Co-
Administratrix of the Estates of Donald R. and
Veronica Hess, JOHANNA V. HESS, individually
and as Co-Administratrix of the Estates of Donald R.
and Veronica Hess,
Plaintiffs,
vs.
SANDEL AVIONICS, INC., DELAWARE SANDEL
AVIONICS, LLC, CENTURY FLIGHT SYSTEMS, INC.
dba CENTURY FLIGHT SYSTEMS; MID CONTINENT
INSTRUMENT COMPANY, INCORPORATED, dba
MID CONTINENT INSTRUMENTS, ELECTRIC GYRO
CORPORTATION, and DOES 1-10, Inclusive,
Defendants.
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN DIEGO
CASE NO. 37-2010-00104069-CU-PO-CTL

T          2012

D – Deposition          H – Hearing          T – Trial          A – Arbitration

R0171

| | | |
|---|---|---|
| LURA HESS BECHTEL, individually and as Co-Administratrix of the Estates of Donald R. and Veronica Hess, JOHANNA V. HESS, individually and as Co-Administratrix of the Estates of Donald R. and Veronica Hess, Plaintiffs, vs. SANDEL AVIONICS, INC., DELAWARE SANDEL AVIONICS, LLC, CENTURY FLIGHT SYSTEMS, INC. dba CENTURY FLIGHT SYSTEMS; MID CONTINENT INSTRUMENT COMPANY, INCORPORATED, dba MID CONTINENT INSTRUMENTS, ELECTRIC GYRO CORPORTATION, and DOES 1-10, Inclusive, Defendants. SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO CASE NO. 37-2010-00104069-CU-PO-CTL | D | 2012 |
| SEAN DAVI, an individual; SHAWNA DAVI, an individual; JAMES SANTOS, an individual; SHANNON SANTOS, an individual, Plaintiffs, vs. H&E EQUIPMENT SERVICES, INC., a corporation; BEE WELDING, INC. d.b.a. BEE ACCESS PRODUCTS, and DOES 1 through 100, Inclusive, Defendants. SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT CASE NO. BC425711 | D | 2012 |
| LARRY DALE CROUCH; RHONDA MAE CROUCH; TEDDY LEE HUDSON; AND CAROLYN SUE HUDSON, Plaintiffs, vs. TELEDYNE CONTINENTAL MOTORS, INC., Defendant. IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION NO. 1:10-cv-00072-KD-N | T | 2011 |

D – Deposition     H – Hearing     T – Trial     A – Arbitration

R0172

IDANIS MAZZANET-FIGUEROA, as Personal Representative of the ESTATE OF MIGUEL A CRUZ-SANTIAGO, and IDANIS MAZZANET-FIGUEROA, individually, Plaintiff v. SCORPION SPORTS, INC., a/k/a SCORPION SPORTS USA, a California corporation; and J.P. CYCLES, INC., d/b/a SEMINOLE POWERSPORTS, a Florida corporation, Defendants. IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT, IN AND FOR ORANGE COUNTY, FLORIDA CASE NO: 2008-ca-20186 DIVISION: 33      T      2011

LARRY DALE CROUCH; RHONDA MAE CROUCH; TEDDY LEE HUDSON; AND CAROLYN SUE HUDSON, Plaintiffs, vs. TELEDYNE CONTINENTAL MOTORS, INC., Defendant. IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION NO. 1:10-cv-00072-KD-N      D      2011

D – Deposition     H – Hearing     T – Trial     A – Arbitration

R0173

IDANIS MAZZANET-FIGUEROA, as
Personal Representative of the ESTATE OF
MIGUEL A CRUZ-SANTIAGO, and
IDANIS MAZZANET-FIGUEROA,
individually,
Plaintiff
v.
SCORPION SPORTS, INC., a/k/a
SCORPION SPORTS USA, a California
corporation; and J.P. CYCLES, INC., d/b/a
SEMINOLE POWERSPORTS, a Florida
corporation,
Defendants.
IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT, IN AND FOR ORANGE
COUNTY, FLORIDA
CASE NO: 2008-ca-20186
DIVISION: 33

D     2010


IDANIS MAZZANET-FIGUEROA, as
Personal Representative of the ESTATE OF
MIGUEL A CRUZ-SANTIAGO, and
IDANIS MAZZANET-FIGUEROA,
individually,
Plaintiff
v.
SCORPION SPORTS, INC., a/k/a
SCORPION SPORTS USA, a California
corporation; and J.P. CYCLES, INC., d/b/a
SEMINOLE POWERSPORTS, a Florida
corporation,
Defendants.
IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT, IN AND FOR ORANGE
COUNTY, FLORIDA
CASE NO: 2008-ca-20186
DIVISION: 33

D     2009

– 7 –

D – Deposition     H – Hearing     T – Trial     A – Arbitration

R0174

DALIA AMAYA, AS PARENT AND                                                  D        2009
NATURAL GUARDIAN OF NATALIA
AMAYA, A MINOR,
Plaintiffs,
vs.
BUDGET RENT A CAR SYSTEM, INC., A
FOREIGN CORPORATION; PV HOLDING
CORPORATION, A FOREIGN
CORPORATION; AND JUAN CARLOS
BASURTO, A FLORIDA RESIDENT,
Defendants
IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM BEACH
COUNTY, FLORIDA
CASE NO.: 50 2008CA009513XXXXMBAI


JOEY MALLARD,                                                        D        2009
Plaintiff,
v.
SAFARI MOTOR HOMES, INC.,et al.,
Defendants.
IN THE CIRCUIT COURT OF CULLMAN
COUNTY, ALABAMA
CASE NO: CV-08-181


KRISTINE FERNANDEZ, Individually                         T        2008
and as natural mother and next friend
of  MEAGAN K. CARPINTERO,
Plaintiff,
v.
FORD MOTOR COMPANY, a
foreign corporation,
Defendant.
THE STATE OF FLORIDA
IN THE CIRCUIT COURT OF ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY,
FLORIDA
GENERAL CIVIL DIVISION
CASE NO.: 02-22006 CA 09

D – Deposition       H – Hearing       T – Trial       A – Arbitration

R0175

The ESTATE OF POLLY ANN GONZALEZ, by ALLAN J. MOTA, Administrator and SABRINA MARIE MOTA and GABRIELLA MONIQUE MOTA, Minors, by their Guardian ad Litem, ALLAN J. MOTA, Plaintiffs, vs. FORD MOTOR COMPANY a Delaware corporation, SILVER STATE FORD d/b/a GAUDIN FORD, a Nevada corporation and Black and White Corporation I through X, Defendants
DISTRICT COURT CLARK COUNTY, NEVADA
CASE NO. A538297
DEPT. NO. XI

D          2008

CYNDI H. BLANCHARD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF COLBY TAYLOR BLANCHARD, DECEASED, AND MARK BANKS AS ADMINISTRATOR OF THE ESTATE OF DAYNA BANKS, DECEASED PLAINTIFFS, v. ROBERT J. LANDRY, JR., AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT JOSEPH LANDRY, SR. AND THERESA BOYD AS PERSONAL REPRESENTATIVE OF THE ESTATE OF COY MAC BOYD, SR. DEFENDANTS
IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS, WESTERN DIVISION – CIVIL DIVISION- AT JONESBORO
CASE NO. CV2007-0607 (JF)

D          2008

DAVID WEBSTER, Plaintiff v. MATTHEWS INTERNATIONAL CORPORATION and MATTHEWS CREMATION DIVISION, Defendants
UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION
CASE NO. 6:06-cv-1688-Orl-31KRS

D          2007

D – Deposition          H – Hearing          T – Trial          A – Arbitration

R0176

MICHAEL W. RAMSEY AND ANN R.
RAMSEY, as Personal Representatives
of the Estate of CARRIE GRACE RAMSEY,
deceased, Plaintiffs
v.
CLARENCE N. BEHN AND DUDE BEHN
TRUCKING, Defendants
IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL
CIRCUIT, IN AND FOR PUTNAM COUNTY,
FLORIDA
CASE NO. 05-28640-CA

T    2007

MICHAEL W. RAMSEY AND ANN R.
RAMSEY, as Personal Representatives
of the Estate of CARRIE GRACE RAMSEY,
deceased, Plaintiffs
v.
CLARENCE N. BEHN AND DUDE BEHN
TRUCKING, Defendants
IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL
CIRCUIT, IN AND FOR PUTNAM COUNTY,
FLORIDA
CASE NO. 05-28640-CA

D    2007

WILLIAM B. NICKELL, M.D., Plaintiff
v.
MIDMARK CORPORATION, ET AL., Defendants
CIRCUIT COURT OF JEFFERSON COUNTY, AL
CASE NO.: CV-05-1823

D    2007

KRISTINE FERNANDEZ, individually and as natural
mother and next of kin of MEAGAN K. CARPINTERO
Plaintiff,
v.
LUAR ENTERPRISES, INC., a Florida corporation,
DAMARIS RIOS, FLORIDA DEPARTMENT OF
TRANSPORTATION, FORD MOTOR COMPANY,
a foreign corporation,
Defendants.
CIRCUIT COURT OF FLORIDA,
COUNTY OF MIAMI-DADE
CASE NO.: 02-22006 CA 09

D    2006

– 10 –

D – Deposition    H – Hearing    T – Trial    A – Arbitration

R0177

# CURRICULUM VITAE

## COLIN A. SOMMER, P.E.

### CURRENT POSITION

Vice President and Aircraft Mishap and Failure Investigator with Aeroscope, Inc. Aeroscope, Inc. performs engineering services related to aviation accident analysis, forensic engineering, computer modeling, failure analysis and testing of airframes, engines, and aircraft systems. Aeroscope has investigated in excess of 1000 aircraft accidents and incidents including the well known crashes of TWA 800, United 232, United 585, Continental 1713, USAir 427, Alaska Airlines 261, Silk MI 185, Flash Air 604, SAS SK686, Air Algerie Flight 6289, Helios 522 and the crashes that killed the former governor of Missouri and golfer Payne Stewart. Aeroscope was also hired by the State of Florida to aid the criminal prosecution resulting from the crash of Value Jet 592.

### EDUCATION

✈Bachelor of Science Engineering  -Civil and Environmental Engineer
-Emphasis in Structural Design
-University of Michigan, Ann Arbor
-Dean's Honor List two semesters

✈NTSB Academy, Washington DC, Aircraft Accident Investigator Training Program. Training included: Accident Investigation, Failure Analysis of Airframes and Engines, Mid-air Collisions, In-flight Breakups, Fault Tree Analysis, Piston and Turbine Engine Failures, Pre and Post impact Fire Analysis, Metallurgy, Pathology, Biomedics, Crash Survivability, Aircraft Performance, Impact Kinematics, Propeller Analysis, Aviation Weather, Aircraft Maintenance, and many others. (May 10, 2004)

✈Southern California Safety Institute, Aircraft Accident Investigation Training Program. Training included: Investigation Methodology, Causation Theory, Wreckage Pattern Analysis, Aviation Operations, Weather, Aircraft Performance, Aircraft Maintenance, Human Factors, Crash Survivability, Structural Analysis, Fire Damage, Reciprocating and Turbine Engine Failure, Propeller Analysis, Metallurgy and Material Science, Aircraft Structure and System Design, Impact Dynamics and Kinematics, Aerodynamic Loading, Aeromedics, and many others. (October 10-21, 2005)

✈Teledyne Continental Motors Aviation Technician Advanced Training Program. Training included: 40 hours of advanced factory training, with focus on General Engine Theory of Operation, Crankcase Threading, Crankshaft Component R & R, Cylinder R & R, 100-Hour/Annual Inspection Fuel Injection System Fuel Pump Adjustment, Cylinder Borescope Inspections, TCM Ignition Systems and Service Bulletin Exercises. (June 20-25, 2010)

R0178

✈FAA Ratings
Private Pilot Certificate – Single Engine Land (September 1, 2006)
Multi Engine Land (October 14, 2011)
Instrument Airplane (March 17, 2009)

✈Routine training in numerous aspects of aircraft accident reconstruction and failure analysis

✈Fundamentals of Engineering (FE) / Engineer in Training (EIT) Completed. (July 5, 2007)

✈Principles & Practice of Engineering Exam (PE) Completed (June 9, 2008)

✈Licensed Professional Engineer – State of Colorado No. PE-43554 (September 22, 2009)

## ENGINEERING EXPERIENCE

✈I have personally investigated over 350 different aircraft accidents including:
-Alaska Airlines Flight 261 McDonnell Douglas MD 83
-Silk Air MI 185 Boeing 737-300
-Oklahoma State Basketball Team King Air 200
-Governor Mel Carnahan Cessna 335
-Payne Stewart Learjet 35
-Flash Air 603 Boeing 737-300
-Air Algerie Flight 6289
-Comair Flight 191
-Helios Flight 522
-Many other single and multi-engine aircraft both piston and turbine as well as helicopter

✈I have personally investigated accidents involving the following equipment types:

| | |
|---|---|
| -Aero Commander | -Beech General Aviation |
| -Aerospatiale/Eurocopter | -Beech King Air 90, 200 |
| -Airbus 310, 320 | -Beech 1900 |
| -Air Tractor | -Bellanca |
| -Allison/Rolls Royce Engines | -Bell Helicopters |
| -American Champion | -Boeing 737, 767, 777, Vertol |
| -Astra | -Bombardier Challenger, CRJ |
| -Augusta Helicopters 109, 119 | -Caterpillar Fork Lift |

R0179

- Cessna General Aviation
- Cessna Citation
- Commander Aircraft
- Cirrus Aircraft
- De Havilland
- Diamond Aircraft
- Ercoupe
- Express
- Fairchild/Swearingen
- Garrett Engines
- Grumman American
- Gulfstream
- Hawker
- Hughes Helicopters
- Kaman Helicopters
- Lancair
- Lake Aircraft
- Learjet
- MBB Helicopters
- McDonnell Douglas MD-80, DC-10
- McDonnell Douglas Helicopters
- Mitchell Wing
- Mitsubishi MU-2B
- Mooney
- Piper General Aviation
- Pilatus PC-12
- Pratt & Whitney Engines
- Precision Airmotive
- Rans
- Raytheon -Revolution Mini 500
- Rockwell OV-10
- Robinson Helicopter
- Rotax Engines
- Schweizer Helicopter
- Sikorsky S-58, S-61, S-76
- Taylorcraft
- Teledyne Continental Motors
- Textron Lycoming Engines
- Turbo Mecca Engines
- Ultralight
- Vans
- Westwind
- Zivco

## PROFESSIONAL MEMBERSHIPS

→ International Society of Air Safety Investigators (ISASI)
→ Vice President Colorado/Wyoming ISASI Chapter
→ Aircraft Owners & Pilots Association (AOPA)
→ National Council of Examiners for Engineering & Surveying (NCEES) (June 26, 2009)

## AREAS OF SPECIALIZATION

→ Fixed Wing Accident Reconstruction Analysis and Testing
→ Helicopter Accident Reconstruction Analysis and Testing
→ Flight Path Analysis
→ Mechanical, Pneumatic and Hydraulic Systems
→ Aircraft Performance
→ Aircraft Auto Pilot Systems
→ Aircraft Navigation Systems
→ Aircraft Design and Operation
→ Aircraft Control Systems
→ Aircraft Fuel Systems
→ Aircraft Crashworthiness
→ Helicopter and Fixed Wing Structural Design and Failure Analysis

R0180

- FAA Regulations
- FAA Airworthiness Directives
- Vehicular Kinematic Impact Analysis and Mathematical Modeling of Crashes
- Pressurization Systems
- Aircraft Vacuum Systems
- Carburetor Design and Operation
- Rotorcraft Aerodynamics
- In-Flight Break Up
- Video Animation
- Aircraft Systems Analysis
- Fluid Mechanics
- Internal combustion engine failures
- Fuel Injection Systems
- Turbine engine failures
- Mid Air Collisions
- Post Impact Fire Investigation
- Aircraft Crash Survival Design
- Aircraft Avionics
- Aircraft Engine Vibration
- Wire Strike Protection
- Aircraft Stall Protection

## PUBLICATIONS

- Robb, Gary C. (2010). *Helicopter Crash Litigation*. Tucson, AZ: Lawyers & Judges Publishing Company Inc. – Technical Advisor and Contributor

R0181

# LISTING OF DEPOSITIONS AND TRIAL APPEARANCES

### Of

## COLIN A. SOMMER

**Aeroscope, Inc.**
**11901 Allison Street**
**Broomfield, Colorado 80020**
**(303) 465-4414**

**This listing was updated as of December 2014 and dates back to July of 2006. The entries are recorded chronologically by date.**

R0182

| PLAINTIFFS V. DEFENDANTS | TYPE | DATE |
|---|---|---|
| Berrios vs Mitsubishi | Deposition | July 28, 2006 |
| Lathram v Hendrick | Deposition | February 15, 2007 |
| Kelley vs Helicopter Services | Deposition | May 5, 2007 |
| Baldwin/Linner/Wells | Deposition | June 27, 2007 |
| Casey vs. Beech Aircraft | Deposition | March 5, 2008 |
| Saler vs. Honeywell International | Deposition | August 6, 2008 |
| Little vs Piper | Deposition | January 21, 2009 |
| Bunch vs. Folawn | Deposition | May 8, 2009 |
| Vincent vs Omniflight Helicopters | Deposition | November 4, 2009 |
| Olauson vs TR Builder | Deposition | January 4, 2010 |
| Ovesen v Mitsubishi | Deposition | May 26, 2010 |
| Robinson vs Diamond | Deposition | June 16, 2010 |
| Pease vs Kelly Aerospace | Deposition | December 1, 2010 |
| Jensen vs Modern Aero | Deposition | February 16, 2011 |
| Ketcheson/Wyndham | Trial | February 22, 2011 |
| Grab v Syracuse | Deposition | December 13, 2011 |
| Bouret vs Caribbean Aviation | Trial | February 10, 2012 |
| Higley vs Cessna | Deposition | April 12, 2012 |
| Freeman vs Teledyne | Deposition | June 20, 2012 |
| Bringuier | Deposition | June 29, 2012 |
| Bringuier | Deposition | August 14, 2012 |
| Pease vs Lycoming Engines | Trial | September 6, 2012 |
| J Jones vs Teledyne | Deposition | September 18, 2012 |
| Freeman vs TCM | Trial | September 25, 2012 |
| Menne vs Cessna Aircraft | Deposition | October 8, 2012 |
| Belz | Deposition | May 9, 2013 |
| Higley vs Cessna | Trial | July 15, 2013 |
| Barber vs Avco | Deposition | August 9, 2013 |
| Toppins vs Couch | Deposition | October 29, 2013 |
| Mitts | Deposition | November 13, 2013 |
| Roberts | Deposition | March 5, 2014 |
| Krinitt v Idaho Department of Fish and Game | Deposition | March 11, 2014 |
| Feldkamp | Deposition | August 26, 2014 |
| Littlejohn | Deposition | November 6, 2014 |
| Judson | Deposition | November 20, 2014 |

R0183

Colonel William S. Lawrence, U. S. Marine Corps, (Retired)
6825 Nob Hill Drive, North Richland Hills, TX 76182
817-560-1840 Home   817-291-9684 Mobile

Multi-war experienced combat and experimental test pilot
Extensive education and experience in aviation
Experienced aviation and pilot expert

## *Extensive Aviation Experience*
- Associate Fellow, Society of Experimental Test Pilots
- Graduate, U. S. Naval Test Pilot School
- 45+ years of flight experience:  4000+ hours in 120 types and models
- Ten years active flight test in helicopter and fixed wing, with extensive experience in:
  - Light, Medium & Heavy utility, transport & attack helicopters
  - Light and Medium single & twin-engine piston and turboprop aircraft
  - Design and conceptual development of advanced cockpit integrated systems design
  - Flight simulator development and evaluation
- Broad exposure to design, development, and evaluation of existing and emerging propulsion systems, flight controls, navigation and ordnance systems, simulator and anti-submarine warfare systems
- Highly trained and experienced in aerodynamics, mechanics, associated structure and systems design considerations, industry and government program management, specification compliance, and training
- Former Adjunct Professor, Embry Riddle Aeronautical University
- DPR/Test Pilot for CirroTek LLC -- the Wind Rose Project

## *Broad-Based, In-depth Qualifications in Fixed, Rotary Wing, Experimental Aviation*
- Tasked with command and control of all Marine, Navy, & Coast Guard rotorcraft testing
- Senior fixed wing and helicopter test pilot in U. S. Marine Corps
- Program manager for XV-15 and MV-22A Tilt Rotor flight test programs, including first flights
- Project flights involving over 150 projects in 60 types of helicopters and fixed wing aircraft
- Extensive knowledge of government acquisition process
- Fixed and rotary wing combat experience in both Vietnam and Desert Storm
- Published in numerous technical and safety magazines, newspapers, & government reports

## *Education*
- Bachelor of Arts – Mathematics
- Master of Science -- Information and Computer Science
- Graduate, U. S. Naval Test Pilot School
- Graduate, Defense Systems Management College
- Graduate, Embry Riddle Aeronautical University Aviation Safety Management Program

## *Pilot and Aviation Expert (160 cases in 20+ years) – Qualified in Federal Court*
- Government acquisition/specification/contract procedures
- Military/civilian accident investigation techniques and procedures
- Military/civil aircraft operations and procedures
- Cockpit resource management/human factors/pilot techniques and emergency procedures
- Documentation search and evaluation of military/civil aircraft
- Video/still frame accident documentation/accident reconstruction

R0184

## TESTIMONY FROM 2010-2014 (AT DEPOSITION AND AT TRIAL)

Esposito v. Silver State Helicopters, LLC et.al.      Deposition  11/17/10
    District Court, City and County of Denver, Colorado.  Retained by Roberts,
    Levin,  Rosenberg, Attorneys at Law, Denver, CO,  (Ross Buchanan)

Lee v. Robinson Helicopter Co., Deposition 4/26/11
    Superior Court of Washington for King County - retained by Baum, Hedlund,
    Aristei,and Goldman, Los Angeles, CA (Ilyas Aknari and Ronald Goldman)

Echevarria v. Robinson Helicopter Co. Civil No. 09-2034 (GAG), Deposition 5/2/11
    United States District Court for the District of Puerto Rico - retained by Rosello &
    Morales, CSP, San Juan, PR (Carlos Morales)

Ferguson v. Army Fleet Support, LLC, Bell Helicopter      Deposition  6/15/11
    Middle District of Alabama, In the Southern Division, Civil Action No. 1:09-ev-
    00635- CSC - retained by Slack and Davis, Austin, TX (Mark Pierce)

O'Connor v. Southern California Edison    Deposition 10/19/11
    Superior Court of California, County of Los Angeles, Case #BC434539
    Retained by Baradad & Paboojian, Fresno, CA (Warren Paboojian)

Long/Holtmeier v. Robinson Helicopter Rule 26 Report 12/29/2011
    United States District Court, Western District of Missouri, Southern Division,
    noted as Case Nos. 6:09-CV-03283-ODS, 6:09-CV-05066-ODS, and 6:09-CV-
    03311-ODS. – Retained by Baum, Hedlund, Aristei, and Goldman, PC, Los
    Angeles, CA, in July, 2011 (Ilyas Akbari and Ron Goldman), and have also been
    retained by GRAY, RITTER & GRAHAM PC, St. Louis, MO and JAMES
    LEGAL SERVICES, Lee's Summit, MO

Younan/Hessenflow v. Rolls Royce Corporation and MD Helicopters, Inc. Declaration In
Support of Plaintiff's Response in Opposition to Defendant MDHI's MSJ 2/3/2012
    United States District Court, Southern District of California, Civil Action No. 09
    CV 2136-WQH (BGS); retained by Katzman, Lampert, and McCune (Bruce
    Lampert) in September, 2011

Younan/Hessenflow v. Rolls Royce Corporation and MD Helicopters, Inc. Rule 26
Report 1/27/12 … same cite as above .

Younan/Hessenflow v. Rolls Royce Corporation and MD Helicopters, Inc. Rebuttal
Report 2/14/2012 --- same cite as above

Younan/Hessenflow v. Rolls Royce Corporation and MD Helicopers, Inc. Deposition,
3/6/12
… same cite as above

R0185

Takacs v. American Eurocopter, LLC et al. Deposition 3/22/2012
United States District Court, 327th Judicial District, El Paso County, Texas; retained by Slack & Davis, Austin, TX (Mark Pierce) in March, 2009

Sheahan v. Sierra Pacific Power          Deposition      8/17/12
District Court, Clark County, Nevada; retained by Macaluso and Associates, Carlsbad, CA (Todd Macaluso) in May, 2012

Hanak et al v. Dyncorp International Deposition      10/31/12      Trial 1/12/14
District Court, Western District of Texas, San Antonio Division; retained by Katzman, Lampert, & McCune, Troy, MI (David Katzman) and by Napoli, Bern, Ripka, and Shkolnik, New York City, NY (Hunter Shkolnik) in March, 2012

Downey et al. v Cirrus et al.          Deposition      10/9/13
Circuit Court, Cook County, Illinois, County Department, Law Division; retained by Clifford Law Offices, Chicago, IL (Kevin Durkin), in late 2010

Mitts et al. v. Sikorsky et al.          Deposition 11/26/13
District Court, Southern District of Texas, Houston Division; retained by Law Offices of Dewayne Layfield, Beaumont, TX  (Dewayne Layfield) in April, 2012 (plus 5 affidavits)

Roberts et al. v. USA          Deposition 3/11/14
District Court, Middle Division of Florida, Orlando Division; retained by Florida Aviation Counsel, Orlando, FL (Brian Hill) in March, 2013

Carter-McNair v. Goodrich Pump & Engine Controls Systems      Deposition 4/8/14
District Court, Northern District of Texas, Dallas Division, retained by Slack & Davis, Austin, TX (Ladd Sanger) in November, 2009

Bhanot-Chapman v. Sundance Helicopters   Deposition 5/13/14
District Court, Clark County, Nevada; retained by Robb & Robb, Kansas City, MO (Gary Robb) in October, 2013

Dunaway v. Perry          Deposition 7/2/14
Superior Court, Maricopa County, Arizona; retained by Gallagher & Kennedy, Phoenix, AZ (Patrick Magroder) in November, 2012

R0186

# SRI KUMAR, Ph.D.
## (Srirangam Kumaresan)
Tel: 706 - 654 - 4830

## RESEARCH EXPERTISE
- Biomechanics of human injury.
- Biomedical/Biomechanical engineering.
- Injury analysis of protective mechanical systems in crashes.

## QUALIFICATIONS AND EXPERIENCE

Dr. Kumar's expertise in the field of biomechanics is based on his education, training, knowledge and over 20 years of experience. He received a Ph.D. in Biomedical Engineering from Marquette University, Milwaukee, WI. Dr. Kumar served as a faculty member at the Department of Neurosurgery, Medical College of Wisconsin, Milwaukee, WI, which is a leading research center in the biomechanical analysis of human injuries funded by federal government agencies. While at the Medical College of Wisconsin, he worked with the National Highway Traffic Safety Administration (NHTSA) to develop injury criteria for adult and child dummies. Dr. Kumar's research work includes biomechanical analysis of the head-neck system, thoracic-abdominal complex and extremities. His area of expertise also encompasses the biomechanical evaluation of vehicle restraint systems to assess injuries to the pediatric and adult population during frontal, rear, roll-over, under-ride and side impact crashes. In addition to motor vehicle related injuries, Dr. Kumar analyzed and evaluated the mechanism of injuries in off-highway, recreation, sports, aviation, treadmill, playground, industrial and utility equipment accidents. He has published 230 research articles and holds three US patents in the area of Biomedical/Biomechanical Engineering. Dr. Kumar is associated with many nationally recognized societies and experts in the field of biomechanics, occupant kinematics, accident reconstruction and other automotive disciplines. He taught a course on injury biomechanics at the University of California, Santa Barbara, CA. Dr. Kumar has been elected a Fellow of the American Institute of Medical and Biological Engineering (AIMBE). He has consulted on more than 2000 real world accidents to determine the mechanism of injuries to the human body and the corresponding biomechanical engineering causation of injuries.

## PROFESSIONAL EXPERIENCE

| | | |
|---|---|---|
| 2007 - | Principal | Safety Research Institute<br>Atlanta (Hoschton), GA |
| 2005 - 2007 | Vice President | Biomechanics Institute<br>Santa Barbara, CA |
| 2000 - 2005 | Director | Biomechanics Institute<br>Santa Barbara/Milwaukee |
| 2003 - 2007 | Visiting Faculty | Department of Mechanical Engineering<br>University of California, Santa Barbara |
| 2000 - 2003 | Adjunct Professor | Department of Computer Science<br>University of California, Santa Barbara |
| 1999 - 2000 | Adjunct Professor | Department of Biomedical Engineering<br>Marquette University, Milwaukee |
| 1998 - 2000 | Assistant Professor | Department of Neurosurgery, Medical College of Wisconsin<br>VA Medical Center Neuroscience Research, Milwaukee |
| 1994 - 1998 | Research Engineer | Department of Neurosurgery, Medical College of Wisconsin<br>VA Medical Center Neuroscience Research, Milwaukee |
| 1988 - 1993 | Research Associate | Department of Biomedical Engineering/Ocean Engg. Center<br>Indian Institute of Technology, Madras, India |

R0187

## BIOMEDICAL ENGINEERING SOCIETY HONOR
Fellow, American Institute of Biological and Medical Engineering (AIBME)

## EDUCATION

| | | | |
|---|---|---|---|
| MBA | General Administration | University of California at Los Angeles, CA | 2005 |
| PhD | Biomedical Engineering | Marquette University, Milwaukee, WI | 1997 |
| MSBE | Biomedical Engineering | Indian Institute of Technology, India | 1993 |
| BSME | Mechanical Engineering | Kamaraj University, India | 1988 |

## PATENTS
- Modular Patient Support System (US Patent # 7,028,351)
- Rapid Medical Evacuation System for Trauma Patients (US Patent # 7,188,880)
- Patient Support System for Medical Transport Vehicles (US Patent # 7,328,926)

## PROFESSIONAL HONORS AND AWARDS
SAE Member Service Award
SAE Excellence in Oral Presentation Award
Bioengineering Symposium, Oral Presentation Award, US Air Force Academy
Who's Who in Medicine and Healthcare
Who's Who in Science and Engineering
Sigma Xi, National Honor Society for Science and Engineering
Bioengineering Symposium, Poster Presentation Award, Virginia Tech
University Consortium SDRC Finite Element Model Calendar Contest Award, Milford
Best Paper Award at All India NISA User's Conference, India
Meritorious Student Paper Writing Competition Award, India

## PROFESSIONAL COMMITTEES
American Association of Automotive Medicine (AAAM), Scientific Program Committee
Society of Automotive Engineers, Transaction Selection Committee
Rocky Mountain Bioengineering Symposium, Awards Committee & Board Member
American Society for Testing and Materials, Spine Committee
Society of Automotive Engineers, Advanced Concepts Committee
International Conference on Scientific Computing, Scientific Committee
American Society of Mechanical Engineers, Solid Mechanics Technical Committee

## RESEARCH GRANT
- Co-Investigator in Department of Veteran Affairs Medical Center Merit Review Grant, "Biomechanics of Cervical Spondylotic Degeneration", 10/1998 - 09/2001, $265,800.
- Co-Investigator, Injury Research Center at Medical College of Wisconsin – Center Grant Center for Disease Control, "Clinical Biomechanics of Penetrating Traumatic Brain Injuries", 09/2001 - 08/2002, $ 100,000.

## RESEARCH GRANT REVIEWER/CONSULT
Center for Disease Control
National Science Foundation
University of Alabama Injury Research Center
Medical College of Wisconsin Injury Research Center
Colorado Bio-seed Research Grant

R0188

Action Research Foundation of England
Health Research Council of New Zealand

**INVITED GUEST EDITOR**
Journal of Biomedical Sciences Instrumentation, Vol 45 (48), 2009
Journal of Mathematical Modeling and Scientific Computing in Biomechanics, Vol. 13 (1-2), 2001

**JOURNAL/CONFERENCE REVIEWER/CONSULT**
Annals of Biomedical Engineering
Accident Analysis & Prevention Journal
Society of Automotive Engineers Proceedings
Forensic Science International Journal
Medical Engineering Physics Journal
ASME Bioengineering Conference
Spine Journal
ASME Biomechanical Engineering Journal
Medical Biological Engineering & Computing Journal
Rocky Mountain Bioengineering Symposium
Stapp Car Crash Conference
Journal of Biomechanics
Journal of Mechanics in Medicine and Biology
Journal of Medical Systems

**PROFESSIONAL AFFILIATIONS**
American Society of Mechanical Engineers
Association for the Advancement of Automotive Medicine
American Society for Testing and Materials
Biomedical Engineering Society
Biomedical Engineering Society of India
New York Academy of Sciences
Society of Automotive Engineers
Rocky Mountain Bioengineering Symposium

**TEACHING**
Injury Biomechanics at University of California, Santa Barbara, CA (2003 - 2007)
Principles of Mechanics, RVS College of Engineering, India (1988)

**CONFERENCE CHAIR**
Rocky Mountain Bioengineering Conference, Milwaukee, 2009

**SCIENTIFIC SESSION MODERATOR/ORGANIZER**
1997    Biomechanics of Human Head and Neck. International Conference on Computing, Washington, DC.
1998    Impact Biomechanics. ASME Winter Meeting, Anaheim, CA.
1999    Spine. ASME Summer Meeting, Big Sky, MN.
1999    Head-Spine Biomechanics and Neuroscience. International Conference on Computing, Chicago, IL.
1999    Whiplash Biomechanics. ASME Winter Meeting.
2000    Impact Biomechanics. ASME Winter Meeting, Orlando, FL.

3

R0189

| | |
|---|---|
| 2001 | Medical Imaging. Rocky Mountain Bioengineering Symposium, Copper Mountain, CO |
| 2001 | Vehicular and Pediatric Biomechanics. ASME Winter Meeting, New York, NY |
| 2001 | Pediatric Biomechanics. ASME Summer Meeting, Snowbird, UT |
| 2001 | Vehicular Biomechanics. ASME Summer Meeting, Snowbird, UT |
| 2002 | Injury Biomechanics. SAE Off-Highway International Congress, Las Vegas. |
| 2002 | Trauma and Injury. Rocky Mountain Bioengineering Symposium, Copper Mountain, CO. |
| 2002 | Vehicular Biomechanics. ASME Winter Meeting, New York |
| 2002 | Spine Biomechanics. ASME Winter Meeting, New York |
| 2003 | Impact Biomechanics. Rocky Mountain Bioengineering Symposium, Biloxi, MS |
| 2003 | Occupant Restraint System. Southern Biomedical Engineering Symposium, Charlotte, NC |
| 2003 | Vehicle crashworthiness-I. ASME Winter Meeting, Washington, DC |
| 2003 | Vehicle crashworthiness-II. ASME Winter Meeting, Washington, DC |
| 2004 | Vehicular Biomechanics and Occupant protection. ASME Winter Meeting, Anaheim, CA |
| 2005 | Trauma and Vehicular Biomechanics. ASME Summer Meeting, Vail, CO |
| 2005 | Injury Biomechanics. ASME Summer Meeting, Vail, CO |
| 2007 | Accident and Trauma Biomechanics. ASME Summer Meeting, Keystone, CO |
| 2009 | Spine Biomechanics. Rocky Mountain Bioengineering Symposium, Milwaukee, WI |
| 2009 | Biomedical systems. Rocky Mountain Bioengineering Symposium, Milwaukee, WI |
| 2009 | Post Crash, Association for the Advancement of Automotive Medicine, Baltimore, MD |
| 2010 | Biomedical systems and Road Safety. Rocky Mountain Bioengineering Symposium, Laramie, WY. |
| 2010 | Injury Epidemiology. World Congress of Biomechanics, Singapore. |
| 2011 | Bioimaging. Rocky Mountain Bioengineering Symposium, Denver, CO |
| 2012 | Biomechanics. Rocky Mountain Bioengineering Symposium, Virginia Tech, Blacksburg, VA |

**STUDENT ADVISOR/RESEARCH COMMITTEE MEMBER**

Peter Khouphongsy, Senior Student, Biomedical Engineering, Milwaukee School of Engineering, "Fabrication of artificial cervical spine vertebrae using Rapid Prototyping", 1997 – 1998.

Brian Stemper, Senior Student, Biomedical Engineering, Milwaukee School of Engineering, "Development of computer image model of cervical spine vertebrae based on CT images", 1998.

Joy Krekelberg, Senior Student, Biomedical Engineering, Marquette University, "Biomechanical analysis of degenerated lumbar spinal columns" , 1998.

Amy Yang, Junior Student, Biomedical Engineering, Marquette University, "Biomechanical analysis of normal lumbar spinal columns", 1998.

Joseph Khouphongsy, Senior Student, Biology, Carroll College, "Histological study of intervertebral disc during aging process", 1998-1999.

Brian Stemper, Graduate Student (Ph.D.), Biomedical Engineering, Marquette University, Doctoral Dissertation, "Finite element modeling of head-neck for whiplash injury study", 1999 – 2004.

Amy Yang, Senior Student, Biomedical Engineering, Marquette University, "Brain penetration finite element model to study the gun-shot wound mechanics", Undergraduate independent study, 1999.

Rebecca Zick, Senior Student, Biomedical Engineering, Milwaukee School of Engineering, "Development of artificial cervical spine heterogeneous vertebrae model", 1999.

John De Rosia, Graduate Student (Ph.D.), Biomedical Engineering, Marquette University, Biomechanical studies of rear impact, 2006 – 2009.

Lertsmitivanta D, Cadavona D, Burgos T, Heng H, Sakatani T, Senior Student, Mechanical Engineering, University of California, Santa Barbara, "Automotive restraint system", 2007.

4

R0190

Neb Sebastijanovic, Graduate Student (Ph.D.), Mechanical Engineering, University of California, Santa Barbara, Doctoral Dissertation, Monitoring and Restabilizing Structures under External Excitations through Detection and Prediction of Changes in Structural Properties", 2001 - 2008.

Christopher Powe, Graduate Student (Ph.D.), Department of Clinical Health Sciences, University of Mississippi Medical Center, "Morbidity and Mortality Outcomes Among Obese Versus Non-Obese Blunt Trauma Patients in Mississippi", 2009 - 2013.

## PRESENTATIONS/INVITED LECTURES

1993  Three-dimensional finite element analysis of human head with and without protective system subjected to impact. 2nd NISA User's Conference, Bangalore, India.

1994  Free vibration analysis of the human head. International Conference on Recent Advances in Biomedical Engineering, Osmania University, India.

1996  Finite element biomechanics of cervical spine. 6th Injury Prevention through Biomechanics Symposium, Center for Disease Control, Detriot, MI.

1996  Finite element modeling of spine biomechanics. Department of Biomedical Engineering Department, Indian Institute of Technology, Madras, India (Invited Lecture).

1997  Importance of material properties on spinal components load sharing. International Conference on Mathematical, Computer Modeling & Scientific Computing, Washington DC.

1997  Finite element idealization of the joints of luschka in the cervical spine. International Conference on Mathematical, Computer Modeling & Scientific Computing, Washington DC.

1997  Biomechanics of the human cervical spine using the finite element approach. Biomedical Engineering Conference, Marquette University, Milwaukee, WI.

1997  Biomechanics of cervical spine under whiplash loading. ASME Summer Meeting, Sun River, OR.

1997  Nonlinear Finite element analysis of human cervical spine facet joint capsule. ASME Summer Meeting, Sun River, OR.

1997  Human cervical spine uncovertebral joint anatomy. ASME Summer Meeting, Sun River, OR.

1997  Adult and pediatric human spine finite element analyses. ASME Summer Meeting, Sun River, OR.

1997  Finite element biomechanics of cervical spine interbody fusion. International Conference on IEEE Engineering in Medicine and Biology Society, Chicago, IL.

1997  Age-specific pediatric cervical spine biomechanical responses. Stapp Car Crash Conference, Orlando.

1997  Sensitivity of cervical spine finite element model to material property variations. ASME Winter Meeting, Dallas, TX.

1997  Finite element study of human lower cervical spine. ASME Winter Meeting, Dallas, TX.

1997  Effect of anterior cervical interbody fusion on adjacent segments. Annual Cervical Spine Research Society Meeting, Palm Springs, CA.

1998  Pediatric cervical spine biomechanics. Department of Biomedical Engineering Department, Marquette University, Milwaukee, WI (Invited Lecture).

1998  Adjacent spinal component responses due to cervical anterior interbody fusion. Annual Orthopaedic Research Society Meeting, New Orleans, LA.

1998  Finite element study of geriatric cervical spine. Injury Prevention through Biomechanics Symposium, Center for Disease Control, Detriot, MI.

1998  Cervical spine biomechanics. Department of Biomedical Engineering Department, Indian Institute of Technology, Madras, India (Invited Lecture).

1998  Biomechanics of the cervical spine. Department of Orthopedics, Sri Ramachandra Medical College and Research Institute, Madras, India (Invited Lecture).

1998  Geriatric cervical spine biomechanics. ASME Winter Meeting, Anaheim, CA.

1998  Biomechanically analogous cervical spine model. ASME Winter Meeting, Anaheim, CA.

5

R0191

| | |
|---|---|
| 1998 | Regional load sharing of cervical intervertebral discs. ASME Winter Meeting, Anaheim, CA. |
| 1999 | Development of mathematical model of WORLDSID-2 dummy. ISO Task Group of Design of WORLDSID-2 dummy, Ottawa, Canada. |
| 1999 | Tension-extension biomechanics of the cervical spine. ASME Summer Meeting, Big Sky, MO. |
| 1999 | Biomechanical responses of pediatric cervical spine using nonlinear finite element approach. ASME Summer Meeting, Big Sky, MO. |
| 1999 | Finite element modeling of spinal ligaments. ASME Summer Meeting, Big Sky, MO. |
| 1999 | Summary of pediatric biomechanical responses. ASME Summer Meeting, Big Sky, MO. |
| 1999 | Microstructural characterization of intervertebral disc for mathematical modeling studies. Conference on Mathematical, Computer Modelling & Scientific Computing, Chicago, IL. |
| 1999 | Biomechanics of human cervical spinal column under physiologic loads. Advances in Bioengineering, ASME Winter Meeting, Nashville, TN |
| 1999 | Intervertebral disc morphology in biomechanics. ASME Winter Meeting, Nashville, TN |
| 1999 | Biomechanics of cervical spine ligaments. ASME Winter Meeting, Nashville, TN |
| 1999 | Human Head-Neck Kinetics under whiplash loading. ASME Winter Meeting, Nashville, TN |
| 2000 | Morphology of young and old cervical spine intervertebral disc tissues. Annual Rocky Bioengineering Symposium, US Air Force Academy, Colorado Springs, CO |
| 2000 | Finite element methods in cervical spine Biomechanics, Department of Neurosurgery Grand Rounds, Medical College of Wisconsin, Milwaukee |
| 2000 | Computational Injury Biomechanics, Department of Computer Science, Colloquium, University of California, Santa Barbara (Invited Lecture) |
| 2000 | Finite element modeling of penetrating traumatic brain injuries. ASME Winter Meeting, Orlando, FL |
| 2000 | Biomechanics of lumbar spondylotic degeneration. ASME Winter Meeting, Orlando, FL |
| 2001 | Pediatric neck injury scaling and tolerance. Rocky Mountain Bioengineering Symposium, Copper Mountain, CO |
| 2001 | Biomechanical modeling of penetrating traumatic head injury: A finite element approach. Rocky Mountain Bioengineering Symposium, Copper Mountain, CO |
| 2001 | Comparison of biomechanical head-neck responses of hybrid III dummy and whole body cadaver. Rocky Mountain Bioengineering Symposium, Copper Mountain, CO |
| 2001 | Head and Neck Injury Biomechanics. Department of Mechanical and Production Engineering, Nanyang Technological University, Singapore (Invited Lecture) |
| 2001 | Pediatric Head and Neck Injury Biomechanics. Department of Biomedical Engineering, Indian Institute of Technology, Madras, India (Invited Lecture) |
| 2002 | Biomechanical injury evaluation of laminated glass during rollover. SAE Off-highway International Congress meeting, Las Vegas. |
| 2002 | Injury Biomechanics. Karpagam College of Engineering, India (Invited Lecture). |
| 2003 | Injury biomechanics. Indian Institute of Technology, Madras, India (Invited Lecture). |
| 2003 | Trauma biomechanics. Anna University, India (Invited Lecture). |
| 2003 | Biomechanics of injury and occupant kinematics in recreational rides. Southern Biomedical Engineering Conference, Charlotte, NC. |
| 2003 | Biomechanics of occupant ejection during rollover accidents. Southern Biomedical Engineering Conference, Charlotte, NC. |
| 2003 | Biomechanical analysis of seat belt restraint deformation. Southern Biomedical Engineering Conference, Charlotte, NC. |
| 2004 | Trauma Biomechanics and Vehicular Biomechanics. Department of Mechanical Engineering, University of California, Santa Barbara (Invited Lecture). |

R0192

| 2005 | Injury Biomechanics. Department of Biomedical Engineering, Indian Institute of Technology, India (Invited Lecture). |
|---|---|
| 2006 | Investigation of injury potential through matched pair drop testing. Rocky Mountain Bioengineering Symposium, Rose-Hulman Institute of Technology, Terre Haute, IN. |
| 2006 | Biomechanics of side Impact. Engineering Medicine Biology Society Conference. New York City. |
| 2006 | Biomechanical trauma analysis of spinal cord neurological injury due to fracture-dislocation of posterior elements, Academy of Surgical Research. Tucson, AZ |
| 2007 | Effect of roof strength in injury mitigation during pole impact. Rocky Mountain Bioengineering Symposium, Denver, CO. |
| 2007 | Biomechanics of under ride motor vehicle crashes. Rocky Mountain Bioengineering Symposium, Denver, CO. |
| 2007 | Biomechanical evaluation of occupant anthropometry during frontal collisions. Rocky Mountain Bioengineering Symposium, Denver, CO. |
| 2007 | Inverted drop testing as a mechanism to evaluate rollover occupant injury potential. Rocky Mountain Bioengineering Symposium, Denver, CO. |
| 2007 | Biomechanical analysis of late airbag deployment in motor vehicle crashes using computer simulation, ASME Bioengineering conference, Keystone, CO |
| 2007 | Biomechanical quantification of flexion movement of the human head-neck and rollover accidents, ASME Bioengineering conference, Keystone, CO |
| 2009 | Biomechanical analysis of protective countermeasures in under ride motor vehicle accidents. Rocky Mountain Bioengineering Symposium, Milwaukee School of Engineering, Milwaukee, WI |
| 2009 | Biomechanical analysis of child restraint system. Rocky Mountain Bioengineering Symposium, Milwaukee School of Engineering, Milwaukee, WI |
| 2010 | Biomechanical analysis and injury prevention in off-highway vehicular crashes. Rocky Mountain Bioengineering Symposium, University of Wyoming, Laramie, WY |
| 2012 | Biomechanical analysis of pediatric injuries and child restraint system. Rocky Mountain Bioengineering Symposium, Virginia Tech -Wake Forest University School of Biomedical Engineering and Sciences, Blacksburg, VA |
| 2012 | Experimental biomechanical study of head injuries in lateral falls with skateboard helmet. Virginia Tech - Wake Forest University School of Biomedical Engineering and Sciences, Blacksburg, VA |

## FULL LENGTH PAPER PUBLICATIONS

1. Kumaresan S, Radhakrishnan S, Ganesan N: Mixed models in finite element analysis. *J Computers & Structures* 51(1):117-123, 1994.

2. Kumaresan S, Radhakrishnan S, Ganesan N: Generation of geometry and discretization of closed human head for finite element analysis. *J Medical & Biological Engineering & Computing* 33(3):349-353, 1995.

3. Yoganandan N, Kumaresan S, Voo L, Pintar FA: Finite element modeling of the C4-C6 cervical spine unit. *J Medical Engineering & Physics* 18(7):569-574, 1996.

4. Kumaresan S, Radhakrishnan S: The importance of partitioning membranes of the brain and influence of neck in head injury modelling. *J Medical & Biological Engineering & Computing* 34(1):27-32, 1996.

5. Yoganandan N, Kumaresan S, Voo L, Pintar FA: Finite element applications in human cervical spine modeling. *J Spine* 21(15):1824-1834, 1996.

R0193

6. Voo L, Kumaresan S, Pintar FA, Yoganandan N: Finite element models of the human head. *J Medical & Biological Engineering and Computing* 34(5):375-381, 1996.

7. Yoganandan N, Pintar FA, Kumaresan S, Haffner M, Sances A Jr: Response of lower human thorax to impact. *40th Annual Meeting of Association for the Advancement of Automotive Medicine*, 33-43, 1996.

8. Kumaresan S, Yoganandan N, Pintar FA, Voo LM, Cusick JF, Larson SJ: Finite element modeling of cervical laminectomy with graded facetectomy. *J Spinal Disorders* 10(1):40-46, 1997.

9. Yoganandan N, Kumaresan S, Voo L, Pintar FA: Finite element model of the human lower cervical spine. *ASME J Biomechanical Engineering* 119(1):87-92, 1997.

10. Kumaresan S, Yoganandan N, Pintar FA: Methodology to quantify the anatomy of uncovertebral joints in human cervical spine. *J Musculoskeletal Research* 1(2):131-139, 1997.

11. Yoganandan N, Pintar FA, Kumaresan S, Maiman DJ, Hargarten SW: Dynamic analysis of penetrating trauma. *J Trauma* 42(2):266-272, 1997.

12. Yoganandan N, Pintar FA, Kumaresan S, Haffner M, Kuppa S: Impact biomechanics of the human thorax-abdomen complex. *International J Crashworthiness* 2(2):219-228, 1997.

13. Kumaresan S, Yoganandan N, Pintar FA: Finite element analysis of anterior cervical interbody fusion. *J Bio-Medical Materials and Engineering* 7(4):221-230, 1997.

14. Voo L, Kumaresan S, Yoganandan N, Pintar FA, Cusick JF: Finite element analysis of cervical facetectomy. *J Spine* 22(9):964-969, 1997.

15. Kumaresan S, Yoganandan N, Pintar FA: Pediatric neck modeling using finite element analysis. *International J Crashworthiness* 2(4):367-376, 1997.

16. Yoganandan N, Pintar FA, Kumaresan S, Boynton M: Axial impact biomechanics of the human foot - ankle complex. *ASME J Biomechanical Engineering* 119(4):433-438, 1997.

17. Kumaresan S, Yoganandan N, Pintar FA: Age-specific pediatric cervical spine biomechanical responses. *SAE Trans (41st Stapp Car Crash Conference)* 106:3581-3611, 1997.

18. Yoganandan N, Pintar FA, Kumaresan S, Elhagediab, A: Biomechanical assessment of human cervical spine ligaments. *SAE Trans (42nd Stapp Car Crash Conference)* 107:2852-2861, 1998.

19. Kleinberger M, Yoganandan N, Kumaresan S: Biomechanical considerations for child occupants. *42nd Association for the Advancement of Automotive Medicine* 115-136, 1998.

20. Kumaresan S, Yoganandan N, Pintar FA: Finite element modeling of human cervical spine facet joint capsule. *J Biomechanics* 31:371-376, 1998.

21. Kumaresan S, Yoganandan N, Pintar FA: Posterior complex contribution on the axial compressive and distraction behavior of the cervical spine. *J Musculoskeletal Research* 2(3):257-265, 1998.

R0194

22. Yoganandan N, Kumaresan S, Pintar FA: Pediatric cervical spine biomechanics study using finite element models. *International Conference on the Biomechanics of impacts (IRCOBI)* 349-363, 1998.

23. Kumaresan S, Yoganandan N, Pintar FA: Finite element analysis of cervical spine: material property sensitivity study. *J Clinical Biomechanics* 14(1):41-53, 1999.

24. Maiman DJ, Kumaresan S, Yoganandan N, Pintar FA: Biomechanical effect of anterior cervical interbody fusion on adjacent segments. *J Bio-Medical Materials & Engineering* 9(1):27-38, 1999.

25. Kumaresan S, Yoganandan N, Pintar FA, Maiman DJ: Finite element modeling of the lower cervical spine: Role of intervertebral disc under axial and eccentric loads. *J Medical Engineering & Physics* 21(10), 689-700, 1999.

26. Wheeldon J, Khouphongsy P, Kumaresan S, Pintar FA, Yoganandan N: Finite element model of human cervical spinal column. *Biomedical Sciences Instrumentation* 36: 337-342, 2000.

27. Kumaresan S, Yoganandan N, Pintar FA, Maiman, DJ and Kuppa, S: Biomechanical study of pediatric human cervical spine: A finite element approach. *ASME J Biomechanical Engineering* 122: 60-71, 2000.

28. Kumaresan S, Pintar FA, Yoganandan N, Cusick JF: Morphology of young and old cervical spine intervertebral disc tissues. *Biomedical Sciences Instrumentation* 36: 141-146, 2000.

29. Kleinberger M, Yoganandan N, Kumaresan S: Biomechanics of child occupant protection. *J Crash Prevention and Injury Control* 2(1), 63-73, 2000.

30. Yoganandan N, Kumaresan S, Pintar FA: Geometrical and mechanical properties of human cervical spine ligament. *ASME J Biomechanical Engineering* 122(6):623-629, 2000.

31. Stemper, B, Kumaresan S, Pintar FA, Yoganandan N: Head-neck finite element model for motor vehicle inertial impact: material sensitivity analysis. *Biomedical Sciences Instrumentation* 36: 331-335, 2000.

32. Kumaresan S, Yoganandan N, Pintar FA: Biomechanics of pediatric cervical spine: Compression, flexion and extension responses. *J Crash Prevention and Injury Control* 2(2), 87-101, 2000.

33. Yoganandan N, Pintar FA, Kumaresan S, Gennarelli, Sun, E, Kuppa, S, Maltese, M, Eppinger, R: Pediatric and small female neck injury scale factors and tolerance based on human spine biomechanical characteristics. *International Conference on the Biomechanics of impacts (IRCOBI)* 345-359, 2000.

34. Yoganandan N, Kumaresan S, Pintar F: Importance of material properties on spinal components load sharing. *J Mathematical Modelling and Scientific Computing* 13(1-2): 90-93, 2001.

35. Kumaresan S, Yoganandan N, Pintar FA, Maiman DJ, Goel VJ: Contribution of disc degeneration to osteophytes formation in the cervical spine: A biomechanical investigation. *J Orthopedic Research* 19(5), 977-984, 2001.

36. Pintar F, Kumaresan S, Yoganandan N, Yang A, Stemper B, Gennarelli T: Biomechanical modeling of penetrating traumatic head injury: A finite element approach. *Biomedical Sciences Instrumentation* 37, 429-434, 2001.

9

R0195

37.  Yoganandan N, Kumaresan S, Pintar, F: Biomechanics of the cervical spine Part 2: cervical spine soft tissue responses and biomechanical modeling. *J Clinical Biomechanics* 16(1), 1-27, 2001.

38.  Sances, A, Kumaresan S: Comparison of biomechanical head-neck responses of hybrid III dummy and whole body cadaver during inverted drops. *Biomedical Sciences Instrumentation* 37, 423-427, 2001.

39.  Kumaresan S, Pintar F, Yoganandan N: Finite element modeling of pre-tension in spinal ligaments. *J Mathematical Modelling and Scientific Computing* 13(1-2): 115-119, 2001.

40.  Thacker B, Nicolella D, Kumaresan S, Yoganandan N, Pintar F: Probabilistic finite element analysis of cervical spine. *Ibid* 13(1-2): 12-21, 2001.

41.  Pintar FA, Kumaresan S, Yoganandan N: Geometrical idealization of the uncovertebral joints of the cervical spine. *Ibid* 3(1-2): 133-135, 2001.

42.  Hutchinson J, Rogers C, Bish J, Friedman K, Sances A, Kumaresan S: Finite element analysis of a bicycle helmet. *Ibid* 13(1-2): 128-132, 2001.

43.  Zick R, Kumaresan S, Milkowski L. Computer surface modeling of cervical spine vertebra for rapid prototyping application. *Ibid* 13(1-2): 40-46, 2001.

44.  Kumaresan S, Yoganandan N, Pintar F: Pediatric neck injury scaling and tolerance. *Biomedical Sciences Instrumentation*, 37, 435-440, 2001.

45.  Thacker B, Nicolella P, Kumaresan S, Yoganandan N, Pintar P: "Probabilistic Finite Element Analysis of the Lower Cervical Spine under Eccentric Loading," 8th *International Conference on Structural Safety and Reliability* 13 (1-2): 12-21, 2001.

46.  Kumaresan S, Sances A, Carlin F: Biomechanical evaluation of padding in child seats and padding. *Biomedical Sciences Instrumentation* 38, 453-458, 2002.

47.  Sances A, Carlin F, Kumaresan S: Biomechanical analysis of head-neck force in hybrid – III dummy during inverted vertical drop studies. *Ibid* 38, 459-464, 2002.

48.  Meyer S, Herbst B, Forrest S, Syson S, Sances A, Kumaresan S: Restraints and occupant kinematics in vehicular rollovers. *Ibid* 38, 465-469, 2002.

49.  Sances A, Carlin F, Kumaresan S: Biomechanical injury evaluation of laminated glass during rollover. *SAE Off-highway International Congress meeting* SAE 2002-01-1446, 2002.

50.  Kumaresan S, Sances A, Hutchinson J, Friedman K: Finite element analysis of pediatric head injury. *Computers in Biomechanics and Biomedical Engineering* 1-6, 2002.

51.  Sances A, Carlin F, Kumaresan S: Biomechanical analysis of head-neck force in hybrid – III dummy during inverted vertical drop studies. *Computers in Biomechanics and Biomedical Engineering* 7-11, 2002.

R0196

52. Sances A, Carlin F, Kumaresan S, Enz, B: Biomechanical analysis of glass impacts. *Critical Reviews in Biomedical Engineering* 30(4-6), 345-377. 2002.

53. Sances A, Kumaresan S, Clarke R, Renfroe D, Herbst B, Pozzi M: Biomechanical analysis of motor vehicle seat belt buckles. *Biomedical Sciences Instrumentation* 39, 229-240, 2003.

54. Sances A, Kumaresan S, Carlin F: Biomechanical injury evaluation of laminated glass of side windows and sunroofs during rollover accidents. *Ibid* 39, 241-244, 2003.

55. Forrest S, Herbst B, Myers S, Sances A, Kumaresan S: Inverted vehicle drop test and neck injury potential. *Ibid* 39, 251-258, 2003.

56. Myers S, Forrest S, Herbst B, Sances A, Kumaresan S: Motor vehicle seat belt analysis during rollover. *Ibid* 39, 229-240, 2003.

57. Saczalski K, Sances A, Kumaresan S, Burton J, Lewis P: Experimental injury study of children seated behind collapsing front seats in rear impacts. *Ibid* 39, 259-265. 2003.

58. Sances A, Kumaresan S, Herbst B, Meyer S, Hock D: Biomechanics of seat belt restraint system. *Biomedical Sciences Instrumentation* 40, 377-380, 2004.

59. Saczalski K, Sances A, Kumaresan S, Burton J, Lewis P: Multivariate head injury threshold measures for various sized children seated behind vehicle seats in rear impacts. *Ibid* 40, 381-386, 2004.

60. Meyer S, Forrest S, Herbst B, Hayden J, Orton T, Sances A, Kumaresan S: Testing and injury potential analysis of rollovers with narrow object impacts. *Ibid* 40, 395-400, 2004.

61. Saczalski K, Saul J, Sances A, Kumaresan S, Burton J, Lewis P: Computer simulation of rear impact biomechanical occupant response for front and rear seated passengers. *FISITA,* F20044U065, 2004.

62. Sances A, Kumaresan S, Clarke R, Herbst B, Meyer S: Biomechanical analysis of occupant kinematics in rollover motor vehicle accidents: Dynamic spit test. *Biomedical Sciences Instrumentation* 41, 104-109, 2005.

63. Herbst B, Forrest S, Orton T, Meyer S, Sances A, Kumaresan: The effect of roof strength on reducing occupant injury in rollovers. *Ibid* 41, 97-103, 2005.

64. Forrest S, Orton T, Peddar D, Meyer S, Herbst B, Sances A, Kumaresan: Investigation of injury potential through matched pair drop testing. *Biomedical Sciences Instrumentation* 42, 488-494, 2006.

65. Mihora D, Hutchinson J, Friedman K, Valente J, Flanagan T, Sances A, Kumaresan S: Biomechanical evaluation of helmet retention systems. iCrash 2006-09, 2006.

66. Frieder R, Kumar S, Sances A: Biomechanical evaluation of occupant anthropometry during frontal collisions. *Biomedical Sciences Instrumentation* 43, 75-80, 2007.

67. Kumar S, Sances A, Enz B, Frieder R: Biomechanics of under ride motor vehicle crashes. *Biomedical Sciences Instrumentation* 43, 30-33, 2007.

R0197

68. Frieder R, Kumaresan S, Sances A: Modular medical evacuation fixture for use in military and disaster response vehicles. *SAE 2007-01-1767*, 2007.

69. Friedman K, Hutchinson J, Mihora D, Kumar S, Frieder R, Sances A: Effect of roof strength in injury mitigation during pole impact. *Biomedical Sciences Instrumentation* 43, 69-74, 2007.

70. Frieder R, Kumaresan S: Computer analysis of injuries to rear seat child occupants restrained using a shared lap/shoulder belt. *SAE 2007-01-2513*, 2007.

71. Kumar S, Friedman K, Hutchinson J, Mihora D, Harcourt, J: Biomechanical analysis of child restraint system. *Biomedical Sciences Instrumentation* 45, 436-441, 2009.

72. Kumar S, Enz B, Ponder P, Anderson B: Biomechanical analysis of protective countermeasures in under ride motor vehicle accidents. *Biomedical Sciences Instrumentation* 45, 89-94, 2009.

73. Burton J, Kumar S, Lewis P, D'Aulerio L, Kleinberger M, Strickland D: Biomechanical analysis and injury prevention in off-highway vehicular crashes. *Biomedical Sciences Instrumentation* 46, 426-432, 2010.

74. Friedman K, Hutchinson J, Mihora D, Kumar S, Strickland D: Sleeper cab occupant protection in heavy truck rollovers. *SAE 2011-01-2295*, 2011.

75. Kumar S, Harcourt J, Herbst B, Strickland D: Biomechanical analysis of pediatric injuries and child restraint system. *Biomedical Sciences Instrumentation* 48, 232-238, 2012.

76. Kumar S, Herbst B, Strickland D: Experimental biomechanical study of head injuries in lateral falls with skateboard helmet. *Biomedical Sciences Instrumentation* 48, 239-245, 2012.

## BOOK/BOOK CHAPTERS

77. Kumaresan S: Three-dimensional finite element analysis of human head with and without protective system subjected to impact. *MS Thesis*, Indian Institute of Tech., India, 1993, p 152.

78. Kumaresan S, Radhakrishnan S and Ganesan N: Free vibration analysis of the human head. *In Recent Advances in Biomedical Engineering*, Reddy DC, Tata-McGraw Hill, India, 1994, pp 98-101.

79. Kumaresan S, Voo L, Yoganandan N and Pintar FA: Finite element analysis of the cervical spine. *In Current Trends in Biomedical Engineering*, Radhakrishnan , Reddy (eds), Allied Publishers, 1996, pp 53-56.

80. Kumaresan S: Clinical studies of the human cervical spine using finite element modeling. *Ph.D. Dissertation*, Marquette University, Milwaukee, WI, 1997, p 194

81. Kumaresan S, Yoganandan N, Pintar FA and Cusick J: Biomechanical analysis of cervical laminectomy and facetectomy using finite element method. *In Frontiers in Head and Neck Trauma: Clinical and Biomechanical*. Yoganandan N, Pintar FA, Larson SJ, Sances A Jr. (eds). IOS Press, 1998, pp 621-627.

R0198

82. Kumaresan S, Yoganandan N Pintar FA, Maiman DJ and Cusick J: Biomechanics of cervical discectomy and fusion: A finite element approach. *In Frontiers in Head and Neck Trauma: Clinical and Biomechanical.* Yoganandan N et al, IOS Press, 1998, pp 587-594.

83. Kumaresan S, Yoganandan N Pintar FA: Human cervical spine uncovertebral joint anatomy. *In Frontiers in Head and Neck Trauma: Clinical and Biomechanical.* Yoganandan N et al, IOS Press1998, pp 34-41.

84. Yoganandan N, Kumaresan S, Pintar FA: Lower cervical spine finite element analysis. *In Frontiers in Head and Neck Trauma: Clinical and Biomechanical.* Yoganandan N et al, IOS Press, 1998, pp 492-508.

85. Kumaresan S, Yoganandan N, Pintar FA and Mueller W: One, three and six year old cervical spine finite element models. *In Frontiers in Head and Neck Trauma: Clinical and Biomechanical.* Yoganandan N et al,. IOS Press, 998, pp 509-523.

86. Yoganandan N, Kumaresan S. Pintar FA, Gennarelli, TA: Biomechanical tolerance criteria for pediatric populations. *In Child Occupant Protection in Motor Vehicle Crashes,* Professional Publ, 1999, pp 97 – 112.

87. Kumaresan S, Yoganandan N, Pintar FA: Facet joint modeling in whiplash. *In Frontiers in Whiplash Trauma: Clinical and Biomechanical.* Yoganandan N, Pintar FA, (eds). IOS Press, 510-516, 2000.

88. Kumaresan S, Yoganandan N, Pintar FA: Age-dependent neck scale factors based on geometrical and spine component data under tension, extension, compression, and flexion. Appendix F - Development of advanced injury criteria for the assessment of advanced automotive restraint systems. *US Department of Transportation, NHTSA Report,* 1999.

89. Yoganandan N, Kumaresan S, Pintar FA, Gennarelli TA: Pediatric biomechanics. *In Accidental Injury: Biomechanics and Prevention,* Second Edition. AM Nahum, JW Melvin (eds), Springer-Verlag, NY, 2001.

90. Kumaresan S, Sances A: Human injury tolerance related to automotive safety. *In Mark's Handbook for Mechanical Engineers* 11th Edition, 20-104, 2007.

**SHORT PAPERS**

91. Kumaresan S: Solar air heat pump. *Institution of Engineers (India),* Annamalai University Students Chapter, Chidambaram, India, 1988.

92. Kumaresan S, Radhakrishnan S, Ganesan N: Three-dimensional finite element analysis of human head with and without protective system subjected to impact. *2nd NISA User's Conference,* India, pp 1-4, 1993.

93. Kumaresan S, Radhakrishnan S, Ganesan N: Three-dimensional finite element analysis of human head subjected to impact. *2nd World Congress of Biomechanics,* Netherlands, p 23, 1994.

94. Yoganandan N, Voo L, Pintar FA, Kumaresan S, Cusick J, Sances A Jr: Finite element analysis of the cervical spine. *5th Symposium on Injury Prevention Through Biomechanics,* Centers for Disease Control, Detroit, pp 149-155, 1995.

95. Voo L, Denman JA, Kumaresan S, Yoganandan N, Pintar FA, Cusick JF: Development of a 3-D finite element model of the cervical spine. *ASME Adv in Bioeng* BED-31:13-14, 1995.

13

R0199

96.  Kumaresan S, Voo L, Yoganandan N, Pintar FA:  Finite element biomechanics of the cervical spine.  *6th Symposium on Injury Prevention Through Biomechanics*, Centers for Disease Control, Detroit, pp 77-84, 1996.

97.  Yoganandan N, Pintar FA, Kumaresan S, Hargarten SW:  Biomechanics of penetrating trauma. *6th Symposium on Injury Prevention Through Biomechanics*, CDC, pp 31-35, 1996.

98.  Sances A Jr., Kumaresan S:  Pendulum impact test system to study whiplash injury biomechanics.  *24th International Workshop on Human Subjects for Biomechanical Research*, pp 163-169, 1996.

99.  Kumaresan S, Pintar FA, Yoganandan N:  Finite element analysis of cervical laminectomy with graded facetectomy. *ASME Adv Bioeng* BED-33:27-28, 1996.

100. Yoganandan N, Pintar FA, Kumaresan S, Hargarten S, Sances A Jr:  Dynamic biomechanics of penetrating trauma. *ASME Adv Bioeng* BED-33:41-42, 1996.

101. Sances A Jr, Yoganandan N, Pintar FA, Kumaresan S, Walsh PR, Bandak F, Eppinger R:  Impact biodynamics of human skull fracture. *Advisory Group for Aerospace Research and Development*, 2.1-2.5, 1996.

102. Kumaresan S, Yoganandan N, Voo L, Pintar F, Cusick J: Finite element analysis of cervical laminectomy. *11th Annual Meeting North American Spine Society*, pp 271-272, 1996.

103. Yoganandan N, Voo L, Kumaresan S,  Pintar FA, Cusick J:  Biomechanics of cervical facetectomy with and without laminectomy. *4th Rachidian Society Meeting*, Kona, Hawaii, February 18-22, p 29-30, 1996.

104. Yoganandan N, Kumaresan S,  Pintar FA, Cusick J, Larson SJ:  Significance of the posterior elements on cervical spine load sharing. *5th Rachidian Society Meeting*, Kona, Hawaii, February 9-13, pp 13, 1997.

105. Kumaresan S, Yoganandan N, Pintar FA, Cusick J, Larson SJ:  Adult and pediatric cervical spine finite element analysis. *5th Rachidian Society Meeting*, Hawaii, February 9-13, pp 12, 1997.

106. Kumaresan S, Pintar FA, Yoganandan N: Finite element idealization of the joints of luschka in the cervical spine. *11th International Conference on Mathematical and Computer Modelling and Scientific Computing*, Washington DC, March 31 - April 3, p 34, 1997.

107. Kumaresan S, Pintar FA, Yoganandan N, Cusick J: Uncovertebral joint anatomy. *5th Annual Meeting Rachidian Society*, Kona, Hawaii, February 10-12, p 16, 1997.

108. Kumaresan S, Yoganandan N, Pintar FA:  Importance of material properties on spinal components load sharing. *11th International Conference on Mathematical and Computer Modelling and Scientific Computing*, Washington DC, March 31 - April 3, p 35, 1997.

109. Kumaresan S, Yoganandan N, Pintar FA: Biomechanical computer model of pediatric cervical spine. *11th Annual FOCUS '97 National Pediatric Conference*, Milwaukee, p 11, 1997.

14

R0200

110. Kumaresan S, Yoganandan N, Pintar FA, Mueller, W: Developmental biomechanics of pediatric cervical spine. *American Association of Neurological Surgery Session on Pediatric Neurological Surgery*, New Orleans, LA, December 2-5, Vol.49, pp 74, 1997.

111. Kumaresan S, Yoganandan N, Pintar FA: Nonlinear Finite element analysis of human cervical spine facet joint capsule. *ASME Adv Bioeng* BED-35:447-448, 1997.

112. Pintar FA, Kumaresan S, Yoganandan N: Human cervical spine uncovertebral joint anatomy. *ASME Adv Bioeng* BED-35:579-580, 1997.

113. Kumaresan S, Yoganandan N, Pintar FA: Adult and pediatric human cervical spine finite element analyses. *ASME Adv Bioeng* BED-35:515-516, 1997.

114. Kumaresan S, Yoganandan N, Pintar FA: Finite element study of human cervical spine. *ASME Adv Bioeng* BED-36:207-208, 1997.

115. Kumaresan S, Yoganandan N, Pintar FA: Sensitivity of cervical spine finite element model to material property variations. *ASME Adv Bioeng* BED-36:209-210, 1997.

116. Yoganandan N, Pintar FA, Kumaresan S, Maiman DJ, Hargarten SW: Author's response to letters to editor on "Dynamic analysis of penetrating trauma". *J Trauma* 43(2):387-388, 1997.

117. Yoganandan N, Pintar FA, Cusick J, Kumaresan S, Sances A Jr: Biomechanics of cervical spine under whiplash loading. *ASME Adv Bioeng* BED-35:443-444, 1997.

118. Kumaresan S, Yoganandan N, Pintar FA: Biomechanics of human cervical spine using FE approach. *Biomedical Engineering Symposium*, Marquette University, Milwaukee, pp 52-53, 1997.

119. Kumaresan S, Yoganandan N, Pintar FA: Finite element biomechanics of cervical spine interbody fusion. *19th IEEE Engineering in Medicine and Biology Society*, pp 1853-1858, 1997.

120. Maiman DJ, Kumaresan S, Yoganandan N, Pintar FA: Effect of anterior cervical interbody fusion on adjacent segments. *25th Cervical Spine Research Society*, pp 112-113, 1997.

121. Kumaresan S, Yoganandan N, Pintar FA, Maiman DJ, Cusick JF: Adjacent spinal component responses due to cervical interbody fusion. *44th Orthopaedic Research Society*, p 1058, 1998.

122. Kumaresan S, Yoganandan N, Pintar FA, Maiman DJ: Clinical biomechanics of cervical spine degeneration using finite element analysis. *10th Intl Conf on Mechanics in Medicine & Biology*, 99-102, 1998.

123. Kumaresan S, Yoganandan N, Pintar FA, Maiman DJ: Finite element analysis of cervical spine degeneration. *6th Annual Meeting Rachidian Society*, Kona, Hawaii, pp 17-18, 1998.

124. Kumaresan S, Mueller DJ, Yoganandan N, Pintar FA: Developmental biomechanics of pediatric human cervical spine. *6th Rachidian Society Meeting*, Kona, Hawaii, p 8, 1998.

R0201

125. Kumaresan S, Maiman DJ, Yoganandan N, Pintar FA: Fixation materials in anterior cervical interbdoy fusion. *6th Rachidian Society Meeting*, Kona, Hawaii, pp 6-7, 1998.

126. Yoganandan N, Kumaresan S, Pintar FA: Biomechanics of pediatric head and spine. *7th Annual Rachidian Society Meeting*, Feb. 28 – March 4, Kona, Hawaii, p 6, 1998.

127. Mueller, W, Kumaresan S, Yoganandan N, Pintar FA: Skeletal versus neural elements responses in SCIWORA mechanism. *Congress of Neurological Surgeons*, Seattle, 1998.

128. Khouphongsy P, Pintar FA, Yoganandan N, Kumaresan S: Dummy neck design using finite element model. *Biomedical Engineering Symposium*, Marquette University, pp 41-42, 1998.

129. Kumaresan S, Yoganandan N, Pintar FA, Maiman, DJ: Finite element study of geriatric cervical spine. *8th Symposium on Injury Prevention Through Biomechanics*, Centers for Disease Control, pp 23-27, 1998.

130. Kumaresan S, Khouphongsy P, Stemper B, Daruwala D, Pintar FA, Yoganandan N: Development of a biomechanically analogous cervical spine physical model. *ASME Adv Bioeng* BED-39:155-156, 1998.

131. Kumaresan S, Yoganandan N, Pintar FA, Maiman, DJ: Regional load sharing of cervical intervertebral discs. *ASME Adv Bioeng* BED-39:201-202, 1998.

132. Kumaresan S, Yoganandan N, Pintar FA, Maiman, DJ: Geriatric cervical spine biomechanics: Effects of degeneration severity on biomechanical responses. *ASME Adv Bioeng* BED-39:203-204, 1998.

133. Kumaresan S, Yoganandan N, Pintar FA, Maiman, DJ: Clinical biomechanics of cervical spine degeneration: A finite element analysis. *13th North American Spine Society*, San Francisco, CA, 1998.

134. Wheeldon J, Khouphongsy P, Kumaresan S, Pintar FA, Yoganandan N: Finite element model of C2-T1. *Biomedical Engineering Symposium*, Marquette University, Milwaukee, WI, pp 20-21, 1999.

135. Kumaresan S, Yoganandan N, Pintar FA: Biomechanical responses of pediatric cervical spine using nonlinear finite element approach. *ASME Adv Bioeng* BED-Vol-42:143-144, 1999.

136. Kumaresan S, Yoganandan N, Pintar FA: Finite element modeling of spinal ligaments. *ASME Adv Bioeng* BED-Vol-42:281-282, 1999.

137. Yoganandan N, Kumaresan S, Pintar FA: Pediatric cervical spine responses: 3-D finite element analyses. *7th Annual Rachidian Society Meeting*, p 9, 1999.

138. Cusick JF, Kumaresan S, Bunch B, Pintar FA, Yoganandan N: Sensitivity of normal and degenerated lumbar spine to three-dimensional stability biomechanical evaluations. *7th Annual Rachidian Society Meeting*, pp 13-14, 1999.

139. Kumaresan S, Pintar FA, Yoganandan N, Maiman DJ, Cheng J: Biomechanically analogous cervical spine physical model using CT images and rapid prototyping. *7th Annual Rachidian Society Meeting*, p 20, 1999.

R0202

140. Stemper BD, Pintar FA, Yoganandan N, Kumaresan S: Development of a finite element cervical spine model. *Biomedical Engineering Symposium*, Marquette Univ., Milwaukee, WI, p 24, 1999.

141. Stemper B, Kumaresan S, Pintar FA, Yoganandan N, Kleinberger M: Parametric study of head-neck finite element model. *12th International Conference on Mathematical Modeling and Scientific Computing*, Chicago, August 2-4, p 31, 1999.

142. Zick RJ, Kumaresan S, Milkowski LM: Methodology for computer surface modeling of cervical spine vertebrae. *12th International Conference on Mathematical Modeling and Scientific Computing*, p 33, 1999.

143. Wheeldon J, Khouphongsy P, Kumaresan S, Pintar FA, Yoganandan N: Development of finite element model of human cervical spine (C2-T1). *12th International Conference on Mathematical Modeling and Scientific Computing*, p 35, 1999.

144. Macias MY, Khouphongsy, PJ, Kumaresan S, Pintar FA, Yoganandan N, Cusick JF: Microstructural properties of the intervertebral disc for mathematical modeling studies. *12th International Conference on Mathematical Modeling and Scientific Computing*, p 37, 1999.

145. Kumaresan S, Yoganandan N, Pintar FA, Reichert K: Dynamic analysis of pediatric cervical spine. *21st IEEE Engineering in Medicine and Biology Society*, Oct 13-16, p 507, 1999.

146. Milkowski LM, Gervasi VR, Kumaresan S, Crockett RS: Development of a mechanically similar composite bone replica. *21st IEEE Engineering in Medicine and Biology Society*, Oct 13-16, p 495, 1999.

147. Kumaresan S, Yoganandan N, Pintar FA: Summary of pediatric biomechanical responses. *ASME Adv Bioeng* BED-Vol-42:765-766, 1999.

148. Hollowell JP, Kumaresan S, Yoganandan N, Pintar FA: Biomechanics of human cervical spinal column under physiologic loads. *ASME Adv Bioeng* BED-Vol-43:289-290, 1999.

149. Kumaresan S, Pintar FA, Yoganandan N, Pkouphongsy, PJ, Cusick JF: Intervertebral disc morphology in cervical spine biomechanics. *ASME Adv Bioeng* BED-Vol-43:235-236, 1999.

150. Yoganandan N, Kumaresan S, Pintar FA: Biomechanics of cervical spine ligaments. *ASME Adv Bioeng* BED-Vol-43:233-234, 1999.

151. Wheeldon J, Khouphongsy P, Kumaresan S, Pintar F, Yoganandan N: A human cervical spine finite element model. *Biomedical Engineering Symposium*, Marquette University, Milwaukee, WI, pp 18-19, 2000.

152. Stemper B, Kumaresan S, Yoganandan N, Pintar F: Material property sensitivity analysis head-neck finite element model for inertial impact. *Biomedical Engineering Symposium*, Milwaukee, WI, pp 3-4, 2000.

153. Thacker B, Nicolella DN, Kumaresan S, Yoganandan N, Pintar FA: Probabilistic finite element analysis of the human lower cervical spine. *ASME Adv Bioeng* BED-Vol-43:237-238, 2000.

154. Milkowski L, Crockett, RS, Kumaresan, S: Development of biomechanical cervical spine physical models. *ASME Adv Bioeng* BED-Vol-43:241-242, 2000.

R0203

155. Pintar FA, Kumaresan S, Yoganandan N, Gennarelli T: Finite element modeling of penetrating traumatic brain injuries. *ASME Adv Bioeng* BED-Vol-43:245-246, 2000.

156. Cusick JF, Kumaresan S, Yoganandan N, Pintar FA, Bunch B, Biomechanics of lumbar spondylotic degeneration. *ASME Adv Bioeng* BED-Vol-43:239-240, 2000.

157. Sances, A, Kumaresan S, Carlin F: Evaluation of infant seats and head injury. *10th International Conference on Biomedical Engineering*, Singapore, Dec 4- 9, pp 421-422, 2000.

158. Hutchinson J, Bish J, Rogers C, Friedman K, Sances A, Kumaresan S: Finite element modeling of a bicycle helmet. *10th International Conference on Biomedical Engineering*, Singapore, Dec 4- 9, pp 522-523, 2000.

159. Maiman DJ, Kumaresan S, Yoganandan N, Pintar FA: Microstructural properties of the degenerating cervical/intervertebral disc for mathematical modeling. *2000 Annual meeting of The American Association of Neurological Surgeons*, San Francisco, April 18-13, 2000.

160. Pintar F, Hollowell JP, Yoganandan N, Kumaresan S: Cervical spine biomechanics of the young and old. *8th Annual Rachidian Society Meeting*, pp 18, 2000.

161. Cusick JF, Kumaresan S, Yoganandan N, Bunch B, Pintar F: Functional influences of lumbar spondylotic degeneration. *8th Annual Rachidian Society Meeting*, pp 6, 2000.

162. Maiman DJ, Kumaresan S, Pintar F, Yoganandan N, Cusick JF, Macias MY: Differences in young and old cervical spine disc morphology. *8th Annual Rachidian Society Meeting*, pp 16, 2000.

163. Sances, A, Kumaresan S, Carlin F: Biomechanical analysis of infant seat padding and head injury. *Annals of Biomedical Engineering* 28(S1), T5.45, 2000.

164. Sances, A, Kumaresan S, Carlin F, Friedman K: Airbag protection in low and moderate impact. *Annals of Biomedical Engineering* 28(S1), T5.50, 2000.

165. Sances, A, Kumaresan S, Carlin F, Daniels D, Cusick J: carotid and vertebral artery dissection during blunt vehicular trauma. *Annals of Biomedical Engineering* 28(S1), T5.49, 2000.

166. Kumaresan S, Sances A: Pediatric biomechanics and injury tolerance. *Annals of Biomedical Engineering* 28(S1), T5.46, 2000.

167. Friedman K, Bisch J, Rogers C, Hutchinson J, Sances, A, Kumaresan S, Carlin F: Finite element modeling of protective head gear. *Annals of Biomedical Engineering* 28(S1), T5.38, 2000.

168. Cusick JF, Kumaresan S, Yoganandan N, Bunch B, Pintar F: Coexistence of facet and disc degeneration on lumbar spine stability. *25th Annual Meeting North American Spine Society*. Oct 25-28, 2000, New Orleans, LA, pp 173-175, 2000.

169. Sances, A, Kumaresan S, Carlin F, Friedman K: Effectiveness of airbag protection in low and moderate impact. *10th International Conference on Biomedical Engineering*, Singapore, pp 598, 2000.

R0204

170. Sances, A, Kumaresan S, Carlin F, Daniels D, Cusick J: Injuries of carotid and vertebral artery dissection during vehicular trauma. *10th International Conference on Biomedical Engineering*, Singapore, pp 599, 2000.

171. Sances A, Carlin F, Kumaresan, S. Biomechanical analysis of head and neck injury during rollover glass impacts. *ASME Adv Bioeng* BED-Vol-50: 857-858, 2001.

172. Thacker B, Nicolella DN, Kumaresan S, Yoganandan N, Pintar FA: Probabilistic injury analysis of human cervical spine. *ASME Adv Bioeng,* BED-Vol-50:879-880, 2001.

173. Sances A, Harcourt J, Kumaresan, S. Side impact pediatric injury studies. *ASME Adv Bioeng*, BED-Vol - 23102, 2001.

174. Kumaresan S, Sances A, Hutchinson J, Friedman, K. Biomechanical analysis of pediatric impact head injury. *ASME Adv Bioeng*, BED - Vol - 23099, 2001.

175. Sances A, Kumaresan S, Daniels D. Biomechanics of airbag injuries. *International Conference on Biomedical Engineering*, India, Dec 21-24, pp 105-110, 2001.

176. Kumaresan S, Sances A. Preface to Special Issue in Computational Biomechanics, *Jl. Mathematical Modeling and Scientific Computing*, Vol. 13 (1-2), 2001.

177. Sances A, Kumaresan S, Carlin F. Bioengineering analysis of head and neck injury with glass impacts. *Federation of American Societies for Experimental Biology*, 15(5), 606.8, 2001.

178. Sances A, Herbst B, Forrest S, Meyer S, Kumaresan S, Carlin F. Biomechanical modeling of motor vehicle collisions and overview of belt restraint analysis. *International Conference on Biomedical Engineering*, India, pp 111-116, 2001.

179. Maiman, D, Yoganandan N, Pintar F, Kumaresan S: Pre-injury cervical alignment affects spinal trauma. *9th Annual Meeting Rachidian Society*, Hawaii, pp 21, 2001.

180. Cusick JF, Kumaresan S, Yoganandan N, Bunch B, Pintar F: Coexistence of facet and disc degeneration on lumbar spine stability. *9th Annual Meeting Rachidian Society*, Hawaii, pp 27-28, 2001.

181. Yoganandan N, Pintar F, Gennarelli T, Kumaresan S: Pediatric neck tolerance based on human spine biomechanics. *9th Annual Meeting Rachidian Society*, Hawaii, pp 19, 2001.

182. Sances A, Kumaresan S, Harcourt J. Bioengineering studies of injury in child restraints. *Federation of American Societies for Experimental Biology*, 15(5), 606.13, 2001.

183. Sances A, Kumaresan S, Daniels D, Friedman K. Pediatric airbag injuries. *ASME Adv Bioeng*, IMECE 2002-32634, 2002.

184. Sances A, Kumaresan S. Biomechanical analysis of soft tissue neck injury during pedestrian falls. *ASME Adv Bioeng*, IMECE 2002-32638, 2002.

R0205

185. Herbst B, Meyer S, Forrest S, Syson S, Sances A, Jr., Kumaresan S. Analysis of structural deformation in vehicular drop studies. *ASME Adv Bioeng*, IMECE 2002-32644, 2002.

186. Sances A, Kumaresan S, Biomechanical analysis of traumatic asphyxia due to thoracic loading. *Engineering Medicine Biological Society*, Houston, pp 2487-2488, 2002.

187. Sances A, Kumaresan S, Finocchiavo, C: Occupant kinematics and biomechanical injury evaluation in recreational rides. *21st Southern Biomedical Engineering Conference*, pp 63-64, 2002.

188. Sances A, Kumaresan S: Biomechanical analysis of neck injury during object fall on head. *21st Southern Biomedical Engineering Conference*, Washington DC, pp 57-58, 2002.

189. Sances A, Kumaresan S, Clarke R: Biomechanical analysis of seat buckles. Biomechanical analysis of seat buckles. *21st Southern Biomedical Engineering Conference*, Washington DC, pp 61-62, 2002.

190. Weiss K, Sances A, Kumaresan S: Mechanism of injury in frontal inflatable restraint systems. *21st Southern Biomedical Engineering Conference*, Washington DC, pp 131-132, 2002.

191. Sances A, Kumaresan S, Broadhead W, Weiss K: Biomechanical analysis of late airbag deployment in motor vehicle crashes. *ASME Adv Bioeng*, pp 139-140, 2003.

192. Sances A, Kumaresan S, Clarke, R: Biomechanical analysis of side release and top release set belt buckles. *ASME Winter Meeting*, IMECE2003-42711, 2003.

193. Saczalski K, Sances A, Kumaresan S, Meyer, S, Burton J Biomechanical study of rear child chest injury measures related to collapsing front seats in rear impacts. *ASME Winter Meeting*, IMECE2003-43601, 2003.

194. Sances A, Kumaresan S, Finocchiavo, C: Biomechanics of injury and occupant kinematics in recreational rides. *22nd Southern Biomedical Engineering Conference*, Sept. 2003.

195. Sances A, Kumaresan S, Herbst, B: Biomechanical analysis of seat belt restraint deformation. *22nd Southern Biomedical Engineering Conference*, Sept. 2003.

196. Sances A, Kumaresan S, Friedman, K: Biomechanics of occupant ejection during rollover accidents. *22nd Southern Biomedical Engineering Conference*, Sept. 2003.

197. Clarke, R, Syson S, Sances A, Kumaresan S: Analysis of side release motor vehicle seat belt buckles. *22nd Southern Biomedical Engineering Conference*, Sept. 2003.

198. Sances A, Kumaresan S, Herbst, B: Biomechanical analysis of motor vehicle seat belt restraint spool out. *22nd Southern Biomedical Engineering Conference*, 2003.

199. Meyer S, Herbst B, Forrest S, Sances A, Kumaresan S: Design and evaluation of a system for testing and analysis of rollover with narrow objects. *ASME Winter Meeting*, IMECE2003-43104, 2003.

200. Herbst B, Meyer, S, Forrest S, Sances A, Kumaresan S: Acceleration amplification in safety belt buckle systems. *ASME Winter Meeting*, IMECE2003-43159, 2003.

R0206

201. Saczalski K, Sances S, Kumaresan S, Pozzi M, Saczalski, T: Comparison of head impact data for occupant computer predictions and sled-buck crash tests of front adult to rear child interaction in rear impact. *ASME winter meeting*, IMECE 2004-60763, 2004.

202. Sances S, Kumaresan S, Finocchiavo, C, McCort M: Biomechanics of occupant soft tissue neck injury in recreational rides. *ASME winter meeting*, IMECE 2004-60172, 2004.

203. Clarke R, Sances S, Kumaresan S: Analysis of side release motor vehicle seat belt buckles. *ASME winter meeting*, IMECE 2004-59293, 2004.

204. Herbst B, Hock D, Meyer, S, Forrest S, Sances A, Kumaresan S: Epoxy reinforcing for rollover safety. *ASME winter meeting*, IMECE2004-60203, 2004.

205. Hock D, Meyer, S, Herbst B, Forrest S, Renfroe D, Hutchinson B, Canallchio T, Sances A, Kumaresan S: Evaluation of motor vehicle retractor locking devices. *ASME winter meeting*, IMECE2004-60201, 2004.

206. Saczalski K, Kumaresan S, Sances S, Burton J, Lewis P: An experimental method for multi-variable analysis of vehicle safety systems and application to front seats and rear occupant interaction in rear impacts. *ASME winter meeting*, IMECE 2004-60785, 2004.

207. Herbst B, Forrest S, Meyer, S, Sances A, Kumaresan S: Roof crush mitigation techniques to enhance occupant protection. *ISBME*, 79-82, 2004.

208. Sances S, Kumaresan S, Friedman K, Daniels D: Biomechanics of thoracic spine injuries in motor vehicle rollover accidents. *ISBME*, 11- 14, 2004.

209. Friedman K, Mohara D, Hutchinson J, Sances A, Kumaresan S: Biomechanical effects of buckling induced increases in intrusion velocity behavior. *ASME Summer Bioengineering Conference*, b0312380, 2005.

210. Clarke R, Sances A, Kumaresan S, Syson S: Effect of inertial release levels on seat belt buckles at various angles. *ASME Summer Bioengineering Conference*, b0060456, 2005.

211. Forrest S, Orton T, Herbst B, Meyer S, Sances A, Kumaresan S: The effect of roof crush on glazing retention and occupant containment in rollovers. *ASME Summer Bioengineering*, b0062232, 2005.

212. Frieder R, Kumaresan S, Sances A, Renfroe D, Myers W, Harvey W: Novel Device for Rapid Medical Evacuation of Victims. *IEEE Engineering in Medicine and Biology Society*, 6068-6071, SaEP10.5, 2006.

213. Kumaresan S, Sances A, Carlin F, Frieder R, Friedman K, Renfroe D: Biomechanics of Side Impact Injuries: Evaluation of Seat Belt Restraint System, Occupant Kinematics and Injury Potential. *IEEE Engineering in Medicine and Biology Society*, 87-90, WeC06.3, 2006.

214. Kumaresan S, Sances A: Biomechanical trauma analysis of spinal cord neurological injury due to fracture-dislocation of posterior elements in the cervical region. *22nd Annual Academy of Surgical Research*, Tucson, AZ, 2006 .

R0207

215. Kumaresan S, Sances A, Paden B, Carlin F, Frieder R: Biomechanical analysis of spinal injuries to rear occupants in frontal impact. *Annual Biomedical Engineering Society Conference,* #713, 2006.

216. Kumaresan S, Sances A, Paden B, Carlin F: Biomechanical evaluation of side airbags in injury mitigation. *Annual Biomedical Engineering Society Conference,* # 146, 2006.

217. Friedman K, Mihora D, Hutchinson J, Sances A, Kumaresan S: Bicycle helmet roll-off prevention design and testing. XVI Canadian Multidisciplinary Road Safety Conference, Winnipeg, Manitoba, pp 1-4, June 11-14, 2006.

218. Kumaresan S, Sances A, Paden B, Carlin F, Frieder R: Biomechanics of padding in injury mitigation. *Annual Biomedical Engineering Society Conference,* # 712, 2006.

219. Burgos T, Cadavona D, Heang H, Lertsmitivanta D, Sakatani T, Laguette S, Freider R, Kumaresan S, Paden B, Sances A: Review of whiplash mitigating automotive head restraint systems. *International Society of Biomechanics Conference,* # 0764, 2007.

220. Freider R, Kumaresan S: Biomechanical analysis of late airbag deployment in motor vehicle crashes using computer simulation. *ASME Summer Bioengineering Conference*, SBC07-176654, 2007.

221. Kumaresan S, Paden B, Carlin F, Freider R: Biomechanical quantification of flexion movement (ducking) of the human head-neck and rollover accidents. *ASME Summer Bioengineering Conference,* SBC07-176642, 2007.

222. Cadavona D, Burgos T, Heng H, Lertsmitivanta D, Sakatani T, Freider, R, Paden B, Kumaresan S: Biomechanical analysis of a vehicular seat head restraint system in whiplash injury. *Biomedical Engineering Society Conference,* # 1009, 2007.

223. Lertsmitivanta D, Cadavona D, Burgos T, Heng H, Sakatani T, Freider, R, Paden B, Kumaresan S: Biomechanical analysis of occupant and vehicular factors in whiplash injuries using MADYMO. *Annual Biomedical Engineering Society Conference,* # 1010, 2007.

224. Kumar S, Friedman K, Hutchinson J, Mihora D, Senesac S: Biomechanical considerations in automotive rollover accidents: Occupant kinematics and vehicular restraint system. *Annual Biomedical Engineering Society Conference,* BMES 2009-001791, 2009.

225. Stemper B, Storvik S, Kumar S: Axial head rotation increases capsular ligament distractions during simulated automotive rear impact. *Annual Biomedical Engineering Society Conference,* BMES 2009-001776, 2009.

226. Kumar S, Friedman K, Hutchinson J, Mihora D, DeRosia J: Spinal injuries in automotive frontal arashes. *Annual Biomedical Engineering Society Conference,* BMES 2009-001887, 2009.

227. Underwood C, Kumar S, Pethel M, Rains G, Schlumpher P, Strickland D: Human engineering analysis of real world industrial accidents using plant-specific data to understand cultural aspects of accidents. Sixth World Congress of Biomechanics, Paper No. D3-A-S2.3-1-01, 1-4, 2010.

228. Strickland D, Kumar S, Friedman K, Hutchinson J, Mobrem D: Biomechanics of head-neck injuries in heavy truck motor vehicle accidents. *Annual Biomedical Engineering Society Conference,* BMES2011-000154, 2011.

R0208

229. Strickland D, Kumar S, Underwood C, Burton J, Lewis P: Biomechanical human factors analysis in fire related aircraft crashes. *Annual Biomedical Engineering Society Conference,* BMES2011-000153, 2011.

230. Strickland D, Kumar S: Biomechanical injury analysis of treadmill accidents. *Annual Biomedical Engineering Society Conference,* BMES2012-2398, 2012.

R0209

CURRICULUM VITAE

JOSEPH LAWSON BURTON

| | |
|---|---|
| Date of Birth: | February 10, 1945 |
| Marital Status: | Married, One Child<br>Sean Lawson, Age 17 (Died 12/15/87) |
| Wife: | Judy Puckett Burton |
| Home Address: | 13010 New Providence Road<br>Alpharetta, Georgia 30004 |
| Office/Mailing<br>Address: | 13784 Highway 9<br>Alpharetta, Georgia 30004<br>Ph.   770/777-0437<br>Fax: 770/753-4389 |
| Profession: | Forensic Pathology - Doctor of Medicine. |
| Title: | Consultant in Forensic and Environmental Pathology<br>and Medicine<br>Chief Medical Examiner, Emeritus - Dekalb County<br>and Senior Consulting Pathologist -<br>Cobb, Gwinnett & Paulding County Medical<br>Examiner's Offices-State of Georgia |
| Appointments: | Chief Medical Examiner:<br>(a)  Dekalb County 1978 to 2000.<br>(b)  Cobb County 1978 to 1999.<br>(c)  Paulding County 1983 to 1999.<br>(d)  Clayton County 1988 to 1997.<br>(e)  Gwinnett County 1988 to 1999.<br><br>Director Forensic Pathology Training Program -<br>Emory University School of Medicine,<br>Atlanta, Georgia,<br>1981 to 1984. |

R0210

Clinical Associate Professor -
Forensic Pathology - Emory University
School of Medicine, Atlanta, Georgia, 1978.

Regional Pathologist Federal Aviation Administration,
1979 to present.

Pathologist for United States Federal Penitentiary,
Atlanta, Georgia,
1978 to 1992.

Consultant - National Transportation Safety Board.

Consultant - Georgia Arson Investigators,
Atlanta, Georgia.

Instructor - Department of Public Safety Training
Programs - Dekalb, Cobb, Clayton, Paulding and
Gwinnett Counties,
1978 to present.

Certified Instructor, Forensic Medicine & Pathology.
Police Officers Standards and Training,
Georgia Police Academy.

Instructor Criminal Justice Education
Program, 1980 to present.

Forensic Consultant to several Metro Atlanta hospitals.

Consultant in Forensic Pathology to various State and
Southeastern United States District Attorney's Offices
and United States Federal District Attorney's Offices.

Instructor in Forensic Pathology,
University of Miami, Pathology,
Training Program, 1974.
Instructor, Insurance Adjustors School of America,
1973 - 1974.

R0211

Instructor, Federal Narcotics Law
Enforcement Training Program,
Miami, Florida, 1974.

Instructor, Public Safety Department,
Cadet Training Program,
Miami, Florida, 1973 - 1974.

Instructor, Forensic Pathology,
Grady Memorial Hospital Pathology
Training Program, Atlanta, Georgia,
1975 - 1976.

Georgia Statewide Child Abuse Prevention Panel
Annual Report 1996
December 1, 1997

Lecturer:

1. Emory University School of Medicine.
2. Emory University School of Law.
3. Georgia Criminal Justice Council.
4. Georgia State University School of Law.
5. National Law Enforcement Training
   Institute of California.

Special
Appointments:

Board of Directors, Regional Sudden
Infant Death Foundation.

Board of Directors, Sudden Infant
Death Syndrome Research Foundation, Atlanta.

Who's Who In Georgia - 1988-89.

Governor's Task Force on Unexplained
Child Fatalities, Ga. (1989-1990)

Governor's Task Force on Child Abuse.
(1989-1990)
Member, Medical Task Force-Coalition
Against Sexual Abuse of Children,
January 1990 to 2000.

R0212

President, Institute for Infant and Child Survival, Inc.
1992 to 1998.
National Network for Child Fatality Review,
Los Angeles, California
Consultant-Forensic Expert, 1992 to present.

Appointed to Governor's Statewide
Child Abuse Prevention Panel.
Atlanta, Ga., July 1993 - July 1995.

International Autopsy Protocol Committee,
Children's Hospital,
San Diego, California 1992 to 1995.

Board of Directors, Institute for Injury Reduction,
1995.

Georgia Trauma Advisory Council,
Member (Evaluation Committee),
1994 to 1998.

Training:

House Physician & Surgeon - Pathology
Emory University Hospital System,
Atlanta, Georgia, 1971 -1972.

Resident Pathology, Emory University
Hospital System, Atlanta, Georgia,
1972 - 1973.

Fellow of American Cancer Society.
1972 - 1973.

Assistant Pathologist, Office of the
Medical Examiner, Fulton County,
Atlanta, Georgia,
November 1972 - June 1973.

R0213

|  | Resident Fellow in Forensic Pathology, Dade County Medical Examiner's Office, Miami, Florida 1973 - 1974. |
|---|---|
| Degrees & Education: | B.A. - Emory University, Atlanta, Georgia, 1967. M.D. - Emory University School of Medicine, Atlanta, Georgia, 1971. Board Eligible-Qualified Anatomic and Forensic Pathology by American Board of Pathology, 1976. Forensic Pathology Boards - 1977 (passed). |
| Medical Licensure: | Georgia State License to practice Medicine and Surgery by Examination, 1972. Number - 14892. |
| Previous Employment: | Acting Deputy Chief Medical Examiner, Dade County, Miami, Florida, January 1974 to June 1974. Associate Chief Medical Examiner, Fulton County, Atlanta, Georgia, 1974 - 1978. |
| Present Employment: | Georgia State Appointment as Medical Examiner since July 1974. Medical Examiner, Metropolitan Atlanta, Georgia, 1974 to 2000. Consultant Forensic Pathology - Forensic Medicine, 1975 to present. Forensic Consultant - Metro Atlanta Department of Family and Children Services. Crimes Against Children. Metro Law Enforcement Agencies - Child abuse (physical/sexual). |

R0214

Professional
Associations:

Fellow of American Academy of Forensic Sciences.
Member National Association of Medical Examiners.

CASAC - Coalition Against Sexual
Abuse in Children, Cobb County,
1991 to present.

Fellow of Royal Society of Medicine,
London, England, 1992
Member Society of Automotive Engineers,
1995 to present.
     Member Service Award -- 10 years.
Association for the Advancement of
Automotive Medicine, 1995.
Member of American Academy of Family
Practice. (past)
Member of American Heart Association. (past)
Member of Georgia Heart Association. (past)
Member of Georgia Peace Officers Association.
American Medical Association.
American Humane Association -
Children's Division, 1993 to present.
International Wound Ballistics Association, 1999.
Member American Society of Civil Engineers.
Member American College of Sports Medicine.

Other Employment:

Chief of Staff, Kathy Crawford Nursing Home (formerly
Martin Luther King, Sr. Nursing Home), Atlanta,
Georgia, 1975 - 1978.

Special Forensic
Case Involvements:

Atlanta Missing & Murdered Children -
was the coordinating consultant to the FBI and
GBI on the entire investigation's forensic aspects,
1980, 1981, and 1982.
Theodore Bundy Case.  Florida

R0215

20/20 Television - Began an investigation
into a "Murder" which happened 25 years ago in
Arkansas - was the lead forensic expert chosen
for the State of Arkansas, 1985.

"Unsolved Mysteries" - State Prosecutor's Office,
Little Rock, Arkansas.  Forensic Expert - Investigation
into death of two teenage boys, April 1988.
National television coverage.

Presentation on CBS Evening News
"Automatic Seatbelts - Passive Belt Systems"
June 13, 1991.

Presentation on Marketplace - Canada
Canadian Broadcasting News
"Automatic Seatbelts - Passive Belt Systems"
June 1991

Presentation on Connie Chung's Eye to Eye Program,
"Passive Restraints"
March 31, 1994.

HBO Special - "Autopsy III-Voices From the Grave"
Presentation of Crime Scene, Blood Spatter
Reconstruction - Salt Lake City, Utah.
HBO Feature Special 1996.

HBO Special - "Autopsy IV - Crime Scene
Reconstruction and Injury Pattern"
Analysis of Alleged Perpetrator's Injuries - 1997.

ABC Television-20/20 Show
"Secrets And Lies"
January 5, 1998

Court TV- "Prosecution Of A 26 Year Old Murder Case"
April 7, 1998
Consultant to Kansas City Star
Dale Earnhardt and other Seatbelt Related Issues
May 10-11, 2001

R0216

Inside Edition  - WSB
"Danger of Automatic Passive Restraints/
Nikki Taylor Story"
May 11, 2001
Consulting Expert – Dateline NBC
"Airbag Related Death / ? Homicide"
February 13, 2002

Consulting Expert – Dateline
"Potential Dangers of Low Shield Child Booster Seats"
September 5, 2002
Presented on NBC - November 23, 2003

Consultant- KMBC TV
St. Louis, Missouri
"Collapsing Seatbacks and Occupant Injuries"
May 23, 2005

Documentary - Granite Productions. England
"Atlanta's Missing & Murdered Children" Documentary
August 31, 2005

Consultant – CNN
Atlanta, Ga
 "Death of Mummified Baby Found in Florida"
February 3, 2007

Special Areas of
Expertise:

Scene reconstruction and injury pattern interpretation.

Exhumations.

Occupant & pedestrian injuries, injury causation,
biomechanics, and occupant kinematics.

Drug abuse.

Child abuse - physical/sexual.

R0217

Deaths occurring during legal intervention
and/or police custody.

Gunshot injuries and wounding potential of
various firearms.

Publications and
Presentations:

"Automated Analysis of Serum Histidine"
Clinical Chemistry, 1967.

Research - 1) Pathologic Aspects of
Snake Envenomation, Procedures and Techniques.
2) Forensic Aspects of Exhumations.

Forensic Medicine in the Emergency Room
Post Graduate Course for Emergency Department
Nursing, Miami Beach, Florida, 1973.

"Investigation of Intoxication - Pitfalls and Problems,"
American Industrial Health Conference,
Miami, Florida, 1974.

"Sex-Rape Murders & Multiple Murders"
Death Investigation, Seminar Criminal Justice
Division, Institute of Government,
University of Georgia, Athens, Georgia,
April 1978.

"Asphyxial Deaths"
"Drowning"
"Exhumation" - Comprehensive Investigation of Death.
American Society of Clinical Pathologists,
Orlando, Florida, 1978.

Advanced Death Investigation University of Georgia -
Institute of Government. "Interpretation of Trauma -
Vehicular, Industrial, Homicide, Fire".
Athens, Georgia, May 4, 1980.

R0218

"Forensic Medicine - Terms and Procedures" Seminar,
National Shorthand Reporters Association,
Callaway Gardens, Pine Mountain, Georgia,
October 15, 1983.

National Shorthand Reporters Midyear Seminar.
"Forensic Medicine - Terms and Procedures."
Atlanta, Georgia, March 1984.
"Creative Crime Scene Investigation Seminar", National
Law Enforcement Institute, Inc.
Atlanta, Georgia, October 1983.

"The Medical Examiner as a Defense Witness and
Forensic Death Investigation." Seminar in Criminal
Defense Litigation - The Super Star - 1984.
Atlanta Bar Association, Atlanta Hilton Hotel,
Atlanta, Georgia, June 21, 1984.

"Difficult Forensic Cases" -
National Law Enforcement Training Seminar, 1985.

Drug Abuse and its consequences -
Program to local Schools and Civic Organizations.
Leadership Cobb - Crime: "Who Really Pays," Marietta,
Georgia, April 1985.

Northside Hospital - Medical Explorers -
"Forensic Pathology." Atlanta, Georgia, May 1985.

National Defenders - Investigators Association
Conference - "Forensic Pathology." June 1985.

Atlanta Pathology Society - Speaker
(Complex Forensic Cases), June 1985.

Emory - Grady Medical School Resident Training
Conference, Speaker, (Exhumations), Fulton County
Medical Examiner's Office, December 1985.

R0219

"Advance Evidence Technician Training Seminar",
Essex Institute of Public Service, Gainesville, Georgia,
January 27, 1986.

Georgia Probation Association, Mid Winter Conference,
Unicoi State Park, Helen, Georgia,
March 13, 1986.
"Forensic Pathology in the Community",
Optimist Club, Marietta, Georgia, March 14, 1986.
"Answers from the Dead? - Just Ask!" Speaker -
Joint Meeting - Medical Association of Atlanta and
Medical Staff - West Paces Ferry Hospital,
Atlanta, Georgia, March 24, 1986.

"Substance Abuse...Terminal Consequences."
B.A.C.C.H.U.S., Alcohol & Drug Awareness, Georgia
State University, Atlanta, Georgia. October 21, 1986.

Emory University - Law Interns - Speaker.
Marietta, Georgia, October 27, 1986.

Sun Insurance Services - Speaker "Techniques &
Procedures in the Medical Examiner's Office".
Atlanta, Georgia, October 28, 1986.

Emory University - Law Students - Speaker.
Atlanta, Georgia, November 6, 1986.
National Law Enforcement Institute Seminar - Speaker
"Death Scene Analysis", Atlanta, Georgia,
November 20, 1986.
Criminal Justice Program for Leadership Dekalb.
"Medical Examiner's Role in Criminal Justice System."
Decatur, Georgia, November 20, 1986.

East Cobb Rotary Club - Speaker
"In Search of the Truth - Forensic Medicine." Marietta,
Georgia, January 1987.

Decatur Rotary Club - Speaker
"The Medical Examiner - A Health Detective." Decatur,
Georgia, January 1987.

R0220

Georgia Legal Secretaries - Speaker.
"The Medical Examiner - pro vs. con or Just the Truth."
Marietta, Georgia, February 1987.

North Marietta Kiwanis Club - Speaker
"Forensic Medicine in your Community."
Marietta, Georgia, February 1987.
North Georgia Police Academy, Lecturer - "The Role of
the Medical Examiner in Criminal Profiling."
Marietta, Georgia, February 1987.

Leadership Cobb - "Forensic Pathology -
The Medical Examiner." Marietta, Georgia,
March 11, 1987.

Georgia Claims Association of Insurance Investigators-
"Forensic Medicine and its Role in Death Investigation,"
Atlanta, Georgia,
March 19, 1987.

Kennestone Hospital Medical Staff,
"Trauma Victims - Clinical Pathological Correlation,"
Marietta, Georgia, April 8, 1987.

Georgia State University Biology Club
"Forensic Pathology." Atlanta, Georgia,
April 22,1987.
Explorer Scouts - "Forensic  Pathology."
Northside Hospital, Atlanta, Georgia,
May 4, 1987.

Federal Criminal Investigators Association - "Wounding
Potential of Various Handguns & Ammunition."
Atlanta, Georgia, June 9, 1987.

Douglas County "D.U.I." Offender Rehab Program.
"Alcohol & Drug Awareness Lecture."
Douglasville, Georgia, August 1987.

Emory University - Law Intern -  Speaker,
Atlanta, Georgia, October 15, 1987.

R0221

Georgia State College, "Chemical Abuse-Terminal
Consequences," Atlanta, Georgia, October 20, 1987.

National Law Enforcement Institute Homicide Seminar
"Drug Related Deaths, i.e. Cocaine-Crack," "AIDS."
Ann Arbor, Michigan, October 27, 1987

National Law Enforcement Institute Homicide Seminar
"Drug Related Deaths, i.e. Cocaine-Crack," "AIDS"
Dallas, Texas, November 5, 1987.

Leadership Dekalb, "The Medical Examiner's Role in the
Criminal Justice System." Decatur, Georgia,
November 12, 1987.

National Law Enforcement Institute" AIDS."
Atlanta, Georgia, November 19, 1987.

Dekalb County Librarians -
Speaker "AIDS Awareness." Decatur, Georgia,
February 8, 1988.

Cobb County Rotary Club "Forensic Medicine - Impact
on Your Community." Marietta, Georgia,
February 22, 1988.
Hickory Hills School
"Drug Abuse." Marietta, Georgia,
February 24, 1988 & March 4, 1988.

Cobb County Grand Jury - Consultant.
"Drug Abuse in the Community."
Marietta, Georgia, April 4, 1988.
National Law Enforcement Institute,
"Deceptive Causes of Death - AIDS, Drug - Cocaine
Related Deaths, Complicated Suicides."
Chicago, Illinois, April 21, 1988.

Georgia Legal Secretaries Seminar
"Forensic Medicine in the Community."
Atlanta, Georgia, April 29, 1988.

R0222

State Prosecutor's Office, Forensic Expert - Investigations into death of two teenage boys on railroad tracks. Little Rock, Arkansas, April 1988.
Dekalb County Employees, "AIDS - Awareness, Facts about AIDS." Decatur, Georgia, May 4, 1988.

Northside Hospital Medical Explorers Post 401, "Forensic Pathology." Atlanta, Georgia, May 16, 1988.

Jackson City Council, Forensic Expert - Investigation into Alleged Suicide Death. Jackson, Mississippi, May 1988.

National Law Enforcement Institute, "Deceptive Causes of Death - AIDS, Drug - Cocaine Related Deaths, Complicated Suicides." Phoenix, Arizona, June 17, 1988.

Georgia Prosecutors Council. "DUI, Accident Reconstruction and the Medical Examiner." Savannah, Georgia, July 7, 1988.

National Law Enforcement Institute. "Deceptive Causes of Death - AIDS, Drug - Cocaine Related Deaths, Complicated Suicides." Philadelphia, Pennsylvania, July 15, 1988.

National Law Enforcement Institute. "Deceptive Causes of Death - AIDS, Drug - Cocaine Related Deaths, Complicated Suicides." Denver, Colorado, July 29, 1988.

Dekalb County Youth Rally. "Youth Against Crime & Drugs." Decatur, Georgia, August 20, 1988.

24th Southeastern Arson Seminar. "Fire Deaths, Carbon Monoxide and Electrical Deaths", Athens, Georgia, September 1, 1988.

R0223

"Drugless, Ya'll." Drug Prevention on Georgia
Campuses. Georgia State University,
Atlanta, Georgia, September 9, 1988.

Dekalb County Employees
"AIDS - Awareness - Facts about AIDS"
Decatur, Georgia, September 21, 1988.

Atlanta Falcon Football Training Camp
"Terminal Consequences of Substance
Abuse Including Steroids."
Lawrenceville, Georgia, October 25, 1988.

Snapfinger Woods Business Men's Association.
"Medical Examiner's Office and Drugs."
Lithonia, Georgia, October 5, 1988.

Marietta Civitan Club
"Drug Abuse."
Marietta, Georgia, October 18, 1988.

Georgia State University
Students for Drug Free Campuses "Substance Abuse."
Atlanta, Georgia, October 18, 1988.

National Law Enforcement Institute
"Death Scene Analysis and Serial Murders."
Kansas City, Missouri, October 20, 1988.

Georgia State University College of Law Center for
Continuing Legal Education. Troublesome Aspects of
Georgia Criminal Law. "Testimony by Medical
Examiners and Crime Scene Re-creation Experts."
Atlanta, Georgia, November 9, 1988.

Atlanta Bar Association,
"Forensic Medicine - The Expert - The System."
Atlanta, Georgia, January 1989.

R0224

Georgia Insurance underwriters,
"Forensic Medicine --
The Answers to Many Investigative Questions."
Atlanta, Georgia, February 1, 1989.

Mercer University, School of Medicine.
"Terminal Consequences of Substance Abuse."
Macon, Georgia, February 8, 1989.

Auburn University.
"Terminal Consequences of Substance Abuse
Including Steroids."
Auburn, Alabama, February 22, 1989.

Mercer University - Macon Campus
"Substance Abuse."
Macon, Georgia, June 15, 1989.

South Dekalb Rotary Club.
"Impact of Forensic Medicine on the Community."
Lithonia, Georgia, June 22, 1989.

Blue Ridge Circuit Juvenile Court
Cherokee County.
Juvenile Intensive Diversion Program.
"Substance Abuse."
Cumming, Georgia, August 2, 1989.

Northside Hospital Emergency Department
Conference. "Role of the Medical Examiner
in Emergency Medicine."
Atlanta, Georgia, August 4, 1989.

25th Southeastern Arson Seminar
"Fatal Fires" - Advanced, Civil, and Criminal.
University of Georgia.
Athens, Georgia, August 28, 1989.

Dekalb County Crime and Drug Youth Rally.
"Telling It Like It Is."
Decatur, Georgia, October 14, 1989.

R0225

District Attorneys & Law Enforcement Personnel -
Gwinnett & Paulding Counties. "DNA" Lecture.
October 2, 1989.

Emory University Law Students
"Forensic Expert & Litigation."
Atlanta, Georgia, October 12, 1989.

Dekalb County Youth Rally  Sponsored by NAACP.
"Youth Against Crime & Drugs."
Decatur, Georgia, October 14, 1989.

Georgia Trial Lawyers Association Seminar.
"Forensic & Environmental Pathology, an Untapped
Resource." Atlanta, Georgia, December 8, 1989.

Georgia Association of Criminal Defense Lawyers
Seminar. "Impartiality & the Medical Examiner."
Atlanta, Georgia, January 12, 1990.

National Collegiate Drug Awareness Week - Conference.
"Substance Abuse - Terminal Consequences."
Atlanta, Georgia, January 30, 1990.

Marietta Kiwanis Club
"Forensic Pathology - Impact on Community Health."
Marietta, Georgia, February 15, 1990.

Leadership Cobb
"Forensic Pathology - Impact on Community Health."
February 15, 1990.

Dallas Rotary Club.
"How the Medical Examiner Works for You in Paulding
County Georgia." February 20, 1990.

Dekalb College - North Campus.
"Substance Abuse - Terminal Consequences."
Dunwoody, Georgia, February 23, 1990.

R0226

National Collegiate Drug Awareness Week. "Substance
Abuse - Terminal Consequences."
The College at New Paltz,
Albany, New York, March 6, 1990.

Southeastern Home Office Underwriters
Association Conference. "Forensic Medicine, It's
Application to Life Insurance Industry."
Mobile, Alabama, April 5, 1990.

Cobb County Trial Lawyers Association
"Forensic Medicine & Injury Pattern Interpretation."
Marietta, Georgia, May 9, 1990.

Georgia Association of Special Programs Personnel
Conference. "What's Killing our Future?"
Jekyll Island, Georgia, May 17, 1990.

East Cobb Kiwanis Club
"Forensic Medicine in your Community."
Marietta, Georgia, May 30, 1990.

Gwinnett County Family & Children's Services.
"Children Born with Drug Addiction - Long Term
Effects." Lawrenceville, Georgia, June 18, 1990.

Georgia Southern University Upward Bound Project.
"Substance Abuse - Terminal Consequences."
Statesboro, Georgia, June 28th & 29th, 1990.

Morris Brown College Upward Bound Project.
"Substance Abuse - Terminal Consequences."
Atlanta, Georgia, July 11, 1990.

Georgia Community Action Association.
"Focus on the Family - Substance Abuse."
Atlanta, Georgia, July 23rd & 24th, 1990.

Georgia Southern University
"Substance Abuse - Terminal Consequences."
Statesboro, Georgia, September 13, 1990.

R0227

Abraham Baldwin College
"Substance Abuse."
Tifton, Georgia, September 25, 1990.

Emory University Law Students Speaker
Atlanta, Georgia, October 4, 1990.

Gwinnett Hospital System Emergency Nurses -
Course Instructors "Child Abuse."
Lawrenceville, Georgia, October 16, 1990.

Leadership Dekalb - "The Medical Examiner's Role
in the Criminal Justice System."
Atlanta, Georgia, October 19, 1990.

Georgia Trial Lawyers Fall Workshop
"Forensic & Environmental Pathology and Medicine -
Answers from the Dead And the Almost Dead."
Atlanta, Georgia, October 26, 1990.

Georgia Police Academy
"Child Deaths"
Forsyth, Georgia, October 31, 1990.

National Defender Investigator Association,
1990 National Conference,
"Impartiality and the Medical Examiner."
Atlanta, Georgia, November 8, 1990.

Cobb County Law Enforcement Association.
"Medical Examiner's Role in Law Enforcement."
Marietta, Georgia, January 10, 1991.

Southern Methodist University
"Substance Abuse - Terminal Consequences."
Dallas, Texas, February 11, 1991.

Dekalb College, North Campus
"Substance Abuse - Terminal Consequences."
Dunwoody, Georgia, March 4, 1991.

R0228

Mercer College - Macon Campus
"Substance Abuse – Terminal Consequences."
Macon, Georgia, March 7, 1991.

Criminal Trial Lawyers
"Impartiality and the Medical Examiner."
Atlanta, Georgia, April 19, 1991.

National Law Enforcement Institute
"Death Scene Analysis."
Pittsburgh, Pennsylvania, April 22, 1991.

Metro Marietta Kiwanis
"The Criminal Justice System."
Marietta, Georgia, April 29, 1991.

Joint Meeting of the Royal College of Pathologists of
Australia and National SIDS Council.
"Discussion & Protocol for Infant Death Investigation
including SIDS Deaths - Paper." April 1991.

Perimeter Center Kiwanis Club
"Substance Abuse."
Atlanta, Georgia, May 6, 1991.

Course Director
Advanced Death Investigation - 40 hours.
Sponsored by Cobb County Law Enforcement Training
Division. Marietta, Georgia, May 20th-May 24th, 1991.

Golden Key National Honor Society Convention.
"Biophysiology of Drug Use - Drug Abuse."
Ritz Carlton, Atlanta, Georgia, August 10, 1991.

The Coalition Against the Sexual Abuse of Children.
"Physical Injury, Bruising, Shaken Baby Syndrome,
Broken Bones, Internal Injuries." Kennestone Hospital,
Marietta, Georgia, August 15, 1991.

R0229

Southeastern Arson Seminar.
"Fatal Fires." University of Georgia,
Athens, Georgia, August 29, 1991.

NAACP - Dekalb County  Georgia Branch
Anti-Crime and Drug Prevention
Decatur, Georgia, September 21, 1991.

Emory University Law Students
Expert Witness - Litigation
Atlanta, Georgia, October 10, 1991.

University of North Carolina at Charlotte
"Substance Abuse - Terminal Consequences."
Charlotte, North Carolina,  October 14, 1991.

State Child Abuse Fatality Committee.
"Forensic Pathologist Role in Child Abuse and Child
Death Cases." Macon, Georgia, November 6, 1991.

Baron Users Group - 12th Annual Convention.
"Drugs in the Work Place."
Atlanta, Georgia, November 8, 1991.

Contributor - Legal Medicine 1991
Edited by Cyril H. Wecht, M.D., J.D.
Chapter - "Crime Scene Videos",
Mark Curriden, Butterworth Legal Publishers,
1992

National Law Enforcement Institute Seminar.
"Crime Scene Analysis - Masqueraded Deaths."
Atlanta, Georgia, November 19, 1991.

Georgia Claims Association
"Drugs in the Work Place."
Atlanta, Georgia, January 16, 1992.

Brown Court Reporting and Medical Transcription
School.  "Introduction to Forensic Sciences."
Atlanta, Georgia, January 28, 1992.

R0230

The National Kidney Foundation Regional Forum
"Controversies in Organ Donation."   Presenter.
Atlanta, Georgia, February 18, 1992.

Dekalb College, Central Campus
"Substance Abuse - Terminal Consequences."
Decatur, Georgia, March 4, 1992.

Kennestone Hospital Trauma Conference
"Murder or Suicide-Stabbing in a 43 Year Old Female"
Marietta, Georgia, April 8, 1992.

Georgia Fire Academy
Fire, Lightning, Electrical and Carbon Monoxide Deaths.
Forsyth, Georgia, April 17, 1992.

Shepherd Spinal Center
"Drugs in the Work Place."
Atlanta, Georgia, April 27, 1992.

Course Director
Advanced Death Investigation - 40 hours.
Sponsored by Cobb County Law
Enforcement Training Division.
Marietta, Georgia, May 18th - May 22nd, 1992.

Buckhead Exchange Club
"Interesting & Complicated Forensic Cases."
Atlanta, Georgia, May 26, 1992.

Seminar Instructor,
"Death Scene Investigation and Deaths Occurring During
Legal Intervention and/or Police Custody."  "Gunshot
Injuries and Wounding Potential of Various Firearms."
Little Rock, Arkansas, August 24, 1992.

"Investigation SIDS and Other Infant Deaths."
Published - Journal of the Medical Association of
Georgia, Page 433-436.  September, 1992.

R0231

Dekalb College Athletes
"Substance Abuse - Terminal Consequences."
Decatur, Georgia, October 14, 1992.

American Association of Suicidology Conference.
Panel Member - "Community Responses to Suicide."
Atlanta, Georgia, October 18, 1992.

North Georgia Police Academy
Death Investigation Seminar - General Aspects of
Forensic Medicine & Motor Vehicle Biomechanics and
Occupant Kinematics.
Marietta, Georgia, January 11, 1993.

Hemlock Society of Georgia
"Suicide"
Atlanta, Georgia, January 16, 1993.

American Association of Legal Nurse Consultants -
Atlanta Chapter  "The Forensic Expert in Civil
Litigation."  Atlanta, Georgia, January 19, 1993.

North Fulton Hospital Trauma Advisory Committee
"Presentation of Unusual Accidental Death of a Two
Year Old."  Roswell, Georgia, January 20, 1993.

Kennestone Hospital Medical Staff
"Child Abuse"
Marietta, Georgia, January 27, 1993.

Scottish Rite Children's Hospital Medical Staff
"Pitfalls in the Recognition and Diagnosis of Physical
and Sexual Abuse in Children."
Atlanta, Georgia, March 18, 1993.

Metro Swat Team
"Prevention & Recognition of Suicides in Hostage
Situations."   Decatur, Georgia, April 14, 1993.

R0232

Dekalb Addiction Clinic
"Substance Abuse - Terminal Consequences."
Atlanta, Georgia, May 11, 1993.

Georgia Indigent Defense Counsel Seminar
"Child Molestation - Physical Aspects."
Mableton, Georgia, May 14, 1993.

Course Director
Advanced Police/Medical Death
Investigation Course
Speaker:
1. General Forensic Pathology and Medicine.
2. Problems and Solutions in "Under the Influence"
Prosecution.
3. Child Abuse - Physical, Recognition and Diagnosis.
4. Child Abuse - Sexual, Recognition and Diagnosis.
5. Motor Vehicle Accidents - General Forensic
Information.
6. Motor Vehicle Accidents - Biomechanics and
Occupant Kinematics.
Marietta, Georgia, May 17-21, 1993.

Georgia Trial Lawyers Annual Meeting and Seminar,
"Use of Forensic Evidence & Witnesses in Civil
Litigation - The Forensic Pathologists Role in
Understanding of the Biomechanics & Kinematics of
Occupant & Pedestrian Injuries in Motor Vehicle
Accident Cases."
Atlanta, Georgia, May 21, 1993.

Emergency Nurses Association
Scottish Rite Children's Medical Center
"Patterns of Injury in Children."
Atlanta, Georgia, May 24, 1993.

R0233

Douglas County Advanced Death Investigation Course
Course Director - Speaker
"Child Abuse, Gunshot Wounds, Blunt & Sharp Injuries,
and Occupant Kinematics/Biomechanics - Motor Vehicle
Accidents."
Douglasville, Georgia, September 14, 1993.

Georgia Fire Academy
"Fire, Carbon Monoxide & Electrical Death
Investigations."
Forsyth, Georgia, September 24, 1993.

Metropolitan Atlanta Homicide Commanders
"Intersection of Medical Examiner and Law Enforcement
& Other Agencies within the Criminal Justice system."
Lawrenceville, Georgia,
October 13, 1993.

Leadership Dekalb "The Medical Examiner -
An Advocate for the People."
Decatur, Georgia, October 21, 1993.

National Law Enforcement Institute Homicide Seminar
"Death Scene Analysis & Deceptive Means
& Causes of Death."
Atlanta, Georgia, November 4, 1993.

Clayton County Police Services
"Child Abuse"
Jonesboro, Georgia, February 14, 1994.

Dekalb College
"Substance Abuse - Terminal Consequences."
Dunwoody, Georgia, February 22, 1994.

American Bar Association National Institute on
Emerging Issues in Motor Vehicle Litigation.
"Injury Enhancement in Victims of Automobile
Accidents - Real Life Experience - A Forensic
Pathologist's Viewpoint."
Phoenix, Arizona, March 24, 1994.

R0234

Gwinnett County - Trauma Rounds
"Biomechanics and Kinetics of Injury
Causation in Motor Vehicle Accidents."
Lawrenceville, Georgia, April 6, 1994.

Memorial Medical Center - Fatal Child
Abuse Seminar "Patterns of Injury in Children -
Physical and Sexual Abuse."
Savannah, Georgia, April 8, 1994.

Automotive Safety Seminar
"The Role of Forensic Pathology and Medicine in Motor
Vehicle Accidents, Biomechanics and Occupant
Kinematics."
Cleveland, Ohio, May 12, 1994.

St. Ives County Club
"The Medical Examiner as a Public Health Physician."
Alpharetta, Georgia, August 19, 1994.

University of Georgia, Office of Insurance & Fire
Commissioner - 30th Annual Southeastern Arson
Seminar "Fatalities in Fires, and Carbon Monoxide, and
Electrical Deaths."
Athens, Georgia, August 25, 1994.

Cobb County Police Department
"Communicable Diseases - AIDS, Hepatitis,
Tuberculosis, etc."
Marietta, Georgia, August 26, 1994.

National Law Enforcement Institute
Homicide Investigation Seminar, "Deceptive Causes of
Death (Homicide vs. Suicide vs. Accidental vs. Natural)",
"Time of Death", "Most Frequent Errors Made by
Homicide Investigators from Your Point of View",
"Disease Exposure", "SIDS and Child Deaths",
Atlanta Airport Marriott Hotel, College Park, Georgia,
October 25, 1994.

R0235

Ridgeview Institute, Coalition for Child Abuse
Prevention, "Our Common Agenda: Our Children's
Future." "Diagnosis of Physical and Sexual Abuse in
Children-Pitfalls."
Smyrna, Georgia, October 27, 1995.

Association for the Advancement of Automotive
Medicine Course: The Biomechanics of Impact
"Chest and Abdomen: Anatomy and Biomechanical
Characteristics."
"The Medical Examiner's Contribution
to Understanding Vehicular Injuries."
  a. Diagnosis of Cervical Injuries.
  b. Diagnosis of Belt Use based on
     Anatomical findings.
  c. MVA fires and occupant carbon monoxide levels
  d. General discussion of role of Medical Examiner
     in biomechanics and kinematics of injury
     causation.
Chicago, Illinois, November 14, 1995

Kennestone Hospital System Trauma Rounds
"Application of Biomechanic and Kinematic information
in the diagnosis of injuries sustained
in motor vehicle accidents"
Marietta, Georgia, March 13, 1996

Clayton County Abuse and Child Death Team
Continuing Education Seminar
"Pitfalls in the Diagnosis of Physical and Sexual
Abuse in Children"
Jonesboro, Georgia April 2, 1996

Georgia Court Reporters Association
"Forensic Medicine in the Community"
Stone Mountain, Georgia, October 5, 1996

Association for the Advancement of Automotive
Medicine "Chest and Abdomen: Anatomy and Injuries in
Motor Vehicle/Crashes," December 9, 1996

R0236

"The Medical Examiner's Contribution to Understanding
Motor Vehicular Injuries,"
Chicago, Illinois, December 10, 1996

Southern Trial Lawyers Association
"Pathology" - "Modre Wol Out"
New Orleans, Louisiana, February 8, 1997

AIEG Spring Seminar
"Head and Spine Injuries in Roof Crush
and Rollover Accidents", Atlanta Airport Hilton,
Atlanta, Georgia May 9, 1997

The Georgia Council on Child Abuse,
13th Annual Training Symposium
"The Power of Prevention"
"Pitfalls in the Diagnosis of Physical and Sexual
Abuse in Infants and Children".
Crowne Plaza Ravinia,
Atlanta, Georgia, June 9-11, 1997.

American Bar Association Emerging Issues in Motor
Vehicle Product Liability Litigation,
"Air Bag Injuries to Infants,
Children and Small Adults".
Phoenix, Arizona, April 2-3, 1998

Coalition for Child Abuse Prevention
Annual Conference, - "The Assessment
and Investigation of Physical Abuse
Cases and Child Deaths".
Atlanta, Georgia, April 24, 1998

Kennestone Hospital Emergency Room Staff -
"Assessment of Patterned Injuries
and Steroid Psychosis"
Marietta, Georgia, April 27, 1998

R0237

Clinical Management of Crime Victims From
Trauma To Trial.
"Career Development In Forensic Health Science"
Forensic Expert Panel
Georgia State University, Atlanta, Georgia
May 1, 1998

Motor Vehicle Products Liability Seminar
"Biomechanics and Occupant Kinematics
Issues-Forensic Investigation, Injury
Reconstruction, Vehicle Inspections and
Use of Visual Aids in Presenting Cases".
Little Rock, Arkansas  May 15, 1998

AIEG Auto Focus 1998 Seminar
"Air Bag Injuries"
San Francisco, California  September 24, 1998

AIEG Auto Focus 1998 Seminar
"Head & Neck Injuries in
Roof Crush & Rollover Accidents"
San Francisco, California    September 25, 1998

International Association of Bomb
Technicians and Investigators Region VI, 1
998 Regional Training Conference
"The Medical Examiner's Role In Investigations
Of Bombings And Of Explosive Type Events"
Marietta, Georgia  October 12-16, 1998

Cobb County Bar Association's Death &
Accident Investigation Seminar
"Biomechanics & Occupant Kinematics-
Automotive Crash Injuries Including Air Bags"
Marietta, Georgia, September 16, 1999

Seoul 2000 FISITA World Automotive Congress
"Belt Integrated Vehicular Seat Rear Impact Studies"
Seoul, Korea, June 12-15, 2000: Paper #F2000G279
Kenneth J. Saczalski, Ph.D., Joseph L. Burton, M.D.,
Paul R. Lewis, Jr., Todd K. Saczalski, Peter E. Baray.

R0238

Atlanta Volunteer Law Foundation
Annual Jury Trial Seminar
Emory University Law School-Mock Trial
Plaintiff's Expert Witness
December 15, 2000

"Air Bag Injuries to Infants, Children and
Small Adults".
Paper G-96 - Presented at Proceedings of the American
Academy of Forensic Sciences 53rd Annual Meeting
Seattle, Washington, February 23, 2001

Successful Handling of Wrongful Death Cases
in Florida-Seminar
"Proving Cause of Death-The Child Death Case"
Miami, Florida, June 28, 2001

Georgia Defense Lawyers Association
34th Annual Convention
"Forensic Medicine-Answers From the Dead – And Not
So Dead - Real World Application of Forensic Scientific
Principles"
Sandestin, Florida, July 20, 2001

ASME International Congress and Exposition
"Evaluation of Rear Impact Seat System Performance
Using Combined Load Neck Injury Criteria and
Hybrid III Surrogates"
Kenneth J. Saczalski, Ph.D., Joseph L. Burton, M.D.,
Paul R. Lewis, Jr., Todd K. Saczalski, Peter E. Baray.
New York, NY November 11-16, 2001

"Post Collision Vehicle Fires-Determination of
Probability of Occupant Survival Post Impact"
Paper #531 - Presented at Proceedings of the American
Academy of Forensic Sciences 54th Annual Meeting
Atlanta, Georgia, February 15, 2002

R0239

Successful Handling of Wrongful Death Cases in
Florida-Seminar
"Proving Cause of Death-Children's Unique Proof
Circumstances".
Lorman Education Services
Miami, Florida, September 20, 2002

ASME International Mechanical Engineering
Congress and Exposition
"Study of Seat System Performance Related to Injury of
Rear Seated Children & Infants in Rear Impacts"
New Orleans, Louisiana, November 17-22, 2002
Paper #IMECE2002-33517
Kenneth J. Saczalski, Ph.D., Joseph L. Burton, M.D.,
Paul R. Lewis, Jr., Keith Friedman, Todd K. Saczalski

40th International ISA Biomedical Sciences
Instrumentation Symposium
"Experimental Data for Injury to Children Seated Behind
Collapsing Front Seats in Motor Vehicle Rear Impacts"
Biloxi, Mississippi, April 11-13, 2003, Paper #2003-046
Kenneth J. Saczalski, Ph.D., Anthony Sances, Ph.D.,
Joseph L. Burton, M.D., Paul R. Lewis, Jr.

American Bar Association
Tort Trial & Insurance Practice Section Self-Insurers' &
Risk Manager's Committee presents
Transportation Megaconference VI
"Biomechanics-Kinematics-Conscious Pain & Suffering"
New Orleans, Louisiana, April 17, 2003

SAE International Digital Human Modeling for Design
and Engineering ASME International Mechanical
Engineering Conference and Exhibition
"Experimental Verification of Biomechanical Occupant
Response Predictions for Front & Rear Seated Passengers
Subjected to Rear Impacts"
Montreal, Canada, June 16-19, 2003
Paper #2003-03-2205
Kenneth J. Saczalski, Ph.D., Jay Saul, CSE, Joseph L.
Burton, M.D., Paul R. Lewis, Jr.

R0240

Association for the Advancement of Automotive
Medicine 47th Annual Scientific Conference
Poster Presentation
"Occupant Kinematics with Child Safety Seats Tested
Under Real World Conditions"
Gary R. Whitman & John Yannaccone, ARCCA Inc.,
Joseph L. Burton, M.D. & Paul Lewis, Jr.,
Burton and Associates,
Dennis F. Shanahan, Injury Analysis
Lisbon, Portugal, September 22-24, 2003

"Biomechanical Study of Rear Child Chest Injury
Measures Related to Collapsing Front Seats in Rear
Impacts". Kenneth J. Saczalski, Anthony Sances,
Srirangam Kumaresan, Steve Meyer, Joseph L. Burton,
M.D. and Paul R. Lewis, Jr.; Proceedings of IMECE'03,
2003 ASME International Mechanical Engineering
Congress, Washington, D.C. November 15-21, 2003,
Paper No. IMECE2003-43061.

American Bar Association 2004 Emerging Issues in
Motor Vehicle Product Liability Litigation
"Mock Trial"-- Plaintiff's Biomechanics/Occupant
Kinematics Expert in Rollover Case
Phoenix, Arizona March 18-19, 2004

"An Experimental Method for Multi-Variable Analysis of
Vehicle Safety Systems and Application to Front Seats &
Rear Occupant Interaction in Rear Impacts". Kenneth J.
Saczalski, Srirangam Kumaresan, Anthony Sances,
Joseph L. Burton and Paul R. Lewis, Jr.; Proceedings of
IMECE04, 2004 ASME International Mechanical
Engineering Congress and Exposition
Anaheim, California November 13-20, 2004,
Paper No. IMECE2004-60785.

R0241

"Computer Simulation of Rear Impact Biomechanical Occupant Response Predictions for Front & Rear Seated Passengers". Kenneth J. Saczalski, Ph.D., Jay Saul, Anthony Sances, Srirangam Kumaresan, Ph.D., Joseph L. Burton, M.D., Paul R. Lewis, Jr.
2004 FISITA World Automotive Congress in Barcelona, Spain.
Paper No. F2004U065.

"Multivariate Head Injury Threshold Measures for Various Sized Children Seated behind Vehicle Seats in Rear Impacts". Kenneth J. Saczalski, Ph.D., Anthony Sances, Srirangam Kumaresan, Ph.D., M. Pozzi, MS, Todd K. Saczalski, Joseph L. Burton, M.D., Paul R. Lewis, Jr. ISA 2004, Volume 449, pages 381-386.

Emergency World Summit on Roof Crush
Washington, DC
- Participant Debate: Diving vs Roof Intrusion as Cause of Injury in Rollovers
- Participant Press Conference: Strong vs Weak Roofs
- Speaker: Injury Causation in Rollover Crashes
Hyatt Regency Washington on Capitol Hill
July 18-20, 2007

Press Conference "America's Forgotten: Victims of 'Roof Crush' in Rollovers Speak Out…One Day before June 4[th] Senate Hearing on 'Roof Crush' "
Speaker/Participant
National Press Club – Washington, DC
June 3, 2008

U.S. Senate Commerce Subcommittee Hearing
"Roof Crush in Rollovers" Attendant
Russell Building, Washington, DC
June 4, 2008

R0242

"Comparison of High & Low Speed Rear-Impact Head and Neck Injury Risk Measures Related to Occupant Size & Vehicle Seat and Vehicle Seat Strength Characteristics". Kenneth J. Saczalski, Mark C. Pozzi & Joseph L. Burton; Proceedings of IMECE: 2008 ASME International Mechanical Engineering Congress and RD&D Expo.
Boston, MA. October 31-November 6, 2008, Paper No. IMECE2008-68492.

Metro Emergency Medical Services-
Continuing Education
"Preserving Life, the Crime Scene and
Respect for the Dead"
Marietta, Ga   November 17, 2008

"Rear Seated Child Injury Risk Experimental Measures Related to Vehicle Front Seat Performance in Rear Impacts". Kenneth J. Saczalski, Mark C. Pozzi and Joseph L. Burton; Proceedings of IMECE: 2009 ASME International Mechanical Engineering Congress and RD&D Expo.
Lake Buena Vista, FL. November 13-19, 2009.
Paper No. IMECE2009-10390.

"Biomechanical Analysis and Injury Prevention in Off-Highway Vehicular Crashes " Joe Burton, Sri Kumar, Paul Lewis, Jr., Lou D'Aulerio, Michael Kleinberger, Daniel Strickland. Rocky Mountain Bioengineering Symposium & International ISA Biomedical Sciences Instrumentation Symposium.
Laramie, Wyoming. April 9-11, 2010

"Multi-Variable Experimental Matched-Pair Comparison of Rear Impact Occupant Protection Performance of Strong Belt-Integrated Vehicle Seats Versus Weaker Non-Belt-Integrated Types". Kenneth J. Saczalski, Mark C. Pozzi, Joseph L. Burton and Todd Saczalski.
2010 FISITA World Automotive Congress in Budapest, Hungary. May 31st, 2010
Paper No. F2010-C-112.

R0243

Atlanta's John Marshall Law School
Lecture to Advanced Evidence Class, Final Year Students
Atlanta, GA  March 29, 2011.

AIEG 2012 Spring Seminar
"Role of the Medical Examiner"
The Peninsula Hotel
Chicago, IL  April 18, 2012

R0244

# CASES INVOLVING FUEL FED FIRES

| Case# | Case Name | Attorney | Vehicle |
|---|---|---|---|
| 01-020 | Ortega Vs. Ford | Roger Braugh | 1992 Ford Explorer, 4-Door |
| 01-047 | Copeland Vs. Nissan | Frank Guerra | 1989 Nissan 240 SX, 2-Door |
| 01-049 | Dismang, Little & Vestal | Steven Harrell | 1983 Chevrolet Pickup, 3/4 Ton |
| 01-050 | Chardonae Rowland | Ervin Gonzalez | 1994 Isuzu Rodeo, 4-Door |
| 01-058 | Montero Vs. GM | Peter Flowers | 1978 Chevrolet C-65, Dump Truck |
| 01-075 | Flint Vs. Chrysler | Mikal Watts | 1983 Dodge Ram, Van |
| 01-076 | Permenter Vs. Chrysler | Mikal Watts | 1999 Dodge Ram, Pickup |
| 01-088 | Sanders/Wright Vs. Ford | Joseph A. Fried | 1996 Ford Mustang, Convertible |
| 01-101 | Belli Vs. Daimler-Chrysler | George W. Fryhofer | 1991 Jeep Cherokee, 4-Door |
| 01-120 | Hall Vs. Ford | Lamar Brown | 1969 Ford Mustang, 2-Door |
| 01-131 | Ayala Vs. GM | John B. Scofield | 1993 Jeep Grand Cherokee, 4-Door |
| 01-146 | Rodriguez Vs. First Transit Inc. | W. D. Hammond | 2000 Lincoln Navigator, 4-Door |
| 01-155 | Casteel Vs. G.M. | Lynn A. Grisham | 1986 GMC 1500, Pickup |
| 01-163 | Miller Vs. DaimlerChrysler | James L. Gilbert | 1990 Jeep Wrangler, 2-Door |
| 01-170 | Lemus Vs. DaimlerChrysler | Halley B. Lewis | 1984 Dodge Colt Vista, Station Wagon |
| 01-182 | King Vs. GM | Kurt W. Maier | 1984 GMC Sierra, Pickup |
| 01-202 | Sloss Vs. General Motors | Roger Braugh | 1994 Saturn SL2, 4-Door |
| 01-205 | Gallagher Vs. Hyundai | Peter Daughtery | 1990 Hyundai Excel, 4-Door |
| 01-206 | Williams Vs. Ford | Kent Emison | 1983 Ford Thunderbird, 2-Door |
| 01-216 | Hinderks Vs. GM | Kent Emison | 1987 Chevrolet Scotsdale, Pickup |
| 02-012 | Hyatt Vs. G.M. | James E. Carter | 2000 Pontiac Grand Prix, 4-Door |
| 02-016 | Juan Arguello | Mark Sparks | 1979 Chevrolet 1500, Pickup |
| 02-023 | Wall Vs. GM | Julian P. Hardy | 1989 Pontiac Grand Prix, 2-Door |
| 02-039 | Lozano vs. GM | G. Joseph Barrientos | 1993 Chevrolet 1500, Pickup |
| 02-043 | El Paso Pipeline Explosion | Robert A. Krause | |
| 02-050 | Long Vs. Freightliner | Richard D. Morrison | 1996 Freightliner Truck, Semi |
| 02-060 | Tholander | Daniel T. Defeo | 1992 Chevrolet 1500, Pickup |
| 02-063 | Wetzel Vs. G.M. | Stephen M. Gorny | 1989 Pontiac 6000, 4-Door |
| 02-064 | Buckley Vs. GM | Patrick Ardis | 1995 Chevrolet S10, Pickup |
| 02-082 | Lindberg vs. J&R Trucking | Robert E. Scott | 1999 Honda Civic, 2-Door |
| 02-088 | Barfield vs. Nissan | Douglas A. Allison | 1989 Nissan 240 SX, 2-Door |
| 02-089 | Emmett vs. GM | Larry Setchell | 1973 Chevrolet P-30, Van |
| 02-109 | Arcure vs. GM | Aaron S. Decker | 1985 Chevrolet S10, Blazer |
| 02-123 | Santana vs. Ford | Guy Watts | 1992 Ford Mustang, 2-Door |
| 02-142 | Jones vs. GM | Lynn A. Grisham | 2000 GMC Sierra, Pickup |

R0245

| Case# | Case Name | Attorney | Vehicle |
|-------|-----------|----------|---------|
| 02-178 | Ybarra vs. GM | Richard Norman | 1988 Chevrolet Corsica, 4-Door |
| 03-002 | Hahs Vs. G.M. | Brad D. Kuhlman | 1974 Chevrolet Cheyenne, Pickup |
| 03-014 | Ocampo vs. Maple Chase Compan | Paula Wyatt | |
| 03-015 | Berkley/Beck Vs. DaimlerChrysler | Greg J. Allen | 1983 Jeep Wagoneer, 4-Door |
| 03-025 | Jenkins vs. Rayloc | Cheryl F. Perkins | 1993 Infinity G20, 4-Door |
| 03-030 | Jason Schechterle | Patrick McGroder | 1996 Ford Crown Victoria, 4-Door |
| 03-039 | Davis Vs. Motiva | Matthew Casey | |
| 03-051 | Deleon vs. GM | Frank Guerra | 1981 Chevrolet C-10, Pickup |
| 03-071 | Gonzalez vs. Ford | Kevin W. Liles | 1997 Ford F150, Pickup |
| 03-085 | Samudia Vs. GM | William J. Maiberger | 1983 Chevrolet Custom Deluxe, Pickup |
| 03-140 | Foster vs. GM | Jeffrey Wigington | 1981 Chevrolet 2500, Regular Cab |
| 03-152 | Turner vs. MHTC | Kent Emison | 1970 Chevrolet C-10, Pickup |
| 03-153 | Newton Vs. Ford | Kent Emison | 2003 Ford Crown Victoria, 4-Door |
| 03-157 | Winston vs. DaimlerChrysler | Robert E. Ammons | 1988 Dodge Colt, 2-Door |
| 03-171 | Jared Beach | Phillip Duncan | 1999 Dodge Ram 1500, Pickup |
| 04-011 | Ibarra Vs. Willie's Appliances | Roger Braugh | |
| 04-030 | St. Clair County Vs. Ford | Allene D. Evans | 1996 Ford Crown Victoria, 4-Door |
| 04-039 | William Gilbert, Jr. | Kent Emison | 1986 Chevrolet Custom Deluxe, Pickup |
| 04-056 | Hampton vs. DaimlerChrysler | George W. Fryhofer | 2004 Jeep Liberty, 4 Door |
| 04-062 | Thompson vs. Nissan | Roger Braugh | 1993 Nissan Pathfinder, 4-Door |
| 04-112 | Tapley Vs. Volvo Trucks | Kendall Dunson | 1995 Volvo Semi, Tractor-trailer |
| 04-114 | Aguilar Vs. Navistar | Victor M. Carrera | 1984 International Truck, Semi |
| 04-126 | Ramos v DaimlerChyrsler | Bradford G. Leigh | 1998 Dodge Ram, Pickup |
| 04-140 | Hood Vs. GM | Dana Taunton | 1984 Buick Regal, 2-Door |
| 04-158 | Erdman vs. GM | Patrick Ardis | 1995 Chevrolet Beretta, 2-Door |
| 04-160 | Jones v GM | Patrick Ardis | 2002 Saturn Vue, 4-Door |
| 05-009 | Emerson | Dana Taunton | 1994 Chevrolet Suburban, 4-Door |
| 05-037 | Kline vs. GM | Kent Emison | 2000 Chevrolet Blazer, 4-Door |
| 05-056 | Nichols Vs. GM | LaBarron N. Boone | 1992 Oldsmobile Delta 88, 4-Door |
| 05-064 | Sloan Vs. GM | Robert Langdon | 1993 Oldsmobile Silhouette, Van |
| 05-534 | Jackson vs. Ford | Ralph Chapman | 1998 Ford Mustang, 2-Door |
| 06-003 | Kelly/Morris v GM | J. P. Sawyer | 1974 Chevrolet C-10, Pickup |
| 06-037 | Hamilton | Robert W. Lee | |
| 06-044 | Aven vs. GM | Ralph Chapman | 1997 Chevrolet Blazer, 4-Door |
| 06-048 | Halpern v Honda | Lance A. Cooper | 1995 Honda Civic, 4-Door |
| 06-049 | Townsend vs. GM | Robert Langdon | 2000 GMC Sierra, Extended Cab |
| 06-068 | Dwight Boeckman | Kent Emison | 1999 Ford Econoline, Van |

R0246

| Case# | Case Name | Attorney | Vehicle |
|-------|-----------|----------|---------|
| 06-535 | Yancy vs. Ford | Deborah McDonald | 1988 Ford Bronco, SUV |
| 06-537 | Foreman v DaimlerChrysler | Stephen C. Swain | 1993 Dodge Caravan, Minivan |
| 07-042 | Davis/Thomas Vs. State of North C | Benjamin E. Baker | |
| 07-044 | Hockerman Vs. DCC | Kent Emison | 1999 Dodge Caravan, Minivan |
| 07-046 | Baldemar Ozuna | Michael Matthew Guerra | 1994 Mack Truck Tractor, Semi |
| 07-047 | Quiroz vs. GM | Robert Langdon | 2001 Chevrolet Blazer, 4-Door |
| 07-065 | Vest vs. Freightliner | Patrick Ardis | 1998 Freightliner Truck, Semi |
| 07-083 | Roberts vs. GM | Kent Emison | 1997 GMC Jimmy, 4-Door |
| 07-511 | Bowman | Joseph F. Welborn | 2000 Lincoln Navigator, 4-Door |
| 08-001 | Price Vs. GM | William Atlee | 1993 Chevrolet 1500, Pickup |
| 08-524 | Gutierrez v De Reynosa | Aizar J. Karam | 1998 Chrysler Town & Country, Minivan |
| 09-020 | Kornacki v. Ford | Ted Leopold | 2001 Ford Mustang, 2-Door |
| 09-048 | Crow/Miller v Ford | Kent Emison | 1999 Ford Explorer, 4-Door |
| 09-067 | Hampton v Crescent Cleaners | Patrick Ardis | |
| 09-518 | Finch vs. Honda | Jeremy Knowles | 2002 Honda Accord, 4-Door |
| 09-519 | Hurry | Wyman O. Gilmore | 2007 WSTR Semi, Truck |
| 11-025 | Williams / Rutledge v. Werner | Robert Langdon | 2006 Freightliner Century, Truck tractor |
| 12-024 | Greene v. Toyota | Aubrey Nick Pittman | 2010 Toyota 4-Runner, 4-Door |
| 12-038 | Walden | Leigh May | 1999 Jeep Grand Cherokee, 4-Door |
| 13-031 | William Atlas | Ralph Chapman | 2006 Dodge Ram 1500, Pickup |
| 14-024 | Williams v. GM | Brandon Peak | 1983 GMC 1500, Pickup |
| 2K-022 | Byrd Vs. GM | Peter Daughtery | 1985 Chevrolet K-10, Pickup |
| 2K-038 | Clark Vs. GM | Page Axen | 1981 Chevrolet C-10, Pickup |
| 2K-059 | Bermudez Vs. Ford | Paula Wyatt | 1988 Mercury Grand Marquis, 4-Door |
| 2K-060 | Martinez Vs. Ford | Paula Wyatt | 1987 Mercury Grand Marquis, 4-Door |
| 2K-062 | Jackson Vs.ford | Mikal Watts | 1988 Ford F150, Pickup |
| 2K-083 | Magana/Servantes Vs. GM | Rex Easley | 1985 GMC 1500, Pickup |
| 2K-095 | Altier Vs. GM | Peter Daughtery | 1985 GMC Sierra 2500, Pickup |
| 2K-108 | Mathes | Kent Emison | 1997 Ford F150, Pickup |
| 2K-113 | Vestal/Marcotrigiano Vs. GM | Steve Knowlton | 1981 Chevrolet Chevette, 4-Door |
| 2K-118 | Spencer Hutchinson | Mikal Watts | 1988 Plymouth Sundance, 4-Door |
| 2K-119 | Schlipp Vs. Raniere | Christopher Rackers | 1982 Chevrolet Pickup, Diesel |
| 2K-128 | Forte Vs. GMC | Dana Taunton | 1997 GMC Sierra, Pickup |
| 2K-150 | Maulano Vs. Holy Cross | John B. Marion | 1996 Jeep Grand Cherokee, 4-Door |
| 2K-152 | Vellines Vs. GM | Thomas Harlan | 1993 Chevrolet Suburban, 4-Door |
| 2K-167 | Cruz Vs. Ford | Patrick McGroder | 1996 Ford Crown Victoria, 4-Door |
| 2K-168 | Fink Vs. Ford | Patrick McGroder | 1999 Ford Crown Victoria, 4-Door |

R0247

| Case# | Case Name | Attorney | Vehicle |
|-------|-----------|----------|---------|
| 2K-176 | Castillo | Brantley White | 1981 GMC 1500, Pickup |
| 2K-188 | Hardee Vs. Bellamy Brothers | Kirk Farrar | 1993 Volvo Semi, Tractor-trailer |
| 93-088 | Klarlund Vs. GM | Kent Emison | 1981 Chevrolet 2500, Regular Cab |
| 93-113 | Skebo Vs. Ford | | |
| 94-003 | Clark Vs. G.M. | Rex Easley | 1983 GMC 1500, Pickup |
| 94-059 | Baker Vs. GM | Kent Emison | 1979 Chevrolet Pickup, 2-Door |
| 94-093 | Buie Vs. G.M. | Lynn R. Johnson | 1990 Toyota Pickup, 4 X 4 |
| 94-101 | Brown Vs. Hawkinson Ford | Arthur Gold | 1989 Ford Econoline, Van |
| 94-148 | Goods Vs. Navistar | Raymond S. Butler | 1982 International Truck, Semi |
| 95-009 | Moore Vs. Ford | Kent Emison | 1986 Lincoln Towncar, 4-Door |
| 95-033 | Ayala Vs. Chrysler | Paula Wyatt | 1982 Dodge Ram, Van |
| 95-040 | Fowble Vs. G.M. | David Blair | 1982 Chevrolet Pickup, 2-Door |
| 95-124 | Wasilik Vs. Ford | Kent Emison | 1987 Ford F150, Pickup |
| 95-126 | Roiz Vs. G.M. | David Cherry | 1986 Chevrolet Camaro, 2-Door |
| 95-142 | Meadors Vs. G.M. | David E. Warden | 1982 Chevrolet Silverado, Pickup |
| 95-149 | France & Mitchell Vs. G.M. | Jeffrey G. Rickard | 1994 Pontiac Bonneville, 4-Door |
| 95-152 | McGann Vs. Mazda | Newton Porter | 1988 Mazda RX-7, 2-Door |
| 95-171 | Bryson/Vaughn Vs. Turner | Patrick A. Hamilton | 1986 GMC 1500, Pickup |
| 96-007 | Harrison Vs. Dupont | Berrien Sutton | |
| 96-010 | Anthony Dalton Vs. G.M. | Peter Daughtery | 1976 Chevrolet Pickup, 2-Door |
| 96-066 | Head Vs. G.M. | Mark J. Evans | 1966 Chevrolet Pickup, 2-Door |
| 96-098 | Degner Vs. G.M. | Robert P. Skeith | 1984 GMC 1500, Pickup |
| 96-115 | Moseley Vs. G.M. | James Pratt | 1995 GMC K-14, Pickup |
| 96-120 | Milligan Vs. G.M. | Turner Branch | 1995 Chevrolet C-10, Pickup |
| 96-147 | Powell | Kenneth Ingram | 1995 Chevrolet K-10, Pickup |
| 97-028 | Dailey Vs. Nissan | Todd Vargo | 1995 Nissan Pickup, 2-Door |
| 97-089 | Peterson Vs. GM | Peter Daughtery | 1980 Chevrolet 1500, Pickup |
| 97-113 | Alvarado Vs. GM | John Kittel | 1986 Dodge Ram, Van |
| 97-131 | McCleneghen | Kevin Hawkins | 1995 Nissan Maxima, 4-Door |
| 97-148 | Mason Vs. Ford | R. Timothy Morrison | 1992 Ford Explorer, 4-Door |
| 97-149 | Bird Vs. GM | Michael E. Withey | 1983 Oldsmobile Cutlass, 2-Door |
| 98-019 | Williams Vs. GM | Kendall J. Few | |
| 98-044 | Fox Vs. GM | Gary McCallister | 1978 Chevrolet C-10, Pickup |
| 98-060 | Jones Vs. GM | D. Bruce Petway | 1991 Pontiac Sunbird, 4-Door |
| 98-072 | Baker Vs. GM | Kent Emison | 1985 Chevrolet Blazer, S10 |
| 98-077 | Carpentier Vs. Chrysler | Felipe Garcia | 1994 Dodge Ram, Pickup |
| 98-090 | Scott Vs. GM | James Dunnam | 1978 Chevrolet Caprice, 4-Door |

R0248

| Case# | Case Name | Attorney | Vehicle |
| --- | --- | --- | --- |
| 98-102 | Morin Vs. GM | Paula Wyatt | 1995 Chevrolet C-10, Pickup |
| 98-108 | Bridges Vs. Ford | Brad D. Kuhlman | 1994 Ford F150, Pickup |
| 98-128 | Taylor Vs. GM | R. Douglas Gentile | 1989 Chevrolet S10 Blazer, 2-Door |
| 98-136 | Christopher Lashley | David D. Guiley | 1994 Toyota Pickup, Pickup |
| 98-140 | Sheriff Vs. American Motors Corp. | Craig Goldenfarb | 1984 Chrysler Lebaron, 4-Door |
| 98-162 | Weiderhold/Thompson | Robert Waltman | 1993 Chevrolet Camaro, 2-Door |
| 98-164 | Allen Vs. GM | Mikal Watts | 1978 Chevrolet Big 10, Pickup |
| 98-165 | Brazil Vs. GM | Mikal Watts | 1990 Chevrolet 1/2 Ton, Pickup |
| 99-014 | Moore Vs. GM | Rodney Moore | 1995 Chevrolet S10 Blazer, 4-Door |
| 99-049 | Stowe Vs. Chrysler | Michael P. Atkinson | 1995 Dodge Ram, Pickup |
| 99-053 | Hare Vs. Chrysler | Mikal Watts | 1976 Dodge D-100, Pickup |
| 99-057 | Goodman Vs. Chrysler | Mark Tanenbaum | 1993 Chrysler New Yorker, 4-Door |
| 99-076 | Sebree Vs. Ford | Stephen M. O'Brien | 1995 Ford Taurus, 4-Door |
| 99-090 | Gibson Vs. Ford | George W. Fryhofer | 1985 Mercury Marquis, 4-Door |
| 99-091 | Butler Vs. Daimler/Chrysler | George W. Fryhofer | 1997 Dodge B-250, Van |
| 99-109 | Thornton Vs. Ford | Kenneth W. Lewis | 1989 Ford Aerostar, Minivan |
| 99-118 | Ramirez Vs. Titan | Filemon B. Vela | 1997 Chevrolet Silverado, Extended Cab |
| 99-122 | Boley Vs. GM | Craig Sico | 1996 Chevrolet Blazer, 4-Door |
| 99-142 | Faraci Vs. Ford | Mikal Watts | 1995 Ford Bronco, SUV |
| 99-144 | Iracheta Vs. GM | Robert E. Lapin | 1988 Oldsmobile Toranado, 2-Door |
| 99-157 | Nellon | Robert E. Ammons | 1985 Plymouth Horizon, 2-Door |
| 99-162 | Hunt Vs. GM | Robert E. Ammons | 1984 Chevrolet 1500, Pickup |
| 99-176 | Shober Vs. Werner Ent. | Paul Brandes | 1992 Lincoln Towncar, 4-Door |

R0249

# RESUME

Dr. Thomas H. Mayor
Professor Emeritus of Economics
University of Houston, Main Campus

Address:                5555 Del Monte, Suite 1306
                        Houston, Texas  77056-4184
                        713-552-1522

Education:              B.A. in Economics, Rice University, 1961,
                        Magna Cum Laude
                        Ph.D. in Economics, University of Maryland, 1965

Doctoral Dissertation:

                        "Sources of Decline in the U.S. Capital-
                        Output Ratio, 1869-1958"

Academic Positions:

                        Research Fellow, Brookings Institution, 1964-65
                        Assistant Professor, University of Maryland, 1965-69
                        Associate Professor and Professor,
                        University of Houston, 1969 - 2009
                        Director of Graduate Studies, Department of
                        Economics, University of Houston, 1971-74
                        Chairman, Department of Economics,
                        University of Houston, 1977-81
                        Director, Center for Public Policy,
                        University of Houston, 1982-84
                        Dean, College of Social Sciences,
                        University of Houston, 1983-86
                        Chairman, Department of Economics,
                        University of Houston, 1990-96

Academic Honors:

                        Phi Beta Kappa
                        Woodrow Wilson Fellow
                        National Defense Fellow
                        Brookings Research Fellow

R0250

Research Interests:

Applied price theory and public policy, law and economics

Publications:

"The Decline in the United States Capital-Output Ratio," Economic Development and Cultural Change, July, 1968.

"Short Trading and the Price of Equities: Some Simulation and Regression Results," Journal of Financial and Quantitative Analysis, September 1968.

"Some Theoretical Difficulties in the Estimation of the Elasticity of Substitution from Cross-Section Data," Western Economic Journal (Economic Inquiry), June 1969.

"The Role of Money in Economic History," in Perspectives in Economics, edited by John W. Snow, 1969.

"The Demand for Equipment by Input-Output Sectors," University of Maryland Interindustry Forecasting Project, Research Memorandum Number 7, June 12, 1968.

"Equipment Expenditures by Input-Output Industries," Review of Economics and Statistics, February 1971.

"Industry and Employment Projections to 1980: Discussion," 1970 Proceedings of the American statistical Association.

"The Rate of Discount in Bond Refunding," Financial Management, Fall 1974 (with K. G. McCoin).

"An Analysis of Factors Used to Determine the Public Need for New Banks," Southern Economic Journal, July 1976 (with John Fraser).

"Estimation of Market Area Population from Residential Electrical Utility Data," Journal of Marketing Research, August 1976 (with George Hepburn).

"Bond Refunding: One or Two Faces?", Journal of Finance, March 1978 (with K.G. McCoin).

"An Analysis of Factors Used to Determine the Public Need for New Banks: Reply," Southern Economic Journal, October 1977 (with John Fraser).

"The Treatment of Income Taxes in Determining Personal Injury Awards," Jurimetrics Journal, Winter 1977 (with George Hepburn).

R0251

"Estimating the Value of a Missing Market," Journal of Law and Economics, April 1980 (with G. Daly).

"Reason and Rationality During Energy Crises," Journal of Political Economy, February 1983 (with G. Daly).

"Life-Cycle Effects, Structural Change and Long-Run Movements in the Velocity of Money," Journal of Money, Credit and Banking, May 1984 (with L. Pearl).

"Equity, Efficiency and Environmental Quality," Public Choice, No. 2, 1986 (with G. Daly).

"The Welfare Gain from Efficient Pricing of Local Telephone Service," Journal of Law and Economics, October 1987 (with James Griffin).

"Hunter-Gatherers: the Original Libertarians." The Independent Review, Spring 2012.

R0252

| Larry Wright | GN204104 | Segouin v. Childrens' Hospital of Austin; 98th Travis Cty., Tx. |
| Thomas Bilex | DC01231 | Garza v. General Motors Corp.; 229th Duval Cty., Tx. |
| Maria Boyce | 1:01cv0011 * | Cole v. BASF Corporation; U. S. Beaumont Tx. |
| Joe Alexander | 200159368 | Nettles v. Enterprise Leasing; 189th Harris Cty., Tx. |
| Ashton Bachynsky | 03CV0017 | Rose v The Dallas Group of America; 212th Galveston Cty., Tx. |
| Elizabeth Hawkins | 28,709-A | Ozuna v. McAllen Medical Center; Probate No. 1, Hidalgo Cty., Tx |
| Larry Wright | 2002-35737 | Dixon v. Schaeffer; 133rd Harris Cty., Tx |
| Vernon Lewis | G03187 | Weldon v. U. S. A.; U. S. Galveston, Tx. |
| Mike O'Brien | 010617403CV | Rincon v. Ford Motor Company; 365th Maverick Cty., Tx. |
| Russell Briggs | 200217799 | Butler v. Schindler Elevator Co., 333rd Harris Cty., Tx. |
| Frank Perez | DC02193 * | Salinas v. Atlantic Sounding; 381st Starr Cty., Tx. |
| Gail Friend | 200255088 * | Scholton v. Mary Es-Beaver; 61st Harris Cty., Tx. |
| Shari Wright | 200264580 | Lynch v. Adam; 61st Harris Cty., Tx. |
| John O'Quinn | E167334 * | Coffee v. Wyeth; 172 Jefferson Cty., Tx. |
| Joe Alexander | 200315203 | Kennemer v. Memorial Hermann Hospital, 80th Harris Cty., Tx |
| Bryan Akin | 22751BH03 | Diaz v. BLSR Operating; 23rd Brazoria Cty., Tx. |
| Ashton Bachynsky | 03CV0017 * | James Rose v. The Dallas Group; 212th Galveston Cty., Tx. |
| John Mastin | 2003C10017 | Hunter v. Radicke; 407th Bexas Cty., Tx. |
| Charles Soechting | 200144491 * | Guardado v. Northwest Miami Gardens; 61st Harris Cty., Tx. |
| Joseph Alexander | 200246296 | Cameron V. St. Luke's Episcopal Hospital; 269th Harris Cty., Tx |
| Carl Shaw | 200229008 | Patel v. Christus Health Gulf Coast; 80th Harris Cty., Tx. |
| Sherie Beckman | 2001C17874 | Kennedy v. Perrigo Company, 225th Bexas Cty., Tx. |
| Brent Freebele | C2003009 | Reyes v. Barrington; 355th Hood Cty Tx |
| Bruce Golden | 200245248 * | Integrated Electrical Services v. Davis; 133rd Harris Cty., Tx. |
| Larry Wright | 200316694 | Aulds v. Bone & Joint Clinic of Houston; 280th Harris Cty., Tx |

R0253

| Sean Robarts | 200064354 * | Schmidt v. Hite, 133rd Harris Cty., Tx. |
| Russell Briggs | DICV0388 | Hennis v. Uniroyal; 122nd Galveston Cty., Tx. |
| John Care | 20906507 | Grimmett & Otis v. Dove Homes; 112th Crockett Cty., Tx |
| Joseph Jamail | E0170690 * | Turpin v. USA Truck, Jefferson Cty., Tx |
| David Marchand | 34819734103 | Simmons v. Sotman; 348th Tarrant Cty., Tx |
| Mark Hovenkamp | C2003336256 * | Simons v. Scheinin; 157th Harris Cty., Tx. |
| David Marchand | GN300923 | Kelley v. Columbia/St.David's, 250th Travis Cty., Tx. |
| Mark Sparks | 352-19113-02 * | Damian v. Bell Helicopter; 352nd Tarrant Cty., Tx. |
| Sherry Chandler | 202CV200DF | Jackson v. Leingang; U. S. Marshall, Tx |
| Russell Cook | DC02259 | Mills v. American Optical, 225th Duval Cty. Tx. |
| Lewis Ward | 200220267 | Boyd v. Texaco, 280th Harris Cty., Tx. |
| Ben Martin | 03-08875-H | Horton v. Baylor Medical Center; 160th Dallas Cty., Tx |
| Jason Webster | 5:01-CV-166C | Taylor v. Bayer Corp., U. S. Lubbock, Texas. |
| Martin Siegel | 03CO694202 | Johnson v. Suzuki Motor Co., 202nd Bowie Cty., Tx. |
| Mark Guerrero | GN-04180 * | Gonzalez v. Austin Radiological Assn; 250th Travis Cty., Tx. |
| Sherry Chandler | 335973-401 | Fields v. Marshall; Probate Court No. 1, Harris Cty., Tx. |
| Cynthia Hooper | 200326795 | Marlar v. Carruthers; 165th Harris Cty., Tx. |
| Hunter Craft | 10640 | Odell v. Ford Motor Co., 258th San Jacinto Cty., Tx |
| Marian Rosen | 2003-11972 | Moody v. Momentum Motor Cars; 80th Harris Cty., Tx |
| John Stevenson | 2003-33905 | Moody v. Noble Corporation, 152nd Harris Cty., Tx |
| Russell Cook | 200313559 | Lee v. Thomas; 334th Harris Cty., Tx. |
| Forest Johnson | 22005 * | Montgomery v. Martin; 278th Walker Cty., Tx. |
| Dax Garza | 2003-31604 | Gutierrez v. Industrial Gunite; 157th Harris Cty., Tx. |
| Jay Henderson | 02-0401 | Shelby v. Metabolife International; 336th Grayson Cty., Tx. |
| John Ghezzi | 2001-32633 | Rose Plair v. American Home Products; 189th Harris Cty., Tx |
| Bill Stradley | 2002-65544 * | Presnell v. Bayshore Medical Center; 280th Harris Cty., Tx. |

R0254

| Robert Killeen | G02-180 * | Magana v. Hammer & Steel; U. S. Houston, Tx. |
| Shari Wright | 98C.15822 | Powers et al v. Newell Industries, 225th Bexar Cty., Tx. |
| Bill Blankenship | 0311004L | Douglas v. Wal-Mart Stores; 193rd Dallas Cty., Tx. |
| David Marchand | 039775-J * | Hinton v. Baylor H.M.C., 191st Dallas Cty., Tx. |
| Sean Roberts | 200400563 | Evans & Smith v. Empire Truck Lines; 11th Harris Cty., Tx. |
| Roy Ewart | 200353499 | McCabe v. Soriano; 234th Harris Cty., Tx. |
| Glenn Diddel | 31209910 * | Duncan v. Venture Transport; 293rd Dimmit Cty., Tx. |

**2005**

| Ben Hall | 335973-401 * | Fields v. Marshall; Probate No. 1, Harris Cty., Tx |
| Robert Collins | 2002073009D | Acevedo v. Valley Transit Co.; 103rd Cameron Cty., Tx. |
| Linda Laurent | 200318533 | Ramon v. House; 333rd Harris Cty., Tx. |
| Jason Webster | E168435 | Rice v. Kroger; 172nd Jefferson Cty., Tx. |
| Mike Cash | 2001-29090 * | Ste. Marie v. Big Lake Transportation; 333rd Harris Cty., Tx |
| John Stevenson | DC 03-221 * | Vela v. Weeks Marine, 381st Starr Cty., Tx |
| Sherie Beckman | 2005-49210 | Whitten v. Woman's Hospital, 61st Harris Cty., Tx. |
| Daniel Hu | H040304 | Giles v. United States of america; U. S. Houston, Tx. |
| John DeFeo | 34819729403 | Bonner v. Hayes; 348th Tarrant Cty., Tx. |
| Mark Sparks | B163986 | Furra v. Maryland Marine, Inc.; 60th Jefferson Cty., Tx. |
| David McTaggart | 2003-30820 | Riley v. Metabolife International, Inc., 61st Harris Cty., Tx |
| Melissa Kingston | 02-00950-K * | Shuster v. Hyder Mirza; 192nd Dallas Cty., Tx. |
| Larry Wright | GN3-03414 | Perez v. St. David's Medical Center; 200th Travis Cty., Tx |
| Ali Akhtar | 03-5070 * | Barnett v. Graham; B44th Dallas Cty., Tx. |
| Dennis Reich | 03CV498H(C) | Palmer v. Asarco; U.S. Tulsa, Oklahoma. |
| Geoffrey Binney | 2003-52035 * | Lieb v. Silver Eagle Distributors, 215th Harris Cty., Tx. |
| John DeFeo | 2003522605 | Dunn v. Menard; 99th Lubbock, Cty., Tx. |
| David Hodges | 336583401 | McCoy v. Memorial Hermann SE Hospital; Pro. # 1, Harris Cty., Tx. |

| | | |
|---|---|---|
| Shawn Bates | CA70181Y0069404 * | Logic v. Patterson Capital Management, Amer. Arbitration Assn. |
| Jeremy Newell | DC03455 * | Salinas v. Weeks Marine, Inc.; 381st Starr Cty., Tx |
| Mark Hovenkamp | 2002-63349 * | Morrison v. Kelsey-Seybold; 125th Harris Cty., Tx. |
| Buffy Martines | D168734 | White v. Wyeth; 136th Jefferson Cty., Tx. |
| Bernard Klimist | 2003414342 | Polachek v. Formosa Plastics; 267th Calhoun Cty., Tx |
| Roy Ewan | 200426712 | Morris v. Jones; 121st Harris Cty., Tx. |
| Giles Kibbe | 172550 * | Davis v. Goodyear Tire & Rubber Co., 136th Jefferson Cty., Tx. |
| Ben Martin | 0315227A | Turner v. Deems; Cty. Court #1, Dallas Cty., Tx. |
| John Stevenson | C57104D * | Gomez v. Weeks Marine; 206th Hidalgo Cty., Tx. |
| John Card | 2001-49371 | Morton v. Lord; 281st Harris Cty., Tx. |
| Jeremy Newell | DC-04-137 | Barrera v. Weeks Marine, 381st Starr Cty., Tx |
| Mark Murray | D-0170341 * | Ledet v. Parker Drilling Co., 136th Jefferson, Cty., Tx. |
| Joseph Alexander | 2002-65140 * | Birdsey v. Tawa; 281st Harris Cty., Tx. |
| Stacy Bouthillette | 2003-49662 | Coyle v. Delgadillo; 190th Harris Cty., Tx. |
| Daniel Barton | 28029-1 | Spradlin v. Brazos M & E; 23rd Brazoria Cty., Tx. |
| David Deary | C127503F | Munoz v. McAllen Medical Center; 332nd Hidalgo Cty., Tx |
| John Stevenson | 200409874 * | Sam Johnson v. Todco Management; 61st Harris Cty., Tx |
| Jeremy Newell | DC0477 * | Lara v. Weeks Marine; 381st Starr Cty., Tx. |
| Arthur Feldman | 332,744-402 * | Ortiz v. Baylor College of Medicine; Probate #1, Harris Cty., Tx. |
| Elizabeth Hawkins | 316318 * | Dewberry v. Hunt; Probate #1, Harris Cty., Tx. |
| Patrick Zummo | V0309 * | Evans v. Toyota Motor Corp., U. S. Victoria, Tx. |
| David Mestemaker | 200123682 | Valencia et al. v. Mikolajczak et al.; 55th Harris Cty., Tx |
| Sherie Beckman | 2003522193 | Bush v. Sisters of St. Joseph; 99th Lubbock Cty., Tx. |
| William Bass | 2001-21055 | Bass v. Graham et al.; 280th Harris Cty., Tx. |
| Mark Carrigan | 2004-52495 | Nguyen v. Merino; 270th Harris Cty., Tx. |

R0256

| Randy Sorrels | 2003-32237 * | Ray v. Carruth-Dogget Inc.; 270th Harris Cty., Tx. |
| Jason Webster | E0170948 | Salas v. Christus St. Mary Hospital; 172 Harris Cty., Tx. |
| Mark Murray | C54404D | Gonzalez v. T. W. Laquay Dredging, 24th Calhoun Cty., Tx. |
| Mark Murray | 2004-24554 | Hurtado v. T. W. Laquay Dredging; 24th Calhoun Cty., Tx |
| Felicia Kyle | 2004-35573 | Hines & Everett v. Exxon Mobil; 125th Harris Cty., Tx. |
| Warren Taylor | 2002-48937 * | Dunn v. Woman's Hospital of Texas; 281st Harris Cty., Tx. |
| John Stevenson | 2003-04423 * | Fountain v. Noble Corporation; 151st Harris Cty., Tx. |
| Hunter Craft | 5-05-CV-45 | Chisum v Ford Motor Co.; U. S. Texarkana, Tx. |
| Kevin Prendergast | 2001-27960 * | Dominy v. Gerhards; 281st Harris Cty., Tx |
| John Stevenson | 2004-12573 * | Walls v Noble Corporation; 127th Harris Cty., Tx. |
| Matt Freeman | H044670 | Calvert v. Wal-Mart Stores; U. S. Houston, Tx. |
| Richard Mithoff | 2002-40905C | Judy Poole et al. v. Highland Medical Center, 113th Harris Cty., Tx |

**2006**

| Frank Perez | DC-02-348 | Jose A. Garcia v. Wooks Marine Inc.; 229th Starr Cty., Tx. |
| Kenneth Wall | 32041 | Saunders v. Com. Hosp. of Brazosport, 149th Brazoria Cty., Tx |
| Linda Laurent | 2004CVQ00073652 | Hinojosa v. Laredo Medical Center; 111th Webb Cty., Tx |
| Carl Schultz | 2004-62750 | Doan v. Wilcrest Village West Center, 281st Harris Cty., Tx. |
| Thomas Peterson | E170882 | Teague v. Baptist Hospitals of SE Texas; 172nd Jefferson Cty., Tx. |
| Ben Martin | 304CV2596K | Vinton v. Adam Aircraft Industries, Inc.; U. S. Dallas, Tx. |
| Hunter Craft | 205CV130(TJW) | Carey v Mazda Motores Corp., U.S Marshall, Tx. |
| Goeffrey Binney | 2004-32034 * | Brown v. Gregory Electric; 165th Harris Cty., Tx |
| Elizabeth Hawkins | 336982-401 | Jones v. Ace Cash Express, Inc.; Probate #1 Harris Cty. Tx |
| Nicole Kennedy | 2005-09561 | Hare v. Chesterton; 11th Harris Cty., Tx. |
| Janie Jordan | 2004-68631 | Wagner v. Houston Avocado Co.; 125th Harris Cty., Tx |
| Brian Beckcom | 2005-20641 | Nicol v. Teris L.L.C. et al.; 333rd Harris Cty., Tx |
| A Lewis Ward | 2004-15181 * | Seelye v. Brown; 295th Harris Cty., Tx |

R0257

| | | |
|---|---|---|
| Edward Sampson | 0502712 | Mayes v. Brewster; 95th Dallas Cty., Tx |
| Elizabeth Hawkins | 2004-58847 * | Lincoln v. Clark Freight Lines; 190th Harris Cty., Tx |
| Matt Freeman | 200468624 | Kussman v. Arias; 80th Harris Cty., Tx. |
| Jeremy Nowell | 200445208 * | Jordan v. Ensco Inc ; 189th Harris Cty., Tx. |
| Hunter Craft | 03-22,254 * | Barahona v. Young; 12th Walker Cty., Tx. |
| Jimmy Williamson | 3-39220 | Tilmon v. Parkhurst; 3rd Anderson Cty., Tx. |
| Cortlan Maddux | 200463897 | Allen v. Talen's Landing Inc., 333rd Harris Cty., Tx. |
| Fletcher Trammell | 200511685 * | Thompson v. Alza Corporation, 113th Harris Cty., Tx. |
| Lou Black | 200560439 | Shepherd v Chesterton; 11th Harris Cty., Tx. |
| Sonia Behrana | H043576 * | Harrison v. Wilkinson; U. S. Houston, Tx. |
| Mark Carrigan | SA04CA0577 | Reyna v. Tovar; U. S. San Antonio, Tx. |
| Rodney Steinburg | 200537047 | Moreno v. C.R. England & Sons, Inc ; 133rd Harris Cty., Tx |
| John DeFeo | C54303C * | Valdez v. Moreno, 139th Hidalgo Cty., Tx. |
| Russell Cook | 2005-72225 | Sutterfield v. Cooper Cameron Corp ; 333rd Harris Cty., Tx. |
| Stacy Little | 200347464 * | Sims v. Gonzalez; 127th Harris Cty., Tx. |
| Janet Hansen | 200461870 | Mata v. Christus Health Gulf Coast; 215th Harris Cty., Tx. |
| Keith Fletcher | 05CV140792 * | Walker v. Chan; 400th Fort Bend Cty., Tx. |
| Mark Guerrero | D172495 | Schroeder v The modern Group; 136th Jefferson Cty., Tx |
| Joe B Stephens | 04CV138335 | Sanford v. Union Pacific; 268th Fort Bend Cty., Tx |
| Brad G. Leigh | 2004-15801 | Duin v. Reliant Resources, Inc; 334th Harris Cty. |
| Jeffrey Embry | 71253 * | Ramirez v. Kare; 40th Ellis Cty., Tx. |
| Vuk Vujasinovic | 2005-67109 | Nguyen v. Core-Mark International; 55th Harris Cty., Tx. |
| Michael McCormick | 05333CCL * | Clamon v. Sid Peterson Hospital; Kendall Cty. Tx. |
| B. Adam Terrell | 46074 | Brian & Sanders v. Dickson; 356th Hardin Cty. Tx. |
| W. Douglas Matthews | 2005-00,192 | Saucier v. CSX Transportation; Circuit Ct., Jackson, Miss |

R0258

| Matt Mussalli | 06-04232 | Palmore v. Ace Hardware; 162nd, Dallas, Cty., Tx. |
| Russell Cook | 2004-21573 | Morell v. Able Supply Co.; 11th Harris Cty , Tx. |
| Greg Lee | 2005-42906 | Kincannon v. Cuellar; 127th Harris Cty., Tx. |
| Janet Rushing | H031276 | Westboro Properties v. Credit Suisse; U. S. Houston, Tx. |

**2007**

| Mark Murray | 2004-45663 | Hernandez v. Trujillo; 370th Harris Cty., Tx. |
| Jimmy Williamson | 2003-18653 | Descours v. Descours; 234th Harris Cty., Tx. |
| Vuk Vujasinovic | 40621 | Castillo v. United Texas Petroleum; 23rd Wharton Cty , Tx. |
| Mark Carrigan | 2004-60218 | Gradoni v Pacesetter Personnel Service; 164th Harris Cty,, Tx |
| Tracy Conwel | 2005-30307 * | Suarez v. H & M Construction, 157th Harris Cty., Tx. |
| Wayne Collins | 2005 38821 | Benavidez v Railserve; 234th Harris Cty., Tx. |
| Brent Coon | 05CV0337-A | Godeaux & Kinard v. BP; 212th Galveston Cty., Tx |
| Jeremy Newell | C1894-05A * | Chapa v. Great Lakes Dredge & Dock, 92nd Hidalgo Cty., Tx. |
| Tracy Glenn | 2006-04717 | Morgan v. Davis; 280th Harris Cty , Tx. |
| Jeremy Newell | DC05-277 | Fidel Trevino v. Weeks Marine; 381st Starr Cty., Tx. |
| Ed Sampson | 3.06-cv-002 | Vansili v. Charter Oak Fire Insurance Co.; U. S. Dallas, Tx. |
| Larry Wright | 04 839B | Lange v. Sid Peterson Hospital; 198th Kerr Cty., Tx. |
| Kenneth Wall | 9:05CV162 | Coppedge v. K.B . & Sabatt; U.S. Lufkin, Tx |
| Michael Callahan | 2005-78771 | Middleton v. Cemex; 269th Harris Cty., Tx |
| Stanley Broussard | H0500977 * | Wright v. Harris Cty., U. S. Houston, Tx. |
| Jeremy Newell | C2533-05F | Gonzalez v. King Fisher Marine Service; 332nd Hidalgo Cty., Tx. |
| Michael Nacc. | 353,989-401 | Peterson v. Esparza; Probate Court #2 Harris Cty., Tx. |
| Elizabeth Hawkins | 350,605-401 | MaGee v. DSW Restaurant, Inc.; Probate Court #1 Harris Cty., Tx. |
| Jennifer Pratchet | 7813-D * | Teel v Rentech Steel; 350th Taylor Cty , Tx. |
| Jamal Alsaffar | 1.05CV-00474 | Silong v. U. S.; U. S. Fresno, California. |
| Mark Carrigan | 35029 | Lorance v. Sunland Construction; 412th Brazoria Cty Tx |

R0259

| Mike Kerensky | 04CV0505 | Walewski v. Lincoln Electric Co., 212 Galveston Cty., Tx. |
| Jeremy Newell | 2005-08544 | Stewart v. Selecman; 129th Harris Cty., Tx. |
| Paula Elfion | 2006-58027 | Rogers v. Christus Health Gulfcoast; 11th Harris Cty., Tx |
| Teresa Arguindegui | 21,586 | Schauer v. Cargill; 25th Gonzales Cty., Tx. |
| Wayne Collins | 2005-11062 | Figueroa v. Dunn; 164th Harris Cty., Tx. |
| Andrew Schirrmeister | C1565-03CG * | Flores v. Vachon Industries; 370th Hidalgo Cty., Tx. |
| Charles Soechting | GN202604 | Lock v. Kahn; 200th Travis Cty., Tx |
| Mark Stewart | C2006-00180 | Pena v. Walker; 249th Johnson Cty., Tx |
| Gail Friend | 236-216920-06 | Holmes v. Todd et al; 236th Tarrant Cty., Tx |
| Jeremy Newell | C-1060-06D | Trevino v. Weeks Marine; 206th Hidalgo Cty., Tx. |
| Brent Coon | 05-CV-0337 | Arenazas et al. v. BP Products; 212 Galveston Cty., Tx |
| Thomas Thurlow | 200614166 | Stockton v. Domaschk; 165th Harris Cty., Tx. |
| Mark Svambera | 06CV0746 | Jones v. Wyatt Industries; 10th Galveston Cty., Tx. |
| Sherry Chandler | 05CV0337 | Chris Harper v. BP; 212th Galveston Cty., Tx. |
| Brad Beers | 2006-39099 * | Turnipseed v. Cramer; 165th Harris Cty., Tx. |
| Linda Turley | 05-C30507H * | Fritzgerald v. Tenet Healthsystems; 160th Dallas Cty., Tx. |
| Joseph Alexander | 2002-47277 | Jeffcoat v. Community Health Systems; 55th Harris Cty., Tx. |
| Cortlan Maddux | C-2923-05-D * | Gonzalez v. Great Lakes Dredge & Dock; 206th Hidalgo Cty., Tx |
| Hunter Craft | 206CV425TJW | Yorni-Ese v. Land Rover; U.S. Marshall Tx |
| Brian Beckcom | AC-160-0007107 | Perez v. Conroe Pipe; American Arbitration Assn., Houston, Tx |
| Jeremy Newell | DC-05-277 | Martinez v. Weeks Marine; 381st Starr Cty., Tx. |
| Douglas Matthews | 06-CV-243-SC-C | Brown v. Kansas City Southern Railway; Scott Cty., Miss. |
| Jack Strother | 2006-1391-B | Dunning v. Mustang Drilling; 124th Gregg Cty., Tx. |
| Scott Lannie | 05CV1063 | Brckmann v. Gulf Copper & Mfg.; 212th Harris Cty., Tx |
| Gary DiMuzio | CV-588713 | Reese v. Delco; Common Pleas Court, Cuyahoga Cty., Ohio |

R0260

| | | |
|---|---|---|
| Paul Jacobs | GN501899 | Strickland v. Jeffers; 200th Travis Cty., Tx. |
| Jeffrey Davis | 2005-74349 * | Jehangir v. Ortiz; 215th Harris Cty., Tx. |
| Toby Fullmer | 04056112-G * | Rutledge v. Underwood; 134th Dallas Cty., Tx. |
| Arthur Gonzalez | 2006-41749 | Tenorio v. Faisal; 281st Harris Cty., Tx. |
| David Bright | A06CA100455 * | Navarro v. Soaring Helmet Corp.; U. S. Austin, Tx. |
| Richard Mithoff | 06-4137-F | Tower v. H. E. Butt Grocery Co.; 214th Nueces Cty., Tx |
| Kathleen Baird | C2000-17186 * | Jones v. Allied Concrete Material; 80th Harris Cty. Tx |
| Michael Kerensky | 2-06CV-207 | Hardin v. Mitsubishi Motors; U. S. Marshall, Tx |
| Windle Turley | 06-04529 | Little v. All American Sports; 68th Dallas Cty., Tx. |
| Andrew Schirrmeister | 2006-14641 | Santos v. Nunez; 165th Harris Cty., Tx. |
| Tommy Yeates | E178823 | Green v. Lowrie, 172nd Jefferson Cty., Tx. |
| John Stevenson | 2005-16308 * | Floris v. Tetra Applied Technologies; 295th Harris Cty., Tx. |
| Jonathan Andresen | 2006-51426 | Turner v. Precision Surgical; 280th Harris Cty., Tx. |
| Joe Flores | 06CV138 | Johnson v. Christus Spohn; U. S. Corpus Christi, Tx. |
| Jeremy Newell | DC06195 * | Garza v. Weeks Marine; 381st Starr Cty., Tx. |
| Windle Turley | 5:04CV73 | Sacks v. Four Seasons; U. S. Texarkana, Tx |
| Benny Agosto | 2006-08195 * | De Leon v. LeeRoy Westbrook Construction; 334th Harris Cty., Tx |
| Erin Corley | 2004-36004 | Hall v. Quatreving; 80th Harris Cty., Tx. |
| Erin Corley | 8050518-C | Mendez-Ramos v. Renshaw; 163rd Orange Cty., Tx. |
| Mark Murray | 35784 | Ray v Houston Helicopters; 239th Brazoria Cty., Tx. |
| Carl Shaw | C2005-36179 | Carswell v. Christus Health Gulf Coast; 165th Harris Cty., Tx |
| **2008** | | |
| Michael Gomez | 2006-23862 * | Requena v. Otis Elevator; 215th Harris Cty., Tx |
| Monica Vaughan | 347,999-402 | Schroeder v. Houston NW Medical Center; Probate #2, Harris City |
| T Nguyen | 200620062156 | Alvarado v. TGI Friday's; 158th Denton Cty., Tx. |
| Jason Webster | 07Cvs109 | Stojanik v. R.E.A.C.H. Center of Jackson Cty; Jackson Cty., N.C. |

| | | |
|---|---|---|
| Mark Carrigan | 2005-03115 | Almazan v. Williams; 113th Harris Cty., Tx. |
| Edward W. Sampson | 2005PC3173 | McClusky v. Pannell; Probate #1 Bexar Cty., Tx. |
| Benny Agosto | 22949 | Whittington et al. v. Bayer, 253rd Chambers Cty., Tx |
| Mark Stewart | 200572278 * | Watts v. Coker; 127th Harris Cty., Tx |
| Jeremy Newell | C1250-05-C | Gonzalez v. King Fisher Marine Service; Hidalgo Cty Tx. |
| Mark Murray | 2005-09209 * | Cummings v. Diamond Offshore; 190th Harris Cty., Tx. |
| Langdon Smith | 07-01638 | Carrillo v. GMV Trucking; 192nd Dallas, Cty., Tx |
| Benny Agosto | 2005-51291 * | Zermeno v. Kowalski; 127th Harris Cty., Tx. |
| Edward Allred | 2006-4314 | EPT Management v. Kennedy Associates; 327th El Paso, Tx |
| Jeremy Newell | C2008-06-D | Limas v. King Fisher Marine Service; 206th Hidalgo Cty., Tx. |
| Julian Fertitta | 34401 | Deweese v. Swift Transportation; 223rd Gray Cty., Tx |
| Hartley Hampton | C546-07-B | Limon v. Badiga; 93rd Hidalgo Cty., Tx |
| Mark Murray | 2006:25911D * | Cepeda v. T. W. Laquay Dredging; 103rd Cameron Cty., Tx. |
| Stefanie Moll | 05CV3317 * | Vaglica v. Hewlett-Packard; U. S. Houston, Texas. |
| Andrew Schirrmeister | CV69988 | Zelaya v. La Roca Ready Mix; 75th Liberty Cty., Tx. |
| Joseph M. Gourrier | 5:07cv00055 | Shanks v. Swift Transportation; U. S. Laredo, Tx. |
| Larry Wright | DO6-07584 * | Wojewski v. TXU; 95th Dallas Cty., Tx. |
| Janet Hansen | 1:07-CV-902-TH | Broussard & Doucet v. KLLM; U. S. Beaumont, Tx |
| John Escamilla | 07-05620 | McLamb v. Angelica Corp., 191st Dallas Cty., Tx. |
| Jamal Assaffar | 3:07CV1120G | Cooke v. U.S.A., U.S. Dallas, Tx. |
| Hutton Sentell | 06-07971 | Schorr v. Black; 192nd Dallas Cty., Tx |
| Brooks Harrison | 05-cv-0337 * | Arenazas et al v. BP; 212th Galveston Cty., Tx. |
| Daniel Horowitz | 06cv0934 * | Simpson v. Abernathy; 10th Galveston Cty., Tx. |
| David Marchand | 096-221687-06 * | Martinez v. Huston; 96th Tarrant Cty., Tx. |
| Art Gonzalez | 26534 | Sunderland v. Price Construction; 62nd Val Verde Cty Tx. |
| Toby Fullmer | 3:07cv01080RLA | Diaz v. Puerto Rico Electric Power; U.S. Puerto Rico |

R0262

| Hal Hargis | 2008-56670 | Hollie v. Belmar Builders, 333rd Harris Cty., Tx. |
| Robert Kelly | CAG-06-598 | Capozello v. U S.; U. S. Galveston, Tx |
| Mickey Das | 07020090CVW | Pederson v. Cycle Ranch, 218th Wilson Cty., Tx. |
| Daniel Dutko | 2006-72962 | Tsui v. Budget; 125th Harris Cty., Tx. |
| Mark Carrigan | 2007-35221 | Luis v Trendmaker Homes; 334th Harris Cty., Tx |
| Edwin McAninch | 07-38-46205 | Blackwell v. Weeks; 79th Jim Wells Cty., Tx. |
| William Jones | 27875 * | Cornett v. Doe; 1st Jasper Cty., Tx. |
| Gerardo Garcia | 24112 | Garcia v. Baker Concrete Costruction; 12th Walker Cty., Tx |
| Brad Leigh | 00H-0089-C * | Mead v. Ford Motor Co.; 23rd Matagorda Cty., Tx. |
| Fezilla Issa | 4:07-cv-03036 | Sequeira v. KB Home; U. S. Houston, Tx. |
| John Leach | 04-cv-138899 | Buckley v. WBW Enterprises of Texas; 434th Fort Bend Cty., Tx. |
| Daniel Cohen | 2006-40557 * | Haynes v. Union Pacific; 189th Harris Cty., Tx. |
| Carl Crow | 2004-67031 * | Gradert v Union Pacific; 152nd Harris Cty., Tx. |
| Hunter Craft | 2:07CV358JDF | Kneisen v Toyota Motor Corp.; U. S. Marshall, Tx. |
| Jon Burmeister | 34,736 | Mangum v. Meade; 23rd Brazoria Cty., Tx. |
| Benjamin Best | 33,678 | Monday v. Meade; 23rd Brazoria Cty., Tx. |

**2009**

| Vuk Vujasinovic | 2007-36064 * | Pickney v Adem Systems; 113rd Harris Cty. Tx. |
| Jack Washburn | 42831 | Hammonds v. Sliva; 239th Brezoria Cty., Tx. |
| Cortlan Maddux | 3:06CV00460 | Johnston v. Forest Oil Corp.; U. S. Galveston, Tx. |
| Jon Burmeister | D0178,980 | Griffin v. Gremminger; 136th Jefferson Cty., Tx. |
| Sherie Beckman | 07 1359 015 | Bates v. Wilson N. Jones Hospital; 15th Grayson Cty., Tx. |
| Hunter Craft | 24262 | Oliphant v. Nissan Motor Company; 12th Walker Cty., Tx |
| Hank Kidd | 2006-51134ASB | Stroud v A. W. Chesterton, et al.; 11th Harris Cty., Tx. |
| Steve Kamel | 2006-74074 * | Gray v. Simi; 234th Harris Cty., Tx. |
| Jack Morman | 2007-22933 | Ramirez v. Home Depot; 164th Harris Cty, Tx. |

R0263

| | | |
|---|---|---|
| Patrick Rigby | 2007-67818 | Thompson v. Rosenberg; 133rd Harris Cty., Tx. |
| Oscar De La Rosa | 2007-70867 | Torres v. West Houston Medical Center;127th Harris Cty., Tx |
| Jason Webster | 87010A | Parish v. Odd's Texas Holdings; Probate No 1, Travis Cty., Tx. |
| B. Adam Terrell | A-180 943 | Hathaway v. Weatherford International; 58th Jefferson Cty., Tx |
| Shari Wright | 200Bcvq000986D4 | Chavez v. Sloman-Moll; 406th, Webb Cty., Tx. |
| Hunter Craft | cv41073 | Jordy v. Hopson; 159th Angelina Cty., Tx. |
| William Blankenship | CC07024843 | Hernandez v. Maxim Crane Works; 2nd Dallas Cty., Tx. |
| Vuk Vujasinovic | 2008-19438 | Collins v. Greyhound Lines; 152nd Harris Cty., Tx. |
| Monica Vaughan | CA No.P08CV17 | Campos v. Mack Trucks; U. S. Pecos, Tx. |
| David Burrow | 2008-11970 | Mendez v. Ace Transportation; 11th Harris Cty., Tx |
| Shaumar Wallace | 88294 | Blount v. Hathorn; Probate No 1, Travis Cty., Tx. |
| Brad Beers | 2008-30032 | Uonegbu v. Bajwa; 129th Harris Cty., Tx. |
| Brant Stognar | 2006-81100 * | Aries v. Degar Fuel Systems; 295th Harris Cty., Tx |
| Kimmie Bennett | 2007-76443 | Williams v. Broughton; 165th Harris Cty., Tx. |
| Curtis Bickers | 2007-56174 | Salazar v. Blackmon-Mooring; 127th Harris Cty., Tx |
| Mark Cerrigan | CC-07-59 | Morales v. Goodrich Corp.; 229th Hogg Cty., Tx |
| Felipe Garcia | DC06-285 | Texas Mutual Insurance v. Mycon; 381st Starr Cty., Tx |
| Vuk Vujasinovic | 2008-52441 * | Munguia v. Chance Sales Co.; 164th Harris Cty., Tx. |
| Sylvia Imhoff | D1GN08-0001618 | McMillon v Maggi; 419th Travis Cty., Tx |
| Shane McClelland | 2008-00799 | Jackson v. Chance; 281st Harris Cty., Tx. |
| Andrew Rodriguez | 2007-66771 | Mensik v. Small; 281st Harris Cty., Tx. |
| George Mallios | D1GN08-002761 | Randazzo v Hemperley; 345th Travis Cty., Tx |
| Gregory Lee | 2007-35354 * | Trahan v. Weiman; 129th Harris Cty., Tx. |
| Jamal Alsaffar | SA08CA0531-OG * | Lee v. U. S. A.; U. S. San Antonio, Tx. |
| Nelson Heggen | 05cv0042 | LaBeth v. Pasadena Bayshore Hospital; 122nd Galveston Cty., Tx |

| Vuk Vujasinovic | 376,454 * | Avila v. Genie Industries, Inc.; 2nd Probate, Harris Cty., Tx. |
| Carter Crow | 2007-64034 * | Pappas-Blanca v. Frost; 61st Harris Cty., Tx. |
| Linda Turley | 72486 | Hutchins v. Applebee's International; 354th Hunt Cty., Tx. |
| Sylvia Imhoff | CV2008-66-1 | Arnold v. Medical Park Hospital; 1st Division Hempstead Cty., Ark. |
| Gregory Lee | 2006-45475 | Gardiner v. Southern Star Concrete, 234th Harris Cty., Tx. |
| Cyndi Rusnak | 1:08 cv85-IMK | Vitatoe v. Mylan, Inc. U. S. Northern District, West Virginia |
| Chelsie Garza | D181,022 | Castro v. United Rentals, Inc.; 136th Jefferson Cty., Tx. |
| Mark Davis | 08-60934-1 | Rodriguez v. Malinckrodt Inc.; No. 1, Nueces Cty., Tx. |
| Eugene Brees | SA 06-ca-0017-RF * | McLeod v. U. S. A.; U. S. San Antonio, Tx |
| Dennis Reich | 09-2892 * | Charlie Age et al. v. Gulf Stream Coach; U. S. New Orleans, La. |
| Adam Gonzales | 6,252 | Ordiway v. Patterson-UTI Drilling; 49th Zapata Cty., Tx. |
| Brent Cordell | 2007-73777 | Oregon v. Texas Services; 129th Harris Cty., Tx. |
| Vuk Vujasinovic | 2008-39513 | Hardy v. EDM Trucking; 151st Harris Cty., Tx. |
| Adam Chaco | 1310017621 | Olvera v. Yum Brands; American Arbitration Assn. |
| Jeremy Newell | 45606 * | Llamas v. J. V. Piping; 239th Brazoria Cty., Tx. |
| Jon Alworth | 05-09-24,851CV | Sanchez v. Autozone; 38th Uvalde Cty., Tx |
| Ben Martin | 08-1424-015 | Schrader v. Gray Television; 15th Grayson Cty., Tx. |
| Joseph Alexander | 377,805-401 | Richardson v. Tenet; Probate No. 3, Harris Cty., Tx. |
| Daragh Carter | 08CV0636 | Herrera v. Wright; 10th Galveston Cty., Tx. |
| Andrew Gonzalez | 3-09cv0547k | Singleton v. Volkwagen of America; U. S. Dallas, Tx. |
| B. Adam Terrell | A181,740 | Waguespack v. Exxon Mobil; 58th Jefferson Cty., Tx. |
| B. Adam Terrell | B030,200-C | London v. Lisa Motor Lines; 163rd Orange Cty., Tx. |
| John Buckley | 05cv1455 * | BNSF Railway Co.; 56th Galveston Cty., Tx. |
| Robin Smith | CS-01617-J | Jordan v. Berzinskas; 191st Dallas Cty., Tx. |
| J. Patrick Bredehoft | 08-13455 | Richardson v. Eaton; 116th Dallas Cty., Tx. |
| Marc E. Stewart | DC-08-08625 | Ward v. Ketchersid; 191st Dallas Cty., Tx |

| Roger Jain | 2005-36389 * | Lindhurst v. Grover; 127th Harris Cty., Tx |
| Laura Brown | 06-13872 | Horton v. Baylor Health Care; 116th Dallas Cty., Tx. |
| Mark Murray | 2008-10-5497D | DeLeon v. King Fisher Marine Services; 103rd Cameron Cty., Tx. |
| Charles Soechting | 2006-24918 | McKinley v Louisiana Transportation; 129th Harris Cty., Tx. |
| Jacques Barette | 2008100641 | Chavez v. Gardner Oil; 2nd Cherokee Cty., Tx |
| John Escamilla | c1119-09B * | Rincon v. Shell Exploration & Production; 93rd Hidalgo Cty., Tx. |
| Mark Stewart | 153-22461-07 | MacDonald v. Carter; 153rd Tarrant Cty., Tx. |
| Jeffrey Embry | 2008-36880 | Suggs v. American Honda Motor Co.; 11th Harris Cty., Tx. |
| John Carwie | 27052 | Valdez v. Union Pacific; 83rd Val Verde Cty., Tx. |
| Stacey Little | 2007-02313 | Rendon v. Kelly; 80th Harris Cty., Tx. |
| Cyndi Rusnak | 2008-06448 | Sherman v. Methodist Hospital; 113th Harris Cty. Tx |
| Jeffrey Embry | DC0300595 | Luckey v. Polar Tank Trailer; 162nd Dallas Cty., Tx |
| Randy Sorrels | 2007-22019 | Hargrove v. Boxer Property Management; 133rd Harris Cty., Tx. |
| Hugh Plummer | 2007-34240 * | Nelson v. Primus builders; 333rd Harris Cty., Tx. |
| Wayne Little | 2009-08990 | Mumma v. United Surgical Partners; 151st Harris Cty., Tx. |
| Jeremy Newell | 2008-73377 | Anzola v. Weeks Marine; 334th Harris Cty., Tx. |
| Bradly Leger | 2:07-343 | Lewis v. Ford Motor Co., U.S. E. D. Texas. |
| Richard Mithoff | 388,082-401 | Marono v. Texas Children's Hospital; Probate #1 Harris Cty., Tx. |
| Jennifer Pratchet | 2006-53565A * | Suit Mart et al. v. Gexa Energy, 127th Harris Cty., Tx |
| John Carwie | DR06-ca035 | Galvan v. Rathman & O'Brien; U. S. Del Rio, Tx |
| Jason Webster | 06-C-326 | Calhoun v. Gold's Gym, Jefferson Cty., West Virginia |
| Carl Crow | 05-07-20077 * | Zubia v. J.P. Ratigan, Inc.; 286th Hockley Cty. Tx |
| Benjamin Hall | 2007-22019 | Hargrove et al. V. Boxer Property; 133rd Harris Cty., Tx. |
| Robert Hilliard | 09-61579-2 | Howe v. Fraedrick; 2nd Nueces Cty., Tx. |
| Jeremy Newell | 200809-5147D * | Tamez v. King Fisher Marine Service; 103rd Cameron Cty., Tx |

R0266

| | | |
|---|---|---|
| John Leach | 2007-46888 | Fernandez v. Murphy; 61st Harris Cty., Tx. |
| Johnny N. Garza | A-179, 159 | Perez et al. v. United Scaffolding; 58th Jefferson Cty., Tx. |
| Daniel Cartwright | 08-12-00326cvf | Jimenez v. Cooper Tire & Rubber; 218th Frio Cty., Tx. |
| Michelle Cheng | 09-001636cv272 | Tirado v. Jones; 272nd Brazos Cty., Tx |
| David Mestemaker | 47410 * | Leach v. Harris; 23rd Brazoria Cty., Tx. |
| Steve Norris | 2008-CI16534 | Sosa et al. v. Conn; 407th Bexar Cty., Tx. |
| Thomas Thurlow | 2009-11684 * | Kirksey v. HEB Grocery Co.; 280th Harris Cty., Tx. |
| Michael Kerensky | 2009-27780 * | Gonzales v. Centouri Technologies; 333rd Harris Cty., Tx. |
| Windle Turley | 2008-64020 | Holley v. Unit Corp. 333rd Harris Cty., Tx. |
| Jeremy Newell | 2008-29217 * | Nelson v. Noble Corp.; 234th Harris Cty., Tx. |
| Charles Livingston | 4:09CV1907 | McQueen v. Sorrels & Triton Boat Co., U. S. Houston Tx. |
| Michael Park | 09-00211-L | Phillips v. Q-Installation Resources; 193rd Dallas Cty., Tx. |
| R. Matt Lair | 2009-CI-05060 | Weise v. Southern Vanguard Insurance; 131st Bexar Cty., Tx |
| Chris Johns | 08-2041H | Aguirre v. King Fisher Marine Service, 347th Nueces Cty., Tx. |
| Clem Lyons | 09-1902C | Longoria v. Juan; 94th Nueces Cty., Tx |
| Chris Johns | 200905092 | Verduzco v. King Fisher Marine; 295th Calhoun Cty. Tx. |
| Jordan Glaze | 2008-48059 | Gomez v. OCTG, LLP; 333rd Harris Cty., Tx. |
| Jason McLauren | 2008-41285 * | Jimenez v. Weeks Marine, Inc.; 215th Harris Cty., Tx |
| Chris Johns | 2009-05100 | Ocanas v. King Fisher Marine Service; 270th Harris Cty., Tx |
| David Wynne | 2009-73292 | Gonzalez v. King; 190th Harris Cty., Tx. |
| Tommy Hastings | 090807470CV | Johnston v. CHCA Conroe, L.P.; 284th Montgomery Cty., Tx |
| Benny Agosto | 2009-01164 | McGaha v. Golden Construction Ltd.; 113th Harris Cty, Tx. |
| Toby Fullmer | 2006-23838 | Tow v. Pagano; 333rd Harris Cty., Tx. |
| Tommy Yates | 1:09cv891 | Hyatt v. Broussard; U. S. Beaumont, Tx. |
| Jeremy Saenz | 2009-52836 | Saunders v. Rawson L.P.;129th Harris Cty., Tx |

R0267

R0268

| | | |
|---|---|---|
| Ryan Zen | 2009-29612 | Fafard v. Ace Transportation; 129th Harris Cty., Tx |
| Hunter Craft | 1:09-cv-874 | Blackwell v. Nissan, U. S. Beaumont, Texas |
| Roy Ewart | 2009-01-1738 | Harper v. Adeigbe; 138th Cameron Cty., Tx |
| Joseph Corteguera | 2008-57592 * | Mendez v. Anderson; 152nd Harris Cty., Tx. |

**2011**

| | | |
|---|---|---|
| Janie Jordan | 2009-02163 | Koonce v. Brennan's of Houston; 151st Harris Cty., Tx |
| Langdon Smith | 2009-956CCL2 | Malveaux v. Midstream Fuel Service; Gregg Cty Tx. |
| Steven Norris | 4:08cv03251 | Diaz v. American Augers; U. S. Houston, Tx. |
| Robert Hilliard | 0907C0064cvl | Miranda v. Crisp Contractors; 81st/218th LaSalle Cty., Tx |
| Brian Beckcom | 2009-06025 * | Sweeney v. Boone towing Co., 133rd Harris Cty., Tx. |
| Bradley Lager | 09cv2313 | Razu v. ABHI Enterprises; 10th Galveston Cty., Tx |
| Leland Irwin | 2009-50173 | Horton v. Red Oak Anesthesia Associated; 252nd Harris Cty Tx |
| Andrew Seerden | 2008-61897A | Rivas v. GALP CNA Limited; 11th Harris Cty., Tx |
| Sherie Beckman | 2009-69114 | Hardesty v. Carmichael, 279th Harris Cty., Tx |
| Thomas Jones | C-2008-1238D | Perez v. Miskell; 433rd Comal Cty., Tx. |
| Keith Fletcher | 2010-35295 | Wentz v. Williams; 55th Harris Cty., Tx. |
| Keith Fletcher | D-183-385 | Fernandez v. Centerpoint Builders; 136th Jefferson Cty Tx |
| Alexandra Mutchler | 2010-10995 | Morina v. Integrity Packaging; 80th Harris Cty., Tx |
| Daniel Plake | 2010-04249 | Martinez v. Davis; 165th Harris Cty., Tx. |
| Jack Washburn | 2008062741G * | Leal v. Columbia Valley Healthcare; 404th Cameron Cty. Tx |
| Thomas Thurlow | 2010 09636 | Baillio v. Bond; 270th Harris Cty., Tx. |
| George Cire | D1GN10-001322 * | Brown v. Ferguson; 125th Travis Cty., Tx |
| Monica Vaughan | 2010-09437 | Pierce v. 1960 Family Practice; 165th Harris Cty Tx |
| Michele Chang | 2010cvq000546D1 | Zarate v. Benavides; 49th Webb Cty., Tx |
| Andrew Toscano | 2005C102600 | Dorsa v. City of San Antonio; 286th Bexar Cty., Tx |
| Mickey Washington | 10cv0869 | Hampshire v. Bungee Fun, Inc.; 56th Galveston Cty. Tx. |

| | | |
|---|---|---|
| Corilan Maddux | 09032-10315cv | Doss v. Joe Tex Inc.; 82nd Robertson Cty., Tx. |
| Nathan Beedle | H-10851 | Davis v. Harris Cty., District Attorney;  U. S. Houston, Tx. |
| Toby Fulmer | 10-1320(FAB) | Alejandro v. Puerto Rico electric Power; U. S  Puerto Rico. |
| Anthony Buzbee | 2010-33039 | Maddox v. Rowan companies; 189th Harris Cty., Tx |
| Monica Vaughan | 2009-38368 * | Obey v. Alanis; 164th Harris Cty., Tx. |
| Randy Sorrels | 2008-71267 * | Mazza v. Houston Northwest Partners; 280th Harris Cty., Tx. |
| Anthony Buzbee | 0905104000-G * | Lacour v. Delek Refining; 319th Nueces Cty., Tx. |
| Alexandra Mutchler | 2010-10995 | Morina v. Integrity Packaging; 80th Harris Cty., Tx. |
| Micky Das | 2010-39444 | Srinivasan v. Prasad; 269th Harris Cty., Tx. |
| Michael Meyer | 2009-00131 | Olmeda v. Lowe's Home Centers; 113th Harris Cty  Tx. |
| Rudy Gonzales | DC-10-03195F | Ramos v. Navajo Refining Co., 116th Dallas Cty., Tx. |
| Steven Morgan | 61756 | Abshire v. BP Products No. America; 2nd Galveston cty., Tx |
| Mark Murray | 2009-80709 * | Foret v. Stewart & Stevenson; 80th Harris Cty., Tx. |
| Shone Beckman | D-127,629 | Ansley v. Arrow Trucking; 358th Ector Cty., Tx. |
| LoAn Vo | 2010-ci-10863 | Sawtelle v. Hoefle; 150th Bexas Cty., Tx. |
| Charles Soechting | C1344-10A | Marichalar v. Sedgwick Claims Co.; 92nd Hidalgo Cty., Tx. |
| Andrew Toscano | 34865 | Hernandez v. Hill Country Restaurants; No. 3 Bexar Cty., Tx |
| Michael Herzik | 2010-18731 | Evans v. Union Pacific Railroad;164th Harris Cty., Tx. |
| Brian Beckcom | 2010-30516 | Garcia v. Kirby Inland Marine; 164th Harris Cty., Tx. |
| J. A. Asafi | 10-0-295 | Walls v. Angel Brothers Enterprises; 22nd Caldwell Cty., Tx. |
| R  Andrew Rodriguez | DC-10-09344 | Singleton v. Skinner Nurseries, Inc.; 162nd Dallas Cty., Tx. |
| Donna Aversano | 236-246054-10 | Huckaby v. Harris Methodist SW Hospital; 236th Tarrant Cty., Tx. |
| Rudy Gonzales | 2010 ccv62068-3 | Zahn v. Oxea Bishop; No. 3, Nueces Cty., Tx. |
| Chelsie Garza | 2010-52557 * | Williams v. Benge; 164th Harris Cty., Tx. |
| Felipe Garcia Jr | CL09-1791D | Romero v. Haynes; No. 4 Hidalgo Cty., Tx. |
| Mark Junell | 2009-63557 * | Martin v. Pasadena Refining; 333rd Harris Cty., Tx. |
| Kimmie Bennett | 2010-43813 | Bates v. Ifco Systems North America; 189th Harris Cty., Tx. |

R0269

| | | |
|---|---|---|
| Donna Aversano | DC10-05809J | McMurtrey v. Movie Tavern; 162nd Dallas Cty., Tx. |
| Charles Houssiere | 4.10CV4736 | Falk v. Toyota; U. S. Houston, Texas. |
| Hartley Hampton | 2010-21925 | Owen v. Texas CES; 113th Harris Cty., Tx |
| H. C. Chang | 2010-09334 | Cortez v. Methodist Hospital; 127th Harris Cty., Tx. |
| Brent Carpenter | JWA 607A2010 | Workman v. Ultrapak; Judicial Workplace Arbitration. |
| Muhammad Aziz | 10CV3388 | Soldano v. Sterling Truck; U. S. Houston, Tx. |
| Vuk Vujasinovic | H10-2520 * | Clark v Coldwater Machine Co.; U. S. Houston, Tx. |
| Scott Callahan | 2009-75648 | Hester v. Boxer Property Management; 234th Harris Cty., Tx. |
| Shiree Salinas | C-3413-10-G * | Rucker v. Chico Trucking Company; 370th hidalgo Cty., Tx. |

2012

| | | |
|---|---|---|
| Mark Carrigan | 2010-31767 | Kukowsky v. Tyson Foods; 164th Harris Cty., Tx. |
| Edward Sampson | CC10-06095C * | Grant v. Linder Construction; No. 3, Dallas Cty., Tx. |
| Muhammad Aziz | 080504843cv | Adamick v. Pyles; 9th Montgomery Cty., Tx. |
| Steve Norris | 2010-40481 | Perez v. United Parcel Service; 80th Harris Cty., Tx. |
| Robin Smith | D-GN10-002390 | Vanarsdale v. Buten; 353rd Travis Cty., Tx. |
| Robert Hilliard | S-5967CV-A | Guzman v. Cudd Pressure Control; 36th San Patricio Cty., Tx. |
| Tommy Yeates | D188856 | Booker v. Baker; 136th Jefferson Cty., Tx. |
| Ben Martin | CC1005293D | Evans v. Benjamin; No. 4 Dallas Cty., Tx. |
| Mark Murray | 2007-40772 | Torres v. JV Industrial Companies; 334th Harris Cty., Tx. |
| Ryan Zehl | 2010-70357 | Rushing v. Garcia, 152nd Harris Cty., Tx. |
| Randy Sorrels | 2010-20715 | Campbell v. Delcour; 127th Harris Cty., Tx. |
| William Maines | 2010-55028 | Wright v. Southwest Stainless; 133rd Harris Cty., Tx. |
| Hunter Craft | 402-404-401 | Turner v. Continental Airlines; Probate #2 Harris Cty., Tx. |
| Brian Beckcom | 2010-61705 * | Hedgepeth v. Diamond Offshore Drilling; 133rd Harris Cty., Tx |
| Mark Carrigan | 07-08720 * | Echeverria v. Louisville Ladder; 116th Dallas Cty., Tx. |
| Eugene Brees | D1GN-11-001918 | Jackson v. Hicks; 261st Travis Cty., Tx. |
| William Blankenship | 11 05958-C | Thomas v. Galdarski; #3 Dallas Cty., Tx. |

| | | |
|---|---|---|
| Joe Roden | 2010-02130 | Fuentes v. Williams Brothers Construction; 234th Harris Cty., Tx. |
| Chris Johns | 11cv0328 * | Walker v. Bates; 212th Galveston Cty., Tx. |
| Toby Fullmer | 10-1320 * | Alejandro Ortiz v. Puerto Rico Electric Power; U. S. Puerto Rico |
| Daniel Cohen | 380337-401 * | Gutierrez v. Union Pacific Railroad; Probate #1; Harris Cty., Tx. |
| Michael Park | 24,732 * | Garcia v. Robinson; 12th Walker Cty., Tx. |
| M. Kevin Powers | 2010-72045 | Maldonado v. Donovan; 281st Harris Cty., Tx. |
| Scott Callahan | 2011-20195 | Williams v. Crowe Houston Portfolio; 127th Harris Cty., Tx. |
| Adam Criaco | 2010-55923 | Scott v. Goddard Investment Group; 129th Harris Cty., Tx. |
| Collen Clark | 11-409-D | Garza v. Exxon Mobil Corp.; 105 Klegerg Cty., Tx. |
| J. A. Asafi | 067-245948-10 | Castillo v. Patterson-UTI Drilling Co.; 67th Tarrant Cty., Tx. |
| Muhammad Aziz | 4:11-cv-00714 | Estrada v. General Motors; U. S. Houston, Tx. |
| Tobias Cole | 2011-52228 | Escobedo v. Zaragoza; 157th Harris Cty., Tx. |
| Anthony Buzbee | 2011-22522 | Alford v. Hercules Offshore; 129th Harris Cty., Tx. |
| Langdon Smith | 2010-78126 | Gonzalez v. Torres; 164th Harris Cty., Tx. |
| Steve Waldman | 2010-78338 | Tamayo v. Central Dispatch Inc.; 165th Harris Cty., Tx. |

* Denotes trial testimony.

R0271

3/19/2015 6:02:21 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4572547
By: DE LA ROSA, GABRIELA
Filed: 3/19/2015 6:02:21 PM

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and | § | IN THE DISTRICT COURT OF |
| as Personal Representative of the Estate | § | |
| of Joyce A. Ates, Deceased; Sonia Ates | § | |
| and Nathan M. Ates | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ROBINSON HELICOPTER COMPANY, | § | |
| INC., HELICOPTER SERVICES, INC. | § | |
| And the Estate of CHRISTOPHER YEAGER | § | 11TH JUDICIAL DISTRICT |

## ORDER ON PLAINTIFFS'
## UNOPPOSED MOTION FOR CONTINUANCE AND FOR ENTRY OF
## DOCKET CONTROL ORDER

BE IT REMEMBERED that upon the day and date shown hereinbelow came on for consideration,

the Unopposed Motion for Continuance and for Entry of Docket Control Order filed by Plaintiffs herein;

the Court, having considered the pleading finds same to be with merit; it is therefore

ORDERED that the trial currently scheduled for July 20, 2015 be and it is hereby continued from

this setting; it is further

ORDERED that the parties confer and submit a new docket control order rescheduling this matter

for trial in January 2016 and containing additional deadlines for Alternative Dispute Resolution,

discovery deadlines, and expert witness designations by both Plaintiffs and Defendants.

SIGNED on this the _____ day of MAR 2 3 2015 , 2015.

_____
JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

R0272

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates and Nathan M. Ates | § § § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| ROBINSON HELICOPTER COMPANY, INC. , HELICOPTER SERVICES, INC. and the Estate of CHRISTOPHER YEAGER | § § | 11th JUDICIAL DISTRICT |

**AGREED AMENDED DOCKET CONTROL ORDER**

The following docket control order shall apply to this case unless modified by the Court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1.     EXPERT WITNESS DESIGNATION. Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f) as well as each expert's report. Failure to timely respond will be governed by Rule 193.6. Counsel may extend these deadlines by agreement.

8/7/15     Expert Designations for Parties Seeking Affirmative Relief, with Reports.

9/14/15     All Other Expert Designations, with Reports.

2.     DISCOVERY PERIOD ENDS.

12/11/15     All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

3.     ALTERNATIVE DISPUTE RESOLUTION

9/14/15     By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the Court may sign an ADR order.

-1-

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

FILED
Chris Daniel
District Clerk

APR 28 2015

Time:_____ Harris County, Texas

By_____ Deputy

R0273

10/23/15    ADR conducted pursuant to the agreement of the parties must be completed by this date.

4.     DISPOSITIVE MOTIONS AND PLEAS

10/30/15    Must be heard by oral hearing or submission. If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date. Summary judgment motions not subject to an interlocutory appeal must be hard by this date. Rule 166a(1) motions may not be heard before this date.

5.     CHALLENGES TO EXPERT TESTIMONY

11/20/15    All motions to exclude experts and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

6.     PLEADINGS

12/11/15    All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

7.     PRETRIAL CONFERENCE — HELD AT TIME OF TRIAL

Parties shall be prepared to discuss all aspects of trial with the Court on this date. Failure to appear will be grounds for dismissal for want of prosecution.

8.     TRIAL — if not assigned by the second Friday following this date, the case will be Reset.

~~Special Setting Request~~

01/04/2016 two-wk Docket

APR 28 2015

PRESIDING JUDGE

Unofficial Copy — Office of Chris Daniel District Clerk

-2-

R0274

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | 11TH JUDICIAL DISTRICT |
| | § § | |
| ROBINSON HELICOPTER COMPANY, INC.; HELICOPTER SERVICES, INC.; and the Estate of CHRISTOPHER YEAGER, | § § § § | |
| Defendants. | § § | HARRIS COUNTY, TEXAS |

### DEFENDANT ROBINSON HELICOPTER COMPANY, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO FIRST DISCOVERY REQUESTS, AND REQUEST FOR RULING ON DEFENDANT'S OBJECTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Robinson Helicopter Company, Inc. ("Robinson") and files this its Opposition to Plaintiff's Motion to Compel Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections, and in support thereof, would respectfully show this Court the following:

### I.  INTRODUCTION

This case arises out of a helicopter accident which took place on September 10, 2012. Plaintiff Nathan Ates ("Ates") is the representative of the Estate of Joyce A. Ates, who died as a result of the accident. The helicopter was owned by Helicopter Services, Inc., and piloted by Christopher Yeager ("Yeager"). Robinson Helicopter Company ("Robinson") is the manufacturer of the helicopter.

Plaintiffs' motion summarily states that Robinson has not responded adequately to its discovery requests, and seeks to compel production. However, Robinson's

1

R0275

responses were complete and asserted reasonable objections where necessary. Robinson has produced the non-proprietary responsive documents which could be identified based on the requests it was served. Robinson's responses further directed Plaintiffs to documents which were publicly available, and stated clearly what documents are not within its possession and/or control.

In addition to these responses, due to the vastly overbroad nature of many of the requests, Robinson notified Plaintiffs where a response required a clarification so that Robinson could ascertain what documents were being requested. Plaintiffs did not respond to these requests. A copy of Plaintiffs' Requests and Robinson's Responses are attached hereto as Exhibit A.

Plaintiffs' Motion to Compel argues that Robinson should produce the information which was produced in the *Yeager* case, which is a now-resolved matter which arose out of the same helicopter accident. However, Plaintiffs were never a party to that case, the cases were filed at vastly different times, and were never deemed related or consolidated. Further, Ates has never served Robinson with any discovery requests seeking these documents to which Robinson could respond, choosing instead to file this Motion to Compel.

In an attempt to meet and confer about these discovery issues, Robinson's counsel agreed to review the *Yeager* discovery documents for production in the *Ates* matter, with the understanding that they would be produced subject to a Protective Order, in the same manner which they were produced in *Yeager*. In accordance with this, Robinson prepared a Protective Order as used in the *Yeager* case, and forwarded it to Plaintiffs for review. Without providing objections to the relevant terms, this

2

R0276

Protective Order was rejected by Plaintiffs, and Plaintiffs proceeded with this Motion to Compel. A copy of the proposed Protective Order is attached hereto as Exhibit B.

Robinson has both adequately responded to Plaintiffs' discovery requests, and in the spirit of cooperation in the discovery process, even without a formal discovery request for the *Yeager* documents, stands ready to produce these documents once the necessary Protective Order is agreed to and entered. As discussed more fully below, there are both public and private interests in maintaining the confidentiality of this information, and such an Order is necessary as the documents requested contain proprietary trade secret information which has not been disseminated to the public. These documents consist of engineering drawings, Federal Aviation Administration ("FAA") certification materials, confidential pricing information, and information relating to the continuing airworthiness of helicopters manufactured by Robinson.

## II. ARGUMENT

### A. Legal Standard For Protective Order

Texas Rules of Civil Procedure Section 192.6(b) provides that a Protective Order may be entered to "protect the movant from undue burden […] invasion of personal, constitutional, or property rights, the court may make any order in the interest of justice…" Such an Order may provide, but is not limited to, an order that "the discovery be undertaken only by such method or upon such terms and conditions […] as directed by the court; [and/or that] the results of discovery be sealed or otherwise protected, subject to the provisions of Rule 76.a." Tex. R. Civ. Pro. 192.6(b)(4-5).

### B. Robinson Is Not Seeking To Limit or Preclude Discovery

By seeking a Protective Order regarding proprietary trade secret materials,

3

R0277

Robinson is not asking the Court to preclude reasonable discovery, or to limit what responsive documents are produced to Plaintiffs. Rather, Robinson is simply asking for an Order which ensures that the materials produced in this matter will be used appropriately for the purposes of this case only, and not be retained or disseminated upon its conclusion. Robinson has successfully used this order as drafted in prior cases, including a now-resolved case in this same Court which arose out of this same accident.

**C.** **Production of the Documents Without Adequate Protection Could Both Endanger the Public, and Cause Harm to Robinson**

As discussed above, the limited categories of "confidential" documents detailed in the proposed order are narrowly tailored to relate to documents which both Robinson and the public have a strong interest in maintaining the confidential nature of. As such, the Court should consider the strong public policy issues implicated by their production. As well as Robinson's interests in the confidentiality of its trade secrets, which allows it to compete in a very competitive international industry, the general public would be placed at risk if the requested information is released to outside parties, due to the increased likelihood of uncertified, counterfeit aircraft parts entering the general aviation market. These documents contain proprietary information which is the result of years of work product of Robinson's engineering staff, consist of the design specifications of its products, and essentially would give a "roadmap" to building the component parts of Robinson's helicopters.

Amongst other concerns, the disclosure of the requested design information would create the risk of injury or death due to these counterfeit parts malfunctioning or failing while installed on aircraft, as the parts would be created without the manufacturer's quality control standards or the FAA's approval. As a result, the FAA

4

R0278

has issued warnings to manufacturers to limit this risk by protecting their design and production information.[1]

The problem of unapproved parts manufacture is of particular concern to Robinson, as consumers of its products have been killed as the result of counterfeit parts being installed on its aircraft. In 1997, a "bogus" parts manufacturer was convicted of two counts of manslaughter for fabricating and installing counterfeit tail rotor blades which failed while in flight and resulted in the deaths of the helicopter's two occupants. This incident demonstrates the very real danger posed by the spread of information concerning the design and manufacture of aircraft parts to potentially unscrupulous third parties. (See *Robinson Helicopter Company Press Release* dated December 23, 1997, attached hereto and labeled as Exhibit C). Compelling Robinson to produce documentation relating to the technical details of its designs would therefore cause potential harm to the general public, as well as to Robinson's proprietary interests.

**D. Robinson Should Not be Compelled to Produce Any Evidence Relating to its Net Worth, Particularly, in the Absence of a Protective Order**

Plaintiffs' petition includes vague and factually unsupported claims of "intentional" conduct and "wilful, wonton and malicious activities" by Robinson. Without more, the discovery of Robinson's sensitive and confidential financial information should not be permitted, and Plaintiffs' motion to compel such information should be in all respects denied. The existing case law setting the standards for discovery of a defendant's net worth is antiquated and does not reflect the recently-enacted limitations on exemplary damage claims as passed by the Texas Legislature. Thus, Robinson should not be

---

[1] See FAA Advisory Circular No. 21-29B "DETECTING AND REPORTING SUSPECTED UNAPPROVED PARTS." Updated 06-01-2001. The full text versions of FAA Advisory Circulars are available from the FAA website at www.faa.gov.

5

R0279

required to disclose its net worth based on a few bare, factually devoid assertions in Plaintiffs' petition.

In order to remain consistent with the intent and purpose of Chapter 41 of the Texas Civil Practices and Remedies Code, including the implementation of a bifurcated trial, Robinson should not be required to produce its net worth unless or until a jury, based on clear and convincing evidence, as required by the Texas Pattern Jury Charges, returns a unanimous verdict that Robinson is liable to Plaintiffs for exemplary damages based on the facts and evidence presented in this case. Alternatively, Robinson should be permitted to submit its net worth under seal to the Court, only to be disclosed upon a finding of liability by the jury. Additionally, Robinson should be permitted to demonstrate that it can satisfy the maximum possible award of exemplary damages available under Tex. Civ. Prac. & Rem. Code § 41.008, rather than its actual net worth. At a minimum, any disclosure of Robinson's proprietary financial information should only be ordered subject to a protective order to protect against public dissemination.

The Supreme Court of Texas, in *Lunsford v. Morris*, held that a defendant's net worth is relevant in a suit involving exemplary damages. 746 S.W.2d 471, 473 (Tex. 1988) (orig. proceeding), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992) (orig. proceeding). As a result, parties may discover and offer evidence of a defendant's net worth in cases where punitive or exemplary damages may be awarded. *Id.* Moreover, the *Lunsford* Court held that a party seeking discovery of net worth information need not satisfy any evidentiary prerequisite, such as

6

R0280

making a prima facie showing of entitlement to punitive damages, before discovery of net worth is permitted. *Id.*; *Jacobs*, 300 S.W.3d at 40-41 (majority opinion).

Following *Lunsford*, the Supreme Court recognized the extreme risk of prejudice involved with the disclosure of a defendant's net worth and established a bifurcated procedure for conducting trials involving claims for punitive damages. *Moriel*, 879 S.W.2d at 30. Shortly thereafter, the bifurcated procedure was codified by the Texas Legislature. *See* Tex. Civ. Prac. & Rem. Code § 41.009. However, "the current Texas rule on net-worth discovery is now decades-old and, in light of the evolution of Texas law, needs to be revisited." *Jacobs*, 300 S.W.3d at 47-48 (Sullivan, J., concurring). Indeed, the Supreme Court of Texas has yet to address when and on what basis a party is entitled to discover financial and net worth information. "These issues are significant and demand the Court's attention." *In re Jerry's Chevrolet-Buick, Inc.*, 977 S.W.2d 565, 566 (Tex. 1998) (Gonzalez, J., dissenting).

In fact, the Supreme Court of Texas has been willing to address these issues on a least two previous occasions. *Id.* The Supreme Court granted petitions for writ of mandamus in *Aramark Uniform Services, Inc. v. Tyson*, 40 Tex. Sup. J. 84 (November 15, 1996), and *Perry Home Contractors, Inc. v. Patterson*, 39 Tex. Sup. J. 237 (February 9, 1996), to determine whether a plaintiff must make a prima facie showing of entitlement to exemplary damages before discovering evidence of a defendant's net worth. However, the Supreme Court was unable to decide the issue because those cases were dismissed pursuant to settlement. *Perry Home Contractors, Inc. v. Patterson*, 40 Tex. Sup. J. 398 (March 6, 1997); *Aramark Uniform Servs., Inc. v. Tyson*, 40 Tex. Sup. J. 131 (December 13, 1996).

R0281

In 1987, the Texas Legislature began to scale back the availability of punitive damages by enacting Chapter 41 of the Texas Civil Practice and Remedies Code. However, while the original version of Chapter 41 introduced basic limitations to the recovery of punitive damages, the protections it extended to defendants pale in comparison with those found in the version currently in effect. *Lunsford* was decided the following year but, apart from a brief mention in one of the dissenting opinions, ignores any discussion of the 1987 reforms or their effect on the Court's expansive exemplary-damage decisions from earlier that decade. *See Lunsford*, 746 S.W.2d at 476 (Gonzalez, J., dissenting).

In 1995, the Legislature passed even more sweeping tort reform to the substantive and procedural law governing punitive damages. *See* Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 108-13 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code §§ 41.001-.013). Chapter 41 was significantly rewritten to provide defendants dramatic protection from punitive-damage awards. Such changes include:

- Juries could no longer award exemplary damages intended solely to serve "as an example to others," but were instead limited to assessing damages with the purpose of punishing the defendant.

- The Legislature dramatically expanded Chapter 41's coverage to apply to all but a very few types of tort actions.

- A plaintiff's burden of proof for punitive damages was elevated to require proof of all elements by clear and convincing evidence.

- With few limitations, a defendant could no longer be exposed to punitive damages because of another person's criminal act.

- The Legislature lowered the existing cap on punitive damages.

R0282

- Upon a defendant's motion, the trial court had to bifurcate the jury's determination of the amount of punitive damages, and evidence of a defendant's net worth could not be admitted during the liability phase of the trial. *Id.*

These substantive and procedural amendments changed the legal landscape on two levels. First, they further limited the amount of punitive damages that could be assessed. *See id.* § 1 secs. 41.007, 41.008. Second, and more significantly, these revisions dramatically lessened the chances of *any* punitive-damage recovery by a claimant. *See id.* § 1 §§ 41.001(5), 41.002, 41.003(b), 41.005.

In 2003, the Legislature further eroded a plaintiff's ability to recover punitive damages as a part of comprehensive tort-reform legislation. Now, unlike the general rule permitting a civil verdict upon the vote of only ten jurors, an award of punitive damages requires a unanimous verdict as to liability for, and the amount of, such damages. *See* Tex. Civ. Prac. & Rem. Code § 41.003(d); Tex. R. Civ. P. 292; *DeAtley v. Rodriguez*, 246 S.W.3d 848, 850 (Tex. App.—Dallas 2008, no pet.).

Undeniably, the Legislature has repeatedly acted to tightly restrict the ability of litigants to seek and recover exemplary damages in the years following *Lunsford*. It is time for the courts to "catch-up" to the Legislature by extending, modifying or reversing the existing procedures and standards for net-worth discovery in exemplary damages cases. Under the current structure, net-worth discovery serves little practical purpose in most cases.[2] Consequently, trial courts performing a benefit-to-burden analysis should

---

[2] Indeed, discovery into a defendant's net worth may consume a disproportionate amount of attention inasmuch as net worth is only one among several factors a jury should consider, and not even the most important factor in reviewing an amount of punitive damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.011(a); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 45-46 (Tex. 1998) ("[T]he degree of reprehensibility of the defendant's conduct is '[p]erhaps the most important indicium' of the reasonableness of a punitive damage award.") (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)). In fact, until *Lunsford*, a defendant's net worth was not even listed as a factor for the jury to consider in awarding punitive damages. *See Lunsford*, 746 S.W.2d at 472-73 (majority opinion); *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Even so, a *post-*

9

R0283

consider appropriate management of the scope of such discovery corresponding to its utility in resolving these important issues. *See* Tex. R. Civ. P. 192.4(b). *Jacobs*, 300 S.W.3d at 50-51. Thus, it is important for the courts to limit the needless invasion of privacy into the confidential financial information of defendants, like Robinson.

In light of the legislative changes limiting the availability of exemplary damages, limiting the availability of net worth discovery to cases where a finding of liability has actually been made, both plaintiffs and defendants can be protected and neither party is unfairly prejudiced by a requirement to disclose sensitive, yet completely irrelevant information. Discovery of Robinson's net worth, as well as that of similarly situated defendants, should only be permitted in the unlikely event the fact finder determines it is liable for exemplary damages. At a minimum, any disclosure of Robinson's proprietary financial information should only be ordered subject to a protective order to protect against public dissemination.

Generally, net worth is simply a number. Procedurally, a defendant should only be required to disclose its net worth if a jury returns a liability finding which would entitle the plaintiff to exemplary damages. Alternatively, a defendant should be entitled to tender its net worth under seal to the Trial Court, only to be disclosed to the plaintiff if a jury returns a liability finding which would entitle the plaintiff to exemplary damages. Either option would preserve Plaintiffs' right to obtain evidence of Robinson's net worth to present to the jury, should the Plaintiffs be entitled to a second phase of trial to determine the amount of exemplary damages to be awarded, while still protecting Robinson's right to privacy. Indeed, this procedure would not only protect Robinson

---

*Lunsford* jury may still decide on the amount of punitive damages without considering evidence of the defendant's net worth. *See Durban v. Guajardo*, 79 S.W.3d 198, 210-11 (Tex. App.—Dallas 2002, no pet.); *Jacobs*, 300 S.W.3d at 51.

10

R0284

from the needless disclosure of sensitive and confidential financial information based upon nothing more than a mere claim of "intentional" conduct, but also complement the changes made to Chapter 41 of the Texas Civil Practices & Remedies Code since the *Lunsford* decision.

Under the current system allowing the unlimited discovery of financial information, the potential for abuse is just one problem presented. If all that is required for discovery of sensitive, private, and confidential financial information in tort actions is the mere assertion of gross negligence in a pleading, needless abuse and harassment could result. *Wal-Mart*, 868 S.W.2d at 331-32. In the present case, the Plaintiffs contend that their simple inclusion of the word "intentional," with no factual support, is sufficient basis to compel disclosure of highly sensitive and highly invasive proprietary information under the current standard. This is extremely prejudicial and inherently unfair to Robison. However, delaying discovery of net worth information until an actual finding of liability has been made based on the facts and evidence in the case, presents no prejudice to Plaintiffs. Alternatively, Robinson should be permitted to tender its net worth under seal to the Court, only to be disclosed upon a finding by the jury of liability for exemplary damages. At a minimum, any disclosure of Robinson's proprietary financial information should only be ordered subject to a protective order.

**F.** **Where Confidential Documents are Filed With the Court, There is Good Cause to Preclude Them From Entry in the Public Record**

Robinson anticipates that Plaintiffs' may argue that the proposed Protective Order should not be entered due to its requirement that when the documents which contain proprietary information are attached to a document filed with the Court, the protected document should be filed under seal.  However, as discussed above, the type

11

R0285

of documents which Robinson seeks to protect are of the type for which their confidentiality outweighs the interests expressed in Texas Code of Civil Procedure Section 76a. There is a clear risk not only to Robinson's trade secrets, but to the safety of the public. As the proposed Order only seeks to seal the documents themselves, not the entire pleadings, the Order should be granted.

**E.** **In the Alternative, the Court Should Enter the Proposed Order to Protect the Confidentiality of the Implicated Documents, Reserving the Issue of Sealing Those Submitted to the Court, if any, on an Individual Basis**

In the alternative, should the Court find that the burden is not met at this time to require that the documents designated as "confidential" in the Protective Order to be filed under seal, the Court should still order that the balance of the provisions in the proposed Order be granted, and allow the issue of the sealing of any individual document to be decided at such time as a party seeks to file it in conjunction with a pleading, or otherwise enter it into the public record. This would provide the necessary protection for these proprietary documents during the course of discovery, and allow the parties to continue to conduct discovery in a timely manner.

### III. CONCLUSION AND PRAYER

As discussed above, the proposed Protective Order is necessary to ensure the safety of the public, as well as Robinson's genuine interest in protecting its proprietary information from public dissemination. The proposed Order is a reasonable attempt to both enable productive discovery, and serve these important needs in this type of case. It does not limit or preclude document production, and has been used successfully in other cases, including one arising from the same helicopter accident in this same

12

R0286

jurisdiction. In light of the foregoing, Plaintiffs' motion should be denied, and the proposed Protective Order should be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant, Robinson Helicopter Company, Inc. respectfully requests that Plaintiff's Motion to Compel be denied in all respects, that the proposed Protective Order be granted, and that Robinson be granted such other and further relief, both at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

COATS & EVANS, P.C.

**/s/ George Andrew Coats**
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**Attorneys for Defendant**
**Robinson Helicopter Company, Inc.**

13

R0287

## CERTIFICATE OF SERVICE

The undersigned attorney, as attorney of record for the Defendant, certifies that a true and correct copy of the foregoing document has been served on all parties of record on this the 7th day of May, 2015.

MARK T. MURRAY
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, Texas 77046
713-622-3223
713-622-3224 Fax
mmurray@johnstevensonlaw.com

DON SWAIM
ROSE WALKER LLP
3500 Maple Ave., Suite 900
Dallas, Texas 75219
214-752-8600
214-752-8700 Fax
dswaim@rosewalker.com

*/s/ George Andrew Coats*
George Andrew Coats

R0288

NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; SONIA ATES and NATHAN M. ATES, | § § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | 11TH JUDICIAL DISTRICT |
| ROBINSON HELICOPTER COMPANY, INC.; HELICOPTER SERVICES, INC.; and the Estate of CHRISTOPHER YEAGER, | § § § § § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

**ORDER**

On this _____ day of _____, 2015, came on to be heard Plaintiffs' Motion to Compel Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections. After notice to all parties, and upon considering the Motion, any response, the evidence, the pleadings and the arguments of counsel, if any, the Court is of the opinion that Plaintiffs' motion should be DENIED. It is therefore,

ORDERED, ADJUDGED, AND DECREED, that Plaintiff's Motion to Compel Responses to First Discovery Requests, and Request for Ruling on Defendant's Objections be hereby DENIED in all respects.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Defendant's Request for a Protective Order be GRANTED and the proposed Protective Order attached hereto be APPROVED.

SIGNED on _____, 2015.


_____
PRESIDING JUDGE


1

R0289

APPROVED AS TO FORM AND SUBSTANCE:

**COATS & EVANS, P.C**

By: **/s/ _George Andrew Coats_**
George Andrew "Drew" Coats
State Bar No. 00783846
Email: coats@texasaviationlaw.com
Gary Linn Evans
State Bar No. 00795338
Email: evans@texasaviationlaw.com
P.O. Box 130246
The Woodlands, Texas  77393-0246
Telephone:  (281) 367-7732
Facsimile:  (281) 367-8003

**ATTORNEYS FOR DEFENDANT**
**ROBINSON HELICOPTER COMPANY, INC.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 7th day of May, 2015.

MARK T. MURRAY
STEVENSON & MURRAY
24 Greenway Plaza, Suite 750
Houston, Texas 77046
713-622-3223
713-622-3224 Fax
mmurray@johnstevensonlaw.com

DON SWAIM
ROSE WALKER LLP
3500 Maple Ave., Suite 900
Dallas, Texas 75219
214-752-8600
214-752-8700 Fax
dswaim@rosewalker.com

**/s/ _George Andrew Coats_**
George Andrew "Drew" Coats

2

R0290

CAUSE NO. 2014-34635

| | | |
|---|---|---|
| NATHAN S. ATES, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; | § | |
| Sonia Ates and Nathan M. Ates | § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| ROBINSON HELICOPTER COMPANY, INC. , HELICOPTER SERVICES, INC. | § | 11th JUDICIAL DISTRICT |
| and the Estate of CHRISTOPHER YEAGER | § | |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME Now Nathan S. Ates, Individually and as Personal Representative of the Estate of Joyce A. Ates, Deceased; Sonia Ates; and Nathan M. Ates, hereinafter referred to as Plaintiffs, complaining of Robinson Helicopter Company, Inc. (hereinafter "Robinson"), Helicopter Services, Inc. (hereinafter "HSI"), and Paula Yeager, Representative of the Estate of Christopher Yeager, showing the Court as follows, to-wit:

### I.

### DISCOVERY CONTROL PLAN

Pursuant to Texas Rule of Civil Procedure 190.4, Plaintiffs intend for discovery to be conducted under a level three (3) discovery control plan. The Court has entered a docket control order and set deadlines in this case.

-1-

R0291

## II.

## PARTIES

Plaintiff Nathan S. Ates is a resident of Louisiana, the surviving husband of Joyce Ates, and the duly appointed and authorized Personal Representative of the Estate of Joyce Ates.

Plaintiff Sonia Ates is a resident of Harris County, Texas, and a surviving child of Joyce Ates.

Plaintiff Nathan M. Ates is a resident of Oklahoma and a surviving child of Joyce Ates.

Defendant Robinson has been served and is before the Court.

Defendant HSI has been served and is before the Court.

Defendant, Paula Yeager, Representative of the Estate of Christopher Yeager, Deceased, has been served and is before the Court.

Throughout this petition, whenever it is alleged that Robinson or HSI committed some act or omission, it is meant that the identified Defendant or Defendants, acting through their authorized agents, employees and vice-principals acting in the course and scope of their agency or employment, individually and/or collectively, committed the acts or omissions alleged.

## III.

## JURISDICTION AND VENUE

Venue is proper and maintainable in Harris County, Texas because all or a substantial part of the events or omissions giving rise to the claim herein occurred in Harris County. Further, venue is proper in Harris County because HSI maintains its principal office in this state in Harris County. Moreover, because venue is proper in Harris County, Texas as to HSI and Paula Yeager, Representative of the Estate of Christopher Yeager, venue is also proper as to Robinson pursuant to

-2-

R0292

Section 15.005 of the Texas Civil Practice and Remedies Code, which provides that when venue is proper as to one defendant, it is proper as to all defendants and all claims.

This Court has subject-matter jurisdiction by reason of the above and because Plaintiffs' damages exceed the minimum jurisdictional requirements of this court. This Court has personal jurisdiction over the Defendants because each Defendant has entered a general appearance herein.

Plaintiffs seek actual damages in excess of two million dollars.

**IV.**

**<u>FACTUAL BACKGROUND</u>**

It has become necessary to file this civil suit to collect a legal debt and damages due and owing Plaintiffs as a result of the death of their wife and mother, Joyce Ates (hereinafter "Ates") on September 10, 2012. At the time of her death, Ates was a passenger in a Robinson R22 Beta II helicopter piloted by Christopher Yeager (hereinafter "Yeager"). At all relevant times, including at the time of the crash, Yeager was an employee of HSI and was acting in the course and scope of that employment by providing Ates with services in the form of helicopter transportation for aerial observation over sites in Harris County, Texas.

Yeager was piloting a 2007 Robinson R22 Beta II helicopter bearing serial number 4250 and registration no. N281RG (hereinafter "the Helicopter"). Robinson designed, manufactured and sold the Helicopter. HSI owned, maintained and managed the Helicopter.

At all times material hereto:

1. HSI was a factory authorized Robinson service center employing technicians trained and certified directly by Robinson to perform scheduled maintenance, inspections, repairs and overhaul of all versions of the R-22, R-44, and R-66 helicopter models;

-3-

R0293

2.      HSI was an agent or servant of Robinson acting within the course and scope of its actual, implied or apparent authority for Robinson or, alternatively, an independent contractor employed by Robinson; and

3.      Robinson was a "prime partner" of HSI.

The flight that resulted in the crash giving rise to this case originated from the Baytown Airport in Baytown, Texas at approximately 3:00 p.m. on September 10, 2012. Ates was the only passenger in the Helicopter. According to the National Transportation Safety Board, witnesses observed the Helicopter spinning slowly around the main rotor shaft and descending straight down. Witnesses stated that the main rotor blades were turning slowly and the tail rotor did not appear to be turning. The Helicopter impacted the ground at approximately 3:30 p.m., causing a large dust cloud. According to the investigation, within a few minutes, the Helicopter ignited in a fireball, rendering rescue attempts by witnesses on the scene futile. The fire eventually consumed both Yeager and Ates. The Helicopter came to rest upright on a heading of 195 degrees magnetic on a dirt road located in a steel pipe storage yard in Harris County, Texas. The skids were spread and level with the belly of the fuselage. Ates suffered injuries in the crash that resulted in her death. Yeager also died as a result of the injuries he sustained in the crash.

At the time of the crash, the Helicopter had a significant history proving that it was not airworthy because of both design and mechanical defects and problems that led to a loss of control, drive or effectiveness, and which made control of the Helicopter difficult, if not impossible, to regain, once lost. Additionally, the Helicopter's rotors lost inertia and the Helicopter's aluminum fuel tanks failed to resist post-accident fuel leaks, causing or contributing to the resulting fire. Robinson, from prior crash analyses, was aware that unlined fuel tanks posed an unreasonable risk

-4-

R0294

of harm to occupants in the aircraft, and had issued a safety bulletin for a portion of its fleet for this very circumstance. But the Helicopter had not been retrofitted with an alternative fuel bladder to avoid post-impact fires.

## V.

## CAUSES OF ACTION

This action is brought pursuant to Chapter 71 of the Texas Civil Practice and Remedy Code, commonly known as the Texas Wrongful Death Act (Texas Civil Practice and Remedies Code Sections 71.001-71.012 and the Texas Survival Statute (Texas Civil Practice and Remedies Code Section 71.021). Plaintiffs Nathan S. Ates, in his individual capacity as the surviving spouse of Joyce Ates, and Nathan M. Ates and Sonia Ates, as the surviving children of Joyce Ates, are statutory beneficiaries under the Texas Wrongful Death Act and bring this action to recover the damages they have sustained and, in reasonable probability will sustain in the future, as a result of the wrongful death of Joyce Ates. Plaintiff Nathan S. Ates, in his capacity as personal representative of the Estate of Joyce Ates, brings this action under the Texas Survival Statute to recover on behalf of the Estate of Joyce Ates the damages Joyce Ates sustained prior to her death.

I.     **CAUSES OF ACTION AGAINST ROBINSON.**

A.     **Strict Products Liability.**

Robinson designed and manufactured the Helicopter. Robinson introduced the Helicopter into the stream of commerce. Robinson determined what warnings and instructions would accompany the Helicopter when it was introduced into the stream of commerce, and designed and drafted those warnings and instructions.

-5-

R0295

At the time Robinson designed, manufactured and sold the Helicopter, and at all times thereafter until the present, Robinson was regularly engaged in the business of placing helicopters such as the Helicopter into the stream-of-commerce for use by the consuming public. Such conduct was solely for commercial purposes.

Robinson expected the Helicopter to reach its ultimate user or consumer without substantial change in its condition. The Helicopter's condition had not substantially changed between the time Robinson introduced it into the stream of commerce and the time of the crash that resulted in the death of Joyce Ates.

The Helicopter was being used properly for its intended and foreseeable purpose at the time of the crash.

### 1.  Design Defect.

The Helicopter was defectively designed so as to render it unreasonably dangerous. That is, it was unreasonably dangerous as designed, taking into consideration its utility and the risk involved in its use. The Helicopter was unreasonably dangerous because risk involved in its use outweighed its utility under all the facts and circumstances, including the availability of a safer alternative design.

The Helicopter was defectively designed in two ways.

First, the Helicopter's drive system was designed so that the rotors were powered by belts. This resulted in low inertia, making the Helicopter unreasonably prone to loss of control, drive and effectiveness. The drive system did not incorporate mechanical components and/or safety/redundancy features that would prevent or mitigate rotor failures and /or ineffectiveness.

-6-

R0296

Because of this defective design, if the Helicopter lost power, it would drop precipitously, making it very difficult or impossible for the pilot to recover power and avoid a crash.

At the time the Helicopter left Robinson's control, there was an economically and technologically feasible alternative design for the Helicopter's drive system that would have prevented or significantly reduced the risk of the Helicopter crashing on the occasion in question without substantially impairing the Helicopter's utility.

Second, the Helicopter's aluminum fuel tanks were designed without a liner or fuel bladder, such that they were ineffective to prevent post-accident fuel leaks. The design of the fuel tanks failed to incorporate mechanical components and/or safety/redundancy features that would prevent or mitigate fuel tank failures causing post-crash ignition and fires. This created an unreasonable risk of fire in the event of a crash.

At the time the Helicopter left Robinson's control, there was an economically and technologically feasible alternative design for the Helicopter's fuel tanks that would have prevented or significantly reduced the risk of the Helicopter catching fire on the occasion in question without substantially impairing the Helicopter's utility. This alternative design was to line the interior of the fuel tanks with a liner or bladder constructed of rubber or plastic-like material. In fact, prior to the crash that claimed the life of Joyce Ates, Robinson had issued a safety bulletin for a portion of its fleet addressing the fire risk posed by unlined fuel tanks and recommending retrofitting of unlined fuel tanks. However, the Helicopter had not been retrofitted with a liner or bladder at the time of the crash.

A member of the general public that would be a passenger in the Helicopter would not be aware of the risks posed by the design defects identified above. These defects were not obvious or

-7-

R0297

even visible to an ordinary passenger. Further, as explained below, Robinson did not provided suitable warnings and instructions to ameliorate the risks posed by these defective designs. And the ordinary consumer would never expect a helicopter to be designed in such a way that it would be likely to lose power and very difficult to regain control after a loss of power, or that a fuel leak would be likely upon a crash.

### 2. Marketing Defect.

The risks of harm described above were inherent in the Helicopter due to its defective design, and would be expected to arise from its intended or reasonably anticipated use. Robinson actually knew about or reasonably could have foreseen these risks at the time it introduced the Helicopter into the stream of commerce. Yet Robinson failed to give adequate warnings of the Helicopter's dangers and failed to give adequate instructions to avoid those dangers. This is because the warnings and instructions Robinson did give (i) did not warn of the dangers identified above, (ii) were not given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the Helicopter's use, (iii) were not comprehensible to the average user, and (iv) did not convey to the mind of a reasonably prudent person a fair indication of the nature and extent of the danger and how to avoid it. This failure to provide adequate warnings and instructions rendered the Helicopter unreasonably dangerous to the Helicopter's ultimate consumers or users, including Joyce Ates. That is, the Helicopter was dangerous to an extent beyond that which would be contemplated by the ordinary knowledge common to the community as to the Helicopter's characteristics.

R0298

### 3.     Producing cause.

The design and marketing defects identified above were each a producing cause of the death of Joyce Ates.  Each defect was a substantial factor that brought about the death of Joyce Ates, and Joyce Ates would not have died but for the design and marketing defects identified above.  Had Robinson properly designed the Helicopter's drive system and provided adequate warnings and instructions with the Helicopter, the Helicopter would not have crashed in the first place.  And had Robinson properly designed the fuel tanks, the Helicopter would not have caught fire after the crash.  Thus, had Robinson not introduced the Helicopter into the stream of commerce with the design and marketing defects, Ates would not have died.

### B.     Negligence.

#### 1.     Robinson's duty of ordinary care.

As the designer, manufacturer and seller of the Helicopter, Robinson had a duty to exercise ordinary care to (i) design and manufacture a helicopter that did not involve an unreasonable risk of causing harm, (ii) discover the dangerous propensities of the Helicopter, and (iii) provide adequate warnings and instructions with the Helicopter, since it knew or should have known of the potential harm to a user because of the nature of the Helicopter.

#### 2.     Robinson's breaches of its duty of ordinary care.

Robinson breached the foregoing duties.  These breaches included, but were no limited to, the following:

##### i.     *Negligent design of the Helicopter.*

Robinson knew or should have known of the risks posed by the defective design of the Helicopter's drive system and fuel tanks, which are described above.  Yet Robinson failed to

-9-

R0299

exercise ordinary care to design and manufacture a helicopter that did not involve an unreasonable risk of causing harm, because a reasonably prudent designer and manufacturer would not have designed the Helicopter's drive system and fuel tanks as Robinson did, but instead would have used safer alternative designs, including those described above. Indeed, other manufacturers of similar helicopters use safer alternative designs, and do not use the defective design used by Robinson on the Helicopter.

Robinson's negligence resulted in the Helicopter being unreasonably dangerous as designed, taking into consideration its utility and the risk involved in its use. The Helicopter was unreasonably dangerous because the risk involved in its use outweighed its utility under all the facts and circumstances, including the availability of a safer alternative design. Safer alternative designs for the Helicopter's drive system and fuel tanks existed at the time Robinson designed, manufactured, and sold the Helicopter. These safer alternative designs are described above.

### ii. Negligent failure to ascertain the risks posed by the Helicopter.

Robinson also failed to exercise ordinary care to discover and analyze the dangerous propensities of the Helicopter and take corrective measures so as to provide a reasonably safe helicopter for the public to use.

A reasonable and prudent designer/manufacturer of helicopters exercises diligence to determine the root cause of crashes involving its helicopters by investigating, inspecting, collecting data, performing analysis, and considering component failure. A reasonable and prudent designer/manufacturer of any aviation product would gather, analyze and maintain safety and failure data so that component failures can be identified. Further, reasonable and prudent manufacturers of helicopters then analyze and utilize the information discovered in these investigations to take

-10-

R0300

corrective actions, including re-design, recalls, retrofitting and notices to its end users/customers.

Robinson has previously investigated, reviewed and considered safety issues concerning both R22 and R44 helicopter crashes. But Robinson has failed to conduct reasonable and adequate investigations into crashes involving its helicopters and has not exercised ordinary care to determine the root causes of failures of its helicopters. Robinson has never performed an accident reconstruction of a crash involving one if its helicopters or attempted to determine the cause of any crash involving one of its helicopters. Robinson does not consider that it has a responsibility to determine why any of its helicopters fail in service.

Robinson also has failed and continues to fail to maintain relevant safety data for R22 and R44 helicopter crashes, thereby jeopardizing the safety of the public in general, and Ates in particular. Robinson has failed and continues to fail to retain documentation and records related to helicopter crashes or maintain information from its service center feedback from customers and/or users. Robinson does not utilize a database to track malfunctions and/or failures of any component parts of its helicopters, as a reasonable and prudent designer/manufacturer would do.

Robinson does not utilize a safety committee to evaluate the numerous crashes of R22 or R44 helicopters, component failures, design modifications, or safety-related issues for its customers and/or end users. As such, Robinson has acted with clear and conscious indifference and disregard for the pilots and passengers who board a Robinson helicopter. Robinson's decisions to avoid gathering, analyzing, maintaining, and acting upon important safety data and performing reasonable engineering analysis concerning helicopter and component failures greatly endangered the life of Joyce Ates and similarly situated individuals.

-11-

R0301

Further, Robinson failed to exercise ordinary care to inspect and test its helicopters generally and the specific Helicopter involved in the crash that killed Joyce Ates in particular. Robinson negligently and without performing proper tests and inspections introduced the Helicopter into the stream of commerce in a defective condition that rendered it inferior, unsuitable and unsafe when used for its intended and foreseeable purposes.

### iii. Negligent marketing of the Helicopter.

Robinson also failed to exercise ordinary care to provide adequate warnings and instructions with the Helicopter. At the time it introduced the Helicopter into the stream of commerce, Robinson knew or reasonably should have known of the risks posed by the defective design of the Helicopter's drive system and fuel tanks, which are described above. Yet Robinson failed to give adequate warnings of the Helicopter's dangers and failed to give adequate instructions to avoid those dangers. This is because the warnings and instructions Robinson did give (i) did not warn of the dangers identified above, (ii) were not given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the Helicopter's use, (iii) were not comprehensible to the average user, and (iv) did not convey to the mind of a reasonably prudent person a fair indication of the nature and extent of the danger and how to avoid it. This failure to provide adequate warnings and instructions rendered the Helicopter unreasonably dangerous to the Helicopter's ultimate consumers or users, including Joyce Ates. That is, the Helicopter was dangerous to an extent beyond that which would be contemplated by the ordinary knowledge common to the community as to the Helicopter's characteristics. Given the known or reasonably foreseeable risks posed by the Helicopter's design, a reasonably prudent helicopter manufacturer would have provided adequate warnings and instructions with the Helicopter that would have warned

-12-

R0302

users of known safety hazards and/or defects, and educated both pilots and passengers of the known hazards and how to mitigate them. Yet Robinson failed to exercise ordinary care to adequately warn and instruct pilots and passengers regarding known safety issues with its helicopters, including the Helicopter involved in the crash that killed Joyce Ates.

### 3. Proximate Cause.

Each instance of negligence described above (as well as other negligent acts and omissions by Robinson) was a proximate cause of the death of Joyce Ates.

#### i. Cause in fact.

Each instance of negligence described above (as well as other negligent acts and omissions by Robinson) was a substantial factor in causing the death of Joyce Yates. Further, Joyce Ates would not have been killed in the crash if Robinson had not engaged in each instance of negligence described above (as well as other negligent acts and omissions by Robinson). Had Robinson exercised ordinary care in discovering the dangers posed by the Helicopter, designing the Helicopter's drive system, and providing adequate warnings and instructions with the Helicopter, the Helicopter would not have crashed in the first place. And had Robinson exercised ordinary care in designing the fuel tanks, the Helicopter would not have caught fire after the crash. Thus, had Robinson exercised ordinary care, Ates would not have died.

#### ii. Foreseeability.

A helicopter manufacturer exercising ordinary care under the same or similar circumstances as those under which Robinson acted would have foreseen that a crash resulting in serious injuries or death (or some similar event) could occur as a result of (i) a manufacturer's designing a helicopter's drive system and fuel tanks in the manner in which Robinson designed the Helicopter's

-13-

R0303

drive system and fuel tanks, (ii) a manufacturer's failing to exercise ordinary care to ascertain the dangers posed by its helicopter, and (iii) a manufacturer's failure to provide adequate warnings and instruction with a helicopter like the Helicopter. Accordingly, Ates's death was a foreseeable consequence of Robinson's negligence described above (as well as other negligent acts and omissions by Robinson).

**C.  Gross negligence.**

The acts and omissions of Robinson described above were more than just simple negligence. They were so severe and egregious that they rose to the level of gross negligence. So exemplary damages should be assessed against Robinson.

Robinson was grossly negligent in failing to:

1.  investigate failures of its helicopters;

2.  collect, properly analyze, and maintain product-failure and safety data;

3.  perform safety analyses of its helicopters (including the R22 model) and product failures;

4.  take corrective measures when product defects were discovered;

5.  incorporate safer alternative designs, components and features to prevent rotor and fuel tank failures and ineffectiveness, including in the R22 model;

6.  properly design, test and inspect the Helicopter;

7.  correct and adequately warn against the specific hazards involved with the Helicopter's operation (including those identified above); and

8.  provide adequate instructions to enable pilots to mitigate the risks described above.

-14-

R0304

Robinson's actions and inactions described above, when viewed objectively from Robinson's standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, including Joyce Ates. That is, they posed a risk that was neither remote nor minimal. Robinson's failure to properly investigate failures of its helicopters and their components, to gather, analyze and maintain records, documents and information relating to such investigations, to use the information gained in such investigations and analyses to make improvements to the design and marketing of its helicopters, to properly design, inspect and test R22 helicopters (including the Helicopter involved in the crash that resulted in the death of Joyce Yates), and to provide adequate warnings and instructions with the Helicopter, collectively and separately, presented a substantial risk that the Helicopter would crash and catch fire during ordinary and foreseeable use, and that the pilot and passengers would be seriously injured or killed. This was not a remote risk, but one that was far too likely to occur. Accordingly, Robinson's acts and omissions presented an objectively extreme risk to those using the Helicopter.

Further, Robinson had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Joyce Ates. Although Robinson attempted to create a circumstance of willful ignorance by refusing to adequately investigate failures of its helicopters, failing to collect, analyze and maintain documents and other information regarding the failure of its helicopters, failing to use information learned about the cause of failures of its helicopters to make its products safer, and failure to utilize a safety committee to evaluate safety-related information to improve the safety of its helicopters, it could not avoid gaining knowledge of the dangerous defects in its helicopters. This is because litigation involving crashes of Robinson helicopters resulted in Robinson's receiving such information, both

-15-

R0305

from the opposing litigants and Robinson's own experts and consultants. The information Robinson received during these lawsuits provided it with actual subjective awareness of the defects in the drive-system and the fuel tanks in helicopters like the Helicopter involved in the crash that killed Joyce Ates, the need for and availability of safer alternative designs for the drive system and fuel tanks, and the objectively extreme degree of risk that these defects posed. What's more, Robinson had actual knowledge that failing to properly investigate failures of its helicopters, gather, analyze and maintain information revealed by those investigations, and use that information to improve the safety of its products presented the objectively extreme risk described above.

As explained above, Robinson's gross negligence was a proximate cause of the death of Joyce Ates, because Robinson's gross negligence was a substantial factor in causing the death of Joyce Ates, Joyce Ates would not have died in the absence of Robinson's gross negligence, and a helicopter crash resulting in serious injuries or death was foreseeable to Robinson. Accordingly, Plaintiffs seeks exemplary damages from Robinson.

## II.     CAUSES OF ACTION AGAINST HSI.

### A.     Negligence.

#### 1.     HSI's duty to exercise ordinary care.

As a commercial provider of helicopter transportation services to the public in general and Ates in particular, HSI owed Ates a duty to exercise reasonable care to provide those services in a reasonably safe manner. Thus, it owed Ates a duty to exercise ordinary care to:

1.      train and instruct its pilots, including Yeager, on the operation of the Helicopter, including the risks posed by the design of its drive system and fuel tanks, and how to respond when confronted by a loss of power;

-16-

R0306

2. provide its helicopter transportation services in a reasonably safe manner and in a reasonably safe helicopter; and

3. perform proper upkeep, maintenance, service, retrofitting, tests and inspections on the Helicopter to ensure that it was in working order and did not pose an unreasonable risk to passengers being transported in it, including Joyce Ates.

### 2. HSI's breach of its duty of ordinary care.

HSI breached its duty of ordinary care. These breaches included, but were no limited to, the following:

1. failing to exercise ordinary care to train and instruct Yeager on the operation of the Helicopter, including the risks posed by the design of its drive system and fuel tanks, and how to respond when confronted by a loss of power;

2. failing to provide its helicopter transportation services in a reasonably safe manner (including but not limited to the negligence of Yeager set forth below) and in a reasonably safe helicopter;

3. failing to perform proper upkeep, maintenance, service, retrofitting, tests and inspections on the Helicopter to ensure that it was in working order and did not pose an unreasonable risk to passengers being transported in it, including Joyce Ates;

4. failing to perform proper safety analyses regarding the Robinson model R22 Beta II helicopter;

5. failing to insure that proper safety programs and training were in place; and

6. failing to properly correct and warn against the specific hazards involved in operation of the Robinson model R22 Beta II helicopter.

-17-

R0307

### 3. Proximate Cause.

Each instance of negligence described above (as well as other negligent acts and omissions by HSI) was a proximate cause of the death of Joyce Ates.

#### i. Cause in fact.

Each instance of negligence described above (as well as other negligent acts and omissions by HSI) was a substantial factor in causing the death of Joyce Ates. Further, Joyce Ates would not have been killed in the crash if HSI had not engaged in each instance of negligence described above (as well as other negligent acts and omissions by HSI). Had HSI exercised ordinary care in instructing and training Yeager, providing a safe helicopter to transport Ates, operating the Helicopter safely while transporting Ates, performing a safety analysis of the Helicopter, maintaining, servicing, retrofitting, testing and inspecting the Helicopter, and warning Yeager of the dangers posed by the Helicopter, the Helicopter would not have crashed and Ates would not have died.

#### ii. Foreseeability.

A helicopter transportation company exercising ordinary care under the same or similar circumstances as those under which HSI acted would have foreseen that a crash resulting in serious injuries or death (or some similar event) could occur as a result of its failure to exercise ordinary care in instructing and training its pilots, providing safe helicopters to transport passengers, operating a helicopter safely while transporting passengers, and maintaining, servicing, retrofitting, testing and inspecting its helicopters. Accordingly, Ates's death was a foreseeable consequence of HSI's negligence described above.

-18-

R0308

B.      **Gross negligence.**

The acts and omissions of HSI described above were more than just simple negligence. They were so severe and egregious that they rose to the level of gross negligence. So exemplary damages should be assessed against HSI.

HSI's actions and inactions, when viewed objectively from the standpoint of HSI at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, including Joyce Ates. That is, they posed a risk that was neither remote nor minimal. HSI's failure to properly instruct and train Yeager, provide a safe helicopters to transport Ates, operate the Helicopter safely while transporting Ates, and maintain, service, retrofit, test and inspect the Helicopter, collectively and separately, presented a substantial risk that the Helicopter would crashand that the pilot and passengers would be seriously injured or killed. This was not a remote risk, but one that was far too likely to occur. Accordingly, HSI's acts and omissions presented an objectively extreme risk to those using the Helicopter.

Further, HSI had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Joyce Ates. As a provider of helicopter transportation services, HSI was actually aware that the Robinson R22 Beta II model helicopter was unreasonably dangerous and that the design of the drive system and fuel tanks posed a substantial risk that the Helicopter would lose power, crash and catch fire, thereby causing serious injury or death to those aboard. It therefore had actual subjective awareness that its use of the Helicopter to transport passengers and its failure to maintain, service, retrofit, test and inspect the Helicopter and to adequately instruct Yeager in these dangers and in operating the

-19-

R0309

Helicopter (including how to respond when confronted by a loss of power) also posed a substantial risk of serious injury or death due to a crash.

As explained above, HSI's gross negligence was a proximate cause of the death of Joyce Ates, because HSI's gross negligence was a substantial factor in causing the death of Joyce Ates, Joyce Ates would not have died in the absence of HSI's gross negligence, and a helicopter crash resulting in serious injuries or death was foreseeable to HSI. Accordingly, Plaintiffs seeks exemplary damages from HSI.

## III.  NEGLIGENCE CAUSES OF ACTION AGAINST YEAGER.

### A.  Yeager's duty to exercise ordinary care.

As a commercial pilot of a helicopter providing transportation services to Ates, Yeager owed Ates a duty to exercise ordinary care to ensure that the Helicopter was in an airworthy condition before transporting Ates in it and in the operation of the Helicopter while transporting Ates.

### B.  Yeager's breach of his duty of ordinary care.

Yeager breached his duty of ordinary care. These breaches included, but were no limited to, the following:

1.  failing to perform testing and protocols regarding the condition and operation of the Helicopter he used to transport Ates;

2.  failing to control the Helicopter, including failing to maintain controlled flight under power; and

3.  failing to employ appropriate helicopter piloting techniques and emergency maneuvers so as to control the craft, bring the craft to rest after a loss of power, and avoid a high velocity crash landing.

-20-

R0310

## C. Proximate cause.

Each instance of negligence described above (as well as other negligent acts and omissions by Yeager) was a proximate cause of the death of Joyce Ates.

### 1. Cause in fact.

Each instance of negligence described above (as well as other negligent acts and omissions by Yeager) was a substantial factor in causing the death of Joyce Ates. Further, Joyce Ates would not have been killed in the crash if Yeager had not engaged in each instance of negligence described above (as well as other negligent acts and omissions by Yeager). Had Yeager exercised ordinary care in performing testing and protocols on the Helicopter and operating the Helicopter while transporting Ates, the Helicopter would not have crashed and Ates would not have died.

### 2. Foreseeability.

A professional helicopter pilot exercising ordinary care under the same or similar circumstances as those under which Yeager acted would have foreseen that a crash resulting in serious injuries or death (or some similar event) could occur as a result of his failure to exercise ordinary care in performing testing and protocols on the Helicopter and operating the Helicopter while transporting Ates. Accordingly, Ates's death was a foreseeable consequence of Yeager's negligence described above.

## IV. JOINT AND SEVERAL LIABILITY.

By engaging in the conduct described above, and where applicable under Texas Law, all Defendants are jointly and severally liable to all Plaintiffs for their damages and injuries.

-21-

R0311

## V. AGENCY AND VICARIOUS LIABILITY.

At all times material hereto, and with respect to each act of negligence asserted herein (as well as other acts of negligence that may be established at trial):

Yeager was an employee, agent or servant of HSI. Yeager committed all the acts and omissions alleged herein in the course and scope of his employment for HSI. Accordingly, HSI is vicariously liable for all the negligent acts and omissions of Yeager under the doctrine of respondeat superior.

HSI was the agent, employee, servant, or statutory employee of Robinson. HSI committed all the acts and omissions alleged herein in the course and scope of its employment or agency for Robinson. Accordingly, Yeager was also the employee, agent or servant of Robinson, and committed all the acts and omissions alleged herein in the course and scope of his employment for Robinson. Accordingly, Robinson is vicariously liable for all the negligent acts and omissions of HSI and Yeager under the doctrine of respondeat superior.

Alternatively, HSI was an independent contractor engaged by Robinson and was acting in the course and scope of that engagement and with Robinson's actual, apparent or implied authority.

One or more of Robinson's and HSI's negligent and grossly negligent acts and/or omissions were committed by owners, vice-principals, supervisors or managers of Robinson and HSI.

Therefore, Plaintiffs seek to recover against Robinson and HSI under the theories of agency, vicarious liability, and/or respondeat superior for any cause of action (including for gross negligence) alleged herein.

-22-

R0312

**VI.**

**DAMAGES**

As a result of the death of Joyce Ates resulting from the legally culpable conduct committed by the Defendants and described above (including the negligence and gross negligence of the Defendants and Robinson's introducing a dangerously defective product into the stream of commerce), the Plaintiffs have sustained, are entitled to recover, and seek to recover in this case damages that greatly exceed of the minimum jurisdictional limits of this Honorable Court. Plaintiffs seek recovery of each and every element of damages permitted by Texas law. Plaintiffs are entitled to have their claims considered by the trier of fact, and a verdict rendered accordingly. Plaintiffs seek monetary damages for actual compensatory losses in an amount over $1,000,000.00, excluding punitive damages. The damages Plaintiffs seek to recover herein include, but are not limited to, the following:

**I.    WRONGFUL DEATH DAMAGES.**

**A.    Nathan S. Ates.**

In connection with his cause of action under the Texas Wrongful Death Act, Nathan S. Ates, in his individual capacity as the surviving spouse of Joyce Ates, is entitled to recover and seeks to recover in this case damages for past and future:

1.    pecuniary loss resulting from the death of Joyce Ates, including but not limited to the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Nathan S. Ates, in reasonable probability, would have received from Joyce Ates had she lived;

-23-

R0313

2. loss of consortium, companionship and society resulting from the destruction of the husband-wife relationship between Nathan S. Ates and Joyce Ates, including the loss of the positive benefits flowing from the love, affection, solace, comfort, companionship, society, assistance and sexual relationship that Nathan S. Ates, in reasonable probability, would have received from Joyce Ates had she lived;

3. mental anguish, including but not limited to the emotional pain, torment, and suffering experienced by Nathan S. Ates as a result of the death of Joyce Ates;

4. loss of inheritance, meaning the loss of the present value of the assets that Joyce Ates, in reasonable probability, would have added to the estate and left to Nathan S. Ates at her natural death had she lived, including the earnings, if any, of Joyce Ates, in excess of the amount she would have used for the support of herself and her family, and which in reasonable probability would have been added to her estate.

**B. Nathan M. Ates.**

In connection with his cause of action under the Texas Wrongful Death Act, Nathan M. Ates, a surviving child of Joyce Ates, is entitled to recover and seeks to recover in this case damages for past and future:

1. pecuniary loss resulting from the death of Joyce Ates, including, but not limited to, the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Nathan M. Ates, in reasonable probability, would have received from Joyce Ates had she lived;

2. loss of consortium, companionship and society resulting from the destruction of the parent-child relationship between Nathan M. Ates and Joyce Ates, including the loss

-24-

R0314

of the positive benefits flowing from the love, affection, solace, comfort, companionship, society, and assistance that Nathan M. Ates, in reasonable probability, would have received from Joyce Ates had she lived;

3. mental anguish, including but not limited to the emotional pain, torment, and suffering experienced by Nathan M. Ates as a result of the death of Joyce Ates;

4. loss of inheritance, meaning the loss of the present value of the assets that Joyce Ates, in reasonable probability, would have added to the estate and left to Nathan M. Ates at her natural death had she lived, including the earnings, if any, of Joyce Ates, in excess of the amount she would have used for the support of herself and her family, and which in reasonable probability would have been added to her estate.

**C.     Sonia Ates.**

In connection with her cause of action under the Texas Wrongful Death Act, Sonia Ates, a surviving child of Joyce Ates, is entitled to recover and seeks to recover in this case damages for past and future:

1. pecuniary loss resulting from the death of Joyce Ates, including, but not limited to, the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Sonia Ates, in reasonable probability, would have received from Joyce Ates had she lived;

2. loss of consortium, companionship and society resulting from the destruction of the parent-child relationship between Sonia Ates and Joyce Ates, including the loss of the positive benefits flowing from the love, affection, solace, comfort,

-25-

R0315

companionship, society, and assistance that Sonia Ates, in reasonable probability, would have received from Joyce Ates had she lived;

3.      mental anguish, including but not limited to the emotional pain, torment, and suffering experienced by Sonia Ates as a result of the death of Joyce Ates;

4.      loss of inheritance, meaning the loss of the present value of the assets that Joyce Ates, in reasonable probability, would have added to the estate and left to Sonia Ates at her natural death had she lived, including the earnings, if any, of Joyce Ates, in excess of the amount she would have used for the support of herself and her family, and which in reasonable probability would have been added to her estate.

**D.      The Estate of Joyce Ates.**

In connection with his cause of action under the Texas Survival Statute, Nathan S. Ates, in his capacity as personal representative of the Estate of Joyce Ates, is entitled to recover and seeks to recover in this case on behalf of the Estate of Joyce Ates all damages sustained by Joyce Ates prior to her death, including but not limited to:

1.      physical pain and suffering experienced by Joyce Ates prior to her death;

2.      mental anguish experienced by Joyce Ates prior to her death;

3.      funeral and burial expenses of Joyce Ates.

**E.      Exemplary Damages.**

Further, each Plaintiff seeks to recover exemplary damages from Robinson and HSI, because the harm to the Plaintiffs resulted from the gross negligence of Robinson and HSI, as detailed above.

-26-

R0316

## VI.

## <u>RESERVATION OF RIGHT TO AMEND</u>

The allegations made herein against Defendants are made acknowledging that this suit is in its infancy and investigation and discovery are continuing. As further investigation and discovery are developed, additional facts may be uncovered that will necessitate further, additional and/or different allegations, including the potential for adding and/or dismissing parties to the case and the right to do so, under Texas law, is expressly reserved.

## VII.

## <u>REQUEST FOR DISCLOSURE</u>

This Plaintiffs' First Amended Petition does not vacate or supersede the Request for Disclosure that was contained within Plaintiff's Original Petition. That Request for Disclosure is still extant, and you continue to have an obligation to supplement and/or amend your responses to it pursuant to the Texas Rules of Civil Procedure.

## VIII.

## <u>PRE- AND POST-JUDGMENT INTEREST</u>

Plaintiffs are entitled by law to recover pre-judgment and post-judgment interest at the legal rate, for which they here and now sue for recovery, as allowed by the laws of the State of Texas.

## IX.

## <u>JURY DEMAND</u>

Plaintiffs demand trial by jury in this matter.

-27-

R0317

## X.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final trial hereof, Plaintiffs have judgment against Defendants, jointly and severally, that they recover their damages in accordance with the evidence, including actual and exemplary damages in an amount to be set by the trier of fact, that they recover costs of court herein expended, interest, both pre- and post judgment, to which they are entitled under the law, and for such other and further relief, both general and special, legal and equitable, to which they may be justly entitled.

Respectfully submitted,

**STEVENSON & MURRAY**

*/s/ Mark T. Murray /s/*

_____

**MARK T. MURRAY**
State Bar No. 14724810
24 Greenway Plaza, Suite 750
Houston, Texas 77046
(713) 622-3223
(713) 622-3224 (FAX)
Email: mmurray@johnstevensonlaw.com

COUNSEL FOR PLAINTIFFS

-28-

R0318

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered to all counsel by U.S. Mail, facsimile, e-filing and/or other means, pursuant to the Texas Rules of Civil Procedure on this the 20th day of May 2015, to-wit:

George Andrew Coats
Gary Linn Evans
COATS & EVANS, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Counsel for Robinson Helicopter Co., Inc.

Don Swaim
Cunningham Swaim, LLP
7557 Rambler Road, Suite 440
Dallas, Texas 75231
Counsel for Helicopter Services, Inc.
And Christopher Yeager, Deceased

*/s/ Mark T. Murray/s/*
**Mark T. Murray**

R0319